# EXHIBIT

# G

**Brief for Appellant**
Filed March 29, 2004

# IN THE COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA

Appeal No: *03-FM-1255*

## VIRGIL M. ROGERS

Appellant,

MAR 3 0 2004

V.

## KAREN V. JOHNSON-NORMAN

Appellee,

Appeal from the Superior Court of the
District of Columbia
Family Division
No: *IF-2497-03*
Judge Lynn Leibovitz

Virgil M Rogers
11811 Washington Place
Suite #106
Los Angeles, California 90066

# Table of Contents

Table of Authorities.... 3

Statement of the issues Presented for Review.... 4

Statement of the Case.... 5

Statement of the Facts.... 7

Arguments.... 9

Conclusion.... 18

# **TABLE OF AUTHORITIES**

**CASES**

Beard v South Main Bank 615 A.2d 203, 205 (DC 1992)   14
Curry v United States 658 A.2d 193, 199 (DC 1995)   15
Cruz-Foster v Foster 597 A.2d 927, 930-31 (DC 1991)   16*
Fortune v Evans 58 A.2d 919, 920 (DC 1948)   15
Glenbrook v DC Board of Zoning Adjustment 605 A.2d 22, 39 (DC 1992)   15
Goldberg v Kelly 397 US 254, 269 (1970)   15
Hanson v Denkla 357 US 235 251, (1958)   12
International Shoe v Washington 326 US 310, 66 (1945)   11
Jones v Health Resource Corp of Am 509 A.2d 1140 (DC 1986)   10
Kammerman v Kammerman 543 A.2d 794, 799 (DC 1988)   10*
Kulko v Superior Court 436 US 84, 100-01 (1978)   11
McLaughlin v Fidelity Sec. Life Ins. 667 A.2d 105, 107 (DC 1995)   9
Tyree v Evans 728 A.2d 101, 103 (1999)   14*
VTA Inc V Airco Inc 597 F.2d 220 24 (10th Cir. 1979)   10
WHH Trice v El Hadi Faris 829 A.2d 189, 194 (DC 2000)   10

**STATUTES**

DC Code 16-1001 et seq   6,7,9 *
DC Code 23-563   8
Superior Court Rule of Dom Rel 52(a)   13

## ISSUES PRESENTED FOR REVIEW

1. Johnson was not legally entitled to a protective order in the District of Columbia because Superior Court did not have subject matter jurisdiction or personal jurisdiction over the parties and was an improper venue.

2. Due Process and the statute requires sworn testimony at the proceeding which support the entry of a protective order and Rogers was impermissibly denied the right to cross-examine Johnson or contest the entry of a CPO against him.

3. The provisions contained on the CPO are excessive and oppressive and several provisions are inappropriate or violate the Ex Post Facto Clause of the Constitution.

4. The Court entered a CPO 90 days after a TPO was issued which contradicts with the statute. The TPO is dated before the date of the petition and Rogers was not served with a copy of the Petition prior to the proceeding in this matter.

## I. Statement of the Case and Prior Proceedings

On August 1, 2003 Ms. Johnson filed a *pro se* petition and affidavit in which she requested a 12-month civil protection order against Mr. Rogers. Johnson also asked that Mr. Rogers be required to involuntarily attend psychiatric treatment, as well as a requirement that he stay away from the VA Hospital, Reid Temple AME Church, and her home in Maryland. She requested additional provisions relevant to other persons and asked that Rogers reimburse her for attorney fees despite filing *pro se*.

In her pleading, Johnson checked a box indicating that she and Mr. Rogers had a "romantic/dating relationship". However, these unmarried parties were not currently involved in any joint romantic relationship as they'd essentially had no contact with one another since approximately August 2000. Moreover, Johnson is married to another individual and Rogers is likewise engaged.

As indicated on her petition, Johnson was a Maryland resident at the time she filed for this protective order, and she did not reveal any substantive ties to the District of Columbia on her petition. Mr. Rogers was a California resident with absolutely no ties to this jurisdiction either.

Ms. Johnson alleged that on the dates of May 20, 2003; April 28, 2003; January 14, 2003; and June 18, 2002 she received "anonymous" letters at "Petitioner's work" which she claimed were from Mr. Rogers. She also claimed that on March 19, 2003 and May 29, 2002 she was called by someone she alleged was Mr. Rogers at "Petitioner's work". She did not identify whether "Petitioner's work" is in the District of Columbia or another jurisdiction. Johnson did not allege in her affidavit that she had been abused by Mr. Rogers or that she even saw him during this time in any jurisdiction.

The petition for a protective order filed in this case was date-stamped by the Domestic Violence Branch on August 1, 2003 at 10:54 A.M. Further, the purported Return of Service Affidavit claimed that Rogers was served less than two hours later at 12:47 P.M. in open court. However, incongruously, Judge Jackson entered an *ex parte* fourteen-day temporary protective order pursuant to D.C. Code §16-1004 (d) (1997) which is dated July 31, 2003 <u>before</u> the date of the petition. Also, though the temporary order indicated expressly that it was only valid 14 days, the scheduled hearing on the CPO was October 20, 2003, which exceeded the statutory limitations by well over two months.

A subsequent proceeding was held on October 29, 2003. This was 90 days after the date of the temporary protective order was entered. During this proceeding, Ms. Johnson appeared *pro se* while Mr. Rogers was represented by an attorney. At this proceeding, there was absolutely no sworn testimony or evidence presented in open court. The judge completely dispensed with the required adversarial format. She did not require Ms. Johnson to submit sworn evidence concerning the basis or purpose of her petition or to prove her allegations in any way. Rogers was likewise prevented from contesting the entry of the one-year protective order against him, rebutting the allegations or cross examining Johnson. Nevertheless, Judge Leibovitz unilaterally issued a one-year CPO against Rogers.

Without requiring any testimony or evidence and without allowing Mr. Rogers an opportunity to be heard Judge Leibovitz checked the box indicating her finding that the parties had a "romantic/dating relationship" as required by the CPO statute. The judge also checked the box on page one of the CPO which indicated that it was granted following an "Adjudicated Hearing". However, incongruously, the judge also refrained from checking the appropriate boxes on page one, thereby expressly failing to find **(1)** *that the court had jurisdiction over the parties and subject matter* **(2)** *that the Respondent has been provided reasonable notice and opportunity to be heard* **(3)** *that there was*

6

*good cause to believe that the Respondent has committed or threatened an intra family offense within the meaning of D.C. Code (Title 16-1001).*

The provisions of the one-year CPO issued by Judge Leibovitz were that Mr. Rogers:

- shall not assault, threaten, harass, or stalk (1) Johnson (2) her child (3) Percy Norman
- shall stay at least *100 yards* away from Johnson's (1) person (2) home (3) workplace (4) vehicles, (5) child's daycare, (6) child (7) Percy Norman (8) Reid Temple AME Church (9) parents (10) siblings
- shall not contact in any manner including but not limited to email, telephone, writing, in any other manner directly or indirectly through a 3rd party (1) Johnson (2) Percy Norman (3) Johnson's parents (4) Johnson's siblings (5) Johnson's child
- shall enroll in and complete a counseling program for (1) alcohol (2) drug abuse
- shall undergo a mental health exam and follow any and all recommended treatment.
- Shall not (1) possess (2) receive (3) sell any firearm or ammunition (18 U.S.C. § 922)

Following the entry of this protective order, Virgil Rogers filed a timely notice of appeal in this Court on November 10, 2003.

## II. Statement of the Facts

The record on appeal in this case contains the relevant written materials such as the original petition and affidavit filed by Ms. Johnson and an accompanying information sheet, the Temporary Protection Order, Notice of Hearing And Order to Appear, and Return of Service.

Noticeably not present in the record on appeal in this matter are any trial transcripts. The reason for this is because indisputably, there was no testimony required during the proceeding on October 29, 2003. Therefore, there was no evidence to be transcribed from the proceeding. Likewise, copies of the alleged letters Johnson claims were received from Mr. Rogers are included in the record but

7

y these items are not marked as exhibits in this case because they were not received into

h:s matter. They were inappropriately included in the record on appeal, despite the fact

... e not entered as evidence and were not subject to the requirements of due process for

·idence. Though clearly unallowable and problematic, the Family Division dispensed

... :ement that evidence be given under oath and admissible during this proceeding.

... ated criminal matter brought by Johnson prior to her civil petition in this case, Virgil

... acquitted by a jury on October 28, 2003 of a misdemeanor stalking charge. In January

... contacted Detective Ralph Durant of the Metropolitan Police Department and indicated

... d to file criminal charges against Rogers based on her claim that she had received the

... ous January 14, 2003 letter as the one claimed in this case.

... olice officer, a homicide detective who was apparently a personal friend of Johnson then

ffidavit for arrest in that case and illegally procured a fraudulent US Warrant for the

·neanor charge of stalking. This action violated the Fourth Amendment and DC Code

then provided this fraudulent warrant to the USMS who illegally seized Rogers in

... home on June 17, 2003. Rogers was then unlawfully and forcibly removed to the

... bia where he was charged with misdemeanor stalking in case F420803. Rogers has

...arged with any felony in any jurisdiction. After he was brought to the District, Johnson

... PO. The petition for a protective order and the information on the criminal charge were

... not identical. Rogers was acquitted on October 28, 2003 of the lone count of

stalking. The judge apparently issued the CPO based on some testimony from the

... dispensed with the adversarial hearing in the civil case on that basis.

8

# III. ARGUMENT

## The Trial Court Did Not Have Jurisdiction and was an Improper Venue.

The trial court did not have subject matter jurisdiction over the alleged intra family offense nor did it have jurisdiction over the parties. According to DC Code §16-1001 (5) (B), the statutory provision governing protective orders, the court must not only make specific findings that the parties share a romantic relationship, but also specifically that the petitioner resides in D.C. Alternately, it may find that an intra family offense occurred within the physical boundaries of Washington, DC.

The trial court failed to make or demonstrate a specific finding that Ms. Johnson lived in the District as required, in fact the record (See CPO Petition) demonstrated that she lived in Maryland. The court had not identified a basis to exercise subject matter jurisdiction over these two parties which it also had no personal jurisdiction over, since they were not residents of the jurisdiction.

The failure of the trial court to properly gauge a jurisdictional basis in the face of an apparent lack of jurisdiction was an error in law, which should be reviewed *de novo*. Moreover, the court was an improper venue and should have refused to render a judgment on that basis.

Entering a civil protection order without jurisdiction is not merely an error, it voids the judgment similar to any other faulty injunctive relief in a civil case. [e.g. Rule 60 (b) (4)]. "Whether a judgment is void is a question of law and if a judgment is void it must be vacated". See *McLaughlin v Fidelity Sec. Life Ins.*, *667 A.2d 105, 107 (D.C.1995)*. "If a judgment is void, the only way the court may exercise its discretion is by granting relief" *12 MOORE'S FEDERAL PRACTICE §60-44[5] [a]*. "A judgment must be void, not merely voidable, a judgment is not voidable merely because it is erroneous" See *Kammerman v Kammerman*, *543 A.2d 794, 799 (DC 1988)*. Rogers contends that entering a one-year protective order against him which did not comport with DC Code §16-1001 (5)(B) was such an issue which rendered the judgment (CPO) void in this matter.

9

"A judgment may be held void only if the court that entered it had no jurisdiction over the parties or the subject matter... or if the court's actions were so arbitrary as to violate due process" *Kammerman, supra, 53 A.2d at 799.* In this case, both prongs of *Kammerman* have been met to satisfy the requirement that this judgment is technically void. The court had no jurisdiction over the parties, and didn't even claim that it had jurisdiction on the face of the CPO (See CPO 2497-03) and it made no specific oral or written findings to justify an alternative explanation for assuming long-arm jurisdiction over parties domiciled in other states. Likewise, the court's judgment met the arbitrary standard because the judge entered the CPO without requiring testimony or evidence during the proceeding, therefore precluding the opportunity for Rogers to even contest its entry on the faulty jurisdictional grounds. "For a judgment to be void... it must be determined that the rendering court was powerless to enter it" *Id (quoting V.T.A., Inc v Airco, Inc, 597 F.2d 220, 24 (10th Cir. 1979).* A judgment which has been entered in contravention to the controlling statute, and without jurisdiction does not comport with the demands of due process. Further "a judgment entered without the requisite proof is a judgment that is void" See *Jones v Heath Resources Corp. of Am.*, 509 A.2d 1140 (DC 1986); accord *WHH Trice and Co El-Hadi Faris.* v, 829 A.2d 189, 194 (DC 200). Mr. Rogers contends that a civil protection order (judgment) issued following a proceeding which did not require evidence or testimony falls well within the scope of this Court's case law citing a judgment as "void" where the requisite proof is nonexistent as well.

"The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants" *Kulko V Superior Court, 436 U.S. 84, 100-01, 98 S.Ct. 1690, 1701, 56 L.Ed. 2d 132, 146-47 (1978).* In the instant case, substantial rights and interests of Virgil Rogers have been infringed through the trial court's entry of a judgment against him. Clearly, Rogers was not a citizen of the District of Columbia, but was a resident of California. Johnson has not alleged that Rogers was a resident of this jurisdiction and has conceded on her pleading that she herself is not a resident of this jurisdiction. Therefore,

Superior Court was in essence a *Forum Non Conveniens* to both of the parties in this case. Neither party was a domiciliary in this jurisdiction, which stands to cast serious doubt on the propriety of venue and jurisdiction in this matter. Moreover, there is an unambiguous statutory requirement that the party initiating this petition "shall reside" in the District of Columbia.

Rogers contends that the court did not have personal jurisdiction over either him or Johnson. Foremost, Rogers was never in this jurisdiction during any of the periods on the petition, and the petition expressly does not allege that Rogers was in the District of Columbia during this period. Mr. Rogers had not even had minimal contact with the District of Columbia during the periods in question, because he had had no contacts with the jurisdiction. The entry of a CPO against Rogers without even minimal voluntary contact with the jurisdiction during the period in question carried implications from *International Shoe v Washington*, *326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945)* which would serve to prevent the trial court's exercise of jurisdiction in the instant matter due to the "so-called minimum contacts doctrine... fashioned to gauge the standards of due process for the exercise of jurisdiction". The Petitioner had the burden in this case to establish why she, as a Maryland resident sought relief in a venue in which neither of the parties are domiciled, and likewise the court needed to establish proof of minimal contacts by Rogers with the District in order to exercise any personal jurisdiction over him.

A court in a state where none of the parties resided would be unlikely to become involved in view of the doctrine of forum non conveniens and issues of subject matter jurisdiction. However, in this case District of Columbia Superior Court has crossed such a thorny issue by entering an extremely restrictive personal judgment (CPO) against the [respondent], *Kulko supra 436*. As a nonresident, Johnson was not entitled to any protected status in Superior Court, and the court could exceeded its jurisdictional authority by entering an injunction against Rogers.

The rights and interests of Virgil Rogers that have been adversely affected by the Superior Court's judgment are substantial. There has been a direct invasion of his liberty interest. In addition, there are collateral consequences of a lasting nature. *See 18 U.S.C. §922(g)(8) (possession of a firearm*

11

*precluded). citing Kulko supra.* Superior Court's power does extend to granting protective orders against persons lacking the requisite minimum contacts with the forum state. The need to establish such minimum contacts stands as a "prerequisite to [the State's] exercise of power over [foreign domiciliaries]" <u>Hanson v Denckla</u>, *357 U.S. 235, 251, 78 S.Ct 1228, 1238, 2 L.Ed 2d 1283, 1296 (1958).* The fact that Ms. Johnson was clearly not domiciled in the jurisdiction as well, though this was expressly required in the statute, apparently deprived the court of any proper jurisdiction to enter such an invasive judgment against Rogers, and rendered the judgment void. The judgment of the trial court cannot be sustained where a collateral consequence deprives Second Amendment Rights for a year, and a First Amendment Right has also been infringed outside of the court's jurisdiction expressly on the written order requiring Rogers to stay "100 yards" away from a church in Maryland.

## DUE PROCESS REQUIRED AN ADVERSARIAL HEARING

The trial court did not permit or require testimony or evidence during the proceeding for this matter on October 29, 2003. The court therefore did not make any oral or written findings with respect to this petition for a protective order. The court made a notation on the CPO which states, *"Findings of intrafamily offense as stated on p. 3 after finding of <u>not guilty</u> in criminal case F420803"* (CPO pg 1). On page 3 of the CPO, the trial judge wrote the following, *"Court finds that between June 2002 and May 2003, Respondent committed the offense of stalking against petitioner by writing letters and making telephone calls and that the Respondent poses a danger to the petitioner"* (CPO pg 3).

Foremost, in the notation on page 1 of the CPO, the court has conceded that it has based its findings on a criminal case in which Rogers has previously been acquitted. Since this trial was a jury trial, the jury was the sole arbiters of the facts in that case. The judge was precluded from making findings during the proceeding or usurping the universal province of the jury to act as the fact finders in that case. The judge was the arbiter of the law only. The jury rejected the allegation that Rogers stalked Johnson, and the evidence in that criminal case could not be used against Rogers in any

12

subsequent proceeding. The judge's reliance upon the acquittal in that criminal case as a basis to render injunctive relief in this case was improper. The trial court was precluded from making findings while presiding over a criminal jury trial. The *Sixth Amendment* has been usurped and a fair trial denied where a jury has possibly become partial due to the trial judge formulating a bias or making opinions on the alleged facts in the case. Likewise, the *Seventh Amendment* provides that *"no fact tried by a jury shall be otherwise re-examined in any court..."*. The evidence given during that criminal trial were rejected by the jury, and were not ripe for use by the court in granting subsequent injunctive relief. Such an occurrence would be inappropriate and violate Collateral Estoppel.

The trial judge was required to issue written findings of fact and conclusions of law prior to issuing 12-month injunctive relief in this case with constitutional implications. This requirement is similar in scope to Super Ct. Dom. Rel R. 52 (a) which provides in pertinent part, as follows:

> *In all actions tried upon the facts the court shall make written findings of fact, separate conclusions of law and judgment*

The instant case, though not specific to Rule 52 (a) was heard in the Family Division, and consequently the judge was obliged to render some intelligible findings which justified or substantiated her entry of this injunctive relief. However, apparently the sole basis for such a judgment was the fact that there had been a similar criminal allegation which was tried by jury, and subsequently disposed of favorably for Mr. Rogers. "In the absence of exceptional circumstances compelling the trial court to make rulings off the cuff... the judge should make findings of fact and conclusions of law" <u>Beard v. South Main Bank</u>, *615 A.2d 203, 205 (D.C. 1992)*. The absence of testimony or evidence during the civil proceeding in this case was an absolute barrier to the judge making any legitimate findings of fact or conclusions of law in this case, and the use of the evidence rejected by the jury are simply insufficient either as findings or as a basis to issue a 12-month civil protection order to a resident of California. "Review in this case is severely hindered by the trial court's failure to state on the record the reasons for its decisions". *Id at 205.*

13

## THE COURT IMPROPERLY DENIED CROSS EXAMINATION

The court dispensed with the requirement that Johnson provide sworn testimony during the proceeding which proved her allegations or explained her reasoning for seeking a protective order in the District of Columbia against Rogers, a California resident which she had not seen in years. Certainly, this was a relevant issue to the court's determination of jurisdiction, and whether the requisite romantic relationship existed to proceed as well. Due Process certainly required the court to give Rogers an opportunity to be heard in the least to contest these two issues. However, Rogers was entitled to contest every aspect of the issuance of such drastic injunctive relief, and the court did not have discretion to deny him that right.

The most significant case law by this Honorable Court on the matter of due process deprivation in civil protection cases is *Tyree v Evans* 728 A.2d 101, 103 1999. However, other cases identify the problematic issues that arise when a trial court dispenses with requirements in a proceeding. Undeniably and indisputably, there was no testimony given during the proceeding in this case, and any brief submitted by Johnson in this appeal must logically address that issue, because it is a central theme which Mr. Rogers believes this Court needs to address. In plain simple terms, the trial court cannot dispense with the requirement of testimony in an adversarial proceeding. This is contrary to basic legal principles and fundamental due process. Cross examination is an absolute right that was denied to Rogers in this case.

"Where a witness cannot be cross-examined, the search for truth is severely impaired" *Curry v United States* 658 A.2d 193, 199 (DC 1995); "Whoever has attended to the examination, the cross examination, and the re-examination of witnesses, and has observed what a very different shape their story appears to take in each of these stages, will at once see how extremely dangerous it is to act on the 'ex parte' statement of any witness brought forward under the influence of a party interested" *Tyree supra citing 5 John Henry Wigmore, Wigmore on Evidence §1367, at 32 (Chadbourn rev 1974).*

14

Cross examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth" California v Green 399, U.S. 149, 158 (1970). It is the principle means by which the believability of a witness and the truth of his [or her] testimony are tested, *Davis v Alaska, 415 U.S. 308, 316 (1974)*. Rogers contends that both this Court and the Supreme Court have made their views clear that examination and most importantly cross-examination is indispensable to proceedings.

A complete denial of the opportunity to cross examine, however is impermissible, *Fortune v Evans 58, A.2d 919, 920 (DC 1948)*. The right to cross-examine witnesses called by the opposing party is not confined to any particular kind of proceeding, *Tyree supra*. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses" Goldberg v Kelly, 397 U.S. 254, 269 (1970). " In all adjudicative proceedings, cross-examination and confrontation are the hand maidens of trustworthiness in the face of a factual dispute", Glenbrook Rd. Assn. v DC Bd. Of Zoning Adjustment, 605 A.2d 22, 39 (DC 1992) The opportunity for cross-examination must be accorded not only to criminal defendants, but also civil litigants, *Fortune supra, 58 A.2d at 921*. Overwhelming case law has determined that a trial court may not simply dispose of Rogers' right to contest the allegations by requiring Johnson to testify at the proceeding on her claim and then being subject to cross-examination. This was reversible error by the trial court.

A petition for a CPO is, in substance, a suit for a one-year injunction, *Cruz-Foster v Foster 597 A.2d 927, 930-31 (DC 1991)*. The proceeding in this case, in which Ms. Johnson was not required to meet her burden of proof by providing testimony or evidence under oath, and where Virgil Rogers was precluded from therefore cross-examining Johnson constituted the trial on the merits of this civil case in which equitable injunctive relief was not only sough but granted. *Cruz-Foster supra*. An evidentiary hearing or trial in which a defendant is subject to injunctive relief for a year...falls well within the general rule that where questions of fact are disputed, a litigant has the right to cross-examine adverse witnesses. *Tyree supra*.

The judge in this case deprived Rogers of fundamental rights. However, "the judge may not preclude the opposing party from exercising basic rights of a litigant" *Tyree supra*. Johnson's pro se status at the proceeding in this case could not permit her to escape the burdens imposed by the adversarial system, and especially the obligation to submit to cross-examination. *Tyree supra*. This court authoritatively determined in *Tyree* that "in the absence of legislation taking this type of case out of the adversarial process, we do not believe that a trial court may dispense altogether with cross-examination of the opponent's witnesses by the parties or their counsel". *Tyree supra*.

## THE CPO CONTAINED NUMEROUS UNFAIR PROVSIONS WHICH VIOLATED DUE PROCESS OF LAW

The order in this case violated the Ex Post Facto Clause of the United States Constitution because it issued injunctive relief against Rogers which ordered him to avoid by **100 yards** persons such as Johnson's parents and siblings which he has yet to meet and places which he has yet to visit such as her child's daycare. Clearly, the court unfairly restricts Rogers and prejudices him with these unrealistic and oppressive provisions. He has no way to discern when he is in violation of this nearly draconian protective order, or even specifically where he cannot go throughout the United States of America. *The persons and places inclusive in this order aren't a protected party in this jurisdiction.*

It also violated the First Amendment by ordering Rogers to stay 100 yards from Reid Temple AME Church, which is a violation of Rogers' freedom of religion, and this location is outside of the trial court's jurisdiction. Rogers contends that 100 yards is an oppressive distance for the court to issue injunctive relief against him, and this was inappropriate given the facts of this case. The statute DC Code § 16-1005 (c) permits that,

> If, after a **hearing** the Family Division finds good cause to believe the Respondent has committed or is threatening an intrafamily offense it may issue a protection order (1) directing the respondent to refrain from the conduct committed or threatened and to keep the peace toward the family member (2) directing the respondent to participate in **appropriate** counseling programs (3) directing where **appropriate**, that respondent avoid the presence of the family member endangered.

16

Clearly the statute does not permit that a CPO issued in this court be issued without an adversarial hearing and it does not permit the court to include "parents", "children", or "siblings". And the statute doesn't permit an order requiring 100 yards of distance only that the order may order respondent to "avoid the presence" of the family member. The trial court abused its discretion, and should be reversed on this matter.

## DUE PROCESS WAS VIOLATED BY POSTPONING THE HEARING IN THIS MATTER FOR 90 DAYS

The TPO in this case is dated July 29, 2003 but the hearing wasn't held until October 29, 2003. The statute, DC Code §16-1004 (d) permitted the trial court to issue an ex parte order only if the petitioner was in <u>immediate</u> danger from the respondent which she clearly was not. And the TPO could not last for more than 14 days. This Court in Tyree found that interim relief in a civil case may only be for a brief duration. 90 days was not a brief duration. Further, the hearing in this matter "shall" be conducted prior to the expiration of the 14-day temporary order. By extending this matter for 90 days, the court violated the statute, and abused its discretion.

Rogers was not served with a copy of the Petition on prior to the hearing in this matter. There is a significant doubt on the propriety of these proceedings whereas the TPO is dated before the petition was even issued. Rogers was not made aware of the matter on the date the TPO was issued, and he was not given a copy of the Petition at the time he was notified. The Notice of Service Affidavit is erroneous and therefore false. It claims that Rogers was served with the petition *less than two hours* after it was filed in Superior Court, which is inherently incredible. The court erred in not dismissing this petition on the grounds of improper service and that it had exceeded its statutory window to be entered by the court. Rogers contends that once the 14 day window allowed on the statue expires, the court must either hold a hearing to extend (for no more than an additional 14 days) or it must dismiss the petition as moot at that point. Failure to do either of these was an abuse of discretion and reversible error.

17

## CONCLUSION

*WHEREFORE*, Virgil Rogers contends that this court should review all the erroneous matters of law de novo in this case, and all other issues for abuse of discretion and reversible error. The District of Columbia Court of Appeals has determined that " *An injunction is an extraordinary remedy*" *Cruz-Foster v Foster supra 597 A.2d at 931*. The protective order issued in this case is an extreme case of abusing that extraordinary remedy. It overwhelmingly violates Rogers' rights. The CPO even goes so far as to order Rogers to attend drug and alcohol counseling and mental health treatment with absolutely no basis justifying that this is appropriate. This Honorable Court has determined that "*even under a remedial statute directed at domestic violence, the judge is obliged to apply established equitable principles*". *Tyree supra.* Rogers requests oral argument in this matter. He likewise request the Court resolve this case on an expedited basis. For all of the reasons stated herein and on his <u>Motion for Summary Reversal</u> the judgment entering a 12-month CPO should be reversed.

Respectfully,

*/s/ Virgil Rogers*
**VIRGIL ROGERS**
**11811 Washington Place #106**
**Los Angeles, CA 90066**



## Certificate of Service

I hereby certify that I cause a copy of the foregoing Appellant's brief to be mailed to Karen Johnson Norman at 7707 Quest Lane Bowie Maryland 20720 on March 29, 2002.

19