# EXHIBIT

# H

# DISTRICT OF COLUMBIA
# COURT OF APPEALS

---

Appeals no: *04 FM 196*
*03 FM 1255*

---

## VIRGIL M ROGERS
Appellant

v.

## KAREN JOHNSON NROMAN
Appellee

---

Appeal from DC Superior Court Family Division
IF 2497-03 Leibovitz, J.

---

Brief for Appellant
(*Pro Se*)

VIRGIL M ROGERS
Post Office Box 66352
Los Angeles, CA 90066
(206) 984-6247

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

## TABLE OF CONTENTS

Table of Authorities…                                    2

Statement of the Issues…                                 3


Relief Requested…                                        4

Statement of the Case…                                   4

Statement of the Facts…                                  6

Arguments…                                               7

Conclusions…                                             19

Certificate of Service…                                  20

## TABLE OF AUTHORITIES

Beard V South Main Bank 615 A.2d 203, 205 (DC 1992)                      8

Bethard v District of Columbia, 650 A.2d 651, 654 (DC 1994)             16

Butler v Florida, 715 So. 2d 339 (Fla Dist Ct. App. 1998)              17

Curry v United States 658 A.2d 193, 199 (DC 1995)                       9

*Cruz Foster v Foster 597 A.2d 927, 930-31 (DC 1991)               **10, 13**

Fortune v Evans 58 A.2d 919, 920 (DC 1948)                             9

Glenbrook v DC Board of Zoning Adjustments 605 A.2d 22, 39 (DC 1992)   10

Goldberg v Kelly 397 US 254, 269 (1970)                               10

Hanson v Denkla 357 US 235, 251 (1958)                                12

International Shoe v Washington 326 US 310, 66 (1945)                  14

Jones v Health Resource Corp of America 509 A.2d 1140 (DC 1986)       13

Kammerman v Kammerman 543 A.2d 794, 79 (DC 1988)                      13

Kulko v Superior Court 436 US 84, 100-101 (1978)                      12

Mclaughlin v Fidelity Sec Life Ins. 667 A.2d 105, 107 (DC 1995)       13

People v Ewing. 90 Cal Rptr.2d 177 (Cal Ct App. 1999)                 17

People v Soto. 277 Ill. App. 3d 433. 660 N.E. 2d 990 (Ill. App. Ct. 1995   17

Appellant's Brief (DCCA 04 FM 1903 FM 1255)

Thomas v United States 557 A.2d 1296, 1299 (DC 1989)      16

*Tyree v Evans 728 A.2d 101, 103 (1999)                   9, 10, 19, 21

*United States v Smith, 685 A.2d 380, (DC 1996)           14

VTA, inc. v Airco, inc. 597 F.2d 220, 24 (10 Cir. 1979)   13


DC Code 16-1001 et seq                                    6, 11

Superior Court Rule of Dom Rel. 52 (a)                    9

*DC Code 22-404 (b)                                       14

## STATEMENT OF THE ISSUES

- Whether the court denied Respondent due process by entering a CPO against him without requiring testimony at the hearing?

- Whether the court erred by denying Appellant the opportunity to cross-examine Petitioner at the adversarial hearing?

- Whether the court erred by entering a CPO without subject matter or personal jurisdiction?

- Whether the court improperly infringed on Respondent's First and Second Amendment rights?

- Whether the CPO was facially invalid and void?

- Whether the court erred by entering a CPO without good cause evidence that the Respondent committed an intra-family offense against the Petitioner?

- Whether the court denied Respondent due process by including overly vague and impermissible provisions in the CPO?

- Whether the trial court erred by entering a CPC 90 days after the TPC had been issued in the matter.

Appellant's Brief (DCCA 04 FM 194/03 FM 1255)

## RELIEF REQUESTED

Appellant Virgil M. Rogers respectfully requests this Court reverse the CPO issued in Superior Court case IF 2497-03. Further, he requests the Court declare this CPO void as well as unconstitutional, legally erroneous and factually insufficient.

## STATEMENT OF THE CASE

The Petitioner Ms. Johnson filed a *pro se* petition and affidavit in Superior Court on August 1, 2003 requesting a 12-month civil protection order ("CPO") against the Respondent Mr. Rogers. In her petition she conceded that she resided in Maryland. At the time of the alleged acts Mr. Rogers lived in California, and he was never present in the District of Columbia during the periods alleged in the petition.

The trial court issued a temporary protective order ("TPO") dated July 31, 2003.[1] The hearing in this case was not held by the Family Division until October 29, 2003, which was 89 days after the issuance of the TPO. At the hearing, Petitioner appeared pro se, and Respondent was represented by an attorney.

The same trial judge had presided over a previous trial in the Misdemeanor Branch involving Respondent. That jury trial resulted in Respondent's acquittal of a single stalking charge.

The trial court did not require any sworn testimony whatsoever at the CPO hearing. Consequently, it infringed upon Respondent's right to cross examination. In fact, the trial court did not require the

---

[1] Interestingly, the Petition in this case was not dated until August 1, 2003, which was **after** the date cited on the TPO.

4

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

Petitioner to prove her allegations whatsoever which prevented Rogers from contesting the allegations.

Instead, the trial judge recounted from her own recollection what evidence she believed had been submitted in the prior criminal trial, and disposed of a formal CPO hearing because in her view, that evidence, even though it resulted in acquittal substantiated the issuance of a CPO in this case.[2]  The hearing proceeded largely in this manner. At the conclusion of the hearing, the judge asked Respondent if he had anything "additional" to submit. Since the Petitioner had not submitted any direct testimony and had not moved the court to admit any evidence, Respondent didn't have any evidence in which to base a defense or to rebut. The Respondent didn't present any evidence since the Petitioner had failed to meet her burden through sworn evidence, but he did request the opportunity to personally address the court, which the judge denied.

Thereafter, the judge issued a 12-month CPO. The CPO contained a number of far-reaching provisions which appeared to violate due process and exceeded the trial court's jurisdiction.[3]

Respondent moved the trial court to reconsider and rescind the CPO, which was denied prompting him to file the additional Notice of Appeal. These appeals are now consolidated herein.

---

[2] The transcripts from the criminal trial had not even been ordered at that point, so the judge was relying completely on her recollection. She never referenced any verbatim testimony.

[3] The provisions ordered that Rogers stay **100 yards** away from Johnson, Percy Norman (whom Rogers does not know), Johnson's unidentified home address (in Maryland), Johnson's child, (whom Rogers does not know), Reid Temple AME Church (in Maryland), Johnson's unidentified vehicle, an unidentified school (in Maryland), Johnson's unidentified parents and siblings (whom Rogers does not know). The trial court also ordered Rogers to refrain from

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

## STATEMENT OF THE FACTS

The Petitioner in this case was the beneficiary of gross
constitutional error by the trial court. She bore the burden of proving
that the court was vested with subject matter and personal jurisdiction,
and that she and the Respondent had a qualifying relationship as set
forth in the CPO statute. She failed to prove any of this.[4]

Petitioner's affidavit for a CPO does not allege that she
personally saw or encountered Rogers at anytime in either the District or
in any other jurisdiction and does not allege any physical abuse or
personal contact on the part of Rogers.

Further, since there was no sworn testimony taken during the
hearing, there are no facts in this case. There are only the allegations
raised on the petition and the subsequent issuance of the CPO. The fact
that the same judge happened to preside over an earlier criminal trial
concerning the Respondent, and purportedly had some recollection of the
evidence presented at that trial does not provide a factual basis for the
issuance of a CPO in this jurisdiction. The Respondent was exonerated at
that trial, which in fact nullifies the court's exclusive reliance on
evidence from that criminal trial because the jury of 12 citizens had
rejected the very evidence which the trial judge claimed to be relying
upon.

The CPO statute does not implicate any punitive provisions.

---

contacting all of the above parties and to enroll in and complete a counseling program for alcohol and drug abuse and
undergo a mental health exam and treatment.
[4] Johnson's petition claimed that the parties were related due to a romantic relationship, thus meeting the requirements
in DC Code 16-1001 et seq to seek a CPO in Superior Court. She didn't testify whatsoever in support of this claim

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

The Petitioner in this case did not submit sworn evidence and was not a Washington, DC resident and therefore she didn't meet her burden of proof and the court was not vested with subject matter or personal jurisdiction. This CPO is a void judgment. (emphasis added)

This court had no jurisdiction over these parties or the subject matter, and should have declined to render a judgment. In rendering a judgment without requiring that the Petitioner competently demonstrate how or why this court had jurisdiction and should issue a judgment against Mr. Rogers (at the time a California resident), this court has issued a judgment which by its definition is void.

## ARGUMENT

### I. The court denied Respondent due process by entering a CPO against him without requiring testimony at the hearing

There was no sworn testimony during the proceeding in this matter on October 29, 2003. The trial court didn't require the Petitioner to prove under oath that she had been the victim of an intrafamily offense in the District of Columbia and that Rogers had committed the offense as she had alleged. Consequently, the court deprived Rogers of the opportunity to rebut the allegations or contest the issuance of a CPO against him. It was a complete denial of due process to enter a CPO without requiring evidence under oath. Moreover, the court did not simply fail to require the evidence be submitted under oath, it did not require any evidence to be submitted in any manner during this hearing.

The trial court made no written findings of fact or cognizable conclusions of law in this case. Though not controlling, Superior Court

7

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

Domestic Relations Rule 52 requires that '[I]n all actins tried upon the facts the court shall make written findings of fact, separate conclusions of law and judgment'. However, in this instance, the court made no such findings of fact because it didn't have testimony to base such findings.

"In the absence of exceptional circumstances compelling the trial court to make rulings off the cuff..the judge should make findings of fact and conclusions of law" *Beard v South Main Bank*, 615 A.2d 203, 205 (DC 1992). Review in this case is severely hindered by the trial court's failure to state on the record the reasons for its decisions. *Id* at 205

## II.  **The court erred by denying Respondent the opportunity to cross-examine Petitioner at the CPO hearing**

This Court determined in *Tyree v Evans* 728 A.2d 101, 103 (1999) that it is "significant that none of these accusations has been tested by cross-examination, which is the 'greatest legal engine ever invented for the discovery of truth'". It was reversible constitutional error for the trial court to conduct a hearing which effectively deprived the Respondent cross examination. The effect of the court dispensing with direct examination was that Mr. Rogers had no possibility of cross-examining Johnson on the contested allegations in this case.

Like *Tyree*, in which this Court reversed a CPO because it found that the trial court had erred in precluding cross-examination altogether, Appellant was similarly deprived of the opportunity for cross examination in this case. However, Mr. Rogers' cross examination was not simply limited, it was not provided whatsoever. The court didn't require Johnson to submit to direct examination either (emphasis added). This is plainly improper in a formal adversarial hearing.

8

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

This Court has determined that a complete denial of the opportunity to cross-examine, however, is impermissible, *Fortune v Evans*, 58 A.2d 919, 920 (DC 1948).

"Where a witness cannot be cross examined, the search for truth is severely impaired" *Curry v United States* 658 A.2d 193, 199 (DC 1995). This Court stated in *Tyree* that "we do not believe that a trial court may dispense altogether with cross-examination of the opponent's witnesses by the parties or their counsel". In the instant case, Rogers was precluded in exactly the precise manner which the Court found inappropriate in *Tyree*.

"The right to cross-examine witnesses called by the opposing party is not confined to any particular kind of proceeding". *Supra Tyree*. "An evidentiary hearing or trial in which a defendant is subject to injunctive relief for a year…falls well within the general rule that where questions of fact are disputed, a litigant has the right to cross-examine adverse witnesses. By the same token, such a hearing is outside the scope of the exception for pendente lite proceedings at which live witnesses do not appear and in which there is no occasion for cross-examination" Supra *Tyree*.

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses" *Goldberg v Kelly* 397 U.S. 254, 269 (1970).

"[I]n all adjudicative proceedings, cross-examination and confrontation are the handmaidens of trustworthiness in the face of a

9

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

*factual dispute"* <u>Glenbrook v DC Board of Zoning Adjustment</u> 605 A.2d 22, 39 (DC 1992).

The opportunity for cross-examination must not only be accorded to criminal defendants, but also to civil litigants, *Fortune Supra.*

This Court found in reversing *Tyree* that a "petition for a CPO is, in substance, a suit for a one-year injunction; the injunction may subsequently be extended" citing <u>Cruz-Foster v Foster</u>, 597 A.2d 927, 930-31 (DC 1991). The hearing in this case where cross-examination was prohibited, like in Tyree, constituted the trial on the merits of a civil case in which equitable relief was sought, *Tyree supra.* The court properly recognized in *Tyree* that for Respondents in CPO proceedings the "stakes" are high because it is enforceable through the trial court's contempt powers and a violation of the CPO would therefore subject a respondent to possible imprisonment as well as to a fine.

### III. The court erred by entering a CPO without subject matter or personal jurisdiction

The trial court committed reversible error in this case because it did not establish nor did it have subject matter or personal jurisdiction in this case which allowed it to issue a CPO to Appellant. The CPO was therefore invalid on its face.

DC Code §16-1001 (5) (B) requires that a party seeking a protection order in the Family Division of DC Superior Court *shall* *reside* in the District of Columbia or the underlying intrafamily offense shall have occurred in the District of Columbia. Without such a finding, the court was without jurisdiction or authority to issue a CPO against Rogers.

10

Appellant's Brief (DCCA 04 FM 19603 FM 1255)

Foremost, the court contravened the statute because on its face the CPO failed to adhere to the most fundamental requirement that the court have jurisdiction over the parties and ascertain that petitioner resided in the District or had been the victim of an intrafamily offense within the District.

The Petitioner's affidavit (see CPO Petition) established that she does not reside in this jurisdiction, and was therefore not entitled to seek a CPO here. Johnson's petition lists a Maryland address as her residence. The statute is clear in this case that Johnson was not a resident of the District and was therefore not entitled to seek relief in this jurisdiction upon residency grounds.

Similarly, Johnson was not entitled to relief upon the grounds that an intrafamily offense occurred in the District because Respondent was in California during the periods alleged on her petition. Johnson didn't offer any testimony which contradicted Rogers' whereabouts or that he committed the alleged acts. Her petition conceded that the alleged written contacts were all anonymous (see petition), so there wasn't any evidence that these items were sent to her from Mr. Rogers.

The trial court clearly erred in invoking an extraterritorial application of the statute by issuing a CPO despite the fact that Petitioner was not a resident of the District and had not proven at the CPO hearing that an intrafamily offense occurred in this jurisdiction and that Rogers was the perpetrator.

*Kulko v Superior Ct*., 436 U.S. 84, 100-101 (1978) found that "the Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident [litigants]" Kulko at 140 In the instant

11

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

matter, neither of the parties resided in this jurisdiction, and the parties were never in this jurisdiction at the same time. Moreover, Virgil Rogers was <u>never</u> in this jurisdiction at the time petitioner claims he was committing an intrafamily offense against her. The trial court needs to establish minimum contacts with the jurisdiction in order to exercise power over a foreign citizen, *Hanson V Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed. 2d 1283, 1296 (1958).

### IV.   The CPO was facially invalid and void

The trial court expressly failed to find on page (1) one of the CPO that it in fact had jurisdiction (*see CPO page 1*). Specifically, the court did not check the box on the front of the CPO which deals with jurisdiction. The CPO was expressly invalid on its face because the court specifically refrained from checking the box stating:

THE COURT HEREBY FINDS:

- *That it has jurisdiction over the parties and subject matter, and the Respondent has been provided reasonable notice and opportunity to be heard.  That there is good cause to believe that the Respondent has committed or threatened an intrafamily offense within the meaning of DC Code §16-1001.*

The CPO in this case was a void judgment by definition. "Whether a judgment is void is a question of law and if a judgment is void it must be vacated" *McLaughlin v Fidelity Sec Life Ins*, 667 A.2d 105, 107 (DC 1995).

"For a judgment to be void...it must be determined that the rendering court was powerless to enter it" *VTA, inc. v Airco, inc.* 597 F.2d 220, 24 (10th Cir. 1979).

12

Appellant's Brief (DCCA 04 FM 194/03 FM 1255)

"A judgment entered without the requisite proof is a judgment that is void" <u>Jones v Health Resources Corp of America</u> 509 A.2d 1140 (DC 1986). *The judge entered this CPO without sworn evidence; which renders it void*

"A judgment may be held void only if the court that entered it had no jurisdiction over the parties or the subject matter…or if the court's actions were so arbitrary as to violate due process" <u>Kammerman v Kammerman</u> 543 A.2d 794, 799 (DC 1988). DC Superior Court did not have subject matter jurisdiction in this case, and it did not have personal jurisdiction over either party since they both live outside this jurisdiction. There must be minimal voluntary contact with the jurisdiction in order to be subjected to a judgment, <u>International Shoe v Washington</u>, 326 U.S. 310, 66 S.Ct. 154

This Court found that "an injunction is an extraordinary remedy", *Cruz-Foster, supra, 597 A.2d at 931.*

Even under a remedial statute directed at domestic violence, the judge is obliged to apply established equitable principles. *Tyree, supra at 103.* On its face, the CPO was invalid and arbitrarily unjust, thus void.

**V.   The court erred by entering a CPO without good cause evidence that the Respondent committed an intra-family offense against the Petitioner in this jurisdiction**

Johnson provided insufficient factual evidence, or actually no evidence at the hearing to establish that Rogers had committed an intrafamily offense in this jurisdiction which justified the issuance of a CPO. The trial judge issued the CPO on the basis that Rogers allegedly

13

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

stalked Petitioner. The offense of stalking is codified at DC Code §22-404 (b) (2001)

The alleged contacts in the affidavit clearly do not demonstrate an intrafamily offense as defined in DC Code § 16-1001 (an act punishable as a criminal offense committed by an offender upon a person). This Court's interpretive guidance establishes that the allegations against this Respondent did not constitute stalking.

In *United States v Smith*, 685 A.2d 380, (DC 1996) this Court determined that the criminality of stalking only arises when an accused engages in a particular course of following or harassing repeatedly, purposefully, or knowingly causing another person substantial emotional distress or reasonable apprehension of bodily injury. Without such a mental state, a charge under the statute <u>must</u> fail, *Smith supra 386.*

There must be "continuity of purpose" in that person's actions to fall under this statute *Id 385.* Conduct cannot be said to rise to the level of criminality until it is undertaken willfully, maliciously, and repeatedly and the conduct must be engaged in with the "specific intent to cause emotional distress or place another person in reasonable fear of death or bodily injury", *Id 388.*

*Thomas v United States* 557 A.2d 1296, 1299 (DC 1989) defines malice as (1) the absence of all elements of justification, excuse, or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same

---

[2] "Any person who on more than one occasion engages in conduct with the intent to cause emotional distress to another person or places another person in reasonable fear of death or bodily injury by willfully, maliciously, and repeatedly following or harassing that person, or who, without a legal purpose, willfully, maliciously, and repeatedly follows or harasses another person, is guilty of the crime of stalking"

14

Appellant's Brief (DCCA 04 FM 1960/03 FM 1255)

general nature, or (b) the wanton and willful doing of an act with awareness of a plain and strong likelihood that such harm may result.

Various appellate courts have scrutinized trial courts that easily grant protective orders without ensuring that the respondent's rights are protected and that sufficient grounds exist for such a judgment.[5]

According to this Court's interpretive guidance in Smith, the offense of stalking did not occur in this matter. The trial court's findings were "without evidentiary support or plainly wrong", Bethard v District of Columbia, 650 A.2d 651, 654 (DC 1994) (per curiam).

### VI.    The court denied Respondent due process by including numerous vague and impermissible provisions in the CPO

The CPO in this matter impermissibly included provisions that Rogers stay 100 yards away from several persons who are not identified by name and whom Rogers does not know. This is not authorized by the statute, and was inappropriate and excessive by the trial court. This was without a doubt reversible error, and was unconstitutional.

DC Code §16-1005 (C) authorizes the Family Division upon a finding of good cause that a respondent has committed an intrafamily offense (under the jurisdiction of the trial court) may (1) issue a protection order (2) directing the respondent to refrain from conduct and to keep the peace toward the *family member* and (3) directing where appropriate that the respondent avoid the presence of the *family member* endangered. The statute doesn't authorize that the Family Division may issue a CPO for anyone other than the "family member" (Petitioner) who has sought the

15

Appellant's Brief (DCCA 04 FM 196/03 FM 1255)

relief in the matter. In this case, that would only entail Johnson and not any other person.

The instant CPO impermissibly requires Rogers stay 100 yards away from "petitioner's parent's or siblings" and "Petitioner's child" which doesn't even identify these persons by name or demonstrate why these parties require protection from Rogers. Rogers doesn't even know any of these people. There can be no greater prejudice to a citizen and a violation of his constitutional liberties than an overreaching and vague order, as in this case, where the trial court orders him to stay away from complete strangers for no good reason. There can be little debate that this was manifest error by the trial judge.

The CPO further orders Rogers to stay 100 yards away from Petitioner's child's daycare without even identifying the child or the location of the daycare, or justifying why the court was ordering this provision.

The trial court ordered Rogers to stay 100 yards away from Reid Temple AME church which is a public place of worship in the jurisdiction of Maryland. The Family Division of Superior Court is not authorized to order respondent's to stay 100 yards away from a church in another jurisdiction without infringing upon Rogers' First Amendment right to Freedom of Religion and exceeding the Court's authority.

The Court erred in ordering that Rogers involuntarily undergo drug and alcohol counseling and undergo a mental health exam and treatment without any articulable basis for ordering such an invasive provision. There was no evidence offered during the hearing in this matter that

---

[6] People v Ewing, 90 Cal Rptr.2d 177 (Cal Ct App. 1999); Butler v Florida, 715 So. 2d 339 (Fla Dist Ct. App. 1998); People v Soto, 277 Ill. App. 3d 433, 660 N.E. 2d 990 (Ill. App. Ct. 1995); Kansas v Bryan, 259 Kan 143, 910 P.2d 212

Rogers had committed any acts against the Petitioner due to drugs or alcohol.

The trial court essentially deprived the Respondent his Second Amendment rights to bear arms, even though he isn't a convicted felon and he is not a citizen of the District of Columbia subject to its laws.[7] By usurping the jurisdictional boundaries to issue this CPO, the trial court denied Mr. Rogers a constitutionally protected right which he would otherwise be perfectly legal for him to exercise in all fifty US States and US territories except that of this jurisdiction in which he does not live or frequent.

In any event, the statute under the DC Code did not authorize the Family Division to include such provisions on a CPO. This Court found in *Tyree* that the "stakes are high" when a CPO is issued which encompasses a single petitioner, however when the Family Division allows other people unknown to the Respondent under the purview of the CPO, the stakes against the Respondent are insurmountably high, and the risk are multiplied several times. This is inappropriate.

**VII.    The trial court erred by entering a CPO 90 days after the TPO had been issued in the matter.**

The Petition in this matter was submitted to the court on August 1, 2003 but the CPO in this matter was not issued until October 29, 2003. In *Tyree v Evans* 728 A.2d 101, 103 (1999) this Court found that "a court may likewise grant interim relief in a civil case, without hearing live testimony or providing an opportunity for cross-examination, so long as the resulting order is of limited duration". Rogers contends that 89

_____

(Kan 1996); <u>Louisiana v Young</u> 712 So. 2d 273 (La. Ct. App 1990)

Appellant's Brief (DCCA 04 FM 194/03 FM 1255)

days was not of a limited duration to postpone this matter before hearing the case. In fact DC Code §16-1004 (D) states that upon a finding by the Family Division that the safety of a family member is immediately endangered by the respondent, it may ex-parte issue a temporary protection order of not more than 14 days duration.

Respondent was in jail at the time this petition was presented, and so clearly Petitioner was not in immediate danger. The court abused its discretion in issuing a TPO under these conditions.

Further, the statute requires that the CPO "hearing be commenced on the petition for civil protection prior to the expiration of the temporary protection order". Clearly, the TPO could not be extended for 89 days, and it apparently was in this case in violation of the statute which limits its duration to "not more than 14 days".

The CPO hearing shall have been commenced prior to the expiration of the TPO according to the statute. In extending this matter for 89 days, the court exceeded its statutory authority and infringed upon this Court's directive in Tyree that interim injunctive relief in a civil matter be of a limited duration.

DC Code 16-1004 (C) required the complainant to (1) cause a subpoena to issue directing the respondent to appear at the hearing and (2) cause notice of the hearing and a copy of the petition to be served upon the respondent. Johnson failed to adhere to this requirement.

Appellant was notified of the hearing, however he was not provided with (1) a copy of the petition prior to presenting for the hearing on October 29, 2003 and (2) he was not given a subpoena directing his presence. This failure by Johnson violated the statute.

---

[7] 18 USC §922(g) (8) possession of a firearm prohibited

Appellant's Brief (DCCA 04 FM 19003 FM 1255)

### VII. The court improperly infringed on Respondent's First and Second Amendment rights

In this CPO, the judge ordered Mr. Rogers to stay 100 yards (the length of a football field) away from Reid Temple AME Church in Maryland. The judge is barred from the 1st Amendment from restricting any citizen from practicing his religious faith as he chooses. The judge does not have the authority to render a judgment in Maryland because it's out of her jurisdiction, and this is not a lawful or a constitutional provision of the CPO.

Even if the judge were legally empowered to prevent Mr. Rogers from going within 100 yards of any church, the judge's authority ends once the District of Columbia boundaries end, and so Reid Temple is out of her jurisdiction and clearly is beyond her responsibility as a judge. However, Respondent contends that the judge doesn't have the authority to deprive a private citizen the right to attend, much less approach any church he chooses to attend.

### CONCLUSION

The CPO issued in this matter did not comport in any way with the statutory requirements. The court issued this CPO without requiring any sworn testimony at the hearing and without providing Rogers the opportunity to contest the allegations. Rogers was denied the opportunity to cross-examine Johnson which was completely inappropriate according to this Court's case law in *Tyree*. Rogers had not committed any intrafamily offense in the District of Columbia, as required by the statute. The Court was without jurisdiction over these parties or the subject matter.

Appellant's Brief (DCCA 04 FM 1962/03 FM 1255)

And the court issued this CPO 89 days after issuing a TPO which violated the statute's requirement that the hearing be conducted within 14 days.

The court unallowably included several other persons and places on this CPO which had nothing whatsoever to do with the alleged interfamily offense in this matter. This was not authorized by the statute. Lastly, Rogers was not properly served with this petition. Collectively, these occurrences deprived Rogers of Due Process and Equal Protection Under the Law and conflicted with the DC Court of Appeals interpretive guidance.

**WHEREFORE**, for the foregoing reasons, Virgil Rogers hereby asks this court to reverse the judgment of Superior Court in this case and reverse the CPO in case IF-2497-03.

*Respectfully Submitted,*

VIRGIL W. ROGERS, pro se
PO Box 66352
Los Angeles, CA 90066
(206) 984-6247

### CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Brief to be mailed first class to Shonette Walker at 1299 Pennsylvania Ave, NW Washington, DC 20004 on or before August 30, 2004

20