**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VIRGIL M. ROGERS, )
)
                Plaintiff, )
  v. )
) Civil Action No. 06-1186 (ESH)
KAREN JOHNSON-NORMAN, )
)
)
                Defendants, )
_____ )

## AMENDED COMPLAINT

**(Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Abuse of Process, Violation of FCRA, False Reporting)**

## PRELIMINARY STATEMENT

1. Plaintiff Virgil M. Rogers ("Rogers") originally filed this civil action against numerous defendants, including Karen Johnson-Norman ("Johnson") on/about June 13, 2005 in the federal court for the Eastern District of California (Sacramento). Included in the original suit were numerous defendants that are or were employed by the United States Department of Justice ("DOJ") as U.S. Attorneys ("USAO"). He also sued the District of Columbia ("D.C.") government and numerous employees of that municipality in their individual and official capacities. Subsequently, the District of Columbia entered into a settlement agreement with Rogers on behalf of itself and the defendants employed by the municipality. Though the District of Columbia didn't expressly admit wrongdoing, wrongdoing by these defendant's as alleged can be strongly inferred since D.C. Code §2-402 only permits the municipality to settle civil suits upon the wrongful or negligent acts of its employees or officers. Regarding the DOJ defendants, the District Court permitted each one to assert immunity for their official acts that wrongfully resulted in the harm to Rogers. The District Court in California specifically didn't

1  grant defendant Johnson's request for a dismissal but did allow her an opportunity to transfer
2  this civil action to the District Court in Washington, D.C. once the other defendants had been
3  removed or settled the claims concerning their wrongful conduct. Of all the defendants denied
4  immunity, only Johnson's wrongdoing remains unresolved though her actions were
5  inextricably intertwined with those of the D.C. defendants that have settled with Rogers.

6  2. This Amended Complaint results from the transfer of the civil action from California
7  due to the fact that defendant Johnson is the only remaining original defendant.  She has filed a
8  Motion to Dismiss with this Court but has not yet answered the Complaint, thus giving rise to
9  Plaintiff's effort to seek leave of Court to amend his complaint for brevity and efficiency.

10  3. Since at least 2002 defendant Johnson has reported numerous alleged sightings of
11  Rogers to police, security officers, the Federal Bureau of Investigations ("FBI"), CSOSA, and
12  the court system when in fact Rogers was thousands of miles from where Johnson claimed him
13  to be. Her fabrications on each occasion were engineered to lead law enforcement to
14  investigate and prosecute Rogers and then to incarcerate him for whatever fabricated conduct
15  that Johnson had alleged. In concert with various actors and on her own behalf, Johnson
16  intensified these efforts in January 2003 when she reported seeing Mr. Rogers near a church in
17  Maryland and also when she reported to MPD) detective Durant that Rogers was physically
18  present in the Carl Moultrie Courthouse in the District of Columbia. She then claimed that he
19  was responsible for the delivery of an envelope full of anonymous missives to her workplace.
20  On each occasion, Rogers was indisputably in California during the alleged sighting so no
21  other person could corroborate any of what Johnson had alleged.

22  4. The Court has jurisdiction over this action pursuant 28 U.S.C § 1367 as well there is
23  true diversity of citizenship and the controversy exceeds $75,000 USD.

24  5. Venue is proper pursuant to 28 U.S.C. § 1391 and § 1332 because a substantial part of
25  the events giving rise to the Plaintiff's claims occurred in this judicial district.

## **PARTIES**

27  6. Plaintiff Rogers is a natural person and a resident of California. Until June 2001, he was
28  an active-duty commissioned officer in the United States Air Force ("USAF"). On/about

March 13, 2001 a judgment of guilt was entered in the Superior Court of the District of Columbia against Rogers on a misdemeanor charge of attempted stalking that was initiated by Johnson. Until that time, Rogers had never been convicted of any criminal offense and has since that time likewise not been convicted of any criminal offenses.

7. Defendant Johnson is a natural person who, by information and belief resides in Maryland. While purportedly married to another individual Johnson had a casual sexual relationship with Rogers from about 1998-2000 and once Rogers sought to end the relationship in 2000 Johnson commenced to filing a multitude of criminal and civil actions against Rogers in various jurisdictions, including efforts to file charges under the federal jurisdiction of the Uniform Code of Military Justice ("UCMJ") for adultery to which she was an enthusiastic participant. Johnson also expressly requested that Rogers assist her in murdering her husband so that she could collect on his life insurance policy and be free from her unhappy marriage, and so that she continue to have sex with Rogers. Rogers refused to assist in this scheme and ended his relationship with Johnson and the course of conduct as alleged below commenced.

## **FACTS**

8. Mr. Rogers and Ms. Johnson had a casual sexual-relationship from about 1998-2000 while Johnson was purportedly married to another individual. Rogers was an Air Force officer at the time and is approximately 6 years younger than Johnson. Rogers attempted to end his relationship with Johnson in 2000 but Johnson threatened retaliation including that she would "ruin" Rogers' life. She embarked on a campaign of legal harassment against Rogers by misusing numerous court systems to charge him with crimes of a mostly domestic-violence nature. On each instance she claimed to be in fear for her life though she has admitted under oath that Rogers has never threatened her and/or struck her.

9. Johnson abused the Maryland District Court in Prince George's County in 2000 by habitually initiating frivolous criminal and civil actions against Rogers. She also petitioned the court several times to hold Rogers in civil or criminal contempt by falsely claiming he violated a peace order. Johnson's frequent accusations in Maryland led to the court holding numerous unnecessary hearings and expending vast resources. In response to one particularly egregious

criminal allegation made by Johnson in Maryland in 2000, Plaintiff Rogers was arrested and held without bail for 100 days. This all occurred while he was still an active duty captain in the Air Force. Of at least 5 criminal charges made by Johnson against Rogers in Maryland, each resulted in either his acquittal or a summary dismissal by the court for lack of merit.

10. In furtherance of her malicious efforts, Johnson unlawfully sought, obtained, and used contact information for members of Rogers' family (including their addresses) to threaten them, harassed his friends by subpoenaing their private phone records, and tracked down contact information for former girlfriends of Rogers. In one case Johnson covertly obtained the name and contact information and made unsolicited contact with Rogers' former girlfriend and offered her money to support Johnson's efforts to prosecute or harm Mr. Rogers in court.

11. Johnson maliciously informed the office of the Secretary of the Air Force of her affair with Rogers and of her false allegations of stalking. She demanded that the Air Force initiate a court martial against Rogers and dishonorably discharge him after imprisoning him for aadultery. When the Air Force moved too slowly against Rogers, she contacted U.S. Representative Steny Hoyer and convinced him to write a coercive communication to the Air Force essentially urging the punitive actions requested by Johnson. Following Johnson's unceasing and harassing efforts, including her civilian charges and her scores of harassing calls to the Air Force leadership, the Air Force administratively discharged Rogers, thus ending his military career solely because of Johnson.

12. Plaintiff is informed and believes that in 2000, Johnson enlisted the aid of Durant, a detective with the MPD. Johnson, with the help of Durant brought false criminal stalking charges against Rogers in the District. Prior to trial, the stalking charges were reduced to attempted stalking, which, as a misdemeanor, defeated Rogers' right to a jury trial. During the subsequent bench trial, Rogers was found guilty of attempted stalking and put on probation.

13. During the criminal trial in Superior Court, Johnson made numerous peculiar comments on the record such as indicating her predilection to contact President George W. Bush to further her allegations against Plaintiff Rogers in the criminal courts and in the Air Force. This

was in addition to her prior contacts with a U.S. Congressman and high ranking members of the Department of Defense all in furtherance of inflicting harm upon her former sexual partner.

14. In the ensuing months, Johnson made several false claims that Rogers had contacted her in violation of his probation. Plaintiff is informed and believes that most if not each time Johnson specifically called Durant about the allegations as well as the FBI, USAO, and Court Services and Offenders Supervision Agency ("CSOSA").

15. Rogers, fearing that one of Johnson's false accusations would cause Superior Court to imprison him for violating probation, eventually moved from the local area without written permission from CSOSA after enduring Johnson's harassment for almost a year.

16. Rogers moved first to Georgia, then to California, where he lived with a Sacramento Police officer from mid 2002. Rogers has never been convicted of any other crime in any jurisdiction and particularly had no negative contact with law enforcement in California.

17. In December 2001, Rogers filed a civil suit against Johnson in United Stated District Court in Eastern Virginia because of the numerous false allegations by Johnson in Maryland and with the US Air Force which had caused him damage up to that period of time. The suit was mutually dismissed in January 2003, immediately prior to new false allegations made by Johnson against Rogers later in that same month.

18. During the pendency of the aforementioned civil suit in February 2002 while Rogers was living and present in Georgia; Johnson reported to law enforcement (Durant, the FBI, USAO, CSOSA) that Rogers had physically come to the Washington Hospital Center ("WHC") while she was a patient and she strongly alleged that he was allegedly there perpetrating some crime. Johnson, through counsel reported this false allegation to District Judge Gerald Bruce Lee during a telephone hearing on the matter and attempted to have the District Court punish Rogers upon this false allegation. Johnson's efforts failed as sworn statements from Rogers and others provided to Judge Lee proved unquestionably that he was in Georgia when Johnson untruthfully claimed he was in the WHC stalking her.

19. Rogers has never been to the WHC location that Johnson claimed to have encountered him and he was at a church function in Georgia during the entire period in question. Moreover, he hadn't been to the District of Columbia for months when the 2002 accusation was made.

20. Unbeknownst to Rogers, Johnson continued to falsely accuse Rogers of stalking her during the remainder of 2002. Despite the fact that Rogers was living and working in Sacramento, California at the time, and had never returned to the Washington D.C. area since departing, Johnson continued to falsely claim that Rogers had appeared in the D.C. area on several occasions.

21. In January 2003, Johnson falsely reported to Durant that she saw Rogers at a church in Maryland and she provided Durant with a license plate number which was completely unrelated to Plaintiff Rogers. At the time of this false claim, Rogers was in California.

22. On or about January 28, 2003, Johnson claimed that she had received a manila envelope delivered to her at her workplace by Rogers which contained missives and photographs which she found harassing. At the time of the alleged delivery in Washington, Rogers was in Sacramento, California and was totally unaware of the allegations being made against him.

23. Durant retrieved the envelope from Johnson and had the envelope and its contents tested for fingerprints. Tests allegedly found Rogers' fingerprints on a picture that Johnson had claimed was inside the envelope, but not on the envelope itself. The items purportedly containing Rogers' fingerprint had belonged to Rogers and had apparently been obtained by Johnson during the period of the relationship. Rogers was never allowed to independently test the contents of this alleged envelope fro forensic information which conflicted with Durant's.

24. Despite knowing that no fingerprints had been found on the envelope itself, and despite knowing that Rogers had been previously convicted only of misdemeanor attempted stalking Durant swore out an felony arrest affidavit which falsely stated that Rogers' fingerprints had been found *on the manila envelope itself*, which Johnson claimed came from Rogers, and stating that Rogers had previously been convicted of stalking, *not attempted stalking*.

25. The effect of Durant's dishonesty was the issuance of an illegal <u>felony</u> arrest warrant for Rogers' arrest instead of the misdemeanor stalking arrest warrant which was lawful. Felony warrants, but not misdemeanor warrants are executable outside District of Columbia.

26. On or about June 16, 2003, Rogers was seized in Sacramento County by two U.S. Marshals based upon the illegal felony warrant obtained by Durant in response to the false allegations submitted by defendant Johnson.

27. Rogers was unlawfully detained without a preliminary hearing in Sacramento for a month and he never waived his right to a preliminary hearing nor did he ever give his consent to extend the time limit. No charges were filed against him in any state or district prior to July 22, 2003 when misdemeanor charges were again filed against Rogers in D.C. for stalking.

28. Rogers was extradited to the District of Columbia without a preliminary hearing after being held in jail in California for almost a month. In sum, he was in jail from on or about June 16, 2003 to November 7, 2003 when he was finally released from D.C. Jail.

29. Rogers stood trial on misdemeanor stalking charges.

30. During pre-trial hearings in the District of Columbia, Superior Court openly acknowledged that the March 21, 2003 and June 10, 2003 warrants for Rogers' arrest were invalid and could not have been legally executed outside of the District of Columbia.

31. On October 28, 2003, a jury acquitted Rogers of the stalking charge.

32. On October 29, 2003, D.C. Superior Court held a hearing on a civil protection order ("CPO") petition filed by Johnson on July 31, 2003 with the Family Division. Without mentioning that she had not seen Rogers in nearly 2 years, her petition indicated that she feared for her life due to alleged harassment she had endured by Rogers. She sought restrictive conditions on the CPO, including a requirement that Rogers be forced to attend counseling and pay a significant amount of restitution to her for allegedly harassing her.

33. Without taking any sworn testimony at the hearing and even though it was beyond the period of time allowed with respect to subject matter jurisdiction, Superior Court issued a twelve month CPO against Rogers requiring that he stay 100 yards away from a church in

Maryland, and a myriad of unspecified individuals besides Johnson. It also required him to attend some form of unspecified counseling as directed and funded by CSOSA.

34. After being released from D.C. Jail on or about November 7, 2003 Rogers reported to CSOSA as directed on the CPO and provided a urine sample. He informed CSOSA that he was returning to California and that any counseling would need to occur in California at CSOSA expense. CSOSA informed him they had no means to facilitate counseling in California and said they would be in touch whenever CSOSA resolved this issue.

35. CSOSA never contacted Rogers with any information about the required counseling and when Rogers inquired he was told repeatedly that CSOSA had no means or desire to address this CPO provision in California, nor would it provide for reasonable travel costs for Rogers to come to the District of Columbia.

36. On or about April 2004 Johnson used her position at Wells Fargo Real Estate Group to either initiate or caused to be initiated a credit inquiry about Rogers' personal information.

37. On or about September 2004, Johnson, by and through the same law firm representing her on the instant civil action used duplicitous means to locate the owner of an apartment occupied by a close relative of Rogers' in Los Angeles. Johnson contacted the owner seeking specific information about Rogers' whereabouts and disclosed to the owner humiliating information about Rogers' arrest in Washington, DC including an implication that Rogers was a fugitive from justice that was possibly being harbored on that owner's property.

38. On or about October 2004, Johnson petitioned the Family Division of Superior Court of D.C. to extend the CPO it issued against Rogers for an additional 12 months even though she had not seen or heard from Rogers in the preceding 12 months. Johnson had not properly served Rogers with any notice of the hearing on the CPO extension.

39. At the hearing, Johnson told the Superior Court the basis for her request for an extension of the CPO was because Rogers had failed to attend the counseling as indicated on the original CPO notwithstanding CSOSA unwillingness to pay for counseling elsewhere.

40. Johnson also made statements to the Superior Court implying that Rogers had either called her and/or come to her residence on some unspecified dates which therefore compelled the court to extend the CPO in order to protect her from these false contacts by Rogers.

41. Johnson's attorney also claimed that she had served Rogers with the Notice of Hearing and had called Rogers to discuss the matter even though she didn't have a phone number to call him. For this reason, Johnson urged the court to issue a bench warrant for Rogers' arrest.

42. Rogers filed the instant civil suit on or about June 13, 2005. It originally contained numerous defendants. The defendants associated with the USAO were granted immunity. The District of Columbia, Durant, and Chief Charles Ramsey were not granted immunity and eventually settled the claims against them with Rogers.

43. Johnson was allowed to transfer the case to the District of Columbia where she promptly filed an additional Motion to Dismiss since her prior motion had failed to be granted in Sacramento.

## CAUSE OF ACTION (I)

WILLFUL NONCOMPLIANCE WITH FAIR CREDIT REPORTING ACT ("FCRA")

44. Plaintiff realleges paragraphs 1 through 43.

45. At all times relevant herein, the conduct of Defendant was subject to 15 U.S.C. § 1681 et seq. due to her employment by Wells Fargo Company ("Wells Fargo") or any affiliate, a financial institution subject to the FCRA and federal banking laws.

46. On or about April 2004 Johnson, under false pretenses, knowingly, and without a permissible purpose obtained or caused to be obtained a consumer report containing private information about Rogers from or through a credit reporting agency.

47. Plaintiff is informed and believes, and thereon alleges, that Johnson utilized interstate commerce and communications with a network of various colleagues at Wells Fargo to obtain access to information from Plaintiff's credit report and to hide her wrongful actions by couching them as legitimate Wells Fargo financial inquiries.

48. As a direct and proximate cause of the aforementioned acts of Defendant,

Rogers suffered damage resulting from her invasion into his private credit file as well as other credit header information (e.g. address, social security number, credit score).

49. By reason of the aforementioned acts and omissions of defendant, Rogers incurred special and general damages in an amount to be provided at trial.

50. By reason of the aforementioned acts of defendant, Rogers was required to file the instant civil action, and Rogers requests payment by defendant of a reasonable sum as and for legal fees pursuant to 15 U.S.C. §1681 (n)

51. The aforementioned acts of the defendant were willful, wanton, malicious and oppressive and thereby justify the awarding of punitive damages.

## CAUSE OF ACTION (II)

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiff realleges paragraphs 1 to 51.

53. Defendant's actions in falsely alleging criminal wrongdoing by Rogers was a negligent tort which shocked the conscience of a civilized society and the rule of law.

54. On or about January 2003, Johnson negligently made a false police report which claimed that Rogers had stalked her or committed some other criminal offense.

55. On one or more occasions in 2002 or beyond Johnson contacted one or more employees of the United States Department of Justice ("DOJ") and/or one or more agents of the Federal Bureau of Investigations ("FBI") alleging that she sighted Rogers stalking her and/or other criminal conduct by Rogers upon which she intended such agents to investigate and subsequently arrest Rogers.

56. On or about January 28, 2003, Johnson accused Rogers of personally delivering an envelope filled with missives and pictures enclosed to her workplace.

57. On various occasions in 2002 and beyond Johnson contacted Durant of the MPD alleging that she had sighted Rogers in various locations in the Washington D.C. metro area and/or that he had stalked and harassed her with the intention that Detective Durant arrest

Rogers wherever he may be found, charged with a crime and incarcerated upon her allegations.

58. On or about June 16, 2003 Rogers was arrested in California based solely upon allegations made by Johnson and he was subsequently incarcerated until on or about November 7, 2003 for a myriad of conduct alleged by Johnson.

59. Once arrested in Sacramento, Rogers was incarcerated in Sacramento County Jail and subsequently transported involuntarily by the U.S. Marshal's Service to the Oklahoma City Federal Transit Center (Bureau of Prisons), and finally the District of Columbia Central Detention Facility ("CDF") respectfully.

60. Rogers was arrested solely upon the allegations made by Johnson and incarcerated with dangerous pretrial detainees and violent convicted felons in California, Oklahoma, and the District of Columbia.

61. This period of incarceration constituted a zone of physical danger threatening Rogers' personal safety and physical and mental well being. His presence in this zone of danger was contemporaneous with his real and articulable fear for his safety.

62. Johnson's negligence in falsely alleging sightings and/or criminal conduct by Rogers to the FBI and Detective Durant to bring about his arrest was a proximate cause of his fear and emotional distress.

63. Rogers suffered serious and verifiable distress as a result of the false criminal allegations made against him by Johnson and the resulting incarceration with state and federal inmates while awaiting disposition of the lone misdemeanor charge.

64. Defendant Johnson negligently made false or perjured statements to the police, the USAO, and or the Superior Court, thereby causing Rogers grave injury.

65. Defendants' negligent actions resulted in the arrest, imprisonment, and trial of Rogers causing Rogers emotional distress.

66. Defendant knew or should have known that her failure to act with reasonable care in reporting alleged criminal wrongdoing by Rogers would result in or cause Rogers emotional distress.

67. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered physical, psychological injuries, and emotional distress. Defendants' acts were intentional and done with malicious and oppressive intent. Plaintiff is entitled to general, special and compensatory damages in amounts to be proven at trial.

## CAUSE OF ACTION (III)

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff realleges paragraphs 1 through 67 above.

69. On or about January 2003, Johnson initiated a criminal report to the MPD which falsely claimed that Rogers had stalked her.

70. On or about June 16, 2003 Rogers was seized in Sacramento, California ostensibly upon a D.C. arrest warrant for false allegations made by Johnson which didn't establish probable cause and didn't legally authorize his seizure in California.

71. On or about July 14, 2003 Rogers was illegally removed from California in the custody of the USMS ostensibly upon a D.C. arrest warrant and subsequently was involuntarily housed at the Oklahoma City FTC and D.C. Jail with dangerous felons and pretrial detainees until November 2003. Rogers was fearful for his safety upon this exposure to unsavory criminals in the federal prison system and was distressed due to his illegal separation from his family.

72. On or about July 22, 2003, officers employed by the District of Columbia removed Rogers from jail and transported him to an interrogation room with Durant where Rogers was verbally harassed and threatened with physical violence. These individuals, particularly Durant waved loaded guns in Rogers' face and attempted to have him murdered in jail at the direction of or in complicity with defendant Johnson.

73. Plaintiff is informed and believes that Johnson's conduct in fabricating criminal allegations was extreme, and outrageous and done for the purposes of causing Rogers to be illegally arrested and detained and to "ruin" his life and cause him distress.

74. Plaintiff is informed and believes that Johnson's conduct was intentional and reckless and done for the purposes of causing Rogers to suffer humiliation, mental anguish, and emotional and physical distress.

75. As a direct and proximate cause of Johnson's conduct, Plaintiff has suffered psychological injuries and emotional distress. Defendant's acts were done with malicious and oppressive intent. Plaintiff is entitled to general, special and compensatory damages in amounts to be proven at trial.

76. The aforementioned acts of Johnson were willful, wanton, malicious and oppressive, thereby justifying the awarding of punitive damages.

## CAUSE OF ACTION (IV)

### ABUSE OF PROCESS

77. Plaintiff realleges paragraphs 1 through 76.

78. On or about July 31, 2003 after Rogers had been involuntarily brought to the District of Columbia upon Johnson's false criminal allegations she petitioned Superior Court Family Division for a civil protection order ("CPO") against Rogers even though he was in jail.

79. Prior to being involuntarily brought to D.C. in July 2003, Rogers had not been in the jurisdiction at anytime relevant to the CPO petition or anytime whatever after January 2002.

80. Johnson sought the CPO against Rogers even though she had not had any personal contact with Rogers since July 2000, or approximately 3 years earlier.

81. By seeking the July 31, 2003 CPO petition Johnson used the civil injunction process to accomplish ends outside the regular purview of the process and to compel Rogers' compliance with numerous collateral provisions which he would not have otherwise been compelled to obey since he had not violated any statute permitting a lawful CPO to issue.

82. Defendant Johnson sought to pervert the judicial process and infringe on Plaintiff's First Amendment Religious Freedom when she sought to have Superior Court compel him to stay away from Reid Temple AME Church in Maryland in violation to the Constitution.

83. Defendant Johnson sought to pervert the judicial process when she requested Superior Court to compel Plaintiff Rogers to submit to an involuntary psychiatric evaluation and mental health treatment despite having had no personal contact with Plaintiff Rogers in over 3 years.

84. Defendant Johnson sought to pervert the judicial process when she requested Superior Court to compel Plaintiff Rogers to undergo involuntary drug and alcohol treatment despite having had no personal interaction with Rogers in 3 years and providing no evidence of drug or alcohol abuse at anytime by Plaintiff.

85. Defendant Johnson sought to pervert the judicial process when she requested Superior Court to compel Rogers to stay away from numerous persons that are not subject to protection under a CPO and which were not specifically named in the petition such as "petitioner's child", "petitioner's parents", "petitioner's siblings", and/or "Percy Norman".

86. Defendant Johnson sought to pervert the judicial process when she requested Superior Court to compel Rogers to stay away from the Veterans Administration Hospital in Washington, D.C. for unknown reasons despite her knowledge that Rogers was and is a veteran of the U.S. Air Force entitled to care at that and any other VA Hospital.

87. In response to the July 31, 2003 petition for a CPO by Defendant Johnson, Superior Court issued a one year CPO against Plaintiff Rogers on or about October 29, 2003 that was outside the purview of the regular CPO process because it was issued without subject matter jurisdiction which had lapsed on/about August 28, 2003.

88. In response to the July 31, 2003 petition for a CPO by Defendant Johnson, Superior Court issued a one year CPO against Plaintiff Rogers on or about October 29, 2003 that was outside of the regular purview of the CPO process and/or perverted the justice system because it 1) ordered him to stay 100 yards away from Reid Temple AME Church in Maryland which violated his First Amendment Religious Freedom and is also outside of the Superior Court jurisdiction; 2) ordered him to stay 100 yards away from Johnson's parents, siblings, and child without specifying them by name or providing a precise location subject to the injunction; and 3) ordered him to involuntarily enroll in and complete a treatment program for drugs and alcohol without any allegation or evidence that he abused any substance.

89. In response to the July 31, 2003 petition for a CPO by Defendant Johnson, Superior Court issued a one year CPO against Plaintiff Rogers on or about October 29, 2003 that was outside the purview of the regular CPO process because it was issued without requiring Defendant Johnson to meet the required burden of proof because Superior Court did not require any sworn testimony prior to issuing the CPO and thus denied Mr. Rogers a full and complete opportunity to contest the issuance of the injunction against him at the hearing.

## CAUSE OF ACTION (V)
### ABUSE OF PROCESS

90. Plaintiff realleges paragraphs 1 through 89.

91. On or about October 20, 2004 Defendant Johnson petitioned Superior Court to extend by one year the CPO it had issued in 2003 against Rogers.

92. Johnson sought to pervert the justice system and utilize the civil protection statute in a manner that was outside of the regular purview of Superior Court because she sought a civil injunction to restrict the actions and movement of Rogers and expose him to the risk of contempt though she had not had any contact with him in the prior year or in the prior 4 years.

93. Plaintiff Rogers is informed and believes that Defendant Johnson sought to pervert the judicial process when she requested Superior Court to extend the CPO against Plaintiff Rogers solely on the basis that he had allegedly failed to complete a drug and alcohol treatment program though she never proved a need for such counseling and CSOSA didn't fund it.

94. In response to the October 2004 petition for an extended CPO by Defendant Johnson, Superior Court issued an additional one year CPO against Plaintiff Rogers on or about October 29, 2004 that was outside the purview of the regular CPO process because it was issued on the basis of perjured statements made at the hearing by Defendant Johnson implying that she had been contacted by Plaintiff Rogers and because Plaintiff Rogers had allegedly failed to complete a treatment program.

15
FIRST AMENDED COMPLAINT FOR DAMAGES

95. Plaintiff Rogers did not attend the hearing in Superior Court for the CPO extension because Defendant Johnson didn't notify him of the hearing until after it had been completed but nevertheless represented to the Superior Court judge that Mr. Rogers had been notified in accordance with the Superior Court Rules of Civil Procedure.

96. Plaintiff Rogers is informed and believes that Superior Court issued a bench warrant due to his failure to attend the hearing on or about October 29, 2004 even though he had never been notified or served with a notice of hearing by Defendant Johnson and because he was in California. The issuance of the bench warrant perverted the justice system and placed Plaintiff Rogers at unreasonable risk of another illegal arrest.

## CAUSE OF ACTION (VI)

FALSE REPORTING OF A CRIME (D.C. Code §5-117.05)

97. Rogers realleges paragraphs 1 through 96 above.

98. Johnson's actions wrongfully deprived Plaintiff of his liberty in violation of District of Columbia law in particular D.C. Code §5-117.05 and other laws prohibiting false reports to police and federal agents that a crime has been committed.

99. Plaintiff is informed and believes that in January 2003 and on numerous instances in 2002 Johnson made a false police report to either Durant or to the FBI which claimed that Rogers had either stalked her or committed some criminal act.

100. As a result of one or more of these false allegations, Rogers was detained, arrested or held against his will.

101. As a direct and proximate cause of Johnson's conduct, Plaintiff has suffered damages in an amount to be proven at time of trial.

## CAUSE OF ACTION (VII)

PERJURY

102. Rogers realleges paragraphs 1 through 101 above.

103. About July 2002 Johnson made false statements to U.S. District Judge Gerald Bruce Lee of Eastern Virginia in Alexandria alleging that Rogers had been to WHC in order to harass or harm her even though Rogers was in Georgia at the time and has never been to WHC.

104. Johnson presented a false petition for a CPO to Superior Court on or about July 31, 2003 though the petition for a CPO was submitted under penalty of perjury. The petition alleged a myriad of criminal behaviors by Plaintiff Rogers that were each false in their own right and maliciously set forth knowing them to be false.

105. Plaintiff Rogers alleges that from on or about October 20, 2003 to October 29, 2003 defendant Johnson offered repeated perjured testimony in a D.C. Superior Court criminal trial against Rogers on material issues. This perjury was designed to bring about an unjust criminal conviction and to distort and misuse the criminal process for Johnson's personal vengeance.

106. As a result of this perjury Rogers faced the realistic possibility of a conviction for the crime of stalking and imprisonment.

107. On October 28, 2003, Plaintiff was acquitted of the charge of stalking by a jury. Moreover, Plaintiff has never been convicted or found to have violated any stalking statute in any criminal court.

108. On October 2004 Johnson gave perjured statements before Superior Court during her efforts to have the court extend the CPO granted in 2003. her statements left no doubt in the court's mind that she was alleging harassing contacts made to her by Rogers during the prior year though Johnson knew this was a totally false statement made to a judicial officer.

109. Plaintiff is informed and believes that Johnson knowingly gave perjured statements to courts of law in order to continue false prosecutions against Rogers and continue his illegal detentions, and/or to obtain unwarranted protective orders in federal court or Superior Court.

110. Johnson demonstrated contempt for the judicial system and a conscious disregard for her responsibility to be completely and totally honest before courts of law.

111. As a result of the above-described acts and misconduct, Rogers was at risk of a jail sentence as well as humiliation connected with the issuance of an unwarranted CPO.

112. As a direct and proximate cause of Johnson's conduct, Plaintiff has suffered injury and is entitled to general, special and compensatory damages in amounts to be proven at trial.

113. The aforementioned acts of Johnson were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages.

## CAUSE OF ACTION (VIII)

INVASION OF PRIVACY (BY FALSE REPORTING)

114. Rogers realleges paragraphs 1 through 113 above.

115. Defendant Johnson, by and through her actions invaded the privacy Rogers reasonably expected in a civilized society. She exposed him to undue physical risks, humiliation, and she defamed his character through her false and malicious accusations of criminal wrongdoing and her efforts to obtain unwarranted injunctions.

116. Each of Johnson's criminal and civil allegations were made in a public forum before the Superior Court and demeaned Rogers' standing in the community for conduct that he was not responsible for.

117. Johnson's conduct was a course of conduct which didn't cease until the extended CPO expired in October 2005, after the initiation of the instant civil action had been filed.

118. As a direct and proximate cause of Johnson's conduct, Plaintiff has suffered injury and is entitled to general, special and compensatory damages in amounts to be proven at trial.

119. The aforementioned acts of Johnson were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages.

**WHEREFORE**, Plaintiff VIRGIL M. ROGERS prays for judgment against Johnson as follows:

1. For general damages according to proof;
2. For compensatory damages according to proof;
3. For consequential and incidental damages according to proof;
4. For pre-judgment interest according to proof;
5. For costs of suit, including reasonable attorney's fees and litigation expenses as provided by Federal and State laws;
6. For such further relief as this Honorable Court deems just and proper.

*Plaintiff VIRGIL M. ROGERS hereby respectfully requests a trial by jury.*

DATED:  September 6, 2006                         VIRGIL M. ROGERS, pro se


By: ___/S/_____
  VIRGIL M. ROGERS