Sean P. Beaty, *pro bono*
(Bar No. 493597)
Howrey LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 383-6944
Fax: (202) 478-2691

Attorney for Defendant
KAREN JOHNSON-NORMAN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, *pro se* )<br><br>Plaintiff, )<br><br>v. )<br><br>KAREN JOHNSON-NORMAN )<br><br>Defendant. )<br> )<br> )<br> )<br> )<br> )<br> )<br> ) | Civil Case. No. **06-01186 (ESH)** |

**KAREN JOHNSON-NORMAN'S ANSWER TO ROGERS' MOTION FOR LEAVE TO AMEND; KAREN JOHNSON-NORMAN'S MOTION TO DISMISS ROGERS' AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE PORTIONS OF ROGERS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION................................................................................1

II.   FACTUAL SUMMARY .....................................................................2

      A.    Background Facts ....................................................................2

      B.    Factual Allegations of the Complaint....................................4

III.  ARGUMENT .....................................................................................5

      A.    Collateral Estoppel Bars Counts II – VIII of Rogers' Amended
            Complaint ................................................................................7

      B.    Rogers' Amended Complaint Should Not Be Related Back to
            the Filing Date of His Original Complaint ...........................9

            1.    Count IV for Abuse of Process is Time Barred...................10

            2.    Portions of Count VII for Perjury are Time Barred ...........10

      C.    Rogers' Fails to State a Cognizable Claim in Counts I, IV, V,
            and VI.....................................................................................11

            1.    Rogers Fails to State a Claim under the Fair Credit
                  Reporting Act ......................................................................11

            2.    Rogers Fails to State a Claim for Abuse of Process...........12

            3.    Rogers Fails to State a Claim for False Reporting of a
                  Crime....................................................................................13

      D.    Statute of Limitations Bars Counts II, III, and VIII of Rogers'
            Amended Complaint................................................................14

            1.    Rogers' Counts Alleging Infliction of Emotional
                  Distress Are Barred Under the One-Year Statute of
                  Limitations for Malicious Prosecution................................14

            2.    Count VIII for Invasion of Privacy is Barred Under the
                  One-Year Statute of Limitations for Defamation ...............15

      E.    In the Alternative to Dismissal, the Court Should Strike
            Certain Material from Rogers' Amended Complaint as
            Immaterial, Impertinent, and Scandalous............................16

1.    **The Court Should Strike Several Paragraphs of Rogers Amended Complaint as Immaterial or Impertinent**................................16

2.    **The Court Should Strike Several Paragraphs of Rogers Amended Complaint as Scandalous**.......................................................17

IV.    **CONCLUSION** ..........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Bowan v. Hamilton*, 601 A.2d 1074 (D.C. 1992) .................................................................12

*Bradshaw v. Johanns*, No. 04-1422 2005 U.S. Dist. LEXIS 41205 (D.D.C.Dec. 22, 2005) ...........................................................................................................................15

*Bryson v. Gere*, 268 F. Supp. 2d 46 (D.D.C. 2003) ............................................................7

*Cobell v. Norton*, 224 F.R.D. 266 (D.D.C. 2004) .......................................................15, 17

*Doe v. Southeastern University*, 732 F. Supp. 7 (D.D.C. 1990) ........................................15

*Egilman v. Keller & Heckman*, 401 F. Supp. 105 2d (D.D.C. 2005) ..................................5

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000) ..........6

*Green v. Small*, No. 05-1055, 2006 U.S. Dist. LEXIS 2835 (D.D.C. Jan. 19, 2006) .................................................................................................................................2

*Haines v. Kerner*, 404 U.S. 519 (1972) ............................................................................11

*Kopff v. Battaglia*, 425 F. Supp. 2d 76 (D.D.C. 2006) ......................................................15

*Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993) .................................................................................................................................2

*Meng v. Schwartz*, 305 F. Supp. 2d 49 (D.D.C. 2004) ........................................................6

*Minebea Co. v. Papst*, 13 F. Supp. 2d 35 (D.D.C. 1998) ....................................................6

*Scales v. George Washington University*, No. 89-0796, 1991 U.S. Dist. LEXIS 16765 (D.D.C. Nov. 15, 1991).........................................................................................14

*Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996) ...........................................12

*Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) ...............................5

*United States ex rel. Ortega v. Columbia Healthcare, Inc.* 240 F. Supp. 2d 8 (D.D.C. 2003) .................................................................................................................6

*Unum v. First Unum Life Insurance Co.*, 2005 U.S. Dist. LEXIS 6632 (D.D.C. Jan 14, 2005)........................................................................................................................11

*Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457 (D.D.C. 1994) .......................................15

*Wilson v. Prudential Financial*, No. 03-2313, 2004 U.S. Dist. LEXIS 21786
    (D.D.C. Oct. 18, 2004)..................................................................................5

*Wilson v. Riggs Bank N.A.*, No. 04-1005, 2005 U.S. Dist. LEXIS 6003 (D.D.C.
    Apr. 3, 2005) ...............................................................................................5

## STATUTES

15 U.S.C. §1681n(a) ......................................................................................10

15 U.S.C. §1681p(1) ......................................................................................11

D.C. Code §5-117.05 .....................................................................................13

D.C. Code 12-301 ..........................................................................................9

D.C. Code § 12-301(4)............................................................................14, 15

D.C. Code §12-301(8)..............................................................................9, 10,
    13, 16

Fed. R. Civ. P. 12(b)(6)..................................................................................5

Fed. R. Civ. P. 12(e) ....................................................................................11

Fed. R. Civ. P. 12(f) ...............................................................................7, 15,
    17

Fed. R. Civ. P. 15(a) ......................................................................................1

Fed. R. Civ. P. 15 (c)(2)................................................................................8

## I.    INTRODUCTION

Although Rogers did not confer with counsel for Ms. Johnson-Norman before filing the instant motion, Karen Johnson-Norman recognizes Rogers' procedural right to a second bite at the apple granted under FRCP 15(a). However, Rogers' Amended Complaint fails to correct the "prior deficiencies" in his original complaint. Rogers' revised pleading merely repackages the same allegations under new theories of liability. As before, these allegations are barred under the doctrine of collateral estoppel.

While Ms. Johnson-Norman does not oppose Rogers' Motion for Leave to File an Amended Complaint, and presuming that the Court will allow the Amended Complaint to be filed, Karen Johnson-Norman does object to the relation back of many of Rogers' allegations to the date of the original complaint. Rogers has impermissibly stretched the meaning of "transaction or occurrence" to incorporate an alleged course of conduct from 2000 until 2005. Several of Rogers claims did not arise out of the same transaction or occurrence as allegations in Rogers' original complaint, and are therefore time barred under the statute of limitations.

Rogers has added one new factual twist, alleging violation of the Fair Credit Reporting Act. However, Rogers has failed to allege any factual support for this Count, and therefore it must be dismissed. Similarly, Rogers has failed to state a claim for Abuse of Process and False Reporting of a Crime.

Despite his amendments, three of Rogers' counts are still barred by the District of Columbia's statute of limitations. Rogers' claims of intentional and negligent infliction of emotional distress, as well as invasion of privacy, are governed by the District's one-year statute of limitations. Even if Rogers' Amended Complaint is related back to the date of his original complaint, the statute of limitations on these claims has tolled.

Finally, presumably suffering without the assistance of counsel, Rogers has drafted what can only be described as a salacious, superfluous, unsubstantiated, and demonstrably-false pleading containing over a dozen objectionable paragraphs. Should Rogers' Amended Complaint survive the instant motion to dismiss, Ms. Johnson-Norman respectfully requests that

the Court strike several phrases, sentences, and even entire paragraphs from Rogers's Amended Complaint.

## II.    FACTUAL SUMMARY

### A.    Background Facts

In the hopes of conserving judicial resources, Ms. Johnson-Norman incorporates by reference her statements of fact as outlined in her Original Motion to Dismiss. (D.I. 4.) However, Rogers has pled additional facts in his Amended Complaint that merit clarification.

Rogers' course of conduct in continually harassing Karen Johnson-Norman began as early as 2000, almost immediately after their break-up.[1] (Beaty Decl. ¶ 2, Ex. A.)  Mr. Johnson-Norman diligently reported Rogers' harassment to authorities in Maryland, which resulted in Rogers arrest and detainment. (Beaty Decl. ¶ 3, Ex. B at 1.)   Ms. Johnson-Norman was granted a Maryland Peace Order prohibiting Rogers' continued harassment. (Beaty Decl. ¶ 2, Ex. A.)

As alluded to in Rogers' Amended Complaint, is not the first time that Rogers has sued Karen Johnson-Norman. (*See Rogers v. Johnson-Norman*, No. 01-cv-01924 (E.D. Va. 2001)). The legal proceedings against Rogers in Maryland led to Rogers filing a civil suit against Ms. Johnson-Norman in December 2001, alleging that she had made false allegations of harassment against him. (*Id.*)  It is true that the parties eventually settled, however Rogers failed to specify that under the terms of the settlement, ***Rogers was required to pay Karen Johnson-Norman $1000 for her attorney's fees***. (Beaty Supp. Decl. ¶¶ 2, Ex. J.)  Not only is the outcome of this prior suit is binding in this matter, but the inference is certainly instructive.

Ms. Johnson-Norman has never sought restitution from Rogers for his stalking, although on her original petition she did check the box that she was requesting Rogers to "reimburse me for my attorney's fees and costs."[2] (Beaty Supp. Decl. ¶¶ 3, Ex. K.)  Despite Rogers' serial

---

[1] Throughout this motion, Ms. Johnson-Norman cites the Declaration of Sean P. Beaty, which was filed in support of her original Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

[2] The Court may look beyond the plaintiff's complaint to matters of public record without converting the motion to one for summary judgment in deciding whether to dismiss a claim under Rule 12(b)(6),. *Green v. Small*, No. 05-1055, 2006 U.S. Dist. LEXIS 2835, at *19 n.4 (D.D.C. Jan. 19, 2006) (citing *Marshall County Health Care Auth. v.*

appeals and legal maneuverings, to date Karen Johnson-Norman has not subsequently moved for any attorney's fees or costs.

Ms. Johnson-Norman did request in both her Petition for a Civil Protection Order (CPO) and at the CPO hearing that Rogers receive psychiatric counseling. (Beaty Supp. Decl. ¶ 3, Ex. K; Beaty Decl. ¶ 6, Ex. E at 21-22.)  At the CPO hearing, Judge Liebovitz found that this request was entirely reasonable, describing Rogers as an "angry and obsessive former lover who [was] unwilling to permit the relationship to be over." (Beaty Decl. ¶ 6, Ex. E at 24.)  Even today, Rogers has never submitted to any court-ordered psychiatric counseling.

Rogers' refusal to submit to psychiatric counseling was one of the contributing factors that led to Ms. Johnson-Norman's decision to move for a one-year extension of her civil protection order. (Beaty Supp. Decl. ¶ 4, Ex. L at 14-15.)  In October 2004, Ms. Johnson-Norman sought Rogers' consent to extend the CPO, however Rogers declined and told Ms. Johnson-Norman's attorneys that he would not appear for the extension hearing. (*Id.* at 3.)  True to his word, Rogers did not appear. (*Id.* at 2.)

At the CPO extension hearing, the Honorable Judge Rigsby was extremely concerned with Rogers' absence and dedicated an inordinate amount of time to verify that Rogers had indeed been served with notice of the extension hearing. (*Id.* at 2-13.)  Counsel for Ms. Johnson-Norman took great pains to describe the gamesmanship displayed by Rogers in refusing to provide a physical address at which to serve him court papers. (*Id.*)  Counsel explained that Rogers refused to provide either opposing counsel *or the court* his current residential address, providing only P.O. Box to which no registered mail or Federal Express packages may be delivered.[3] (*Id.*)  Counsel also proffered a letter written by Mr. Rogers agreeing to service by

---

*Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993).  For the Court's convenience, a copy of Ms. Johnson-Norman's original petition for a civil protection order as well as the transcript from the CPO extension hearing are attached as exhibits to the Supplemental Declaration of Sean P. Beaty.  Ms. Johnson-Norman respectfully requests the Court take judicial notice of these additional public documents.

[3] In the instant case, Rogers still refuses to disclose his whereabouts to opposing counsel.  Service is made entirely by faxing documents to an unlisted phone number provided by Rogers.  Rogers also refuses to provide opposing counsel a direct-contact phone number whereby the parties may meet-and-confer as obliged under Local Rule 7(m).

facsimile, and represented that notice of the hearing had been sent to the fax numbers provided by Rogers. (*Id.* at 3-4.)

Assuaged of his concerns regarding service, Judge Rigsby then received evidence in support of Ms. Johnson-Norman's motion for extension. (*Id.* at 7-8, 14-17.) Karen Johnson-Norman testified that she continued to receive hang-up phone calls and calls from strange numbers with no one speaking on the other end. (*Id.*) Ms. Johnson-Norman testified that she believed that Rogers' was responsible for these calls, and was particularly fearful in light of Rogers' refusal to "get the help I thought he desperately needs." (*Id.* at 14.)

CSOSA Officer Jerri Price-Parker also testified that Rogers failed to comply with the requirements of his release. (*Id.* at 16-17.) Price-Parker testified that Rogers informed CSOSA that it was financially burdensome for him to fulfill his court-ordered obligations, and therefore he was not going to comply. (*Id.*) Upon the testimony of Karen Johnson-Norman and Officer Price-Parker, Judge Rigsby found good cause to extend the civil protection order. (*Id.* at 17.) *Sua sponte*, Judge Rigsby also issued a warrant for Rogers arrest; neither Ms. Johnson-Norman nor her counsel requested the warrant to be issued. (*Id.* at 20.)

## B.    Factual Allegations of the Complaint

Rogers' Amended Complaint attempts to detail a story of one woman's seek-and-destroy mission to ruin his life. (*See generally* D.I. 10-2, Am. Compl.)  Unfortunately for Rogers, this story has been received, vetted, and ultimately rejected by several adjudicative bodies.  Rogers slightly modified the allegations in his Amended Complaint, however they still can be distilled into a single claim:  Karen Johnson-Norman falsely claimed that Rogers was stalking her, falsified evidence to support of her claim, falsely reported Rogers' stalking to the police in order to have him arrested, and improperly petitioned the courts for a CPO (and extension thereof)

---

Should Rogers' Amended Complaint survive dismissal, the Court will have to remedy this issue before discovery can begin.

based on those false claims.[4]  (D.I. 10-2, Am. Compl. ¶¶ 7-14, 18, 20-22, 26, 32, 37-38, 40-41, 53-58, 60, 62, 64, 78, 80-86, 91-93, 98-99, 103-105, 108-110, 115, 117.)

Rogers has also pled an unsubstantiated claim under the Fair Credit Reporting Act.  In the fact section of his complaint, Rogers dedicated a sum total of *one sentence* to this claim:

> 36.  On or about April 2004 Johnson used her position at Wells Fargo Real Estate Group to either initiate or caused to be initiated a credit inquiry about Rogers' personal information. (D.I. 10-2, Am. Compl. ¶ 36)

Rogers did not specificity what kind of information Ms. Johnson-Norman allegedly tried to obtain.  Rogers failed to detail how he discovered this alleged violation, or even when he found out about it.  Rogers did not attach a copy of his credit report is support of his Amended Complaint.  In short, throughout the entire complaint, Karen Johnson-Norman has a grand total of 4 sentences from which she must decipher this claim against her.

## III.    ARGUMENT

Karen Johnson-Norman moves the Court to dismiss Rogers' Amended Complaint for failure to state a "claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Although the Court must accept all well-plead factual allegations as true when determining whether or not to grant a Rule 12(b)(6) motion, if facts that give rise to a defense of collateral estoppel are clear from the complaint, granting a motion to dismiss is proper. *Wilson v. Prudential Fin.*, No. 03-2313, 2004 U.S. Dist. LEXIS 21786, at *7 (D.D.C. Oct. 18, 2004); *Wilson v. Riggs Bank*, No. 04-1005, 2005 U.S. Dist. LEXIS 6003, at *4-5 (D.D.C. Apr. 3, 2005); *Egilman v. Keller & Heckman*, 401 F. Supp. 2d 105, 110 (D.D.C. 2005)(citing *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).  A court may dismiss a case under Rule 12(b)(6) if

---

[4] As a part of this contention, Rogers claims that Ms. Johnson-Norman made such false claims as part of this conspiracy stretching as far back as the year 2000, even though his conviction for attempted stalking in 2001 precludes any allegation that she falsified her claims at that time.  (D.I. 1, Compl. ¶¶ 8, 9, 12; Beaty Decl. ¶ 3, Ex. B at 1.)

collateral estoppel bars relitigation of a claim or issue when the prior decision's preclusive effect is apparent from the face of the complaint. *Minebea Co. v. Papst*, 13 F. Supp. 2d 35, 42 (D.D.C. 1998); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.D.C. 2004). Rogers' Amended Complaint fails to correct the "prior deficiencies" in his original complaint, and instead merely repackages the same allegations under new theories of liability. As before, these allegations are barred under the doctrine of collateral estoppel. Moreover, Rogers has failed to state a claim for his Fair Credit Reporting Act, Abuse of Process, and False Reporting of a Crime Counts, which must be dismissed as a matter of law.

Many of Rogers' allegations appear for the first time in Rogers' Amended Complaint, and are not part of the original transactions and occurrences pled in Rogers' first complaint. New allegations cannot be related back when they do not arise from the same "conduct, transaction, or occurrence" complained of in the original pleading. *United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 15 (D.D.C. 2003) (applying FRCP 15(c)(2) to a plaintiff's subsequently amended pleading). Several of these newly-pled, unrelated allegations cannot be related back to the date of the original complaint, and are therefore time barred under the statute of limitations.

Similarly, Rogers' claims of intentional and negligent infliction of emotional distress, as well as invasion of privacy, are governed by the District of Columbia's one-year statute of limitations. A defense of statute of limitations may be raised by a motion to dismiss. *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 734 (D.C. 2000). Even if Rogers' Amended Complaint is related back to the date of his original complaint, the statute of limitations on these claims has tolled.

6

Finally, certain phrases, sentences, and even entire paragraphs from Rogers's Amended Complaint should be struck under FRCP 12(f). Many of Rogers' allegations are immaterial, impertinent, scandalous or categorically-false, and therefore should be struck from his pleading.

### A.    Collateral Estoppel Bars Counts II – VIII of Rogers' Amended Complaint

Ms. Johnson-Norman incorporates by reference her collateral estoppel argument outlined in her original Motion to Dismiss. (D.I. 4.) However, in the interest of completeness, Rogers' new allegations pertaining to the CPO and its extension should be discussed.

Collateral estoppel prevents parties from relitigating issues that have already been adjudicated. *Bryson v. Gere*, 268 F. Supp. 2d 46, 54 (D.D.C. 2003). Rogers alleges that Karen Johnson-Norman falsely claimed that Rogers was stalking her, falsified evidence to support of her claim, falsely reported Rogers' stalking to the police in order to have him arrested, and improperly petitioned the courts for a CPO (and extension thereof) based on those false claims. (D.I. 10-2, Am. Compl. ¶¶ 7-14, 18, 20-22, 26, 32, 37-38, 40-41, 53-58, 60, 62, 64, 78, 80-86, 91-93, 98-99, 103-105, 108-110, 115, 117.) Rogers has repackaged these claims under new theories of liability, however the base of each count against Ms. Johnson-Norman is that she lied about Rogers' stalking.[5]

These allegations have been fully litigated in multiple adjudications and determined in valid and final judgments on the merits. Presiding over the CPO hearing, Judge Liebovitz of the

---

[5] Count II for Negligent Infliction of Emotional Distress: "… Johnson negligently made a false police report which claimed that Rogers had stalked her or committed some other criminal offense;" Count III for Intentional Infliction of Emotional Distress: "…Johnson initiated a criminal report to the MPD which falsely claimed that Rogers had stalked her;" Count IV for Abuse of Process: "…Rogers had been involuntarily brought to the District of Columbia upon Johnson's false criminal allegations…;" Count V for Abuse of Process: "…Superior Court issued an additional one year CPO against Plaintiff Rogers […] issued on the basis of perjured statements made at the hearing by Defendant Johnson…;" Count VI for False Reporting of a Crime: "…in January 2003 and on numerous instances in 2002 Johnson made a false police report […] which claimed that Rogers had either stalked her or committed some criminal act;" Count VII for Perjury: "Johnson presented a false petition for a CPO to Superior Court…;" Count VIII for Invasion of Privacy: "she defamed his character through her false and malicious accusations of criminal wrongdoing and her efforts to obtain unwarranted injunctions." (D.I. 10-2, Am. Compl. ¶¶ 54, 69, 78, 94, 99, 104, 115.)

D.C. Superior Court found good cause to believe that Rogers had stalked Ms. Johnson-Norman. (Beaty Decl. ¶ 2, Ex. A at 2-4.)  Her Honor dismissed Rogers' contention that the letters received into evidence at the criminal trial were simply compilations of prior letters received during their relationship, and found that Rogers had in fact sent three letters to Ms. Johnson-Norman's workplace. (*Id.*, Beaty Decl. ¶ 6, Ex. E at 16.)  Finally, Judge Liebovitz found that the entry of a CPO against Rogers was necessary to protect Karen Johnson-Norman from further harassment. (Beaty Decl. ¶ 2, Ex. A at 2-4.)  These findings of fact and the order entering a CPO against Rogers have been subsequently upheld twice; first by Judge Liebovitz upon Rogers' Motion to Reconsider and then by the D.C. Court of Appeals. (*Id.*; Beaty Decl. ¶ 3, Ex. B) Finally, Judge Rigsby of the D.C. Superior Court presided over the CPO extension hearing and found good cause to believe Rogers continued to pose a danger to Ms. Johnson-Norman. (Beaty Supp. Decl. ¶ 4, Ex. L at 17.)

These rulings unequivocally refute Rogers' allegations that Karen Johnson-Norman falsely accused him of stalking – the courts found good cause to believe that he *did* stalk her. These decisions are binding upon Rogers current allegations, and therefore they must be dismissed as barred by collateral estoppel.

All of Rogers' allegations relating to events occurring prior to January 2003 are also barred by Rogers' settlement agreement with Ms. Johnson-Norman in the Eastern District of Virginia case, which was executed on December 26, 2002 and entered by the court in January 2003. (Beaty Supp. Decl. ¶¶ 2, Ex. J.)  That settlement agreement specified that

Many of Rogers' allegations are precluded by this settlement agreement:  (1) all of Rogers' allegations relating to Ms. Johnson-Norman's reporting his stalking to Maryland authorities, (2) Rogers' allegedly wrongful dismissal from the Air Force, (3) Rogers' allegedly wrongful arrest and detainment in Maryland for harassing Ms. Johnson-Norman; (4) Rogers'

allegations for filing false criminal charges in D.C. in 2000; and (5) Ms. Johnson-Norman's alleged perjury or false statements made to Judge Lee. (D.I. 10-2, Am. Compl. ¶¶ 8-18, 20, 103.) All of these claims accrued prior to the entry of the settlement agreement, and were part of Rogers' claims in his civil suit against Karen Johnson-Norman in the United States District Court for the Eastern District of Virginia. Not only are these claims barred by collateral estoppel, but they are barred by a binding settlement agreement already reached between the parties.

### B.    Rogers' Amended Complaint Should Not Be Related Back to the Filing Date of His Original Complaint

To the extent Rogers' claims survive dismissal on the grounds of collateral estoppel, many of Rogers' claims should not relate back to the filing date of his original complaint. FRCP 15(c) allows parties' amendments to pleadings to "relate back" to the date of the parties' original pleading if the claims "arose out of the conduct, transaction, or occurrence." Fed. R. Civ. P. 15 (c)(2). Rogers has impermissibly stretched the meaning of "transaction or occurrence" to incorporate an alleged course of conduct from 2000 until 2005. Admittedly, the general theme of Rogers' Amended Complaint is consistent with the theme found in his original complaint; namely that Karen Johnson-Norman allegedly pursued a course of conduct to ruin Rogers' life. However, the specific facts alleged by Rogers in support of this theme differ significantly between the two pleadings.

Specifically, Rogers' Amended Complaint details Ms. Johnson-Norman's course of conduct in ***petitioning the court to enter a CPO against Rogers***, while the original pleading detailed Ms. Johnson-Norman's alleged false reports of stalking with resulted in Rogers' ***criminal*** prosecution. (*Cf.* D.I. 10-2, Am. Compl.; D.I. 1, Compl.) Rogers' original complaint does not allege any false statements made in furtherance of Karen Johnson-Norman's petition for the CPO. (See generally, D.I. 1, Compl.) In fact, the fact section of Rogers' first pleading is completely devoid of ***any*** references to the CPO process.[6] (*Id.*) All of Rogers' allegations

---

[6] Although no negative inferences should be drawn from Rogers' decision to proceed *pro se*, the Court should be reminded that Rogers' original complaint was drafted by an attorney, ***not*** Rogers. It is instructive that Rogers' prior counsel chose not to pursue these claims against Karen-Johnson Norman in the original complaint.

relating to Ms. Johnson-Norman's seeking of a civil protection order are new allegations based on separate and distinct transactions and occurrences, and therefore cannot be related back to Rogers' original complaint.

### 1.    Count IV for Abuse of Process is Time Barred

If Rogers' allegations relating to Ms. Johnson-Norman's seeking of a civil protection order are not related back to the date of the original complaint, then Count IV of Rogers' Amended Complaint is time barred. Count IV relates to Karen Johnson-Norman's pursuit of the original CPO against Rogers. (D.I. 10-2, Am. Compl. ¶¶ 77-89.) Rogers alleges that these proceedings began "on or about July 31, 2003." (*Id.* at ¶ 78.)

The statute of limitations for abuse of process is not enumerated in D.C. Code 12-301, therefore it is subject to the general three-year statute of limitations provided by D.C. law. D.C. Code §12-301(8). Even if the Court had granted Rogers' leave to file an Amended Complaint as of the date of its filing, Rogers' would still be three months past the statute of limitations.

### 2.    Portions of Count VII for Perjury are Time Barred

Similarly, if Rogers' allegations relating to Ms. Johnson-Norman's seeking of a civil protection order are not related back to the date of the original complaint, then portions of Count VII of Rogers' Amended Complaint are also time barred. Specifically, Count VII alleges that Karen Johnson-Norman committed perjury against Rogers in July 2002 and July 2003. (D.I. 10-2, Am. Compl. ¶¶ 103-104.) There is no statute of limitations enumerated for perjury under the D.C. Code, and therefore is also subject to the general three-year statute of limitations. D.C. Code §12-301(8). Therefore, Paragraphs 104 and 105 of Rogers' Amended Complaint are time-barred and must be dismissed if Rogers' amended pleading is not related back.[7]

---

[7] As discussed *infra*, even if the Court grants Rogers the benefit of relating back his Amended Complaint, many of Rogers allegations have long since tolled under the statute of limitations and therefore must be dismissed.

C.   **Rogers' Fails to State a Cognizable Claim in Counts I, IV, V, and VI**

To the extent Rogers' claims survive dismissal on the grounds of collateral estoppel, Rogers still fails to state a claim upon which relief can be granted in Counts I, VI, and VIII.

1.   **Rogers Fails to State a Claim under the Fair Credit Reporting Act**

Rogers has pled an unsubstantiated claim under the Fair Credit Reporting Act (FCRA) as Count I of his amended pleading. Dedicating only one sentence to this claim in his fact section, Rogers has failed to plead with any specificity the details of this alleged violation. Section 1681n of the FCRA provides a private right of action against *any person* for failing to comply with *any requirement* imposed under the FCRA. 15 U.S.C. §1681n(a). Rogers has not specified what Karen Johnson-Norman was required to do under the FCRA, or how she failed to comply with that requirement. (See generally, D.I. 10-2, Am. Compl. ¶¶ 36, 44-51.) Rogers has not pled what kind of information Ms. Johnson-Norman allegedly obtained from his consumer report. Rogers failed to detail how he discovered this alleged violation. Rogers did not attach his credit report to his Amended Complaint in support of his claim. In short, Rogers has not properly stated his claim under the Fair Credit Reporting Act.

Moreover, the statute of limitations for liability under §1681n of the FCRA is limited to two-years from the date of the discovery of injury. 15 U.S.C. §1681p(1). Rogers alleges that the violation took place in April 2004, but has failed to plead when he discovered this alleged violation. Rogers admits in his Motion for Leave to Amend that Count I should not relate back to the date of the original complaint. Therefore, even if the Court had granted Rogers' leave to file an Amended Complaint on September 11, 2006 (the date the motion was filed), it's entirely possible that Rogers' claim under the FCRA is barred by the Act's statute of limitations.

Throughout the entire complaint, Karen Johnson-Norman has a grand total of 4 sentences from which she must decipher Rogers' claim under the FCRA. To the extent the Court is disinclined to dismiss Count I, Ms. Johnson-Norman respectfully moves the Court for a more definite statement under FRCP 12(e). Although the Court must review Rogers' pleading under the more flexible standards applied to pro se litigants, motions for a more definite statement are often granted where, as here, the pleading is vague or ambiguous and contains "extraneous and irrelevant allegations." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Unum v. First Unum Life Ins. Co.*, No. 04-723 2005 U.S. Dist. LEXIS 6632, *13-14 (D.D.C. Jan 14, 2005).

### 2.    Rogers Fails to State a Claim for Abuse of Process

Rogers also fails to state a claim for Abuse of Process under Counts IV and V of his Amended Complaint. A claim for abuse of process "requires a plaintiff to allege some ulterior purpose other than achieving the intended goal of the process in question." *Raiford v. District of Columbia*, 1997 U.S. App. LEXIS 13699 *5 (D.C. Cir. 1997). The essence of an abuse of process claim is to use the courts "to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992); see also Restat 2d of Torts, § 682 cmt. b. (claims for abuse of process only arise when the party uses court for an immediate purpose, other than that for which it was designed). Examples often cited include "some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." Restat 2d of Torts, § 682 cmt. b. Rogers simply has not alleged the ulterior purpose for Ms. Johnson-Norman's petition for a CPO, nor for seeking extension of the CPO.

In fact, Rogers own allegations undercut his claims. Rogers alleges that Karen Johnson-Norman used the CPO process to "compel Rogers compliance with numerous collateral provisions which he would otherwise would not have been compelled to obey." (D.I. 10-2, Am.

Compl. ¶ 81)  However, that was precisely the intended goal of Ms. Johnson-Norman's petition for a CPO – to get Rogers to comply with the CPO, stop harassing her, and seek psychiatric treatment.

Rogers will no doubt argue that the Karen Johnson-Norman's ulterior motive for petitioning the courts for a CPO was to further of the alleged conspiracy to ruin Rogers life, however the *Scott v. District of Columbia* case is instructive in this regard.  Scott claimed that Police officers committed an abuse of process by filing criminal charges against him for DUI with the ulterior motive of covering up their use of excessive force.  *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996).  The Court of Appeals for the D.C. Circuit rejected Scott's argument, holding that even if there were ulterior motives for the criminal charges, that does not create a cause of action for abuse of process;

> "There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm... *Id at 755.* (quoting Restatement (Second) of Torts § 682 cmt. b (1977)).

Rogers' counts for abuse of process must fail.  The public record available to the Court, including the transcripts of the original CPO hearing and the extension hearing, is replete with evidence that Karen Johnson-Norman's motive for seeking the stay away order was to stop Rogers' stalking conduct. (Beaty Decl. ¶ 6, Ex. E; Beaty Supp. Decl. ¶ 4, Ex. L.)  Even if Ms. Johnson-Norman's motive was spiteful, as alleged by Rogers, this does not create a cause of action for abuse of process.

### 3.    Rogers Fails to State a Claim for False Reporting of a Crime

In Count VI of his Amended Complaint, Rogers cites D.C. Code §5-117.05 in support of his claim for False Reporting of a Crime.  However, D.C. Code §5-117.05, entitled "False or fictitious reports to Metropolitan Police," is a criminal statute, providing a maximum fine or jail

term for violation of the statute. There is no private right of action associated with the statute, and therefore Rogers' does not have standing to bring an action under D.C. Code §5-117.05.

### D.    Statute of Limitations Bars Counts II, III, and VIII of Rogers' Amended Complaint

To the extent Rogers' claims survive dismissal on the grounds of collateral estoppel, and even if Rogers' amended pleading is related back to the date of the original complaint, Counts II, III, and VIII are barred under the District of Columbia's statute of limitations.

### 1.    Rogers' Counts Alleging Infliction of Emotional Distress Are Barred Under the One-Year Statute of Limitations for Malicious Prosecution

Rogers alleges that Counts II and III for negligent and intentional infliction of emotional distress accrued no later than July of 2003. (D.I. 10-2, Am. Compl. ¶¶ 54-58, 69-72.) Intentional and negligent infliction of emotional distress are not enumerated in the in D.C. Code's statute of limitations provision, and therefore would generally be held to a three-year term. D.C. Code §12-301(8). However, courts have held that if the infliction of emotional distress claim is "intertwined with a cause of action for which a period of limitation is specifically provided in § 12-301," then the statute of limitations for the underlying cause of action applies "and not the general three-year residuary period." *Scales v. George Washington Univ.*, No. 89-07961 1991 U.S. Dist. LEXIS 16765 *14 (D.D.C. Nov. 15, 1991)

In the instant case, Rogers' claims for infliction of emotional distress are rooted in his original claim for malicious prosecution, which is subject to a one-year statute of limitations. D.C. Code § 12-301(4). In support of Count II for Negligent Infliction of Emotional Distress, Rogers alleges:

> 58.    On or about June 16, 2003 Rogers was arrested in California based solely upon allegations made by Johnson and he was subsequently incarcerated until on or about November 7, 2003 for a myriad of conduct alleged by Johnson.

60. Rogers was arrested solely upon the allegations made by Johnson and incarcerated with dangerous pretrial detainees and violent convicted felons in California, Oklahoma, and the District of Columbia.

64. Defendant Johnson negligently made false or perjured statements to the police, the USAO, and or the Superior Court, thereby causing Rogers grave injury. (D.I. 10-2, Am. Compl. ¶¶ 58, 60, 64.)

Similarly, in support of Count III for Intentional Infliction of Emotional Distress, Rogers alleges:

73. Plaintiff is informed and believes that Johnson's conduct in fabricating criminal allegations was extreme, and outrageous and done for the purposes of causing Rogers to be illegally arrested and detained and to "ruin" his life and cause him distress. (D.I. 10-2, Am. Compl. ¶ 73.)

It is clear from Rogers' own factual allegations that the basis for his claims of negligent and intentional infliction of emotional distress is Ms. Johnson-Norman's alleged false-reporting of Rogers' stalking behavior with the intent to have him arrested and prosecuted. Therefore, these claims, which accrued no later that July 2003, have tolled and must be dismissed.

## 2. Count VIII for Invasion of Privacy is Barred Under the One-Year Statute of Limitations for Defamation

Similarly, Rogers' cause of action for Invasion of Privacy is also limited to a one-year statute of limitations. In *Doe v. Southeastern University*, the Court of Appeals for the D.C. Circuit held that "invasion of privacy is essentially a defamation-type action," and therefore the District of Columbia's one-year statute of limitations for libel or slander limits causes of action for invasion of privacy. *Doe v. Southeastern Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990); D.C. Code § 12-301(4). In this case Rogers alleges that Karen Johnson-Norman "defamed his character through her false and malicious accusations of criminal wrongdoing and her efforts to obtain unwarranted injunctions." (D.I. 10-2, Am. Compl. ¶ 115.) Clearly the base for Rogers' Count for Invasion of Privacy is based on a defamation theory, and therefore is subject to the one-year statute of limitations provided under the law. D.C. Code § 12-301(4).

In Count VIII, Rogers plays with his factual allegations to allege that the *injury* from Ms. Johnson-Norman's alleged defamation did not stop until the extended CPO expired in October

2005.  However, this is a red herring.  The last time Karen Johnson-Norman made *any* in-court statement relating to Rogers was at the CPO extension hearing in October 2004.  The fact that the CPO was extended a year does not also extend the tolling period – any viable claim Rogers had accrued in October 2004, and therefore is barred by the statute of limitations.

> **E.**     **In the Alternative to Dismissal, the Court Should Strike Certain Material from Rogers' Amended Complaint as Immaterial, Impertinent, and Scandalous**

Finally, should the Court decline to dismiss Rogers' amended pleading, Ms. Johnson-Norman respectfully requests that the Court strike several phrases, sentences, and even entire paragraphs from Rogers' Amended Complaint.  Rogers has drafted a pleading that is at best salacious and offensive, and at worst categorically and demonstrably-false.

FRCP 12(f) allows the Court to strike material from a complaint that is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  Courts generally disfavor motions to strike and regard them as "time wasters." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 86 (D.D.C. 2006).  However, courts are willing to grant motions to strike when they are warranted. *Id.*; see also *Bradshaw v. Johanns*, No. 04-1422 2005 U.S. Dist. LEXIS 41205, *4-5 (D.D.C. Dec. 22, 2005); *Cobell v. Norton*, 224 F.R.D. 266, 282 (D.D.C. 2004); *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457, 458 (D.D.C. 1994).  The instant case warrants striking of portions of Rogers' amended pleading.

> **1.**     **The Court Should Strike Several Paragraphs of Rogers Amended Complaint as Immaterial or Impertinent**

Much of Rogers' Amended Complaint is either immaterial or impertinent to his actual claims.  For instance, Paragraphs 1, 2, 42, and 43 describe the procedural history of Rogers' suit against Ms. Johnson-Norman, rather than fact relevant to his claims. (D.I. 10-2, Am. Compl. ¶¶ 1-2, 42-43.)  These paragraphs should be struck as irrelevant and unnecessary.

Other paragraphs in Rogers' amended pleading are immaterial simply by virtue of the date of their occurrence.  Presuming Rogers' Amended Complaint is not related back to the date

of his original complaint, Rogers' earliest accrued cause of action takes place in January 2003. (D.I. 10-2, Am. Compl. ¶ 54.) Any new claims accruing prior to September 2003 would be tolled under the statute of limitations. D.C. Code § 12-301(8). Yet Rogers consistently refers to events occurring prior to January 2003 that are not pled in support of any claim or cause of action. For example, Paragraphs 9, 13, 17-18, 20, 24, and 103 all allege conduct occurring between 2000 and 2002, but do not directly or indirectly support any of Rogers' claims. (D.I. 10-2, Am. Compl. ¶¶ 9, 13, 17-18, 20, 24, 103.) These paragraphs should also be stricken as immaterial.

Similarly, the first sentence of Paragraph 25, alleging that "[t]he effect of Durant's dishonesty was the issuance of an illegal <u>felony</u> arrest warrant for Rogers' arrest instead of the misdemeanor stalking arrest warrant which was lawful," is not directed at any conduct alleged to have been performed by Ms. Johnson-Norman. This allegation is directed at Detective Durant, who is no longer a party to the case, and therefore this allegation should be stricken as irrelevant.

Finally, some portions of Rogers' pleading exist only to sully Ms. Johnson-Norman's reputation. For example, Paragraphs 7 and 8 characterize the parties' relationship as "a casual sexual relationship." The characterization does nothing for Rogers' claim, and is meant only to demean Ms. Johnson-Norman.

### 2.    The Court Should Strike Several Paragraphs of Rogers Amended Complaint as Scandalous

Many of Rogers' allegations also deserve to be struck as scandalous under FRCP 12(f). In this jurisdiction, the minimum standard to have an allegation to rise to the level of being "strike-worthy" as scandalous is that "the allegation in question must at least be found lacking in evidentiary support." *Cobell v. Norton*, 224 F.R.D. 266, 282 (D.D.C. 2004). Many of Rogers' allegations are not only lacking in evidentiary support, but are demonstrably-false.

Rogers defies all bounds of decency and reality in Paragraph 7 where he alleges:

"Johnson also expressly requested that Rogers assist her in murdering her husband so that she could collect on his life insurance policy and be free from her

unhappy marriage, and so that she continue to have sex with Rogers." (D.I. 10-2, Am. Compl. ¶ 7.)

Similarly, Rogers contends:

> "…When the Air Force moved too slowly against Rogers, she contacted U. S. Representative Steny Hoyer and convinced him to write a coercive communication to the Air Force essentially urging the punitive actions requested by Johnson. Following Johnson's unceasing and harassing efforts, including her civilian charges and her scores of harassing calls to the Air Force leadership, the Air Force administratively discharged Rogers, thus ending his military career solely because of Johnson." (D.I. 10-2, Am. Compl. ¶ 11.)

Rogers also alleges:

> 72. On or about July 22, 2003, officers employed by the District of Columbia removed Rogers from jail and transported him to an interrogation room with Durant where Rogers was verbally harassed and threatened with physical violence. These individuals, particularly Durant waved loaded guns in Rogers' face and attempted to have him murdered in jail at the direction of or in complicity with defendant Johnson. (D.I. 10-2, Am. Compl. ¶ 72.)

Absolutely no evidentiary support exists for any of these claims. Abusing his *pro se* status, Rogers' allegations transcend the distinction between reality and delusional fantasy, resulting in a work of fiction, rather than a legal pleading.

Moreover, many of Rogers' allegations are demonstrably-false. Some of these false allegations are benign. In Paragraph 43, for example, Rogers alleges that "Johnson was allowed to transfer the case to the District of Columbia." (D.I. 10-2, Am. Compl. ¶ 43.) However, it was ***Rogers'*** decision to have this case transferred to D.C.; Karen Johnson-Norman sought to have this case disposed of in the Eastern District of California. (*Rogers v. Johnson-Norman*, 05-CV-01177-LKK-PAN (E.D. Cal. 2005); D.I. 74, Order of Transfer.)

Many of Rogers' demonstrably-false allegations, however, are material to his causes of action. For instance:

> 70. On or about June 16, 2003 Rogers was seized in Sacramento, California ostensibly upon a D.C. arrest warrant for false allegations made by Johnson which didn't establish probable cause and didn't legally authorize his seizure in California." (D.I. 10-2, Am. Compl. ¶ 70.)

The Honorable Peter Nowinski of the Eastern District of California held a hearing on Rogers'

detention and extradition, and explicitly found the arrest warrant was valid. (Beaty Decl. ¶ 10,

Ex. I at 11.)

> Similarly, Rogers alleges:

> 89. In response to the July 31, 2003 petition for a CPO by Defendant Johnson, Superior Court issued a one year CPO against Plaintiff Rogers on or about October 29, 2003 that was outside the purview of the regular CPO process because it was issued without requiring Defendant Johnson to meet the required burden of proof because Superior Court did not require any sworn testimony prior to issuing the CPO and thus denied Mr. Rogers a full and complete opportunity to contest the issuance of the injunction against him at the hearing.

This contention has been flatly rejected by the Court of Appeals for the District of Columbia.

(Beaty Decl. ¶ 3, Ex. B.)

> Finally, Paragraphs 95 and 96 of Rogers' Amended Complaint contain categorically-false

characterizations of the CPO extension hearing:

> 95. Plaintiff Rogers did not attend the hearing in Superior Court for the CPO extension because Defendant Johnson didn't notify him of the hearing until after it had been completed but nevertheless represented to the Superior Court judge that Mr. Rogers had been notified in accordance with the Superior Court Rules of Civil Procedure.

> 96. Plaintiff Rogers is informed and believes that Superior Court issued a bench warrant due to his failure to attend the hearing on or about October 29, 2004 even though he had never been notified or served with a notice of hearing by Defendant Johnson and because he was in California. The issuance of the bench warrant perverted the justice system and placed Plaintiff Rogers at unreasonable risk of another illegal arrest.

The transcript of the CPO extension hearing demonstrates that these are utter untruths. (Beaty

Supp. Decl. ¶ 4, Ex. L.)  The Court found that Rogers had received notice of the extension

hearing, and issued the warrant for his arrest *sua sponte*. (*Id.* at 17, 20.)

> Rogers must not be allowed to continue to abuse his *pro se* status by filing wildly-

baseless allegations against Karen Johnson-Norman.  While she certainly denies any liability,

Ms. Johnson-Norman did not move to strike any allegations from Rogers' original complaint

because they were properly drafted and pled within the bounds of common decency.  Rogers'
amended pleading is neither.

## IV.        CONCLUSION

Therefore, for the foregoing reasons, Karen Johnson-Norman respectfully requests that
this Court dismiss each and every claim against her contained in Rogers' complaint.  In the
alternative, Ms. Johnson-Norman respectfully requests that the Court strike the various
enumerated allegations from Rogers' Amended Complaint.


Respectfully submitted,


Of Counsel:

Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated:  September 18, 2006

## CERTIFICATE OF SERVICE

Plaintiff Rogers has refused to provide his exact whereabouts, frustrating service of all documents in this case.  I hereby certify that unredacted copies of the foregoing Reply to Rogers' Opposition to Johnson-Norman's Motion to Dismiss was served by regular United States mail, postage prepaid, this 18th day of September, 2006 upon Plaintiff Rogers at each address listed below:

Virgil M. Rogers
P.O. Box 66352
Los Angeles CA 90066

The above address was provided to counsel by Rogers in *Rogers v. Johnson-Norman*, Nos. 03-FM-1255 and 04-FM-196 (D.C. App. Sep. 26, 2005).

Bernadine T. Tsung-Megason
(Former Counsel)
4 East Holly St., Suite 215
Pasadena, CA 91103

A copy of Karen Johnson-Norman's Reply to Rogers' Opposition to Johnson-Norman's Motion to Dismiss has also been faxed to the number below provided by Rogers on July 11, 2006.

Via Fax: (310) 943-6952

Sean P. Beaty, *pro bono*
(Bar No. 493597)