# EXHIBIT L

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - - x
                              :
KAREN JOHNSON-NORMAN,         :
              Petitioner      :
                              :
        vs.                   :
                              :  Docket Number: CA2497-03
VIRGIL ROGERS,                :
              Respondent.     :
                              :  Thursday, October 28, 2004
- - - - - - - - - - - - - - - x  Washington, D.C.
```

The above-entitled action came on for a

proceeding before the Honorable ROBERT RIGSBY, Associate

Judge, in Courtroom Number 114, commencing at 10:04 a.m.


APPEARANCES:

On Behalf of the Petitioner:

KRISTI McKAREN, Esquire
TODD MULLINS, Esquire
Washington, D.C.

On Behalf of the Respondent:

IN ABSENTIA

**Deposition Services, Inc.**
6245 Executive Boulevard
Rockville, MD 20852
Tel: (301) 881-3344  Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

ac

<u>P R O C E E D I N G S</u>

1                

2      DEPUTY CLERK:  Turning to the motions hearing

3    calendar, this appears as number one on the calendar,

4    calling in the matter of Karen Norman versus Virgil

5    Rogers, CPO2497-03.

6      (Pause.)

7      DEPUTY CLERK:  Parties for the record please.

8      MS. PRICE-PARKER:  Gerri Price-Parker (phonetic

9    sp.), Community Supervision Officer in CSOSA.

10     THE COURT:  Your name again, ma'am?

11     MS. PRICE-PARKER:  Gerri Price-Parker.

12     THE COURT:  Ms. Price-Parker, good morning.

13     MS. PRICE-PARKER:  CSO.  Good morning, sir.

14     MS. McKAREN:  Kristi McKaren (phonetic sp.)

15    (indiscernible) (10:08:07) counsel.

16     THE COURT:  Ms. McKaren, good morning.  And you

17    are?

18     MS. JOHNSON-NORMAN:  Karen Johnson-Norman, sir.

19     THE COURT:  Ms. Johnson-Norman, good morning.

20     MS. JOHNSON-NORMAN:  Good morning.

21     THE COURT:  Is there a Mr. Virgil Rogers?

22     MS. JOHNSON-NORMAN:  He's not here.

23     THE COURT:  Was he served this morning?  Was he

24    served to be here?

25     MS. McKAREN:  He was served two weeks ago.  He

2

ac

1   was served the day after (indiscernible).

2            THE COURT:  Sir, who are you?

3            MR. MULLINS:  Todd Mullins, Your Honor, Ms.

4   McKaren's co-counsel.

5            THE COURT:  Okay.

6            MS. McKAREN:  He can actually answer the

7   questions about service (indiscernible).

8            MR. MULLINS:  I can, Your Honor.

9            THE COURT:  Okay, Mr. Mullins?

10           MR. MULLINS:  Yes, Your Honor.  We have a

11  related appeal in the underlying CPO for which we're now

12  seeking an extension.  We have communicated with Mr.

13  Rogers, we've served him in connection with that case,

14  most recently by fax.  We know he gets our papers.  We

15  served him with these papers.  We talked with him about

16  our plan to seek an extension beforehand and he was aware

17  of it and, and indicated to me he didn't intend to show

18  up.

19           THE COURT:  Okay, he was made -- today, from

20  what I understand, is the extension of the CPO, is that

21  not correct?  He was served notice today, is that correct?

22           MS. McKAREN:  No, he was served notice Friday,

23  two weeks ago Friday.

24           THE COURT:  Yes, who served him?

25           MS. McKAREN:  He was served by mail and by fax,

ac

1    and the fax was by agreement.  If you'd like to see I

2    brought a letter he signed (indiscernible).

3              THE COURT:  I would like to see.  This is

4    service by, by fax.

5              MS. McKAREN:  He was also served by mail to a

6    P.O. Box number that he uses for the appeal

7    (indiscernible.

8              THE COURT:  Do you know where he lives?

9              MS. McKAREN:  He claims to live in Los Angeles.

10   His pleadings come from all over the country, so we're not

11   sure.  But we have been in telephone contact with him

12   about (indiscernible).  He did tell us that he was not --

13             THE COURT:  Does he work in the District of

14   Columbia?

15             MS. McKAREN:  I do not believe so.

16             THE COURT:  And he doesn't live in the District

17   of Columbia?

18             MS. McKAREN:  Again, we're not sure where he

19   lives.  He gave us a P.O. Box number, and that's in Los

20   Angeles, that he uses, and he receives pleadings in the

21   appeal for that.  He also received pleadings from Judge

22   Leibovitz on his Motion for Reconsideration to that

23   address.

24             THE COURT:  Service by fax.

25             MR. McKAREN:  That was at his suggestion as

4

ac

1   well.

2           THE COURT:  How do we know that he received -- I

3   have a unsigned letter from somebody purporting to be

4   Virgil Rogers.  How do we know he received this fax?  How

5   does the Court know that?

6           MS. McKAREN:  Your Honor, I did have a

7   certificate of service -- I mean a fax receipt and I don't

8   see that (indiscernible) so that's what I (indiscernible).

9           THE COURT:  Well, I think under the rules it'

10  going to qualify as good service.  Do you think there's

11  some problems with the service, counsel?

12          MS. McKAREN:  I believe the mail would qualify

13  as serving.

14          THE COURT:  Do you have a return service from

15  the mail?

16          MS. McKAREN:  No, I do not.

17          THE COURT:  Okay, so you're proffering the

18  letter to serve as what?  The fax letter to serve as what?

19          MS. McKAREN:  Your Honor, I'm sorry, the only --

20  CSOSA can actually testify (indiscernible).

21          THE COURT:  No, no, no, I don't want them to

22  testify.  We have to deal with this, the service issue.

23          MS. McKAREN:  Okay.

24          THE COURT:  Before you do anything else you've

25  got to deal with the service issue.

ac

1          MS. McKAREN:  I'm sorry, he has given us a P.O.

2    Box -- P.O. number that he wants to receive court

3    pleadings at, and we've been using that for the past year.

4    I could not get a -- you can't send registered mail to a

5    P.O. Box number, so I don't have proof of service.  When

6    we discussed it with him he said, well, you can also serve

7    me by fax, and I agreed to it, he wrote it in the letter,

8    as we've (indiscernible).  Our understanding is he --

9          THE COURT:  (Indiscernible) service by fax.  An

10   unsigned service by fax.  I'm sorry, keep going, counsel.

11         MS. McKAREN:  Basically we don't know what else

12   we could do.  This man does not want to be found.

13         THE COURT:  Is he still contacting the

14   petitioner?

15         MS. McKAREN:  Contacting the petitioner in the

16   sense of the stay-away?

17         THE COURT:  Is he still -- is he in violation of

18   the CPO?

19         MS. McKAREN:  He is in violation of the CPO.

20         THE COURT:  How?

21         MS. McKAREN:  Beg your pardon?

22         THE COURT:  Counsel, I'm asking you how.

23         MS. McKAREN:  He did comply with the

24   (indiscernible) provisions on this CPO which required him

25   go to CSOSA --

ac

1          THE COURT:  Okay.

2          MS. McKAREN:  -- and be treated for -- actually

3  not even be treated, just be screened for --

4          THE COURT:  For mental health issues?

5          MS. McKAREN:  -- mental health, drug and alcohol

6  issues.

7          THE COURT:  Is he harassing or threatening the

8  petitioner, your client?

9          MS. McKAREN:  Nothing that I could prove today.

10          THE COURT:  Okay, I'm sorry, what does that

11  mean?

12          MS. McKAREN:  Well, may, may can I have Ms.

13  Johnson-Norman address that?

14          THE COURT:  That's fine.  Ma'am?

15          MS. JOHNSON-NORMAN:  Your Honor, as in the past,

16  and for the past four years, I continue to get hang up

17  calls at my home and at my work, and calls from strangers

18  asking for different persons, or just calls in general

19  where someone's holding on the line and not answering,

20  which I would respond, in turn, hang up on.

21          Your Honor, this is (indiscernible) has happened

22  for four years in a row, and it's been him for four years.

23  As the time happens when he's convicted he just changes

24  his different routine, has -- previously I got anonymous

25  letters from him that are unsigned, similar to the letter

ac

1  that you got by fax, and also that are just -- we had to

2  have them hand printed to prove that it was him for

3  another case.

4          THE COURT:  You had to have what done?

5          MS. JOHNSON-NORMAN:  The letters hand printed

6  because the letters were sent anonymously to me, so he's

7  intentionally disguising as he has in the past.  He's just

8  intentionally just disguising his contact with me.  I've

9  had people to drive by my house who, you know, I think

10  it's him, but because I can't prove it we can't do

11  anything.

12          THE COURT:  Is he on probation in another case,

13  in a criminal case, or is this the only case that's being

14  monitored by CSOSA?

15          MS. McKAREN:  At this time, yes, his probation,

16  I believe, is over, and please correct me if I'm wrong.

17          THE COURT:  Madam Probation Officer?

18          MS. PRICE-PARKER:  This is the only case, Your

19  Honor, that he --

20          THE COURT:  Okay.

21          MS. PRICE-PARKER:  -- he has open with CSOSA.

22          THE COURT:  Okay.

23          MS. PRICE-PARKER:  And it says the CPO expires

24  today.

25          THE COURT:  Okay.  Well, actually you filed the

8

ac

1    Motion to Extend, right?  So, the CPO isn't really --

2              MS. PRICE-PARKER:  No, not really.

3              THE COURT:  -- doesn't expire today.

4              MS. PRICE-PARKER:  Not really.

5              THE COURT:  Okay, what are the, what are the --

6    hold on one second.

7              (Pause.)

8              THE COURT:  Sorry, about that, 12 things at the

9    same time.  Okay, let's go back to your case.  You spoke

10   to him -- to this gentleman directly, is that not correct?

11             MS. McKAREN:  Yes.

12             THE COURT:  Okay.  And in speaking to Mr. Rogers

13   he agreed, as an officer of the Court he agreed to service

14   by fax?

15             MS. McKAREN:  Yes, it was his suggestion.

16             THE COURT:  It was his.  Did he make this

17   assertion in open court or did he just do it over a

18   telephone conversation?

19             MS. McKAREN:  It was over a telephone

20   conversation.  And, Your Honor, my understanding is since

21   this is a motion that we're not required to personally

22   serve him.

23             THE COURT:  Well, the problem is is you have to

24   serve him for the CPO, okay?  He has to be put on notice

25   on the CPO so if he violates the CPO then it could be, it

ac

1    could be a criminal offense, so therein lies the problem,

2    which is not a problem.  If you are an officer of the

3    Court you're making a representation that he said that

4    this is way he wants to be served.

5            MR. MULLINS:  Your Honor, I can, I can clarify

6    and add to that.

7            THE COURT:  Please.

8            MR. MULLINS:  In the --

9            THE COURT:  Because this has been going on for

10   awhile I take it.

11           MR. MULLINS:  It has, Your Honor --

12           THE COURT:  Okay.

13           MR. MULLINS:  -- there's quite a history here.

14           THE COURT:  Okay.

15           MR. MULLINS:  And in the, in the appeal case,

16   which is now pending in the Court of Appeals, there was

17   some, I'll just call it an issue with respect to service,

18   and I said let -- and he indicated to us that he had not

19   received some papers in the Court of Appeals case.  In

20   responding to that where I demonstrated to him that we'd

21   served him by whatever means we had I made the suggestion,

22   would you like us to serve by fax or any other way you

23   want?  And he responded in the letter that you've seen

24   saying, yes, I agree.  We'll serve him by fax, and we've

25   served him with every paper that we have served in any of

ac

1    these cases in that manner.

2                    In addition, the day before we filed our motion

3    I spoke with Mr. Rogers in order to try and work this out

4    by consent, and indicated to him our intention to file

5    this motion, talk to him about the fact that there would

6    be a hearing, and he indicated to me quite clearly that he

7    did not intend to attend the hearing.

8                    THE COURT:  Okay.  And you faxed your motions to

9    Mr. Rogers, is that correct?

10                    MR. MULLINS:  Yes, Your Honor.

11                    MS. McKAREN:  Yes, and mail.

12                    THE COURT:  And a copy of the CPO?

13                    MS. McKAREN:  Yes, the hearing notice, CPO we

14    had three motions (indiscernible), the Motion to Extend

15    and the motion asking for (indiscernible) and Motion for

16    Discovery (indiscernible), and they were sent to him.

17                    THE COURT:  And when were they sent to him?

18                    MS. McKAREN:  They were sent to him on --

19                    THE COURT:  Now, I thought, Mr. Mullin -- not

20    Mr. Mullin, I thought Mr. Rogers had a trial.  He did not

21    have a -- did he have a stalking trial?

22                    MS. McKAREN:  He did.  Actually he's had a few

23    stalking trials.

24                    THE COURT:  But he was acquitted, is that

25    correct?

ac

1          MS. McKAREN:  He was acquitted of one, convicted

2  of another.

3          THE COURT:  Involving the same person?

4          MS. McKAREN:  Yes, sir, same petitioner.

5          THE COURT:  And he's not on probation for the

6  conviction?

7          MS. JOHNSON-NORMAN:  It's expired, sir.

8          MS. McKAREN:  He actually was incarcerated at

9  the time of the initial CPO because he had violated the

10  first conviction probation by harassing this petitioner.

11          THE COURT:  The same petitioner.

12          MS. McKAREN:  Yes.

13          THE COURT:  Yes?  All right.  When did you send

14  over the motion?

15          MS. McKAREN:  It was sent on October 14th, the

16  same date it was filed.

17          THE COURT:  That's two weeks ago.

18          MS. McKAREN:  Yes.

19          THE COURT:  Okay.  Okay, and the conversations

20  you had with him, have you had personal conversations with

21  him or have they all been telephonic or?

22          MS. McKAREN:  No, they've all been over the

23  telephone.

24          THE COURT:  Mr. Mullins, you too?

25          MR. MULLINS:  That's correct.

ac

1       THE COURT:  All been over the telephone.  And

2  how did you know that it was Mr. Rogers you were speaking

3  to?

4       MR. MULLINS:  Well, he called me and represented

5  himself as such, Your Honor, and certainly had, we had

6  extensive conversations on one day two weeks ago, three,

7  totaling about two hours in which we discussed all the

8  details and history of the case, the appeal, his

9  convictions, our client, the whole history, Your Honor.

10  So, I, I think it's unlikely it wasn't Mr. Rogers that I

11  was speaking with.

12       THE COURT:  Do you have a copy of the motion and

13  the CPO, counsel?

14       MS. McKAREN:  Yes, I do.

15       THE COURT:  Can you tender it to the Court

16  please?  Oh, before we go forward, you filed a motion

17  also -- two, two different motions, I guess, also,

18  counsel.  You have the case removed to Judge Leibovitz, is

19  that correct?

20       MS. McKAREN:  Yes.

21       THE COURT:  Okay, I'm going to deny that motion.

22  And the motion for the production of the CSOSA

23  representative is here, so it's a moot point.

24       MS. McKAREN:  Exactly.

25       THE COURT:  Okay.  Are there any changes to the

ac

1    CPO?

2    MS. McKAREN:  There have been no

3    (indiscernible).

4    THE COURT:  Okay.  Madam Clerk, can you swear in

5    the petitioner please?

6    DEPUTY CLERK:  Would you raise your right hand.

7    Thereupon,

8    **KAREN JOHNSON-NORMAN**

9    having been called as a witness for and on behalf of the

10   Court, and having been first duly sworn by the Deputy

11   Clerk, was examined and testified as follows:

12   DEPUTY CLERK:  Please state your name for the

13   record.

14   MS. JOHNSON-NORMAN:  Karen Johnson-Norman.

15   THE COURT:  Ms. Johnson, you're asking this

16   Court to extend the CPO, I believe it's 2497-03, is that

17   correct?

18   MS. JOHNSON-NORMAN:  Yes, Your Honor.

19   THE COURT:  Can you tell the Court the reason

20   why?

21   MS. JOHNSON-NORMAN:  Your Honor, I am --

22   continue to be afraid because the -- Virgil Rogers

23   continued to refuse to comply with the court order to get

24   the help that I thought he desperately needs that he can

25   leave me alone and my family.  And I continue just to get

14

ac

1  things that are -- that happen that no one else can

2  possibly be doing.

3       It's been (indiscernible) (10:24:31) for over

4  four years, about four years and four months.  And things

5  just happen.  They changed in terms of I haven't seen him

6  physically that I can prove, but I've seen people like him

7  drive by in the middle of the night.  And how do I know?

8  Because I'm up in the middle of night looking out the

9  window.  I just -- there's no reason whatsoever why

10 someone would call me at home and at work and hold on the

11 phone and not say anything.  There's absolutely no reason

12 that anyone else hang out at my home and at my -- first my

13 home, my work and, quite frankly, my cell phone that we

14 have changed routinely.

15       THE COURT:  What was the nature of the

16 relationship between you and Mr. Rogers?

17       MS. JOHNSON-NORMAN:  It was a dating

18 relationship that ended four, four years and four months

19 ago.

20       THE COURT:  Four years ago.

21       MS. JOHNSON-NORMAN:  Yes, sir.

22       THE COURT:  It ended four years ago?

23       MS. JOHNSON-NORMAN:  Yes, sir.

24       THE COURT:  Okay.  And the last time you had a

25 series of hang ups or a hang up or drive by or anything of

ac

1    that nature?

2            MS. JOHNSON-NORMAN:  Last week.

3            THE COURT:  Madam Probation Officer, what -- has

4    Mr. Rogers complied at all?

5            MS. PRICE-PARKER:  No, sir.  Mr. Rogers

6    initially came in the office on November 10, 2003.  He

7    called back and told me one day that do not call his

8    father anymore in Los Angeles, California, that's what --

9    that was, like, in December 5, 2003.  And then I received

10   a -- well, my co-workers received an e-mail from him and I

11   just copied it, and it just told me to -- he'd been trying

12   to contact me, he's not sure what I need from him, and if

13   I need to speak to him I've called you -- he said he

14   called me on four occasions and he failed to reach me.

15   It's a long distance call.  He's financially burdensome,

16   and stop, you know, but basically --

17           THE COURT:  I'm sorry --

18           MS. PRICE-PARKER:  -- stop calling him.

19           THE COURT:  -- say that one more time?

20           MS. PRICE-PARKER:  Stop calling him basically.

21           THE COURT:  He said it was burdensome?

22           MS. PRICE-PARKER:  Yeah, it's financially

23   burdensome for him to try to contact me.

24           THE COURT:  Do you have anything --

25           MS. McKAREN:  I should add, Your Honor, that the

ac

1  condition of the CPO was that when he was released from

2  incarceration, in 72 hours he was supposed to report to

3  CSOSA and be screened.  That was the obligation.

4          And, Your Honor, I don't know if it's in the

5  case jacket.  Mr. Rogers wrote a letter to Judge Leibovitz

6  in which he complains, used that word, about CSOSA trying

7  to find him, that he thinks that they're invading his

8  privacy, they have no right to try to contact him, that he

9  doesn't have to do anything.  I could copy

10  (indiscernible).

11          THE COURT:  The Court will grant the motion to

12  extend the Civil Protection Order.  The Court hereby finds

13  that it has jurisdiction over the parties in the subject

14  matter, and the respondent has been provided reasonable

15  notice and opportunity to be heard.  That there's good

16  cause to believe that the respondent has committed or

17  threatened (indiscernible) of D.C. Code Title 16.

18          The Court hereby finds that -- or the Court

19  hereby orders that for a period of 12 months from the date

20  of this order the respondent should not assault, threaten,

21  harass or stalk petitioner.  You have children, ma'am?

22          MS. JOHNSON-NORMAN:  Yes, I do.

23          THE COURT:  Or her children or destroy

24  petitioner's property.  Respondent is to stay at least 100

25  yards away from petitioner's person.  Who's Percy Norman?

17

ac

1        MS. JOHNSON-NORMAN:  My husband.

2        THE COURT:  Okay.  Or Percy Norman, her home,

3   workplace, vehicle, children's school, daycare of

4   petitioner's child, Percy Norman, (indiscernible) AME

5   Church.  Is that in Washington?

6        MS. JOHNSON-NORMAN:  That's in Lanham, Maryland.

7        THE COURT:  In Lanham.  Does Mr. Rogers, when

8   he's here does he go to this church?

9        MS. JOHNSON-NORMAN:  No, sir.  But he has been

10  there after -- well, during the order was issued.

11       THE COURT:  Okay.  And petitioner's parents.  I

12  believe there's a word here, or sibling, is that correct?

13       MS. JOHNSON-NORMAN:  Or siblings.

14       THE COURT:  Siblings.  Respondent should not

15  contact petitioner or Percy Norman or the petitioner's

16  children or siblings in any manner, or children, in any

17  manner, including but not limited to, by telephone, in

18  writing or in any other manner either directly or

19  indirectly through a third party or by e-mail.

20       Respondent shall enroll in and complete a

21  counseling program for alcohol abuse, drug abuse, as

22  directed by CSOSA.  Respondent shall undergo a mental

23  health exam and, and I think it said follow any treatment

24  as directed by CSOSA.  Is that correct, Madam Probation

25  Officer?

ac

1          MS. PRICE-PARKER:  Let me check, Your Honor.

2    Excuse me please.  I believe so, sir.

3          THE COURT:  Respondent shall report to CSOSA

4    immediately.  Failure to comply with this order is a

5    criminal offense that carries a penalty of 180 days in

6    jail and/or a fine of $1,000.

7          For this motions hearing the respondent failed

8    to appear, and (indiscernible) Protection Order will be

9    issued -- or is hereby issued.  The Court finds that there

10   was proper service in (indiscernible) respondent

11   (indiscernible) and due cause for the issuance of this

12   order.

13         The respondent shall comply with all conditions

14   of this Protection Order.  The respondent has 10 days from

15   the service of this order to file a motion to set aside

16   the default judgment.  I am going to extend the order from

17   the -- is today the 28th?  28th day of October 2004 to the

18   28th day of October 2005.

19         I am going to order you, counsel, to serve a

20   copy of this to -- fax it, send it to the Post Office,

21   send it by whatever means you can to the respondent and

22   let the respondent know that unless I hear -- this Court

23   hears from him, and I'll set a status date for the 5th day

24   of November, I will issue a warrant for his arrest on the

25   5th day of November and there will be no bond.

ac

1          MS. McKAREN:  Your Honor, this -- we understand.

2     Are you extending the CPO additionally, or are you finding

3     that he violated the --

4          THE COURT:  Yes.

5          MS. McKAREN:  -- it's provisions?

6          THE COURT:  Yes.

7          MS. McKAREN:  I mean, independent of any

8     criminal or --

9          THE COURT:  Well, you haven't filed any,

10    anything criminal, okay, so I can't consider something you

11    haven't filed, other than the allegations that the

12    petitioner made and the representations made by the

13    representative of CSOSA.  But the CPO has been extended.

14    The only thing left, and you need to send him a copy of it

15    by fax and by, by fax and by mail, and to let him know

16    again that he has until the 5th of November to either make

17    himself available to this Court or I will issue a warrant

18    for his arrest that day.

19         MS. PRICE-PARKER:  Your Honor, am I needed for

20    the 5th of November?

21         THE COURT:  You know what, Madam Clerk, we're

22    going to issue the warrant for his arrest today, okay?

23    I'm going to issue the warrant for his arrest today.  And

24    so when he comes in --

25         DEPUTY CLERK:  Bond?

ac

1         THE COURT:  There's no bond.  There won't be a

2    status hearing on the 5th, Madam Clerk.

3         DEPUTY CLERK:  Yes, Judge, there won't be?

4         THE COURT:  Is there anything else?

5         MS. PRICE-PARKER:  No, thank you.

6         MS. McKAREN:  Thank you very much, Your Honor.

7         MS. JOHNSON-NORMAN:  Thank you.

8         THE COURT:  Have a seat in the courtroom.

9         DEPUTY CLERK:  Counsel, did you propose a Civil

10   Protection Order?

11        MS. McKAREN:  I'm sorry.  Yes, I did, it was

12   attached to the motion.

13             (Thereupon, the proceeding was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

√   Digitally signed by April Carroll

## ELECTRONIC CERTIFICATE

I, April Carroll, transcriber, do hereby certify that I have transcribed the proceedings had and the testimony adduced in the case of KAREN JOHNSON-NORMAN VS. VIRGIL ROGERS, Docket No. CA2497-03 in said Court, on the 28th day of October 2004.

I further certify that the foregoing 21 pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 23rd day of December 2004.

_____
Transcriber