## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

VIRGIL M. ROGERS,                      )

                                      )

                     Plaintiff,        )

      v.                           )

                                        )    Civil Action No. 06- 1186 (ESH)

KAREN JOHNSON-NORMAN,     )

                                        )

                    Defendants,     )

_____  )

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR TO STRIKE PORTIONS OF AMENDED COMPLAINT

Plaintiff Rogers opposes the defendant's motion to dismiss the amended complaint or to strike portions of it. Defendant submitted similar arguments in two prior motions; in this Court and the Eastern District of California. She was unsuccessful in those attempts and now submits an emotionally-charged and factually flawed pleading seeking outright dismissal or the omission of portions that she finds personally objectionable. Johnson's arguments, _ad_ _hominem_, or otherwise fail to satisfy the high standard necessary to dismiss a complaint at this stage, and there are no legitimate grounds to strike any part of the amended complaint. A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will prevail on the merits, but only whether he has properly stated a claim for which he is entitled to relief.[1]

Defendant's pleading is artfully drafted but ultimately fallible and unreliable, in part because of the veiled derision of Rogers throughout. She mockingly states that Rogers is "presumably suffering" without counsel to guide him through these proceedings, demonstrating her intent to sway the Court by any means, even belligerence and cynicism. Furthermore, her

pleading is replete with misinformation and unsound legal arguments and should fail on the merits.

Throughout her pleading, Johnson portrays herself as a helpless victim who has been stalked by Rogers for years, including periods when the parties were intimately involved. (Dis 2). Over the past several years Johnson has repeatedly claimed to have personally encountered Mr. Rogers on occasions when he was *hundreds or thousands of miles away*; even impossibly claiming to have seen him at her home while he was under pre-trial detention on another of her fabricated sightings. She repeatedly denigrates Mr. Rogers in her pleading and rejects even his right to seek relief against her in the courts for her wrongdoing. She has predictably characterized this civil action as further harassment. Though Rogers hasn't initiated contact with defendant in years, she clings to her false claims of stalking *ad nauseam*, despite facts to the contrary. Johnson's prior testimony declaring her intent to contact President George W. Bush concerning Mr. Rogers, and her contacts with the U.S. Congress are illustrative of her obsessive state of mind with respect to inflicting harm upon him. Her efforts are quite transparent - to garner the Court's absolute sympathy for her while attempting to inculcate scorn and contempt towards Plaintiff Rogers. This effort is evident throughout her pleading.

The truth is more sobering. Johnson is a member of the District of Columbia Bar. She is keenly aware that the factual allegations in the amended complaint violate her professional and ethical obligations under that body (and the law). She has never denied the fact that she knowingly lied to District Judge Gerald Bruce Lee as well as making repeated perjured statements in D.C. Superior Court, and in other testimonial forums. *Such conduct should gravely concern this Court.*

---

[1] Woodruff  v. DiMario, 197 F.R.D., 191, 193 (D.D.C. 2000).

This Court assuredly doesn't take perjury lightly, and Johnson should be held to the standards expected not only of a litigant but a D.C. Bar member. She shouldn't be allowed to obstruct this Court as she's done in prior courts through prevarication; reducing these proceedings from fact finding to drama. Defendant's prior instances of providing misinformation to law enforcement and courts may be instructive in this case. Plaintiff respectfully urges the Court to disallow any misleading maneuvering, and he requests an admonishment reminding the defendant of her obligations to refrain from falsities or any other artifice contrary to truth.

The overall theme of Johnson's pleading is her contention that it's barred by collateral estoppel but there are no prior judgments that preclude this civil action. She fails to interpret the liberal pleading standard inherent in the federal rules, which requires only a plain and concise statement. The plaintiff need not plead the elements of a *prima facie* case in the complaint. *See* <u>Sparrow v. United Airlines Inc</u>. 216 F3d 1111 (D.D.C. 2000). Further, Johnson claims that numerous counts of the complaint are barred by the D.C. statute of limitation.

Lastly, defendant claims the amended complaint is "salacious, superfluous, unsubstantiated, and demonstrably false" (Dis 1) and contains over a dozen paragraphs she finds objectionable. As an example, she outrageously takes exception to the complaint's appropriate depiction of the parties' relationship as a casual sexual relationship, apparently preferring a more substantive description. It is instructive for this Court that defendant would waste judicial resources to object to the characterization of her prior relationship with Rogers, a man she purportedly detests. Plaintiff has used no objectionable language in his pleadings and has maintained decorum in his depiction of Johnson and her conduct. She provides no evidence proving these portions are false, so the Court to should leave his amended complaint intact.

## COUNTERSTATEMENT OF DEFENDANT'S FACTUAL SUMMARY

### A.    Background Facts

Defendant Johnson's pleading is replete with misstatements.

- She points out the settlement in the prior civil suit in Eastern Virginia District Court, but misleads this Court when she claims that Mr. Rogers agreed to pay her $1000 **to settle this suit.** In reality, the $1000 was a sanction by the Court payable to Johnson's lawyer and wasn't a part of the settlement. She also fails to disclose that she countersued Mr. Rogers for $10,000,000 for allegedly stalking her. Her irrationally excessive claim for damages may be instructive to this Court. The primary reason Rogers settled the prior suit was because he learned that his attorney was undergoing suspension proceedings before the Virginia Bar.  (Dis 2)

- Defendant cynically describes Mr. Rogers' efforts to oppose her numerous criminal and civil allegations over the past 6 years as "serial appeals and legal maneuverings."  Admittedly her goal has always been Rogers' imprisonment (in furtherance of ruining his life), which was an obvious incentive for him to vigorously oppose her efforts. Because of Johnson's unceasing efforts, Mr. Rogers was convicted in 2001 of misdemeanor attempted stalking based on defendant's perjured testimony. He has never been charged with any felony and has never been criminally convicted aside from that instance. (Dis 3)

- Defendant falsely claims that Rogers refused to comply with the 2003 CPO. Mr. Rogers has <u>never</u> refused to obey any court order, and he has never refused to submit to counseling**.**  The CPO required him to report to CSOSA for screening, which he did; and to follow any counseling directed by CSOSA. However, CSOSA never contacted Mr. Rogers in California nor directed him to attend any specific counseling program - therefore he was never in default of CPO. Defendant has falsely claimed otherwise in order to portray Mr. Rogers as disrespectful towards the judicial system and its authority.  (Dis 3)

- Defendant falsely claims that Mr. Rogers told her attorney in October 2004 that he refused to attend a CPO extension hearing. Mr. Rogers <u>never</u> uttered these words. Defendant's lawyer lied in open court when she claimed to have called Mr. Rogers about the matter, *though she didn't have his phone number*. (See: CPO extension transcript).   Mr. Rogers was <u>never</u> notified of the CPO extension hearing in 2004 until **after** it had occurred when defendant then mailed him a copy of the extended CPO, which belies her false claim that he had refused to provide his address to her or the trial court**.**  (Dis 3)

- Defendant <u>falsely</u> claims that Mr. Rogers agreed to facsimile service in Superior Court proceedings relative to the CPO as defendant's counsel proffered at the extension hearing. In reality, Mr. Rogers agreed only to facsimile service relative to proceedings in the D.C. Court of Appeals. (Dis 4)

- Defendant's pleading acknowledged that she falsely testified at the CPO extension hearing in October 2004 (which was *ex parte*) to receiving "silent" calls from someone she claimed was Mr. Rogers. On that basis, and the foregoing red-herring about his allegedly refusing to attend counseling, she claimed to possess grave fear requiring an additional 12 month CPO. (Dis 4)

- Defendant falsely claimed that Rogers told Jerri Price-Parker of CSOSA ("Parker") that he refused to comply with the CPO. In reality, Mr. Rogers has <u>never</u> spoken to Parker and never told anyone that he refused to comply with any court order. He notified CSOSA in writing that he lived in California and that any counseling they directed would need to occur in that state, but he was never contacted thereafter.

Defendant's pleading claims that Mr. Rogers' story has been "*received, vetted, and ultimately rejected by several adjudicative bodies.*" (Dis 4)  This is obviously meant to demean Rogers with an implied history of futility before courts of law, but is belied by *inter alia* the jury verdict acquitting him in 2003, the several criminal charges disposed of favorably for Mr. Rogers in Maryland, and the denial of numerous petitions filed by Johnson to have Rogers held in contempt. Whenever her allegations are *fully and fairly litigated* in a court of law, defendant fails miserably, thus her stalking tales have been vetted and rejected by the judicial system.

## <u>ARGUMENT</u>

Despite this third request, a dismissal, pursuant to Fed. R. Civ. P. 12(b) (6) will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Defendant attacks the amended complaint as largely ambiguous but all that the Federal Rules

require of a complaint is that it contains a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Dura Pharmaceuticals Inc. v. Broudo, 544 U.S. 336, 346 (2005). Given the simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).   Under Rule 12(b) (6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Sheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Consistent with this very liberal pleading standard, a court should not use Rule (12) (b) (6) to weed out what appear to be factually deficient cases.  *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).

## I.      Collateral Estoppel Does Not Apply

Defendant erroneously argues that collateral estoppel precludes this civil action because in 2003 she was able to obtain a civil protection order against Mr. Rogers. She argues this in spite of the fact that a criminal jury acquitted him of the same alleged conduct for which she obtained the CPO. Moreover, the CPO was granted following a hearing totally devoid of any testimony and Mr. Rogers wasn't allowed to speak in opposition.  (See CPO transcript)

Most importantly, defendant hasn't cited any authority from any state or federal jurisdiction which has held that the issuance of a protective order precludes subsequent litigation for fabricated allegations used to obtain it. The primary case cited by defendant on collateral estoppel is Bryson v. Gere, 268 F. Supp. 2d 46, 54 (D.D.C. 2003), which is inapposite.  In that case the plaintiff sought to modify an arbitrated award, but the court held that collateral estoppel limited its potential role because each party had agreed to binding arbitration. Clearly, this case

was not similar in any way to the instant case, in that there was no agreement to forestall future litigation. Defendant unilaterally sought a CPO.

Collateral estoppel, or issue preclusion, prevents parties from relitigating *identical issues* that have been fully litigated and adjudicated. It seeks to conserve judicial resources, protect citizens from multiple lawsuits, and reduce the likelihood of inconsistent verdicts. *This Court must balance those concerns with the importance of safeguarding plaintiff's opportunity to present its case*. Montana v. U.S., 440  U.S. 147 (1979).  Defendant's collateral estoppel argument is inapplicable. The CPO was never fully and fairly litigated and since Johnson initiated it, she isn't entitled to immunity from suit.

Mr. Rogers has a right to seek relief from defendant for using perjured statements and false allegations in obtaining the CPO.  If she were allowed to obtain a dismissal on collateral estoppel grounds, the Court would essentially be granting her immunity from suit for the reckless conduct associated with filing false criminal charges or abusive civil injunctions and would deny Mr. Rogers or any future aggrieved party recourse to seek redress before the federal courts.

Case law on issue preclusion in this jurisdiction requires that an issue must have been (1) *actually litigated*; (2) determined by a valid, final judgment on the merits; (3) *after a full and fair opportunity for litigation*; (4) under circumstances where the determination was essential to the judgment, and not merely dictum. Wash Med Cir. V. Holle, 573 A.2d 1269, 1283 (D.C. 1990). Issue preclusion must not work a basic unfairness to the party bound by the first determination. Yamaha Corp. of America v. U.S. 295 U.S. App. D.C. 158, 961 F.2d 245, 254 (D.C. Cir 1992).

The Supreme Court has held collateral estoppel to apply only where issues are *identical* and where the party in the earlier decision affected by the claimed estoppel had a *full and fair opportunity* to litigate that issue in the earlier case. (See: Allen v. McCurry, 449 U.S. 90 (1980)).

In the instant case, the 2003 CPO was never fully and fairly litigated (See CPO transcripts) and the issues in controversy are not identical. In the case of the CPO, the statute is remedial and seeks to protect family members from violence. The court may issue a CPO if it merely finds *good cause* to believe a respondent committed or *threatened* an intrafamily offense. In this instance, the trial court issued the CPO without requiring any sworn evidence and without allowing Mr. Rogers to be heard. Additionally, the CPO and the instant case are clearly not identical issues of either fact or law.

Defendant claims dismissal is appropriate when a defense of collateral estoppel are clear from the complaint. [2] The motion in that case was not granted on collateral estoppel grounds but instead primarily involved well settled issues of employment law in this jurisdiction that supported the dismissal. Not only is that case wholly inapposite to the instant case, but Mr. Rogers asserts that collateral estoppel is not clear from the face of his complaint as the defendant alleges. Finally, she claims that the allegations at issue in this complaint have been "fully litigated in multiple adjudications," but provides no evidence for this disingenuous statement other than the 2003 CPO. There have not been multiple adjudications, and none have been fully litigated as required by the case law. (Dis 7)

Mr. Rogers has not attempted to relitigate issues settled under the 2003 settlement agreement. He mentions those issues as background information. However, the defendant has cited no case law holding a settlement agreement as a "fully litigated" valid final judgment for purposes of asserting a collateral estoppel defense. Though Mr. Rogers isn't now seeking relief on any grounds specifically claimed on the prior civil action, he doesn't believe the settlement precludes him from averring them in his fact section. *The issue of defendant's false statements to*

---

[2] Wilson v. Prudential Fin., No. 03-2313, 2004 U.S. Dist. Lexis 21786 at *7 (D.D.C. Oct. 18, 2004)

*District Judge Lee should be ripe for exploration as cited in the complaint*. A settlement agreement between the parties cannot relieve a litigant (and member of the Bar) of obligations to be truthful and honest before the federal judiciary. Mr. Rogers urges this Court to fully reject the claim that defendant's false statements to Judge Lee are off-limits in this civil action because of the prior settlement and he should be allowed to cite and discover her false judicial statements as instructive for prosecution of the instant civil action.

## II. The CPO at Issue Does Not Constitute a Judgment Precluding Further Civil Action

D.C. Code §16-1001 et seq. ("Act") governs the issuance civil protection orders in D.C. and is remedial in nature and must be liberally construed in furtherance of its remedial purpose. [3]

### A.       Rogers was never given a full and fair opportunity to litigate the CPO

Mr. Rogers **never** had a fair opportunity to litigate the 2003 CPO (nor the extension entered a year later) pursuant to D.C. Code §16-1005 (c). [4] Superior Court Rule of Domestic Violence 9 (SCR-DV 9) describes the hearing requirements for a CPO. The 2003 CPO was issued against Mr. Rogers in violation to the statute and the hearing violated basic rules of due process, and wasn't statutorily valid.

Primarily, there was no testimony offered at the CPO hearing because the trial court didn't require Johnson to meet her burden of proof through sworn evidence. [5] Secondly, Mr. Rogers wasn't provided an opportunity to be heard at the hearing. When he requested an

---

[3] Cruz-Foster v. Foster, 597 A.2d 927, 930 (D.C. 1991).

[4] If, after hearing, the Family Division finds that there is good cause to believe the respondent has committed or is threatening an intrafamily offense, it may issue a protection order.

[5] SCR-DV(9)(b)(1) In all fact-finding hearings the testimony of witnesses shall be taken under oath or affirmation.

opportunity to speak,[6] the trial court refused to permit him to be heard in violation to the statute.[7] (See: transcript of  CPO hearing)

Without submitting sworn evidence at the hearing, Mr. Rogers strongly believes that defendant failed to meet her burden of proof.[8]  Superior Court Rules requires evidence to be submitted during the hearing,[9] after which the court was obliged to provide written findings of fact and conclusions of law.[10] The trial Court was also obliged to allow Mr. Rogers to be heard in response to evidence adduced at the hearing prior to granting defendant a valid CPO.[11]

**B. The CPO was invalid because it was entered without subject matter jurisdiction**

The CPO petition was submitted on or about July 31, 2003, and by law the court could issue a 14 day temporary protection order ("TPO") if it found that petitioner Johnson was immediately endangered.[12]  Mr. Rogers was in jail so Johnson was obviously not immediately

---

[6] Respondent Rogers:          May I speak, your honor?

Trial Judge:                         No

[7]  SCR-DV (9) (b) (3) Both the petitioner and the respondent may present evidence, including their own testimony and testimony of other witnesses, and physical evidence.

[8] SCR-DV (9) (b) (4) (a) Evidence that is competent, material and relevant shall be admissible at fact-finding hearings.
[9] SCR-DV (9) (b) (6) If the Court finds in a fact-finding hearing that there is good cause to believe the allegations in the petition, the Court may issue the civil protection order.

[10]  SCR-DV (9) (c)  At the conclusion of a contested hearing, the Court shall make those findings of fact essential to the ultimate conclusion of law.

[11] SCR-DV (11) (e)  The Court may issue a civil protection order if, after a hearing, the Court finds that there is good cause to believe the respondent has committed or is threatening an intrafamily offense.

[12] D.C. Code §16-1004 (d) If, upon the filing of a petition under oath, the Division finds that the safety or welfare of a family member is immediately endangered by the respondent, it may, ex parte, issue a temporary protection order of not more than 14 days duration and direct that the order be served along with the notice required by this section; provided, that a petition for civil protection be filed together with the petition for a temporary protection order and a hearing be commenced on the petition for civil protection prior to the expiration of the temporary protection order.

endangered but nevertheless she was granted a TPO on that date.[13]  Subject matter jurisdiction

remained valid for 14 days by which time the CPO hearing must have commenced prior to the

expiration of the TPO.[14]  By law, the trial court could only extend the TPO once for a maximum

of 14 additional days, otherwise it did not retain subject matter jurisdiction to hear the matter or

issue a valid CPO.[15]  In this instance, the TPO was issued on July 31, 2003  (See TPO) but the

hearing on the CPO didn't occur until October 29, 2003, or 91 days later which was significantly

past the statutorily permissible period in CPO cases. Mr. Rogers never consented to such a

lengthy delay, and in any event the CPO was thus an invalid judgment entered without a full and

fair opportunity for litigation and without subject matter jurisdiction.  **On page 1 of the written

CPO issued on October 29, 2003 the Superior Court failed to check the required box

indicating it claimed properly held jurisdiction.**[16] (See generally CPO)  Mr. Rogers was

clearly denied due process during this entire process, and thus could not have had a full and fair

opportunity to litigate the CPO judgment. Though Plaintiff did not prevail on appeal, it should be

obvious to this Court that he was subjected to a CPO injunction in which the trial court lacked

subject matter jurisdiction, failed to provide him an opportunity to be heard, and failed to require

---

[13] SCR-DV (7A) (b) Scope of Temporary Protection Order**.** If the Court determines from testimony or from the petition that the respondent immediately endangers the safety or welfare of a family member, a temporary protection order may be issued ex parte. A temporary protection order shall, by its terms, be of no longer than fourteen (14) days duration from the date it is issued.

[14] SCR-DV (7A) (c) Scheduling of Hearing on Petition for Civil Protection Order**.** In cases when a temporary protection order is issued, the hearing on the petition for civil protection order shall be scheduled for a date on or before the expiration of the temporary protection order.

[15] SCR-DV (7A) (e) Reissuance**.** The Court may reissue a temporary protection order for a period no longer than fourteen-days (14) duration from the date it is reissued.

[16] "The Court hereby finds that it has jurisdiction over the parties and subject matter, and the Respondent has been provided reasonable notice and opportunity to be heard. That there is good cause to believe that the Respondent has committed or threatened an intrafamily offense within the meaning of D.C. Code (Title 16-1001)" (See Exhibit 1).

Johnson to meet any burden of proof to prevail at the hearing. As such, that proceeding is wholly

inadequate for her to claim collateral estoppel in order to dismiss the instant civil action.

III.    **Amended Complaint Fully Relates Back to the Original Complaint**

While attacking the amended complaint as factually distinguishable, and therefore

seeking to have it dismissed for not relating back to the original complaint, defendant

acknowledged that the theme of the two complaints are consistent (Dis 9).  In fact, the defendant

omits a significant portion of Fed. R. Civ. P. 15 (c)(2) which allows for an amendment to relate

back to a prior pleading. (Dis 9).  The rule actually allows allegations in an amended complaint

to relate back to the date of the original complaint if the claims asserted in the amended pleading

arose out of the conduct, transaction, or occurrence set forth or *attempted to be set forth in the*

*original pleading*. Defendant conveniently omitted the final portion explaining that the Rule

encompasses occurrences attempted to be set forth in the original pleading.

Defendant objects to claims in the Amended Complaint about her false statements in

pursuit of the CPO in 2003 while the original complaint primarily cited her false statements in

pursuit of criminal charges (Dis 9). The false statements which the defendant made to police and

in the criminal trial are nearly precise to the false statements relied upon in granting the CPO the

very next day following the criminal acquittal. These are essentially the same statements and the

testimony given by defendant at the criminal trial was purportedly the very basis for the trial

court granting the CPO without requiring any sworn evidence at the CPO hearing. Defendant's

false criminal and civil statements are not only intertwined with each other, they are

indistinguishable and her arguments about any variations in the emphasis from the original to

amended complaint are immaterial.

Clearly, each set of allegations arose out of the same conduct, transaction, or occurrence Mr. Rogers' original complaint set forth or *attempted to set forth as required* by Rule 15. Any variations can obviously be attributed to the broad scope and breadth of the original complaint since it targeted several governmental entities and actors in their professional and personal capacities. Some of these actors were co-conspirators with Defendant Johnson, and have conceded to violations of the law when they agreed to a substantial settlement pursuant to D.C. Code § 2-402 which only permits a settlement when wrongdoing has been committed. Once this settlement occurred, Plaintiff shortened the amended complaint to the more clearly identifiable wrongful acts committed by Johnson. Nevertheless, they still relate back to the overall course of conduct alleged against her in the original complaint.

Defendant avers in her pleading that the claims related to the CPO in the amended complaint are "new allegations" based on "separate and distinct transactions and occurrences" (Dis 10). Despite her confident assertion to this effect, it is totally erroneous. Defendant attempts to play a game on both sides of the fence in her motion to dismiss. She claims that the Amended Complaint is summarily precluded from litigation because of collateral estoppel based on the CPO while at the same time rejecting the statements made in pursuit of the CPO as having any relation to any legitimate claims on the Amended Complaint. Mr. Rogers urges the Court to recognize this argument and rightfully reject it out of hand.

### A.    Count IV for Abuse of Process is Not Time Barred

Defendant claims that Count IV for Abuse of Process is time bared**. **(Dis 10) Foremost**,** except for claims that have an enumerated statute of limitations on their own, the claims are presumed to be subject to the three-year limitation D.C. Code §12-301 (8). Hawkins v.

13

Greenfield, 797 F.Supp. 30, 34 (D.D.C. 1992). The original CPO was issued on or about October 29, 2003, which is less than 3 years from the date of the instant pleading. Similarly, the course of conduct surrounding the defendant's wrongful conduct can be directly linked to her conduct, transactions, or occurrences set forth or attempted to be set forth in the original pleading. So even if the Court were to find that this course of conduct began on or about August 1, 2003, it certainly continued unabated throughout the entire period of the CPO because she never requested that the trial court withdraw or vacate the CPO. In fact, she fought vigorously for the CPO on appeal, even after the original CPO had expired. Such conduct by the defendant belies her argument that a claim for abuse of process was time barred. Respectfully, this claim should be rejected .

B.       **Count VII for Perjury is Not Time Barred**

Defendant curiously claims in her pleading that paragraphs 104 and 105 of the Amended Complaint should be dismissed as time barred if this Court were to deem his Amended Complaint as not relating back to the original complaint (Dis 10). However, Mr. Rogers believes the Amended Complaint relates back sufficiently to the original complaint pursuant to Rule 15.

Paragraph 104 of the Amended Complaint seeks relief against Johnson for her statements in pursuit of the CPO (issued October 29, 2003) falsely claiming that Rogers had committed criminal behavior. As previously stated, her efforts were a continuing course of conduct which didn't cease throughout the CPO process, including the truncated hearing and on appeal. Paragraph 105 of the Amended Complaint seeks relief against Defendant Johnson for her clear and direct perjury against Rogers from October 20-29, 2003 in his criminal trial. Clearly, this is not time barred by any statute of limitations since 3 years hasn't passed from this conduct until

the date of the instant pleading on the matter.

III.   **Dismissal is Unwarranted under Rule 12(b)(6)**

Defendant Johnson again presses the argument that Mr. Rogers has failed to state a

cognizable claim, and she includes Counts I, IV, V, and VI under her overly broad and erroneous

efforts at dismissal under Rule 12(b) (6). Mr. Rogers believes he has properly pleaded a case

detailing some of the conduct committed by defendant Johnson, though she engaged in a broad

course of conduct and a conspiracy, of which numerous actors have settled and thereby

conceded.  In any event, District Courts should not weed out what appear to be factually

deficient cases using Rule 12 (b) (6)  *Krieger* F.3d 134 (D.C. Cir. 2000).

A.   **Fair Credit Reporting Act Claim is Properly Pled and Should Remain**

Defendant Johnson has not denied that she committed illegal acts to obtain Mr. Rogers'

credit report. She merely complains that he has not pled his allegations properly. This is a red-

herring. The Amended Complaint clearly identifies that Johnson obtained unauthorized

information from a credit agency about Mr. Rogers through her employment with Wells Fargo.

Were she totally and completely innocent or ignorant of this illegal behavior, it would be

immaterial how it was pled because she could truthfully deny it and the discovery process would

bear out such facts. Instead, Johnson determines to muddy the Court with legal maneuvering.

The Amended Complaint was only required to provide a short and plain statement of the claim,

which gave Johnson fair notice of the claim and the grounds upon which it rests. Kingman Park

Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. 2003).

Such simplified notice pleading is made possible by the liberal opportunity for discovery

and other pretrial procedures established by the Rules to disclose more precisely the basis of both

15

claim and defense and define more narrowly the disputed facts and issues. <u>Conley</u>, 355 U.S.  Mr.

Rogers fully intends to discover the full scope and nature of defendant's intrusion into his private

credit and header records and if necessary seek leave from the Court to subpoena records

relevant to this illegal act. Surely, defendant Johnson, and any abettors, acting as an unauthorized

agent of Wells Fargo will be subject to subpoenas and depositions, including her chain of

command if such actions were conducted directly via her employment.  There is no requirement

under the Rules or the FCRA that Mr. Rogers spell out with overwhelming detail how he

discovered the illegal intrusion by defendant and it would be absurd for Mr. Rogers to have

attached his credit report to the Amended Complaint (as suggested by defendant at Dis 11). That

would have given her more opportunity to intrude and violate the law.

Defendant claims that it's "entirely possible that Rogers' claim under the FCRA is barred

by the Act's statute of limitation" (Dis 11). Such a statement is not a proper basis to submit a

motion to dismiss. Mr. Rogers didn't definitively discover this intrusion by defendant until 2006

when he pled it, which is well within the statute of limitations. When a defendant is unclear

about the meaning of a particular allegation in the complaint, the proper course of action is not to

move to dismiss but to move for a more definite statement.[17] Mr. Rogers believes he has properly

pled his claim under the FCRA and that it would be inappropriate to dismiss this claim. He also

opposes defendant's alternate request for a more definite statement, since she has been given fair

notice under Rule 8(e) as to the conduct alleged, specifically that she used her position at Wells

Fargo (a federal financial institution) to obtain federally protected information from Mr. Rogers

for her own personal use since he didn't authorize her or Wells Fargo to obtain it.  To prevent

---

[17] <u>Am. Nurses' Ass'n v. Illinois</u>, 783 F.2d 716, 725 (7th Cir. 1986) (citing <u>United States v. Employing Plasterers Ass'n</u>, 347 U.S. 186, 189 (1954).

PLAINTIFF OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information sought may be obtained in discovery. <u>Latch String, Inc. v. The Rouse Co.</u>, 1977 U.S. Dist. LEXIS 18086, at *2-3 (D.D.C. Jan 4, 1977). For the foregoing reasons, Mr. Rogers respectfully urges this Court to deny defendant's request for both dismissal and a more definite statement on Count I or any other counts.

### B.    Rogers Properly Stated A Claim For Abuse Of Process

Defendant claims Mr. Rogers has failed to state a claim for Abuse of Process under Count IV and V, specifically because she claims he didn't sufficiently cite the ulterior purpose other than achieving the intended goal of the process in question. (Dis 12). Mr. Rogers has pled the claims of Abuse of Process sufficiently given the available information. He cited the requests cited by the defendant herself on her CPO petition, which clearly are not enumerated as any legitimate purpose under the Intrafamily Offense Act. The parties had not had contact in 3 years at the time of the petition being submitted to Superior Court, however the stated purpose of the Act is to protect family members from domestic violence. It's highly dubious to classify these parties as family members under any definition in the Act and moreover, Mr. Rogers had not encountered the defendant in the District of Columbia in the prior 3 years.

It is not necessary for the plaintiff to plead all the elements of his *prima facie* case in the complaint. <u>Swierkiewicz</u> 534 U.S (2002) nor must he "plead law or match facts to every element of a legal theory." <u>Krieger v. Fadley</u>, 211 F.3d 134, 136 (D.C. Cir 2000). Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Warren v. District of Columbia</u>, 353 F.3d 36, 37 (D.C. Cir. 2004).

Cynically, defendant assumes that Rogers will cite her avowed goal to ruin his life as her ulterior motive. (Dis 13). Given the totality of the circumstances, the Court can likely infer this ulterior motive given the obsessive conduct by defendant over the years before law enforcement and courts of law. However, there is a more sinister inference that the CPO process was used to coerce or dissuade Mr. Rogers from filing the instant civil action against defendant. Defendant certainly recognized the weakness of the criminal charges she had filed against Mr. Rogers (since they were fabricated) and discerned that it would fail miserably. By obtaining a CPO she sought to dissuade Mr. Rogers from exercising several legitimate and constitutionally protected rights such as *inter alia* (1) his freedom of Religion with respect to Reid Temple AME Church (in Maryland, outside of Superior Court jurisdiction); (2) his right to possess a firearm (denied once a CPO is issued); (3) his right to move about freely in the District of Columbia; (4) and his right to seek medical care at the Washington VA Hospital (Rogers is a veteran). She apparently sought to use the CPO to force Mr. Rogers to attend counseling as a form of harassment. None of these provisions are valid purposes of a CPO, and perverted the judicial system.

The CPO petition itself is insightful because it alleges conduct which defendant ascribes to Mr. Rogers under the guise of "anonymous" without providing any evidence or corroboration whatsoever. She appeared to have a myriad of motives in abusing the CPO process, and the significant point of fact is that none of these reasons can be linked to the purpose for the Intrafamily Offense Act: to protect family members from domestic violence. Moreover, Mr. Rogers has never hit or threatened Johnson – making her CPO petition seem even more dubious and unwarranted.

Defendant cites Scott v. District of Columbia, 101 F.3d 748 (D.C. Cir 1996) to bolster her argument about the two Abuse of Process Claims. Foremost, this case is inapposite because it involved police officers acting within the legal scope of their authority, and they were

subsequently granted some immunity which is wholly inapposite to the defendant's conduct when she falsified a petition under penalty of perjury and committed further acts to obtain an unwarranted injunction.  In <u>Scott</u>, the Court didn't dismiss the claim before trial and allowed the jury to determine the facts relevant to the alleged abuse of process, an outcome the defendant in the instant case urges against. In <u>Scott</u>, the court cited  <u>Neumann v. Vidal</u>, 710 F.2d 856 (D.C. Cir. 1983) which reinforced the notion that attempting to dissuade an action is one of the prohibited acts held applicable under an abuse of process claim. In order to prevail on a claim for abuse of process, there must be a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge. <u>Morowitz v. Marvel</u>, 423 A.2d 196, 198 (D.C. Cir. 1980).   The Intrafamily Offense Act doesn't contemplate the foregoing provisions which were requested and ultimately granted in this case, particularly without contacts with this jurisdiction.

C.      **Defendant's False Reporting of a Crime Subjects Her to Civil Liability**

Defendant claims that because Count VI of the Amended Complaint cites D.C. Code §5-117.05, which is a criminal statute, Mr. Rogers has failed to state a proper claim.  However, a litigant may sue a perpetrator for liability of assault, battery, and a myriad of other criminal statutes. Likewise, Johnson should be liable for her wrongdoing, which constituted a tort against Mr. Rogers.

In resolving a 12(b) (6) motion, the, court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. <u>Macharia v. United States</u>, 334 F.3d 61, 64, 67 (D.C. Cir. 2003).  The federal rules afford a plaintiff, and particularly one with *pro se* status, broad discretion in framing his claims for relief. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) .  Accordingly, the court must hold a *pro se* complaint to a less stringent standard than formal pleadings drafted by trained legal counsel.

*Id*. Given this standard, Mr. Rogers has properly given notice to defendant that he seeks redress for her false reporting of crimes to police which ultimately led to his arrest and trial in Superior Court.

**IV.      None of the Counts Are Barred Under the Statute of Limitations**

> **A.      Emotional Distress Claims Aren't Derived From a Time Barred Claim**

Defendant erroneously claims that the intentional and negligent emotional distress causes of action in the Amended Complaint are time barred due to the one-year statute of limitations because she alleges that they are rooted in the malicious prosecution claims from the original complaint.  Defendant Johnson misstates the essence of the emotional distress claims. They are not intertwined with nor are they derived from the malicious prosecution claim on the original complaint. The emotional distress claims are derived from the entire course of conduct that the defendant undertook when she began to report false crimes to law enforcement and the Superior Court which led to him suffering incarceration, a criminal trial, and the hearing for a civil protection order. More accurately, the false reporting of a crime, the perjury, the false imprisonment, and abuse of process that was undertaken by Johnson were the precursors to the emotional distress claims. D.C. Code §12-301 (4) provides a one year statute of limitation only for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, and false arrest. Without definitively tying either of the emotional distress claims to one of these torts, and demonstrating that they are "intertwined" then the argument used by Johnson must fail.  Her argument that it is definitively tied to malicious prosecution is conclusory and the Court should reject it since she has not proven or persuaded the Court that the one year statute of limitations should apply to either emotional distress claim.

> **B.      Invasion of Privacy Claim is Not Derived From Defamation**

Defendant correctly notes that invasion of privacy claims have often been held to be defamation *type* claims (Def_Dis 15). However, they are distinguishable from defamation claims. Invasion of privacy is governed by a distinct body of law. There are significant differences between an action for defamation, which compensates the plaintiff for damage to reputation, and invasion of privacy, which compensates the plaintiff for the **mental distress** associated with exposing private matters to public view, the heart of both torts is the harm that plaintiff suffers from others being informed of a fact which was actually false and defamatory. Lohrenz v. Donnelly 223 F. Supp 2d 25, 35-36 (D.D.C. 2002). In order to prevail on a claim of invasion of privacy for false light, a plaintiff must show (1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be highly offensive to a reasonable person. Kitt v. Capital Concerts Inc., 742 A.2d 856, 859 (D.C. 1999).

In the instant matter, the defendant is wrong that the one year statute of limitations apply because it is clear from the Amended Complaint that the intentional and negligent emotional distress counts are underlying the invasion of privacy. As this Court held in Lohrenz, it is the mental distress that distinguishes the invasion of privacy from the defamatory action that caused the harm. In the case of the defendant's conduct, she continued her course of conduct until at least October 2004, which was less than a year from the initiation of the original civil action. In a hearing in October 2004 she lied to Judge Rigsby by testifying to him in a public forum that Mr. Rogers had called her and had behaved contemptuously towards the trial court by calling her, failing to appear at the hearing (which he was unaware of) and failing to attend counseling (which he had never been directed to attend.) Such false light reporting certainly meets the standard of invasion of privacy. Moreover, her testimony at the criminal trial, which underlies the emotional distress claims also led directly to the invasion of Mr. Rogers' privacy.

Alternately, Mr. Rogers presses his invasion of privacy arguments upon other legal theories that are clearly warranted based upon the various acts of the defendant. The D.C. Court of Appeals has held that invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing separate interests capable of being invaded. <u>Wolf v Regardie</u>, 553 A.2d 1213, 1216-17 (D.C. 1989).   Mr. Rogers has also properly pled invasion of privacy against the defendant due to intrusion of seclusion. The court noted in <u>Wolf</u> that unlike some other types of invasion of privacy, intrusion "does not require as an essential element the publication of the information obtained" Id. In fact it is the nature of the intrusion which initially fixes liability. Therefore, under a plausible alternative theory pled in the Amended Complaint, defendant Johnson has committed an invasion of privacy by both false light reporting and intrusion by seclusion. The latter is not tied to a defamation theory because it doesn't require that false or defaming information be disseminated. However, given at least the false in court statements, of a perjurious nature in October 2004, Johnson has committed both acts and discovery will tend to narrow the focus of her wrongful actions.  The primary focus is that defendant's conduct would have been offensive to a reasonable person.

**V.      No Portion of the Amended Complaint Should Be Stricken**

Defendant Karen Johnson-Norman has submitted an outrageous allegation that portions of the Amended Complaint is "at best salacious and offensive, and at worst categorically and demonstrably-false." (Dis 16).  Her grounds for making such a claim are highly dubious. Motions to strike are a **<u>drastic</u>** remedy which courts generally disfavor.  <u>Stabilisierungsfonds Fur Wein  v.  Kaiser Stuhl Wine Distrbs. Pty. Lty</u>., 647 F.2d 200, 201 (D.C. Cir 1981).  Defendant simply makes a conclusory statement that portions of the Amended Complaint warrant an order to strike, which Mr. Rogers respectfully asks this honorable Court to deny.

A.    **No Portion of the Amended Complaint is Immaterial or Impertinent**

The course of conduct undertaken by defendant to bring harm against Mr. Rogers is broad and complex. The Amended Complaint provides preliminary facts and background necessary to understand the procedural history of other relative judicial proceedings and those specifically related to the claims in the instant civil action. Johnson has requested that the Court consider or take judicial notice of numerous documents and proceedings that occurred prior to the instant civil action, and now wants this Court to find information which Mr. Rogers has included about those same proceedings immaterial. Her position is disingenuous. Paragraphs 9,13,17-18,20,24, and 103 generally detail false or outrageous statements that Johnson has made during prior judicial proceedings. It bears directly upon her credibility and provides relevant background information bearing on the resolution of the current civil action.

Defendant even claims that two paragraphs in the Amended Complaint describe the parties' relationship as a casual sexual relationship should be stricken because it sullies defendant's reputation. This is a peculiar statement. Mr. Rogers could not have used a more benign or tasteful term to describe the accurate nature of the parties' relationship. That defendant finds this term objectionable is merely a byproduct of the actual facts involved. However, such terminology, without any vulgarity or profanity, surely doesn't warrant an order to strike.

B.    **No Portion of Amended Complaint is Scandalous or Strike-Worthy**

Defendant Johnson cites <u>Cobell v. Norton</u>, 224 F.R.D. 266, 282 (D.D.C. 2004) to purportedly demonstrate that some of the statements in the Amended Complaint are "strike worthy" because, according to her motion, they are "demonstrably false" and "defies all bounds of decency and reality" (Def_Dis 17).

Defendant first objects to paragraph 7 in the Amended Complaint which details her solicitation of Mr. Rogers to assist her in murdering her husband. On or about October 27, 2003 during his criminal trial **Mr. Rogers testified under oath substantially to this same information.** Defendant Johnson did not rebut this on her redirect examination though she had an opportunity to do so and she has never denied soliciting Mr. Rogers in this manner under oath. In fact, at the time that Johnson made these statements to Mr. Rogers, he notified numerous individuals, indicating that this is not something that he has recently injected. In any event, such information should not be stricken because it's truthful and highly relevant to the criminal and civil allegations advanced by Johnson against Mr. Rogers, and is therefore material to the resolution of the civil action. Since it was testified to in open court, this testimony is a public record of which the Court may take judicial notice.

Likewise, Johnson's contacts with Steny Hoyer and Air Force leadership are not in dispute. She has testified to these facts in various forums and some of these contacts are also public record subject to judicial notice. In any event, paragraph 11 is factually based and, though it may be personally objectionable to Johnson because it details the level of irrationality she has previously undertaken in her course of conduct, it doesn't rise to the level of matters that should be stricken.

Paragraph 72 concerning the police officers brandishing weapons against Mr. Rogers is substantially similar to one of the allegations in the original complaint. Defendant's from the District of Columbia never objected to this allegation, and in fact were persuaded to settle the claims when faced with the prospect of a jury trial exposing such unsavory and illegal conduct. Surely, the defendant doesn't intend to persuade this Court that the District of Columbia paid Mr. Rogers to settle a civil suit, foregoing its fiduciary obligations with tax payer funds in order to quiet him about a delusion that he fabricated in his mind. Such an argument by the defendant

actually belies reason. Paragraph 72 is factually based, and pending discovery will implicate Johnson in conduct that her prior codefendants have already conceded.

Mr. Rogers doesn't abuse his *pro se* status. Johnson's pleading hopes to sway this Court with language implying that Mr. Rogers has fantasized causes of action. She provides no countervailing proof of her claims and simply attempts to deride Mr. Rogers and sway the Court in her favor with sympathy. However, the settlement by the District of Columbia and the acquittal in Superior Court of the criminal charges are instructive.

Johnson misleads the Court when she states that Magistrate Judge Peter Nowinski of Eastern California District Court explicitly found the arrest warrant which brought Mr. Rogers to this jurisdiction valid. This issue has been conceded at every juncture contrary to her arguments. The D.C. Bar, in a confidential memorandum has investigated and held that D.C. Code §23-563 rendered any arrest warrant for Mr. Rogers invalid outside of the District of Columbia. Mr. Rogers has never been charged with any felony, and accordingly he has never been properly extradited from any other state to this jurisdiction. The United States Attorney has also conceded in a pleading in F-4208-03 that the arrest was not lawfully executed in California. Despite Johnson's sophistry, this matter has been determined in Rogers' favor conclusively and his pleading is not demonstrably false.

Concerning Paragraph 89, Johnson claims that the D.C. Court of appeals "flatly rejected" the argument that Mr. Rogers was denied an opportunity to be heard at the CPO hearing. In fact, the Appeals Court made no such determination on the actual conduct of the hearing (See Appeals Court MOJ). The issue of whether Mr. Rogers was provided an opportunity to properly oppose the CPO has never been definitively determined fully and fairly on the merits.

Johnson's personal objections to the manner that the Amended Complaint is drafted do not meet the heightened standard to strike and don't prove that the statements at issue are untrue.

It's merely an additional opportunity to deride Mr. Rogers and attempt to sway the Court. However, most of the statements complained of can be verified through various public records and other means, all of which Johnson also objects. The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion <u>Talbot v. Robert Mathews Distrib. Co.</u>, 961 F2d 654, 664-65 (7th Cir. 1992).  In considering a motion to strike, the court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike. <u>Wailua Assocs. V. Aetna Cas. & Sur Co.</u>, 183 F.R.D. 550, 553-54 (D. Haw. 1998); <u>Joe Hand Promotions, Inc. v. Nekos</u>, 18 F. Supp. 2d 214, 218 (N.D.N.Y 1998); <u>Seibel v. Society Lease, Inc</u>., 969 F. Supp. 713, 715 (M.D. Fla 1997).   Mr. Rogers has pled a proper Amended Complaint without any strike worthy material, especially considering the court's stance with respect to *pro se* litigants.  <u>Moore v. Agency for Int'l Dev</u>. 994 F.2d 874, 876 (D.C. Cir 1993). Consequently, with respect to the spurious motion to strike, which is generally disfavored by trial courts, Johnson bears a heavy burden which she has not met. <u>Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs</u>., 2 F. Supp. 2d 1028, 1033 (N.D. I11. 1998).

## CONCLUSION

Defendant seeks to have this Court dismiss the entire amended complaint, either because she claims that Mr. Rogers has failed to state a claim under 12(b) (6) or has exceeded the statute of limitations. In a sharply worded pleading, she seeks to have significant portions stricken. However, the relief that she seeks is overall excessive and improper.  A short and plain statement of the claim is all the federal rules require. <u>Harbury v. Deutch</u>, 244 F.3d 956, 957 (D.C. Cir 2001). A complaint "need not allege all that a plaintiff must eventually prove"  <u>Atchison v. District of Columbia</u>, 73 F.32 418, 421-22 (D.C. Cir 1996).  Rule 8(a)'s simplified notice-pleading standard relies on the discovery process and summary judgment practice to define the disputed facts in the

case and to dispense with unmeritorious claims. A plaintiff may disclose more precisely the basis of his claim through discovery and other pretrial discovery.  Atchison, 73 F.3d at 421.  By its liberal terms, Rule 8(a) erects a powerful presumption against dismissing pleadings as deficient. Swierkiewicz, 534 U.S. at 514.  The pleading  provides Johnson notice of the claims against her. She only sought as an alternative a more definite statement on one cause of action.  Consistent with Rule 8(a)'s liberal pleading standard, courts are reluctant to compel a more definite statement pursuant to Rule 12(e). To prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information may be sought in discovery.  Latch String Inc. at *3 Contrary to the overall theme in Johnson's pleading, it is not necessary for the plaintiff to plead all elements of his prima facie case or plead law or match facts to every element of a legal theory. Kreiger v. Fadley, 211 F.3d 134, 136 (D.C. Cir 2000). Mr. Rogers incorporates by reference, each of his prior pleadings in this matters as though set forth completely herein.

For the foregoing reasons, Virgil Rogers respectfully requests that this honorable Court deny the defendant's motion to dismiss and deny her motion to strike any portion of the Amended Complaint.

Respectfully Submitted,

DATED:  October 20,  2006

By: ____/S/_____
        VIRGIL M. ROGERS