# EXHIBIT

# I

**ORIGINAL**  **FILED**

```
                UNITED STATES DISTRICT COURT
                                                JUN 24 2005
                EASTERN DISTRICT OF CALIFORNIA
                                                CLERK, U.S. DISTRICT COURT
                         --oOo--                EASTERN DISTRICT OF CALIFORNIA
                                                BY_____
UNITED STATES OF AMERICA,     )  Case No. MAG-03-_____
                              )
              Plaintiff,      )
                              )  Sacramento, California
     vs.                      )  Thursday, June 19, 2003
                              )  2:14 P.M.
VIRGIL RODGERS,               )
                              )  Hearing re: I.D. and
              Defendant.      )  detention.
_____)

                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PETER A. NOWINSKI
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:              PHILIP A. FERRARI
                            U.S. Attorney's Office
                            501 I Street, Suite 10-100
                            Sacramento, CA   95814
                            (916) 554-2700

For Defendant:              DENNIS S. WAKS
                            Federal Defender's Office
                            801 I Street, 3rd Floor
                            Sacramento, CA   95608
                            (916) 498-5700

Court Recorder:             (UNMONITORED)
                            U.S. District Court
                            501 I Street, Suite 4-200
                            Sacramento, CA   95814
                            (916) 930-4193

Transcription Service:      Petrilla Reporting &
                               Transcription
                            5002 - 61st Street
                            Sacramento, CA   95820
                            (916) 455-3887

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1

1    SACRAMENTO, CALIFORNIA, THURSDAY, JUNE 19, 2003, 2:14 P.M.
2
3         THE CLERK: Magistrate's Docket 03-0132, the United
4    States v. Virgil Rodgers. Your Honor, this is on for an ID
5    hearing and detention hearing.
6         (Pause)
7         MR. FERRARI: Good afternoon, Your Honor. Phil
8    Ferrari for the United States.
9         MR. WAKS: Good afternoon, Your Honor. Dennis Waks
10   from the Federal Defender's Office representing the defendant
11   who is present.
12        THE COURT: Good afternoon. And Mr. Rodgers, the
13   defendant, in any event, was arrested pursuant to a warrant
14   issued based on a petition alleging he violated a sentence of
15   probation imposed by the Superior Court of the District of
16   Columbia. He appeared yesterday, was advised of his rights and
17   denied that he was Virgil Rodgers, so we set the matter for
18   hearing today to determine his identity.
19        Is the government ready to proceed?
20        MR. FERRARI: Yes, Your Honor. Would you like me to
21   make an offer of proof first as to what we would be able to
22   show regarding his identity?
23        THE COURT: Will you accept a proffer?
24        MR. WAKS: Your Honor, I'd like to hear the proffer
25   first.

                                                                        2

1           THE COURT: All right.
2           MR. FERRARI: Your Honor, Marshal -- Deputy Marshal
3   Grabowski (phonetic) is here. We would be able to establish
4   first of all the bench warrant issued by the Superior Court of
5   the District of Columbia names Virgil Rodgers, a male African-
6   American with a date of birth of            1969. NCIC
7   records --
8           THE COURT: Wait a minute, slow down.
9       (Pause)
10          THE COURT: Yes. Thank you.
11          MR. FERRARI: NCIC records indicate that a Virgil
12  Marselles (phonetic) Rodgers born           1969 with a
13  social security number of       was convicted in the year
14  2000 in the D.C. Superior Court of the underlying offense of
15  attempted stalking.
16          Now, in this case, Marshal Grabowski will be able to
17  say the marshals knew to look for this defendant at the address
18  indicated on the front of the bench warrant there, 2120
19  Pantages Circle in Rancho Cordova, because marshals had learned
20  that a Virgil Rodgers with the same social security number
21  indicated in those NCIC records was receiving unemployment
22  benefits at that address.
23          Marshal Grabowski would be able to testify that he
24  responded to the residence, that he saw a car with Maryland
25  plates which was registered to a Virgil Rodgers with the same

3

1  date of birth found on the face of the warrants, and on those
2  NCIC records.
3          Marshal Grabowski was able to obtain a DMV photo of a
4  Virgil Rodgers with the same date of birth as noted on the
5  front of the bench warrant there, and when he responded to the
6  address, he was able to identify from that picture, the
7  defendant.
8          After he was -- on the way to the jail after he was
9  arrested, the defendant provided a birth date and a social
10 security number. Those figures matched what was on the NCIC
11 information, and the birth date that's on the front of the
12 bench warrant.
13         When the defendant was fingerprinted, those prints
14 were scanned, they were sent to Washington, D.C., the FBI was
15 able to confirm that those prints were the prints of Virgil
16 Rodgers born on                  1969 with the social security
17 number of             who was convicted of attempted stalking
18 in the D.C. Superior Court in the year 2000.
19         Just one moment.
20    (Pause - counsel conferring.)
21         MR. FERRARI: In addition, Your Honor, Marshal
22 Grabowski would be able to testify that he spoke with the owner
23 of the residence at 2120 Pantages Circle, a Samuel Davis, Jr.
24 who is a Sacramento Police Officer who told Marshal Grabowski
25 that he had known Virgil Rodgers since college, that he knew

4

1  that he had had a prior arrest in D.C., although he had thought
2  that that had been cleared up.
3           And finally, the probation officer, to the extent the
4  Court is interested, has sent a picture of Virgil Rodgers,
5  which we can submit to the Court if you'd like to see that.
6           THE COURT: I guess you better submit it. Show it to
7  Mr. Waks, will you?
8           MR. WAKS: Your Honor, I think I have a copy of it.
9  This photo?
10          (Pause)
11          THE COURT: Does that complete your proffer, Mr.
12 Ferrari?
13          MR. FERRARI: It does, Your Honor.
14          THE COURT: Mr. Waks?
15          MR. WAKS: Your Honor, I talked to Mr. Rodgers, and
16 he indicates that he has no dispute with anything in the
17 proffer, except one issue, and I don't think it's that
18 relevant. He indicated that he did not provide anything -- any
19 documentation in the transport van.
20          MR. FERRARI: Correct. If I can -- I didn't mean to
21 indicate that he gave documentation, but that he provided that
22 information, orally.
23          MR. WAKS: I think we'll accept everything else,
24 except what happened inside the transport van.
25          THE COURT: All right. Submitted?

5

1      MR. WAKS:  No, I'd like to make argument.
2      THE COURT:  All right.
3      MR. WAKS:  Your Honor, I think the big issue here is
4  not so much is the gentleman to my right the Virgil Rodgers
5  that D.C. wants.  My client has indicated to me that he
6  believes that there is not sufficient cause to arrest him, and
7  sufficient cause to hold him.  He believes that the --
8      THE COURT:  Well, can we -- before we hear argument
9  on something other than identity, can we establish identity?
10     MR. WAKS:  Yes, Your Honor.
11     THE COURT:  All right.  I find he is Virgil M.
12 Rodgers, the person named in the arrest warrant issued by the
13 Court in the District of Columbia.
14     Now, he was arrested -- the documents I have show
15 that he was arrested pursuant to a warrant signed by a judge
16 from the Superior Court of the District of Columbia, based upon
17 an affidavit -- more fully, an affidavit in support of an
18 arrest warrant alleging that he violated a sentence of
19 probation issued by that Court by contacting -- I don't know if
20 I ever saw the name of the victim, but the victim in the
21 underlying offense.
22     MR. FERRARI:  Yes, Your Honor.  The -- actually, my
23 understanding from talking to the AUSA in D.C. is that actually
24 there are two warrants here.  NCIC records reflect that on
25 March 21st, 2003 a felony warrant issued for the arrest of Mr.

6

1   Rodgers, and according to the AUSA in the District of Columbia,
2   this document which I believe you're referring to, which is
3   entitled, "Affidavit in Support of an Arrest Warrant," which is
4   signed on the second page of that document is actually a felony
5   arrest warrant in addition to, and that that was simply
6   submitted in support of the bench warrant which was issued on
7   June 10th after it became known that in fact the defendant was
8   currently to be found at the Pantages Circle address.
9        THE COURT: All right. I'm sorry, tell me again?
10       MR. FERRARI: My understanding is that --
11       THE COURT: I have -- you're referring to the --
12  actually, the warrant says that it's issued for a failure to
13  appear for a show cause hearing on a probation violation
14  petition?
15       MR. FERRARI: That's what the bench warrant says,
16  yes, Your Honor.
17       THE COURT: All right. And no bond issued June 10
18  this year.
19       MR. FERRARI: Right. I would note also, Your Honor,
20  that that bench warrant, the box is checked which states that
21  the warrant is issued extra territorially, and I can give you
22  the language from that D.C. code provision if you're interested
23  in it.
24       THE COURT: Why don't you share it with us?
25       MR. FERRARI: It states, "Any warrant issued by a

7

1  judge of the Superior Court for violation of release
2  conditions, or for contempt of court, for failure to appear as
3  required, may be executed at anyplace within the jurisdiction
4  of the United States. Such warrants shall be executed by a
5  United States marshal, or by any other officer authorized by
6  law."
7           THE COURT: All right. Having determined that he is
8  the person described in this warrant, there being no right to a
9  preliminary hearing, because no offense -- no violation is
10 alleged to have occurred in this district, what else can I do
11 but hold him to answer the proceedings in the District of
12 Columbia, and address the question of whether -- of release or
13 detention.
14          MR. WAKS: Your Honor, under the detention issue is
15 what I'm arguing right now.
16          THE COURT: All right. So I can hold him. You're
17 not arguing that I can't hold him to answer this petition in
18 the District of Columbia?
19          MR. WAKS: Well, we are arguing that he was arrested
20 illegally, without jurisdiction, based upon a misdemeanor bench
21 warrant out of the District of Columbia, and I don't believe
22 that the statute that was cited by counsel allows anybody else
23 outside of the District of Columbia to arrest anybody in the
24 District of Columbia on a misdemeanor warrant.
25          THE COURT: Why do you say this is -- why do you call

8

1  this a misdemeanor warrant?
2         MR. WAKS:  Because the original charge of attempted
3  stalking was a misdemeanor.
4         THE COURT:  But that doesn't mean that the Court,
5  having sentenced him, adjudged him guilty of that, and
6  sentenced him for probation can't issue a warrant to arrest him
7  anywhere he's found to hold him accountable for the terms and
8  conditions of his sentence of probation.
9         MR. WAKS:  In our --
10        THE COURT:  I mean, I don't think -- I just -- you
11 know, there are -- in the system we're more familiar with
12 there, are grades of violation of sentences of supervised
13 release and probation, but we don't differentiate if
14 there's -- if the defendant has absconded, we don't apply those
15 distinctions to characterize the warrant.  It's simply a
16 warrant of arrest which can be executed, and is everyday
17 anywhere.  And why isn't this -- why is this any different?
18        MR. WAKS:  Well, specifically, the statute that was
19 read I think goes to pretrial detention.  But to the Court's
20 argument --
21        THE COURT:  All right.  Let me hear the D.C. Code
22 Section 23-1329?
23        MR. WAKS:  Right.
24        THE COURT:  Could I hear it again?
25        MR. FERRARI:  Yes, Your Honor.  "Any warrant issued

9

1  by a judge of the Superior Court for violation of release
2  conditions, or for contempt of court, for failure to appear as
3  required may be executed at any place within the jurisdiction
4  of the United States."
5      THE COURT: All right. Well, you've got a failure to
6  appear, and you have a -- the warrant says it's for a failure
7  to appear.
8      MR. WAKS: Your Honor, I'm -- I, somewhat talking
9  through my client --
10     THE COURT: Well, that's not a good thing to do.
11     MR. WAKS: We're --
12     THE COURT: You did that the other day involuntarily,
13 and it didn't serve you well.
14     MR. WAKS: No, I understand that. Almost got us
15 there, but -- but in this case, my client is asking me if
16 there's a show cause order for a failure to appear. The
17 statute, the 23-1329 specifically goes to and is subtitled
18 "Release and Pretrial Detention."
19     THE COURT: I don't have anything that I recognize,
20 and Mr. Ferrari, correct me if I'm wrong, the document for
21 failure to appear. But I do have -- the warrant -- you have it
22 too, it says, "attempted stalking -- probation violation," and
23 the next line says -- refers to a "failure to appear."
24     And I do have documentation of the violation of
25 probation, which is the equivalent of a petition, I would

1 think.

2 MR. FERRARI: I agree, Your Honor, and I just wanted
3 to add that my title of that code section states penalties for
4 violation of conditions of release.

5 THE COURT: I think that's what Mr. Waks said.

6 MR. FERRARI: I thought he said pretrial.

7 THE COURT: Well, he said that, but then he -- I
8 think he corrected himself. I -- it doesn't matter.

9 MR. WAKS: Your Honor, at the very top, it's -- this
10 is entitled "Chapter 13, bail agency, in paren, pretrial
11 service agency, and pretrial detention." Then under subsection
12 11 it's entitled, "The release and pretrial detention." And
13 then the subsection is 23-1329 and then it's -- next to that is
14 entitled, "Penalties for violation of conditions of release."

15 And I'm not -- assuming we're talking about
16 conditions of release, I'm not sure they're -- this case has
17 anything to do with a violation of any conditions of release.
18 He was on probation at the time.

19 THE COURT: I agree with that, but I also don't
20 understand why I even need a box checked. It's a warrant
21 issued by a court of general criminal jurisdiction and federal
22 enclave.

23 MR. FERRARI: I agree, Your Honor.

24 MR. WAKS: And my argument would be that since it's a
25 misdemeanor, it should be limited to just the D.C.

11

1  jurisdiction.
2      THE COURT: Yeah. All right. Well, I've heard the
3  argument.
4      MR. WAKS: Your Honor, that's the probable cause
5  issue. I've also got an argument on the release.
6      THE COURT: All right. Well, I find that it is a
7  lawful warrant, properly supported, and I hold him to answer
8  the proceedings pending in the Superior Court of the District
9  of Columbia regarding alleged violation of his sentence of
10 probation imposed by that Court.
11     Now, the sole remaining question is whether he should
12 be remanded to the marshal for transportation forthwith to that
13 court, or whether he should -- whether there are conditions of
14 release that would assure us that he would appear there.
15     MR. WAKS: Your Honor, I'm asking for release in this
16 case. This is a misdemeanor case, attempted stalking. My
17 client was sentenced in D.C. I think the maximum is 180 days.
18 He's done approximately 100 days on this sentence already. He
19 had no prior record at the time. There's no evidence of
20 physical contact between the alleged victim and the alleged
21 defendant.
22     At the time, my client was a captain in the Air
23 Force. He was stationed at the Pentagon. At the time of the
24 incident, my -- or shortly before the incident, my client and
25 the alleged victim had a relationship. They were going out

12

1   together. The victim was married. Something about the fact
2   that the victim's husband was aware of the relationship and she
3   was using this stalking charge as a cover-up for her husband.
4       My client moved to Sacramento approximately a year
5   ago. He's been living in Sacramento the whole time. He has a
6   college degree, and a master's degree. He's 33. He was living
7   with a local Sacramento county law enforcement officer as
8   indicated in the proffer, Mr. Sam Davis.
9       Mr. Davis indicated to me that he's known my client
10  for about 16 years, since college, that he's a good guy, that
11  he's a stand-up guy, that he's not a violent individual. This
12  attempted stalking case in D.C. is up on appeal. My client
13  wanted to fight extradition for a couple of reasons:
14      Not that he's not the individual that D.C. seeks, but
15  he's indicated to me that if he goes back to D.C., that he's in
16  fear of his life. He's indicated to me that the victim
17  contacted some of my client's friends and indicated that if he
18  didn't come back to D.C. that he would not come out alive. And
19  so therefore, he's in fear of his safety.
20      In light of all those facts, I would ask the Court to
21  either release my client on an O.R. and order him to go back to
22  D.C., or release him with an ankle bracelet, and he would go
23  back to D.C. with it in the next 30 days.
24      THE COURT: You know, I was following until -- I
25  stumbled when you said he's a stand-up guy, because the

resistance he's put up to facing this charge is really extraordinary, and he's hasn't stood up at all. But this story that he's in fear of his life to attend court in the District of Columbia doesn't exactly weigh in favor of releasing him O.R. You know, he may as well, and I realize he's speaking through you, Mr. Waks, he may as well tell me has no intention of going back there, and that he's going to have to be taken back there kicking and screaming.

Mr. Ferrari wants to say something.

MR. FERRARI: Yes. Your Honor, I mean, do you want me to address the things that he said before he got to that point? Because I think that --

THE COURT: Well, yeah, you can address it. I mean, as I say, I was following initially. It's an affair of the heart, it's complicated, the story is plausible.

MR. FERRARI: Except, Your Honor that it --

THE COURT: Well, wait just a second.

MR. FERRARI: Okay.

THE COURT: You know, a man with a good education, has served his country, has upright friends in this community, but then it goes south. But --

MR. FERRARI: But even up until that point. It's not just the initial attempted stalking. I mean, he's proved that he can't be supervised. He absconded from supervision. While he absconded he wasn't just getting away from probation, he was

14

1  continuing the same type of activity that got him in trouble in
2  the first place. That's why these additional warrants issued.
3           And furthermore, when he was out here, Marshal
4  Grabowski was able to get the DMV record, because he applied
5  for a California driver's license with a residential address
6  that doesn't exist.
7           As far as Samuel Davis, Jr., his friend, he was
8  kicking him out of the house. He was putting -- when Marshal
9  Grabowski arrested him, he was packing up the car because he
10 had been kicked out and was leaving.
11          MR. WAKS: Your Honor, that -- I talked to Mr. Davis,
12 and he didn't indicate that to me at all. I'm not saying it's
13 true, I'm not saying it's --
14          THE COURT: He applied for a California driver's
15 license with a fictitious address?
16     (Pause)
17          MR. FERRARI: Marshal Grabowski informs me that he
18 gave a P.O. address, a mailing address that did exist, but he
19 also submitted a residential address, and when Marshal
20 Grabowski tried to find that residential address, it did not
21 exist.
22          MR. WAKS: Your Honor, my client's indicated to me
23 that that's not true. I don't know what address we're talking
24 about, but it's -- on the issue of detention, my client's not
25 saying he doesn't want to go -- obviously he doesn't want to go

15

1  back, but he's not saying that he will not go back to D.C., he
2  just says he doesn't want to go back and be in the D.C. County
3  Jail. He says if ordered by this Court, the Court can put
4  conditions on him, that he will go back, he will live with Mr.
5  Davis, and his family, and his kids, until he does go back to
6  D.C. And if he's released from D.C. --
7           THE COURT: How long -- I'm sorry, how long has he
8  been here?
9           MR. WAKS: About a year.
10          THE COURT: About a year. So --
11          MR. FERRARI: Your Honor, in 2001 --
12          THE COURT: Yes.
13          MR. FERRARI: -- his probation was modified to put
14 him on two additional years of supervised probation. So he
15 knew at that point that he was to be supervised until November
16 of this year. And his probation officer has not been able to
17 find him since March of 2002. I -- he hasn't complied with the
18 conditions there, I don't know why we'd believe he would do so
19 now.
20          MR. WAKS: Your Honor, he's indicated to me that if
21 he is ordered to go back, he'll go back, he'll pay for it
22 himself. He has no prior record besides that. He disputes the
23 allegations and the charges. There's a long history, which
24 I've gotten into in the last couple of days --
25          THE COURT: Well, the petition alleges that the

16

material the victim got had -- bore his fingerprints.

MR. WAKS: Right, but he has an explanation for that, which we don't need to go into now.

THE COURT: Well, all right.

MR. WAKS: He went with her for a couple of years.

THE COURT: All right. Submitted?

MR. WAKS: Your Honor, my client would like to say something, but I've advised him that that would not be in his best interests.

THE COURT: Well, I don't want to hear it. You have a lawyer, Mr. Rodgers, and you speak here through your lawyer, as long as you have one.

I order the defendant detained. This is -- seems to me to be the kind of offense that he may be acting under some obsession, I don't know. But you don't seem to be able to discipline your conduct. You know, you emphasize -- or your counsel emphasizes on your behalf it was a misdemeanor, but that being so, initially it was resolved, and you were ordered not to contact this person, and it's alleged authoritatively that you did.

You -- you know, this fear for your life is implausible, and doesn't give me confidence that you'd voluntarily appear there. And of course, the information that you applied for a California license with a bogus address doesn't exactly help.

1    So based on the record before me, I do not believe
2    there are conditions that will reasonably assure your
3    appearances as required in the District of Columbia. You're
4    remanded to the custody of the marshal for transportation
5    forthwith to the District of Columbia for further --
6        THE DEFENDANT: Your Honor, may I please speak, Your
7    Honor?
8        THE COURT: -- for further proceeding on this.
9        THE DEFENDANT: Please.
10       THE COURT: I've ruled, Mr. Rodgers. You know, you
11   have a lawyer, he's very experienced. He's listened to you.
12   I've watched him, but you can't speak with two voices here.
13   He's done a fine job for you.
14       (Pause - counsel conferring.)
15       MR. WAKS: Your Honor, he's indicated to me that he
16   thinks that there may be conditions for his release that he
17   might be released to the custody of Officer Smith, and thirdly,
18   that he has things to do -- he has affairs to take care of here
19   in Sacramento before he goes back to D.C.
20       MR. FERRARI: Your Honor, the probation officer has
21   talked to Mr. Davis, and he advised her that he would not
22   neither post a bond nor serve as a custodian for the defendant.
23       THE COURT: You know, Mr. Rodgers, I understand
24   you're in desperate straits right now, but you got yourself
25   there. You absconded from supervision in the District of

1  Columbia, you know, and you're very hard pressed now to
2  convince any other judicial officer that you're a good risk.
3      Anyway, I've ruled.  Good luck to you.  I hope you
4  can get this straightened out quickly in the District of
5  Columbia and get it behind you once and for all.
6      MR. FERRARI:  Thank you, Your Honor.
7      (Whereupon the hearing in the above-entitled matter was
8  adjourned at 2:42 p.m.)
9              --oOo--
10             CERTIFICATE
11     I certify that the foregoing is a correct transcript from
12  the electronic sound recording of the proceedings in the above-
13  entitled matter.
14
15  /s/ Patricia A. Petrilla                    June 7, 2005
16  Patricia A. Petrilla, Transcriber
17  AAERT CERT*D-113