## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>VIRGIL ROGERS, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>KAREN JOHNSON-NORMAN, )<br> )<br>Defendant. )<br>_____ ) | Civil Action No. 06-01186 (ESH) |

## <u>MEMORANDUM OPINION</u>

This case is the latest chapter in a lengthy saga of alleged harassment and related

litigation involving plaintiff Virgil Rogers and defendant Karen Johnson-Norman. Plaintiff's *pro*

*se* amended complaint advances eight claims. Count I alleges that defendant unlawfully accessed

plaintiff's consumer credit report in violation of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681 *et seq.* (2006). The crux of Counts II–VIII is plaintiff's allegation that, on various

occasions, defendant falsely accused him of stalking and harassment. Defendant moves for

dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons

stated herein, defendant's motion will be granted in part but denied as to Count I.[1]

_____

[1]Defendant also moves to strike plaintiff's "Surrebuttal to Defendant's Reply to
[Plaintiff's] Opposition to Motion to Dismiss" and portions of plaintiff's amended complaint.
Because none of the arguments that plaintiff raises in his surrebuttal affects the outcome of
defendant's motion to dismiss, the Court will deny as moot defendant's motion to strike the
surrebuttal. Similarly, although portions of plaintiff's *pro se* amended complaint may be
irrelevant, demonstrably false, or scandalous, the allegations as to which defendant takes issue
are irrelevant given the Court's determination that only the FCRA claim survives. Accordingly,
defendant's motion to strike portions of the amended complaint will be denied.

# BACKGROUND

For a period between 1998 and 2000, the parties had a romantic relationship.  (Am. Cmpl.

¶ 7.)  On multiple occasions after the relationship ended, defendant informed law enforcement

authorities that she had experienced unwanted contact from plaintiff.  (*See e.g.*, *id.* ¶¶ 12, 18, 20,

21.)  Defendant's reports resulted in a series of criminal and civil proceedings against plaintiff, in

response to which plaintiff on one previous occasion brought a civil suit against defendant.[2]  (*See*

*e.g.*, *id.* ¶¶ 9, 12–13, 17, 26–33, 38–41.)  For present purposes, it suffices to recite only highlights

of the parties' tortured litigation history.[3]

## I.    Criminal Proceedings

In March 2001, plaintiff was convicted in D.C. Superior Court of attempted stalking.

(Def.'s Ex. B ["CPO Appellate Op."] at 1 n.1, *available at* 2005 WL 2428340; Def.'s Ex. E

["CPO Transcript"] at 13.)  For his offense, plaintiff was placed on probation and "ordered[,] as a

condition of probation, to have no contact with [defendant] of any kind."  (*Id.*)  Plaintiff's

conviction was affirmed by the D.C. Court of Appeals.  (CPO Appellate Op. at 1 n.1.)

---

[2]The parties ultimately settled the prior civil suit, *Rogers v. Johnson-Norman*, No. 01-01924 (E.D. Va.).

[3]In summarizing the relevant proceedings, several of the hearing transcripts and opinions that defendant has filed as exhibits are useful aids.  Accordingly, the Court takes judicial notice of defendant's exhibits A, B, E, and L - - all of which are public records.  *See, e.g.*, *Covad Commc'ns v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (treating opinions of this Court and the Federal Circuit as judicially noticeable public records).  Consideration of such documents does not require the Court to treat defendant's motion to dismiss as a motion for summary judgment.  *See, e.g.*, *id.* (stating that considering opinions from other courts is appropriate upon a motion to dismiss); *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.").

In 2003, plaintiff was again charged with stalking defendant. (*Id.*) This time, however, a jury acquitted him. (*Id.*)

## II.    CPO Proceeding

Immediately after plaintiff's 2003 criminal trial, Judge Lynn Leibovitz, who had presided over that trial, held a hearing on defendant's request for a civil protection order ("CPO"). (*See id.*) Defendant contended that on a number of occasions in 2002 and 2003 plaintiff had telephoned her and sent her anonymous letters in violation of the existing "stay-away" order. (*See, e.g.*, Def.'s Ex. A ["CPO Op."] at 3 (referencing defendant's allegations that she had been the victim of the unwanted contacts and "was extremely distressed by them").) Plaintiff denied the alleged conduct. (*See, e.g.*, CPO Transcript at 14 (explaining that, at the criminal trial, defendant denied having sent the letters).)

Judge Leibovitz began the hearing by listing the evidence under consideration, which included various letters, envelopes, and emails that the government had introduced in plaintiff's criminal trial; evidence that plaintiff's fingerprints matched fingerprints on one of the letters that defendant had received in January 2003; an exhibit on which plaintiff had designated those portions of the January 2003 letter that he recognized as his own language; and a stipulation acknowledging the existing stay-away order. (*See id.* at 2–10.) In addition, Judge Leibovitz considered defendant's and plaintiff's testimony from the criminal trial. (*See id.* at 10, 14.)

Applying the "preponderance of evidence" standard, Judge Leibovitz determined that plaintiff had indeed committed the alleged acts of harassment. (*Id.* at 11–18.) In fact, she found "by a far greater standard[] than preponderance" that plaintiff had sent the anonymous letters. (*Id.* at 15; *see id.* at 18 (stating that the letters "entirely disclose[d] themselves as letters sent by

[plaintiff]")'.) She further found that the letters were "obsessive," and that plaintiff had "acted intentionally, willfully and with malice" in a successful "effort to cause emotional distress to defendant." (*Id.*) Accordingly, Judge Leibovitz concluded:

> I . . . find that there is a preponderance of evidence and that there is good cause to believe that between June 2002 and May 2003 . . . [defendant] committed the offense of stalking, particularly harassment, by writing letters and making the phone calls and having the other contacts that he did.
> And . . . I further find that there is good cause to believe [plaintiff] poses a danger to [defendant].

(*Id.*)

On such findings, Judge Leibovitz entered a CPO against plaintiff. (*Id.* at 19.) The CPO provided that, for a period of one year from October 29, 2003, plaintiff was prohibited from going within one hundred yards of defendant, her husband, her children, her parents, her siblings, her home, her workplace, or her church. (*Id.*) In addition, plaintiff was prohibited from contacting defendant or her family members in any manner, and from possessing, purchasing, receiving, or selling any firearm or ammunition. (*Id.*) Finally, he was ordered to undergo a mental health evaluation and an alcohol and drug screening through the Court Services and Offender Supervision Agency ("CSOSA"). (*Id.* at 23.)

## IV.    Plaintiff's Motion to Alter or Amend and for Reconsideration of the CPO

Plaintiff contested the validity of the CPO in a letter to Judge Leibovitz dated November 26, 2003. (*See* CPO Op. at 1.) In the letter, plaintiff claimed that "(1) [the] 'not guilty' verdict in [the] prior criminal matter precluded the court from making its findings in [the CPO] case, (2) the CPO violate[d] his Second Amendment right to bear arms, and (3) the court unreasonably ordered [the psychiatric and substance abuse] evaluations." (*Id.* at 4.)

4

Judge Leibovitz treated plaintiff's letter as a motion to alter or amend judgment and for reconsideration. (*Id.* at 1.) As a threshold matter, the motion was untimely. (*Id.* at 4.) Nonetheless, Judge Leibovitz went on to reject plaintiff's arguments. First, plaintiff's acquittal in the criminal case did not foreclose the CPO because the jury's application of the reasonable doubt standard to acquit plaintiff "did not preclude the court from finding 'good cause to believe' that [plaintiff] had stalked [defendant]." (*Id.*) Second, because the CPO merely provided notice of a federal statute restricting the sale and possession of firearms, there was no Second Amendment violation. (*Id.* at 4–5.) Finally, the CPO's requirement that plaintiff undergo psychiatric and substance abuse evaluations, plus any appropriate treatment, was expressly authorized by D.C. law. (*Id.* at 5.)

## V.    Plaintiff's Appeal from the CPO

After Judge Leibovitz declined to alter, amend, or reconsider the CPO, plaintiff appealed to the D.C. Court of Appeals. (CPO Appellate Op. at 1.) In addition to his previous claims, plaintiff asserted that the D.C. Superior Court had lacked subject matter jurisdiction over the CPO, that the CPO proceedings had been unfair because he was never given the opportunity to cross-examine defendant, that there was not "good cause to believe" he had committed an intrafamily offense, that the CPO was invalid because it had an extraterritorial effect, and that the CPO violated his First Amendment rights. (*Id.* at 1–3.)

The D.C. Court of Appeals rejected all of plaintiff's arguments. The D.C. Superior Court had properly exercised subject matter jurisdiction over the CPO because defendant had "unequivocally alleged that 'the underlying intrafamily offense . . . occurred in the District of Columbia.'" (*Id.* at 1 (quoting D.C. Code § 16-1001(5) (2001)).) Plaintiff's criminal acquittal

5

did not bar entry of the CPO because "acquittal in a criminal case, in which guilt must be proved

beyond a reasonable doubt, does not preclude relitigation of the same factual issues when they

are subsequently presented in a civil proceeding governed by a less exacting standard of proof."

(*Id.* at 2.)  There was no plain error as to plaintiff's procedural objections to the CPO proceedings

given that, because defendant had not testified, plaintiff had not been deprived of his right to

cross-examination.[4]  (*Id.*)  Plaintiff's claim "that there was not 'good cause to believe' that he

[had] committed an intrafamily offense" failed because he had not demonstrated that Judge

Leibovitz's findings were clearly erroneous.  (*Id.*)  Plaintiff's CPO was valid notwithstanding its

extraterritorial effect because the D.C. Superior Court had "jurisdiction over the subject matter

and [over plaintiff]."  (*Id.*)  Because "the Second Amendment guarantees a collective rather than

an individual right," the CPO did not deny plaintiff his right to bear arms.  (*Id.* (quoting *Sandidge*

*v. United States*, 520 A.2d 1057, 1058 (D.C. 1987)).)  Similarly, ordering plaintiff to stay away

from the defendant's church did not deprive plaintiff of his First Amendment right to the free

exercise of religion.  (*Id.*)  Finally, "in light of the broad remedial purposes of the [District of

Columbia's] intrafamily offense statute . . . the other provisions of the CPO challenged by

[plaintiff] were properly included therein in the exercise of the trial court's broad discretion."

(*Id.* (citation omitted).)

## VI.    CPO Extension Proceeding

During the pendency of the above appeal, defendant sought an extension of the CPO.

(*See* Def.'s Ex. L ["CPO Extension Transcript"] at 1.)  Judge Robert Rigsby of the D.C. Superior

---

[4]Moreover, the court remarked that, although plaintiff could have called defendant as an
adverse witness, he had declined to do so.  (CPO Appellate Op. at 2.)

Court conducted a CPO extension hearing on October 28, 2004. (*Id.*) Plaintiff did not appear at the hearing, and the record reflects that Judge Rigsby devoted considerable attention to determining whether plaintiff had been properly served. (*See id.* at 2–13.) Defendant's counsel explained that, because they did not know where plaintiff lived, they had served him with copies of the hearing notice, the CPO, and the extension motion by both mail (to a post office box) and fax. (*Id.* at 2, 4, 11.) Further, counsel represented that plaintiff had agreed by telephone to service by fax, that they had cause to believe that he had received their faxed materials, and that he had previously expressed an intention not to attend the CPO extension hearing. (*Id.* at 3–4, 6, 9–13.) Judge Rigsby credited the representations of counsel, expressly finding that plaintiff "ha[d] been provided reasonable notice and opportunity to be heard." (*Id.* at 17; *accord id.* at 19.) Satisfied that plaintiff had been properly served, Judge Rigsby considered testimony from defendant and a CSOSA officer. (*See id.* at 14–17.) Finding "good cause to believe that [plaintiff] ha[d] committed or threatened" an intrafamily offense (*id.* at 17), the judge extended the original CPO through October 28, 2005. (*Id.* at 19.)

## ANALYSIS

### I.     Legal Standard

When adjudicating a motion to dismiss pursuant to Rule 12(b)(6), a district court "must view all the allegations and facts in the complaint in the light most favorable to the plaintiff[], and it must grant the plaintiff[] the benefit of all inferences that can be derived from those facts." *Lindsey v. United States*, 448 F. Supp. 2d 37, 44 (D.D.C. 2006). *Pro se* complaints, in particular, must be construed liberally. *E.g.*, *id.* Nonetheless, courts "need not accept bald or controverted statements as true." *Meng v. Schwartz*, 305 F. Supp. 2d 49, 57 (D.D.C. 2004). A complaint must

be dismissed for "failure to state a claim when it is clear that no relief could be granted under any

set of facts that could be proved consistent with the complaint's allegations." *Id.*

## II.    Collateral Estoppel Bars Counts II–VIII

"Collateral estoppel, or issue preclusion, prevents parties from relitigating issues that

have already been adjudicated. It seeks to conserve judicial resources, protect citizens from

multiple lawsuits, and reduce the likelihood of inconsistent verdicts." *Bryson v. Gere*, 268 F.

Supp. 2d 46, 54 (D.D.C. 2003). The interests advanced by collateral estoppel must be balanced

against the important interest of permitting plaintiffs to present their cases. *Id.*

Because plaintiff has not expressly identified his basis for bringing this action in federal

court - - whether diversity jurisdiction or federal question/supplemental jurisdiction - - there is

some question whether the Court should analyze defendant's collateral estoppel arguments under

the federal standard or under the District of Columbia's standard. *See id.* at 54–56 (explaining

why diversity cases may raise the issue of whether to apply state or federal collateral estoppel

law). The District of Columbia applies a four-part standard, barring relitigation "(1) [of an]

identical issue (2) that was fully and fairly litigated and (3) determined by a valid judgment on

the merits (4) in which the issue was essential." *Id.* at 57. By contrast, the federal courts in this

jurisdiction apply a three-part standard:

> First, the same issue now being raised must have been contested by the parties and
> submitted for judicial determination in the prior case. Second, the issue must have been
> actually and necessarily determined by a court of competent jurisdiction in that prior case.
> Third, preclusion in the second case must not work a basic unfairness to the party bound
> by the first determination.

*Id.* (alteration omitted) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C.

Cir. 1992)).

In the present case, it is immaterial which standard is applied.  The standards are "substantially similar," the only difference being that the federal standard expressly requires consideration of whether barring relitigation would "work a basic unfairness to the party bound by the first determination."  *Id.* (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).  Here, plaintiff had "ample opportunity" in prior judicial proceedings to argue that plaintiff fabricated her stalking and harassment allegations.  *Id.*  Accordingly, there is no "basic unfairness" in barring relitigation, assuming the other collateral estoppel requirements are satisfied.  *Id.*  Because the outcome of this case is the same under either federal or local law, the following analysis (consistent with the pleadings of both parties) employs the District of Columbia's four-part framework.

## A.    Identical Issues

To determine whether the issues here are identical to issues already adjudicated in prior proceedings between plaintiff and defendant, the Court must "look beyond the labels of the claims [. . .] and examine the single, certain and material [points] arising out of the allegations and contentions of the parties."  *Id.*  (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 953–54 (D.C. 1980) (second alteration in original)).  "Where the basic facts underlying the new claims are indistinguishable from the facts at issue in the prior adjudication[s], the new claims are properly precluded."  *Id.*

## 1.    Count II: Negligent Infliction of Emotional Distress

In claiming that defendant is liable for negligent infliction of emotional distress, plaintiff relies on the following allegations: that in January 2003 defendant made a false police report claiming plaintiff had stalked her (Am. Cmpl. ¶ 54); that "[o]n or about January 28, 2003,

[defendant] accused [him] of personally delivering an envelope filled with missives and pictures enclosed to her workplace" (*id.* ¶ 56); that "[o]n or about June 16, 2003 [plaintiff] was arrested in California based solely upon allegations made by [defendant]" (*id.* ¶ 58); and that defendant "negligently made false or perjured statements to the police, the [United States Attorney's Office] and[/]or the Superior Court."[5]  (*Id.* ¶ 64.)  All of these issues arose in the CPO proceeding, and in plaintiff's two subsequent challenges to the entry of the CPO.  Accordingly, on Count II, the "identical issues" requirement is satisfied.

### 2.    Count III: Intentional Infliction of Emotional Distress

Although plaintiff uses slightly different language in presenting his claim for intentional infliction of emotional distress, the material issues in Count III are the same as in Count II.  (*See id.* ¶ 69 ("On or about January 2003, Johnson initiated a criminal report . . . which falsely claimed that [plaintiff] had stalked her."); *id.* ¶ 70 ("On or about June 16, 2003 [plaintiff] was seized . . . upon a D.C. arrest warrant for false allegations made by defendant . . . ."); *id.* ¶ 73

---

[5]Although the amended complaint also references false statements that defendant allegedly made "in 2002 and beyond" (*e.g.*, Am. Cmpl. ¶ 57), plaintiff concedes that these statements are not at issue here and discusses them only as "background information."  (Opp. at 8.)  Moreover, any claims based on defendant's allegedly false statements prior to January 2003 are barred by the settlement agreement that the parties entered into in plaintiff's previous civil suit against defendant in the Eastern District of Virginia.  (*See* Def.'s Ex. J at 1.)  Plaintiff acknowledges the existence of the 2003 settlement agreement, and he does not dispute its validity.  (*E.g.*, Surrebuttal at 7–8.)  Plaintiff similarly does not dispute that the Court may properly consider the settlement agreement upon defendant's motion to dismiss.  *See, e.g.*, *Jenisio v. Ozark Airlines, Inc., Ret. Plan*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) (explaining that a court may consider documents outside the pleadings on a motion to dismiss when "the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents"); *Obrecht v. Electrolux Home Prods., Inc.*, No. 04-3089, 2005 WL 578477, at *2 (N.D. Iowa Mar. 9, 2005) ("Thus, as the parties do not object to the language of the settlement agreement, but only to the construction and interpretation of that language, this court may properly consider the settlement agreement on [defendant's] motion to dismiss pursuant to Rule 12(b)(6).").

("[Defendant's] conduct in fabricating criminal allegations was extreme, and outrageous and done for the purposes of causing [plaintiff] to be illegally arrested and detained and to 'ruin' his life and cause him distress.").)  Thus, for the reasons already explained with respect to Count II, the "identical issues" requirement is satisfied as to Count III.

### 3.    Count IV: Abuse of Process (CPO Proceeding)

In Count IV, plaintiff claims that defendant committed an abuse of process by seeking the initial CPO.  (*Id.* ¶ 78.)  In addition to alleging that defendant's allegations of stalking and harassment were false (*see id.*), plaintiff alleges that defendant sought to "infringe on Plaintiff's First Amendment Religious Freedom" by keeping him away from her church (*id.* ¶ 81); that she committed an abuse of process by seeking to have him undergo psychiatric and substance abuse screening and treatment (*id.* ¶¶ 83–84); that she committed an abuse of process by seeking to bar him from approaching her family members (*id.* ¶ 85); and that she committed an abuse of process by seeking to bar him from visiting the Veterans Administration hospital in Washington, D.C. (*Id.* ¶ 86.)  The D.C. Court of Appeals considered all of these issues in affirming Judge Leibovitz's decision to award the CPO.  (*See* CPO Appellate Op. at 2–3.)  Accordingly, the "identical issues" requirement is satisfied as to Count IV.

### 4.    Count V: Abuse of Process (CPO Extension Proceeding)

Plaintiff also claims that defendant committed an abuse of process by seeking an extension of the original CPO.  His principal allegations in support of this claim are that, when seeking the extension, defendant had not had any contact with him in the prior five years (Am. Cmpl. ¶ 92); that she had never proved the necessity of the drug and alcohol counseling ordered in the CPO (*id.* ¶ 93); that, at the CPO extension hearing, she made "perjured statements" that

11

plaintiff had contacted her (*id.* ¶ 94); and that she "didn't notify him of the [CPO extension] hearing until after it had been completed." (*Id.* ¶ 95.) As previously discussed, the issues of whether plaintiff had made contact with defendant during the years prior to October 2003 and whether drug and alcohol counseling was warranted were addressed in the CPO proceeding, and in plaintiff's ensuing challenges to the CPO in both the D.C. Superior Court and the D.C. Court of Appeals. Similarly, Judge Rigsby considered the issues of whether plaintiff had contacted defendant between the initial CPO proceeding and the CPO extension hearing, and whether defendant had notified plaintiff of the CPO extension hearing. (*See, e.g.*, CPO Extension Transcript at 19–20 (finding that "there was proper service" and that plaintiff had violated the terms of the original CPO).) Accordingly, the "identical issues" requirement is satisfied as to Count V.

### 5.    Count VI: False Reporting of a Crime

In Count VI, plaintiff alleges that in January 2003 defendant falsely reported incidents of harassment to law enforcement.[6] (Am. Cmpl. ¶ 99.) As already explained, the veracity of defendant's January 2003 allegations of harassment was also at issue in both the CPO proceeding and plaintiff's subsequent challenges to the CPO. Accordingly, the "identical issues" requirement is satisfied as to Count VI.

### 6.    Count VII: Perjury

In Count VII, plaintiff alleges that defendant "presented a false petition for a CPO to

---

[6]The amended complaint also references "numerous instances in 2002" on which defendant made allegedly false police reports. (Am. Cmpl. ¶ 99.) As already noted, however, plaintiff mentions pre-2003 events only as background and, in any event, claims based on events prior to 2003 are barred by the parties' 2003 settlement agreement. *See supra* note 5.

Superior Court on or about July 31, 2003" (*id.* ¶ 104); that she gave perjured testimony in the criminal trial before Judge Leibovitz (*id.* ¶ 105); and that she gave perjured statements during the CPO extension hearing.[7] (*Id.* ¶ 108.) Again, the veracity of plaintiff's allegations was at issue in both the original CPO proceeding and the CPO extension proceeding. Thus, the "identical issues" requirement is satisfied as to Count VII.

### 7.    Count VIII: Invasion of Privacy

Finally, plaintiff claims that defendant invaded his privacy by "defam[ing] his character through her false and malicious accusations of criminal wrongdoing and her efforts to obtain unwarranted injunctions." (*Id.* ¶ 115.) Once again, the issue of plaintiff's veracity was raised in the CPO proceedings and the "identical issues" requirement is satisfied.

### B.    Fully and Fairly Litigated

Plaintiff does not, and could not, dispute that the issues concerning defendant's claims of harassment and stalking were decided against him in the CPO proceedings before the D.C. Superior Court and the D.C. Court of Appeals. (*See, e.g.*, CPO Op. at 3 ("[At the CPO hearing], [t]he court credited [defendant's] trial testimony, corroborated amply by the letters themselves, that she had been the victim of each of these contacts and that she was extremely distressed by them. The court further found [plaintiff's] denial that he authored the letters incredible.").) Instead, plaintiff argues that he did not have a full and fair opportunity to litigate in the CPO proceeding because Judge Leibovitz did not require defendant to testify or give plaintiff an

---

[7]Plaintiff also alleges that defendant made false statements to Judge Gerald Bruce Lee during the course of plaintiff's previous civil suit against defendant in the Eastern District of Virginia. (*See* Am. Cmpl. ¶ 103.) The parties' 2003 settlement agreement forecloses consideration of this allegation as well.

opportunity to be heard.  (*See* Opp. at 9–10.)

 Plaintiff's argument is without merit.  Defendant was not required to testify at the CPO

hearing especially when, as the D.C. Court of Appeals subsequently noted, plaintiff's counsel

expressly declined Judge Leibovitz's invitation to present additional evidence when he could

have called defendant as an adverse witness.[8]  (*See* CPO Appellate Op. at 2.)  Moreover, the

transcript of the CPO proceeding does not support plaintiff's claim that he was denied the

opportunity to be heard.  On one occasion at the close of the hearing, Judge Leibovitz denied

plaintiff's request to discuss the court-ordered psychiatric and substance abuse screenings.  (*See*

CPO Transcript at 24.)  However, given that plaintiff was represented by counsel (who,

moreover, had already voiced plaintiff's concerns about the screenings), such a denial in no way

deprived plaintiff of a full and fair opportunity to litigate defendant's alleged fabrications.  *See,*

*e.g.*, *Sturdza v. Gov't of the United Arab Emirates*, 281 F.3d 1287, 1293 (D.C. Cir. 2002)

(invoking the principle that, when a litigant is represented by counsel, counsel speaks for the

litigant in court).  The burden of proof in the CPO proceeding was the same as here - - a

preponderance of the evidence - - and plaintiff's incentive to litigate the issues in the CPO

proceeding was at least as strong as, if not stronger than, his incentive to litigate here.  *See, e.g.*,

*Synanon Church v. United States*, 579 F. Supp. 967, 973 (D.D.C. 1984) (mentioning the

plaintiff's prior incentive to litigate as one basis for finding that collateral estoppel's "full and

fair opportunity" requirement was satisfied), *aff'd*, 820 F.2d 421 (D.C. Cir. 1987).  Thus, the

---

[8]As the D.C. Court of Appeals also observed, Judge Leibovitz properly took notice of
defendant's testimony from the criminal trial, especially when plaintiff's counsel did not object
and had extensively cross-examined defendant during the criminal case.  (CPO Appellate Op. at
2.)

CPO proceeding satisfied collateral estoppel's "full and fair opportunity" requirement.

### C.    Valid Judgment on the Merits

"A judgment is valid when it was rendered by a court of competent jurisdiction." *Bryson*, 268 F. Supp. 2d at 59. Here, plaintiff argues that his CPO was invalid because the D.C. Superior Court lacked subject matter jurisdiction to issue it. (Opp. at 11.) This argument was considered and rejected by the D.C. Court of Appeals. (*See* CPO Appellate Op. at 1.) Plaintiff does not, and could not, assert that the D.C. Court of Appeals' judgment was invalid or that the CPO extension was invalid. Thus, collateral estoppel's "valid judgment" requirement is satisfied.

### D.    Essential to the Judgment

Collateral estoppel's final requirement "serves to prevent preclusion based on mere dictum or other portions of the judgment which were not necessary to the judgment." *Bryson*, 268 F. Supp. at 60. Here, the record clearly reflects, and plaintiff does not challenge, that Judge Leibovitz's findings regarding the veracity of defendant's allegations were essential to her decision to issue the CPO, and to the D.C. Court of Appeals' affirmance of her decision. Similarly, Judge Rigsby's findings that plaintiff had received notice of the CPO extension hearing and that plaintiff had committed the harassment alleged by defendant were essential to the CPO extension decision.

Thus, because the facts of this case satisfy all of the necessary elements of collateral estoppel, Counts II–VIII of plaintiff's amended complaint will be dismissed pursuant to Rule 12(b)(6).

### III.    Additional Reasons for Dismissing Counts II–VIII

Even assuming *arguendo* that collateral estoppel did not apply, the Court would still

15

dismiss Counts II–VIII of the amended complaint pursuant to Rule 12(b)(6).

### A.    Counts II and III: Negligent and Intentional Infliction of Emotional Distress

Defendant argues that plaintiff's claims for negligent and intentional infliction of emotional distress are time barred.  "A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint." *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C. 2006). Dismissal is warranted when "'no reasonable person could disagree on the date' on which the cause of action accrued" and "the complaint on its face is conclusively time-barred." *Id.*

Because D.C. Code § 12-301(4) does not specifically mention either negligent or intentional infliction of emotional distress, these two claims are ordinarily subject to the three-year limitations period of D.C. Code § 12-301(8).  *E.g.*, *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 87 (D.D.C. 2000).  However, if claims of negligent or intentional infliction of emotional distress are "intertwined" with a tort specifically mentioned by D.C. Code § 12-301(4), such claims are subject to a one-year limitations period.  *Parker*, 124 F. Supp. 2d at 87; *see Hawkins v. Greenfield*, 797 F. Supp. 30, 34 (D.D.C. 1992) (applying this rule to a claim for negligent infliction of emotional distress); *Saunders v. Nemati*, 580 A.2d 660, 665 (D.C. 1990) (stating this rule for intentional infliction of emotional distress claims).

Here, it is clear from plaintiff's factual allegations that the basis for his claims of negligent and intentional infliction of emotional distress are his allegations that defendant falsely accused him of stalking behavior with the intent to have him arrested and prosecuted.  For example, in support of Count II for negligent infliction of emotional distress, plaintiff alleges that "[o]n or about June 16, 2003, [plaintiff] was arrested in California based solely upon allegations

16

made by [defendant] and he was subsequently incarcerated until on or about November 7, 2003

for a myriad of conduct alleged by [defendant]" (Am. Cmpl. ¶ 58); that "[plaintiff] was arrested

solely upon allegations made by [plaintiff]" (*id.* ¶ 60); and that "[d]efendant Johnson negligently

made false or perjured statements to the police, the USAO, and or the Superior Court, thereby

causing [plaintiff] grave injury." (*Id.* ¶ 64.)  Similarly, in support of Count III for intentional

infliction of emotional distress, plaintiff states: "Plaintiff is informed and believes that

[defendant's] conduct in fabricating criminal allegations was extreme, and outrageous and done

for the purposes of causing [plaintiff] to be illegally arrested and detained and to 'ruin' his life

and cause him distress." (*Id.* ¶ 73.)  Because none of plaintiff's other allegations could

independently support his emotional distress claims, his emotional distress claims are intertwined

with the tort of malicious prosecution.[9]  *See, e.g.*, *Scales v. George Washington Univ.*, No. 89-

0796, 1991 WL 257975, at *5 (D.D.C. Nov. 18, 1991) (characterizing an intentional infliction of

emotional distress claim as intertwined with a D.C. Human Rights Act claim when "[n]either

[the] plaintiff's complaint nor her other pleadings allege[d] facts or proffer[ed] evidence that

[the] defendant intentionally caused her emotional distress by conduct 'independent' of the

alleged violations of Title VII and section 1981, and ostensibly the D.C. Human Rights Act.").

Consequently, plaintiff's emotional distress claims are time barred if the limitations period for

malicious prosecution expired before plaintiff instituted the present action.  *See, e.g.*, *id.*

(dismissing the plaintiff's intentional infliction of emotional distress claim as time barred under

the one-year statute of limitations applicable to claims under the D.C. Human Rights Act when

_____

[9]In fact, plaintiff's original complaint made similar allegations in support of a malicious
prosecution claim that he has since abandoned in his amended complaint.  (*See* Cmpl ¶¶ 242,
246, 247, 249.)

"the last discriminatory act [that the] plaintiff allege[d] occurred in November of 1987 . . . and

the complaint was filed in March of 1989, sixteen months later").

"According to D.C. Code § 12-301(4), malicious prosecution falls in the category of torts

specified as having a one-year statute of limitations." *Parker*, 124 F. Supp. 2d at 87; *see* D.C.

Code § 12-301(4) (2001) (listing malicious prosecution among the torts with a one-year statute of

limitations). "[T]he statute of limitations applicable to a claim for malicious prosecution begins

to run when the underlying action against a plaintiff terminates . . . ." *Parker*, 124 F. Supp. 2d at

87. Here, plaintiff was acquitted of the criminal charge resulting from defendant's allegedly false

allegations on October 27, 2003. (CPO Op. at 1.) Plaintiff did not file his original complaint in

this action until June 13, 2005 - - over seventeen months later. Thus, even assuming plaintiff's

amended complaint relates back to his original complaint, his claims for negligent and intentional

infliction of emotional distress are time barred.[10]

---

[10]Defendant makes a similar argument as to plaintiff's claim for invasion of privacy
(Count VIII). The Court agrees with defendant that claims for invasion of privacy are subject to
the one-year statute of limitations set forth in D.C. Code § 12-301(4). *See, e.g.*, *Grunseth v.
Marriott Corp.*, 872 F. Supp. 1069, 1074–75 (D.D.C. 1995) (applying the one-year limitations
period to an invasion of privacy claim alleging "public disclosure of private facts"); *Doe v. Se.
Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990) ("Invasion of privacy is essentially a defamation type
action. Section 12-301 of the D.C. Code establishes a one-year statute of limitations for libel,
slander, assault, and other similar intentional torts. The Court finds this one-year statute of
limitations is also applicable to invasion of privacy actions." (citations omitted)), *appeal
dismissed*, 927 F.2d 1257 (D.C. Cir. 1991); *see also Nichols v. Moore*, 334 F. Supp. 2d 944,
948–49 (E.D. Mich. 2004) (explaining why a statute of limitations for libel and defamation
should apply to false light invasion of privacy claims). However, defendant concedes that
plaintiff's invasion of privacy claim may have accrued as late as October 2004 - - less than one
year before plaintiff filed his original complaint in June 2005. (Mot. to Dismiss at 16.)
Therefore, the invasion of privacy claim is not time barred if the amended complaint relates back
to the original complaint.

Defendant argues that the amended complaint does *not* relate back and that, accordingly,
in addition to plaintiff's invasion of privacy claim, one of his abuse of process claims (Count IV),
and portions of his perjury claim (Count VII) are time barred. The Court need not reach these

**B.     Counts IV and V: Abuse of Process**

"The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.D.C. 1997) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)).  There is no abuse of process when, although a person "acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding," the proceeding in question is also used for its intended purpose.  *Id.*

Plaintiff claims that defendant is liable for abuse of process because she sought the CPO and its extension "to accomplish ends outside the regular purview of the process," including deterring him from filing the instant suit.  (Am. Cmpl. ¶ 81; Opp. at 17–18.)  However, plaintiff also acknowledges that defendant sought the CPO in part to compel him to obtain psychiatric and substance abuse counseling.  (*Id.* at 18; *see* Am. Cmpl. ¶¶ 84, 93.)  As the D.C. Court of Appeals held in denying plaintiff's appeal from the CPO, compelling plaintiff to undergo such counseling was an entirely proper use of the CPO process.  (CPO Appellate Op. at 3.)  Accordingly, even assuming *arguendo* that defendant sought the CPO and its extension partly out of a dislike for plaintiff and a desire to harm him, plaintiff has failed to state a claim for abuse of process.  *See Scott*, 101 F.3d at 755 ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.  Thus, the entirely justified prosecution of another on a criminal

---

arguments, however, because the original complaint at least arguably relates back and because Counts IV, VII, and VIII will be dismissed based on a variety of other grounds.

charge does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm . . . ." (alterations in original) (quoting *Restatement (Second) of Torts* § 682 cmt. b (1977))).

### C.    Count VI: False Reporting of a Crime

Plaintiff seeks to hold defendant civilly liable for false reporting of a crime in violation of D.C. Code § 5-117.05.  That statute, however, defines a criminal offense and does not create a private right of action.  *See id.* (describing a crime punishable by thirty days' imprisonment or a maximum fine of three hundred dollars).  Accordingly, Count VI fails to state a claim on which relief can be granted.

### D.    Counts VII: Perjury

Plaintiff alleges that defendant gave perjured statements to the D.C. Superior Court and the U.S. District Court for the Eastern District of Virginia for which he claims she is civilly liable.  (*See* Am. Cmpl ¶¶ 102–19.)  However, "[u]nder District of Columbia law . . . the judicial testimony of witnesses is absolutely privileged."  *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 99 (D.D.C. 2003); *see also Bragdon v. Malone*, 425 F. Supp. 2d 1, 3–4 (D.D.C. 2006) ("The absolute immunity that protects judges and prosecutors in the performance of their functions during the judicial phase of a case also cloaks witnesses testifying during trial."); 70 C.J.S. *Perjury* § 4 (2005) ("In the absence of statute, no action generally lies to recover damages caused by perjury . . . ."); *cf.* D.C. Code § 22-2402 (2001) (making perjury a criminal offense).  Thus, Count VII fails to state a claim on which relief can be granted.

### E.    Count VIII: Invasion of Privacy

Plaintiff claims that defendant invaded his privacy by "defam[ing] his character through

her false and malicious accusations of criminal wrongdoing and her efforts to obtain unwarranted injunctions." (Am. Cmpl. ¶ 115.) As already explained, witnesses who testify at trial are immune from civil suits based on their testimony. *E.g.*, *Bragdon*, 425 F. Supp. 2d at 3–4. Here, plaintiff has stated that "*[e]ach* of [defendant's] criminal and civil allegations" forming the basis for his invasion of privacy claim "were made in a public forum before the Superior Court." (Am. Cmpl. ¶ 116 (emphasis added).) Thus, like Counts II–VII, Count VIII fails to state a claim upon which relief can be granted.

## IV. Count I Cannot Be Decided upon a Motion to Dismiss

The sole claim that does not involve previously decided issues is plaintiff's claim that defendant violated the FCRA. (*See* Am. Cmpl. ¶¶ 44–51.) Specifically, plaintiff alleges that in April 2004 defendant "under false pretenses, knowingly, and without a permissible purpose obtained or caused to be obtained a consumer report containing private information about [plaintiff] from a credit reporting agency." (*Id.* ¶ 46.) He further alleges that plaintiff acted "with a network of various colleagues at Wells Fargo," and that she "[hid] her wrongful actions by couching them as legitimate Wells Fargo financial inquiries." (*Id.* ¶ 47.)

Defendant argues that it is "entirely possible" that plaintiff's FCRA claim is barred by the statute of limitations. (Mot. to Dismiss at 11.) An FCRA violation is actionable "not later than the earlier of[] (1) 2 years after the date of discovery by the plaintiff . . . ; or (2) 5 years after the date on which the violation . . . occurs." 15 U.S.C. § 1681p. Here, plaintiff's FCRA claim does not relate back to his original complaint, and his amended complaint was not filed until September 20, 2006. Consequently, if plaintiff discovered the alleged violation immediately upon its supposed occurrence in April 2004, plaintiff's FCRA complaint would be time barred.

However, plaintiff asserts that he did not discover the alleged violation until 2006. (Opp. at 16.) Thus, at least on the record before the Court at this time, plaintiff's FCRA claim cannot be dismissed as time barred.

In addition, although defendant correctly argues that plaintiff's amended complaint provides little information about defendant's alleged conduct and nowhere identifies what portion of the FCRA defendant supposedly violated, plaintiff need not allege every element of his claim or plead detailed facts to survive a motion to dismiss.[11]  *See, e.g.*, *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1114–15 (D.C. Cir. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 45–48 (1957)).  Although plaintiff's claim that defendant accessed his credit report in violation of the FCRA may well be resolvable upon a motion for summary judgment, such a determination at the present stage would be premature.  Thus, Count I is the sole claim that survives defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted in part and denied in part.

_____s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 20, 2006

---

[11]In addition, although defendant has moved the Court to order a more definite statement if Count I survives the motion to dismiss, plaintiff's amended complaint is not so vague as to warrant such an order in view of the requirements of Rule 8(a) of the Federal Rules of Civil Procedure.