UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| VIRGIN M. ROGERS, *pro se* )<br><br>Plaintiff, )<br><br>v. )<br><br>KAREN JOHNSON-NORMAN )<br><br>Defendant. ) | Civil Case. No. **06-01186 (ESH)** |

**KAREN JOHNSON-NORMAN'S OPPOSITION TO ROGERS' MOTION FOR PROTECTIVE ORDER**

Rogers' Motion for a Protective Order raises two issues: the manner of Karen Johnson-Norman's deposition, and the scope of discovery in this case. Both issues are properly addressed at the Scheduling Conference on Thursday, February 1, 2007. Although Rogers did inform counsel for Ms. Johnson-Norman that he would file "something" with the Court that outlined his concerns with the procedure for Karen Johnson-Norman's deposition and the scope of discovery, Ms. Johnson-Norman objects to Rogers having filed this motion only two days before the Scheduling Conference. This has not afforded Ms. Johnson-Norman sufficient time to respond before Thursday's Scheduling Conference. Ms. Johnson-Norman therefore respectfully requests oral argument on these issues at the Scheduling Conference.

I. **DEPOSITION OF KAREN JOHNSON-NORMAN**

As a preliminary matter, counsel for Ms. Johnson-Norman suggested that no depositions should occur prior to the completion of document discovery, which the parties propose to end on April 13, 2007. Rogers informed counsel that he wants to proceed with Karen Johnson-Norman's deposition on Friday, February 2, 2007, ostensibly to save the cost of an additional trip to Washington, D.C. Counsel for Ms. Johnson-Norman agreed to accommodate Rogers' schedule, providing the Court has no objection, but advised Rogers that we will not take his deposition until document discovery is complete. Counsel also warned Rogers that Karen Johnson-Norman would not appear for a second deposition after document discovery is complete without a Court order. Nonetheless, Rogers insists on deposing Karen Johnson-Norman this Friday.

The manner of deposition is at issue because Karen Johnson-Norman continues to live in fear of Virgil Rogers. As the Court is aware, this lawsuit is only the "latest chapter in a lengthy saga" of Rogers' harassment of Karen Johnson-Norman. (D.I. 27) The District of Columbia cases are replete with references to Rogers as an "angry and obsessive former lover who [was] unwilling to permit the relationship to be over." (Beaty Decl. in Support of Motion to Dismiss ¶ 6, Ex. E at 17. (D.I. 4)) There is also evidence in the two D.C. criminal cases of more than one physical altercation between Rogers and Ms. Johnson-Norman. *See United States v. Rodgers*, M-9709-00 (D.C. 2000); *United States v. Rodgers*, F-4208-03 (D.C. 2003). Rogers has been twice tried and once convicted of stalking Ms. Johnson-Norman. *Id.*

Given the long and tortured history of the parties, putting Virgil Rogers and Karen Johnson-Norman face-to-face in a deposition room is a powder keg. Counsel for Ms. Johnson-Norman has offered no less than three options to provide for a deposition setting that is safe for

both parties and affords Rogers full access to discovery on his Fair Credit Reporting Act (FCRA) claim. Rogers has declined every proposal.

Ms. Johnson-Norman respectfully requests this Court to order her deposition to be conducted by video conference. This enables Rogers to fully and fairly examine Ms. Johnson-Norman without the necessity of the parties being in the same room. Rogers has declined this arrangement, insisting that he be allowed to confront Karen Johnson-Norman in person.

Rogers has never articulated the reason he must be in the same room as Ms. Johnson-Norman. The video conferencing allows for such a clear image that deposing counsel can read the deponents' body language and facial expressions. The sound quality is excellent. Rogers and counsel for Ms. Johnson-Norman will even be on the same floor of the building and can easily meet if an issue arises. In sum, Rogers suffers no disadvantage by taking Ms. Johnson-Norman's deposition by video conference. There is no explanation for Rogers' insistence of an in-person confrontation except that he wants to continue to harass and intimidate Karen Johnson-Norman.

As an alternative to the video conference deposition, counsel for Ms. Johnson-Norman asked Rogers to consent to having security personnel attend the deposition. Once again, Rogers declined, stating that they would intimidate him. However, Rogers has never explained why the presence of security personnel would intimidate him. Indeed, most people would feel *more secure* with security personnel present, not less. Rogers' flat-out refusal to allow security personnel to attend the deposition raises even more suspicion regarding Rogers' insistence on an in-person confrontation with Ms. Johnson-Norman.

Finally, counsel for Ms. Johnson-Norman asked Rogers to consider retaining an attorney, even if only for the purposes of the deposition. Rogers declined, stating that it was not cost

effective. Nonetheless, Rogers now states that he intends to bring an attorney to the deposition as "additional defense counsel," but that Rogers will question Ms. Johnson-Norman himself. Without addressing the issue of how this affects Rogers' *pro se* status, Ms. Johnson-Norman contends that if Rogers is permitted to bring an attorney to observe the deposition, that attorney should conduct the deposition on Rogers' behalf.

## II.     SCOPE OF DISCOVERY

The only claim surviving the Court's December 2006 Order is Rogers' FCRA allegation. The only issues to be resolved are (1) whether Wells Fargo ran Rogers' credit history, (2) what involvement, if any, Ms. Johnson-Norman had in the credit inquiry, and (3), if so, what are Rogers' damages. Discovery on these issues is certainly relevant to Rogers' claim, and Ms. Johnson-Norman has no objection to discovery on these subjects.

However, during the meet and confers, Rogers has expressed his desire to confront Ms. Johnson-Norman with a whole host of issues that have already been deemed irrelevant by this Court. Rogers plans to take discovery relating to Karen Johnson-Norman's "motives to engage in the alleged acts." (D.I. 36) According to Rogers, this includes all of Karen Johnson-Norman's prior testimony because it allegedly shows that Karen Johnson-Norman perjured herself.[1] Rogers also wants to take discovery on Ms. Johnson-Norman's police reports with the intent of proving that she falsified her claims of stalking.[2] However, these theories have been dismissed by this Court, and are therefore irrelevant to the remaining claim. In short, Rogers is planning to

---

[1] Rogers' perjury theory was alleged as Count VII in Rogers' Amended Complaint. (D.I. 16)

[2] Rogers' theory that Karen Johnson-Norman falsified her stalking claims was also alleged in Rogers' Amended Complaint as Counts II-VI, and VIII. *Id.*

circumvent the Court's December 20, 2006 Order by delving into the entire history between himself and Ms. Johnson-Norman under the guise of "motive."

### A. Motive is Irrelevant to Rogers' FCRA Claim

Although Rogers seeks discovery relating to Karen Johnson-Norman's motivation for her alleged violation, motive is irrelevant to FCRA claims. *Wiggins v. District Cablevision*, 853 F. Supp. 484, 490 (D.D.C. 1994); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 820-821 (D. Ky. 2003); *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002); *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 418 (4th Cir. 2001); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997). Rogers does not have to prove evil motive or malice. *Id.* Therefore, any discovery relating to Ms. Johnson-Norman's motivation is completely irrelevant and not reasonably calculated to lead to the discovery of admissible information. Rogers cannot use the discovery process to demand irrelevant information from Ms. Johnson-Norman. *Caldwell v. Center for Correctional Health*, 228 F.R.D. 40, 44 (D.D.C. 2005); *see also Bituminous Coal Operators Ass'n v. Connors*, 867 F.2d 625, 635-36 (D.C. Cir. 1989) (denying discovery relating to issue that was irrelevant to any material fact in the action).

### B. The Parties Prior History is Irrelevant to Rogers' FCRA Claim

This Court ruled that Rogers' claims of falsified reports to the police and perjured testimony were barred by collateral estoppel, and therefore Rogers could not proceed with those claims. (D.I. 27) Rogers now seeks information relating to the very claims the Court dismissed. The Court must deny discovery that is relevant only to claims that have been dismissed. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 (1978); *Planned Parenthood v. Heckler*, 101 F.R.D. 342, 344 (D.D.C. 1984) ("if an issue is not properly part of the case, as a matter of law, then discovery in that vein is inappropriate"). To hold otherwise reverses the Court's December Order and opens the floodgates to discovery of the "lengthy saga" between the parties.

5

Moreover, the Court should consider why Rogers seeks this discovery. Rogers is seeking discovery on his dismissed claims solely to further harass and intimidate Karen Johnson-Norman. Rogers has repeatedly stated that he demands an apology from Karen Johnson-Norman for lying about Rogers stalking her. The Court must not permit Rogers to abuse the discovery process to rehash every event in the parties' past in an attempt to recast history.

## III.  CONCLUSION

For the foregoing reasons, Karen Johnson-Norman respectfully requests that this Court deny Rogers' Motion for Protective Order and limit the scope of discovery to Rogers' remaining claim. Ms. Johnson-Norman also requests that her deposition be conducted by video conference, or, in the alternative, that adequate security be allowed to attend the deposition to maintain the safety of the parties.

Respectfully submitted,

Of Counsel:

*/s/ Sean Beaty*

Sean P. Beaty, *pro bono*
(Bar No. 493597)
Christopher Kellett*
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: January 30, 2007

---

* Admitted to MD, not yet admitted to the DC Bar. Working under the supervision of firm principals.

6