UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
VIRGIL M. ROGERS, *pro se*          )
                                    )
            Plaintiff,              )
                                    )
      v.                            ) Civil Case No. 06-01186 (ESH)(DAR)
                                    )
KAREN JOHNSON-NORMAN                )
                                    )
            Defendant.              )
_____)

**KAREN JOHNSON NORMAN'S OPPOSITION TO ROGERS' MOTION TO REOPEN MS. JOHNSON-NORMAN'S DEPOSITION**

Rogers has given this Court no reason to reopen the deposition of Karen Johnson-Norman. The Court afforded Rogers thirty minutes to explore Ms. Johnson-Norman's liability for the allegations in Count I of his Amended Complaint and to impeach Ms. Johnson-Norman's testimony in relation to Count I. However, Rogers instead used his thirty minutes to delve into issues both improper and irrelevant to the FCRA allegations. Indeed, Rogers asked Ms. Johnson-Norman only three questions about her involvement in running his credit history. Attachment A, Johnson-Norman Dep. Tr. 25:17-26:2, 30:11-15.[1]

Rogers' intentions are clear: he will use any additional deposition time to ask Ms. Johnson-Norman questions that have nothing to do with his FCRA claim. However, the Court made it clear that the scope of discovery in this case is limited to Rogers' sole-surviving Count.[2] Most, if not all, of Rogers' proposed lines of additional inquiry are

---

[1] Relevant excerpts of Karen Johnson-Norman's deposition, the February 1, 2007 Scheduling Hearing, the February 1, 2007 Status Hearing, and the February 2, 2007 Status Hearing have been attached for the Court's convenience.

[2] *See, e.g.*, Attachment B, Feb. 2, 2007 Hr'g Tr. 10:9-12 ("THE COURT: Well, I don't know what other clarity I can give. There is one count in the complaint which remains, so discovery is limited to that single count.") and *Id.* 10:22-23 ("THE COURT: Discovery is limited to Count 1, the only count which remains.").

improper and irrelevant to the remaining Count, and therefore the Court should not afford Rogers additional time.

I. **THE COURT SHOULD NOT GRANT ROGERS ADDITIONAL TIME TO DEPOSE KAREN JOHNSON-NORMAN**

Rogers neither needs nor deserves additional time to depose Karen Johnson-Norman. At the Scheduling Hearing, the Court recognized the narrow scope of the deposition and commented that it would be short. Attachment C, Feb. 1, 2007 Scheduling Hr'g Tr. 8:9-12. The Court limited Rogers to thirty minutes because of Rogers' representation that all he wanted was a sworn statement from Ms. Johnson-Norman that she had no involvement in running his credit history. *Id*. 8:4-8. Ms. Johnson-Norman's denial of any involvement was unequivocal, and further interrogation is unlikely to elicit a clearer or more complete answer.

Moreover, Rogers did not efficiently use the first thirty minutes of the deposition, choosing instead to inquire about topics already ruled irrelevant by the Court. Nor was Rogers unfairly limited in his questioning of Ms. Johnson-Norman; the Court simply did not permit Rogers to stray outside the scope of discovery for his remaining FCRA claim. In short, Rogers had every opportunity to adequately depose Ms. Johnson-Norman the first time, and therefore should not be allowed to reopen her deposition.

A. **The Court Limited the Time for Ms. Johnson-Norman's Deposition Because of Rogers' Representation During the Scheduling Hearing**

Rogers complains that he was limited to thirty minutes to depose Karen Johnson-Norman. However, the Court truncated the deposition because Rogers told the Court that all he wanted was a sworn statement from Ms. Johnson-Norman that she had nothing to do with the allegations in Count I. *See Id*. 8:4-8; Attachment D, Feb. 1, 2007 Status Hr'g Tr. 12:19-15:14. Karen Johnson-Norman testified under oath that she had no involvement with or knowledge of the allegations in Rogers' FCRA claim. Attachment

2

A, Johnson-Norman Dep. Tr. 25:17-26:2, 30:11-15, 31:3-11.  However, despite Ms. Johnson-Norman's sworn testimony, Rogers refuses to drop this case.

### B.   Karen Johnson-Norman's Testimony Was Clear

Rogers argues that he should be allowed to reopen the deposition of Ms. Johnson-Norman because she "prevaricated on numerous instances during the initial deposition." D.I. 49, Mot. at 1.  However, Rogers' assertion is contradicted by the deposition transcript.  Ms. Johnson-Norman testified clearly and without hesitation that she had no knowledge of or involvement in running Rogers' credit history:

> Q.   Have you at any time ever had occasion to know any information at all, and remember you're under oath, about any credit inquiries that were done on me?
> **A.   No.**
> Q.   Do you know anyone that has any type of information regarding such an action?
> **A.   No.**
>
> [***]
>
> Q.   I'm going to ask you are you absolutely, positively sure without any doubt at all that you disavow any knowledge whatsoever of any inquiries of a credit nature concerning me at any time?
> **A.   Yes.**
>
> [***]
>
> Q.   Did you ever initiate any credit inquiry on Mr. Rogers' personal information at any time?
> **A.   No.**
> Q.   Did you ever ask anyone else to do it?
> **A.   No.**
> Q.   Did you have any knowledge of anyone ever running a credit inquiry on Mr. Rogers?
> **A.   No.**

Attachment A, Johnson-Norman Dep. Tr. 25:17-26:2, 30:11-15, 31:3-11.

Rogers' and Ms. Johnson-Norman's counsel's questions were direct and left no "wiggle room" for Ms. Johnson-Norman to evade answering the questions.  Allowing

Rogers to reopen the deposition to ask Ms. Johnson-Norman about her involvement in or knowledge of the allegations in Count I could not result in any clearer or more complete answers. Moreover, further questions about Ms. Johnson-Norman's involvement are objectionable as asked and answered.

        **C.**    **Rogers Did Not Effectively Use the First Thirty Minutes of His Deposition, and Therefore Should Not Be Allowed to Waste More of the Court's and Ms. Johnson-Norman's Time**

It was very difficult for Karen Johnson-Norman to face the man that has stalked and harassed her for almost a decade. Delighting in making Ms. Johnson-Norman as uncomfortable as possible, Rogers now asks the Court for more time to depose Ms. Johnson-Norman. However, Rogers failed to efficiently use the first thirty minutes he was given. Rogers spent the bulk of his time attempting to ask Ms. Johnson-Norman about completely irrelevant topics. Therefore the Court should not reward him with additional time.

Rogers repeatedly asked questions that had previously been ruled irrelevant by the Court. Rogers attempted to inquire about prior proceedings, the parties' prior relationship, and other topics well-outside the scope of his remaining claim. Indeed, the Court twice admonished Rogers to focus his questions on the allegations in Count I of his complaint or the Court would terminate the deposition early.[3]

---

[3]    THE COURT: The Court is going to interrupt at this point. We've been here now 20 minutes and you recall that the Court set a limit of 30 minutes for this opening phase of the deposition; and while the Court is reluctant to involve itself in the manner in which any party asks questions in this circumstance I simply note that you, Mr. Rogers have yet to ask a question about the allegations in Count I of the complaint and that is of course the reason that we are here.
    I do not intend to in my tally of the time with my account of the time that has passed plan to take into the account the time that I have spoke on. I believe that would be unfair.
    I simply want to point out that you have roughly 10 to 25 minutes remaining and if it appears to the Court that you are asking questions other than those you advised Judge Huvelle and this Court that you intended to ask the Court would have little choice but to take that unwillingness to focus on the issue at hand into account in deciding how much additional time you should be allowed.
    Now, with that we ask you to continue, please.
                                 […]

Rogers will not use any additional time to inquire about topics that are germane to his FCRA claim. As he has indicated with his proposed lines of inquiry, Rogers intends to ask Karen Johnson-Norman myriad questions entirely unrelated to his remaining Count. Thus, the reopening of Ms. Johnson-Norman's deposition will turn into the proverbial fishing expedition. In the interests of the Court's time, and the emotional well-being of Ms. Johnson-Norman, Rogers should not be given additional time.

### D. Rogers Was Not Prohibited From Asking Any Relevant Lines of Inquiry

Rogers' argument that he was unable to ask certain questions is, in effect, a motion for the Court to reconsider its Order regarding the scope of discovery. However, there is no reason for the Court to do so. The dismissal of Counts II-VIII of Rogers' Amended Complaint renders extraneous lines of inquiry irrelevant to the remaining FCRA claim.[4]

Rogers argues that he was "unable to probe numerous permissible lines of questioning during this deposition." D.I. 49, Mot. at 1. However, Rogers was only prohibited from probing *impermissible* lines of questioning, such as Karen Johnson-

---

THE COURT: Mr. Rogers, I'm going to ask you to move on to the issues involving Count I. I have Count I before me and there is no allegation here regarding Ms. Johnson-Norman's efforts if any to obtain personal information.
The allegation concerns use of information and while I indicated that you would be allowed at least in the first instance a period of 30 minutes it appears to the Court that you are – you do not require even the 30 minutes because you were not asking about the allegations in Count I and my intention is to terminate the deposition early. I simply cannot permit you to use this forum for purposes other than discovery with respect to the remaining count of the complaint.
MR. ROGERS: Understood.
THE COURT: Do you have questions of Ms. Johnson-Norman regarding Count I of the complaint?
MR. ROGERS: Yes.
THE COURT: Very well. Let's proceed on.

*See* Attachment A, Johnson-Norman Dep. Tr. 23:3-24:4, 24:16-25:15.

[4] Indeed, Rogers himself "agreed with the Court on many of the rulings" in the Court's dismissal of Counts II-VIII of the Amended Complaint. Therefore, it is wholly inappropriate for him to now claim that those rulings were wrong.

5

Norman's prior testimony in other proceedings and the parties' prior relationship. Indeed, consistent with the Court's prior rulings with respect to the scope of discovery, the Court again explained to Rogers that such questions were inappropriate:

> THE COURT:  I have endeavored, Mr. Rogers, as has the assigned district judge to set the parameters.  You are being afforded an opportunity to if you are able to attempt to impeach the witness that is as I'm sure you are aware a means by which a witness's credibility might be attacked.
>
> I do not -- ***I've concluded that it would not be appropriate consistent with the single remaining count of the complaint, the rules governing the conduct of discovery or the order of the assigned district judge and indeed my own order entered yesterday on the record to permit questions regarding Ms. Johnson-Norman's truthfulness or lack of truthfulness in other proceedings whether there have been proceedings which have nothing to do with this action or otherwise to turn this deposition into a fishing expedition***.

Attachment A, Johnson-Norman Dep. Tr.  36:16-37:10 (emphasis added).

The Court explicitly gave Rogers an opportunity to impeach Ms. Johnson-Norman on her testimony in relation to Rogers' FCRA claim. *Id*.  Moreover, the Court granted Rogers leeway to ask foundational questions about Ms. Johnson-Norman's duties and responsibilities at Wells Fargo and even whether she was present in Pennsylvania in 2004. Attachment A, Johnson-Norman Dep. Tr. 12:16-14:4, 15:7-18, 28:19-29:10.  The only objection raised with respect to these lines of inquiry was to limit them to the scope of time pled in the Amended Complaint. Attachment A, Johnson-Norman Dep. Tr. 38:5-39:9.  In short, Rogers was not prohibited from asking any questions about the actual allegations in Count I of his Amended Complaint.

Although Rogers states that Ms. Johnson-Norman "demonstrably prevaricated on numerous instances," he fails to cite a single example.[5] During meet and confers with Rogers, it appears that Rogers' predicate for this allegation is that Ms. Johnson-Norman was unable to remember or did not know the answers to certain foundational questions. However, the fact that Ms. Johnson-Norman could not remember her exact job title from three years ago or does not know the address of the Real Estate Group's headquarters does not serve as a basis to reopen her deposition. Attachment A, Johnson-Norman Dep. Tr. 12:16-21, 14:2-4. Indeed, Rogers had an opportunity to impeach Ms. Johnson-Norman on any "prevarications" or difficulties remembering specific facts, but instead chose to delve into irrelevant material and issues that are not before the Court.

## II.     KAREN JOHNSON-NORMAN'S OBJECTIONS TO ROGERS' PROPOSED LINES OF ADDITIONAL INQUIRY

The Court required Rogers to submit all the lines of inquiry that he intends to pursue if the Court reopens the deposition. Attachment B, Feb. 2, 2007 Hr'g Tr. 6:5-14. Rogers identified ten lines of inquiry he would like to pursue, but indicated "he doesn't want to limit the questioning to those above. He seeks to question on any other permissible topics as more information comes to light during the discovery process." D.I. 49, Mot. at 2-3. Given that the Court ordered Rogers to identify *all* the lines of inquiry that he intended to pursue, Ms. Johnson-Norman objects to any additional lines of questioning that were not disclosed in the instant motion.

---

[5] Despite Rogers' contention, there is no "documented and lengthy history of prevarication before judicial officers." D.I. 49, Mot. at 1. Karen Johnson-Norman has never been charged with perjury or been admonished by any Court. Rogers' sole "evidence" for this claim is his own self-serving, unsupported statements that Ms. Johnson-Norman has lied before. There is absolutely no reason to believe that Ms. Johnson-Norman's testimony was anything other than completely truthful.

There is, however, a documented history of Rogers stalking Karen Johnson-Norman. Rogers has repeatedly been described as "angry" and "obsessive" by the Courts. *See, e.g.*, D.I. 4 (Ex. E to Decl. in Support of Mot. to Dismiss, 16:4, 16:23, 18:12, 19:7; Ex. I at 18:15). Indeed, Rogers was twice tried and once convicted for stalking the Ms. Johnson-Norman. Thus, Rogers' motion to reopen Ms. Johnson-Norman's deposition is merely another attempt to harass and intimidate the defendant.

The following are Karen Johnson-Norman's specific objections to Rogers' proposed questions:

**1.   Please describe all parties with whom you have discussed Mr. Rogers that are or were employed by Wells Fargo.**

**Objections:** Asked and Answered, Scope of Time

Karen Johnson-Norman has already answered this question, and her answer was clear and unambiguous.[6] Ms. Johnson-Norman further objects to Rogers' failure to limit the scope of this question to the time period alleged in Count I of his Amended Complaint. The relevant time period for Rogers' claims is April 2004, and thus Rogers' questions should be equally limited to this period.

**2.   Describe by name, title, and address all of your superiors up to and including the President of Wells Fargo Real Estate Group.**

**Objection:** Relevance - the question and answer are not reasonably calculated to lead to the discovery of admissible evidence, Scope of Time

Karen Johnson-Norman objects to this question because it is irrelevant to Count I of Rogers' Amended Complaint. Rogers does not allege that Karen Johnson-Norman's

---

[6]  **Q.   With respect to your duties at Wells Fargo in April of 2004 as the vice president, did you ever at that time -- around that period of time did you ever have occasion to discuss me with anyone at Wells Fargo?**
A.   Not that I recall.
**Q.   Have you ever discussed me with anyone at Wells Fargo?**
MR. BEATY:  Objection, Your Honor.  Just to the scope of time.
THE COURT:  During what period of time, Mr. Rogers?
MR. ROGERS:  Well, the witness has only been working at Wells Fargo since I believe 2001, Your Honor.  So since 2001 until today.
THE COURT:  I will permit you to inquire -- to limit your inquiry to the period that you have made relevant by paragraph 46 of your amended complaint that is on or about April of 2004.
BY MR. ROGERS:
**Q.   Ms. Johnson, on or about April 2004, or any time thereabouts did you have occasion to speak with anyone at Wells Fargo concerning me?**
A.   No.
**Q.   Did anyone contact you about me on or about that time?**
A.   No.
Attachment A, Johnson-Norman Dep. Tr. 38:5-22, 39:1-9.

supervisors had any involvement in running an inquiry on Rogers' credit. Moreover, Ms. Johnson-Norman has already testified that she had *no* involvement in running a credit inquiry on Rogers and also testified that she did not discuss Rogers with *anyone* at Wells Fargo on or about April 2004. Attachment A, Johnson-Norman Dep. Tr. 25:17-26:2, 30:11-15, 31:3-11, 38:5-39:9. Therefore, the identity of Ms. Johnson-Norman's supervisors is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Ms. Johnson-Norman also objects to Rogers' failure to limit the scope of this question to the time period alleged in Count I of his Amended Complaint. The relevant time period for Rogers' claims is April 2004, and thus Rogers' questions should be equally limited to this period.

**3. Name all parties known to you that work for Wells Fargo in Pennsylvania.**

**Objection:** Breadth, Scope of Time

To the best of our knowledge, neither of the parties works for Wells Fargo in Pennsylvania. To the extent Rogers is asking Ms. Johnson-Norman to identify all the Wells Fargo employees that are "known to her," Ms. Johnson-Norman objects to the breadth of this question. Moreover, given Rogers' pleading, the question should be limited to who Johnson-Norman knew in the Wells Fargo Philadelphia office as of April 2004.

**4. Name all parties known to you that work for Wells Fargo Financial Acceptance or any affiliated company.**

**Objection:** Scope of Time

Again, given Rogers' allegations in Count I, the question should be limited to the time period of April 2004.

9

**5. Have you been completely honest and truthful in every judicial proceeding in which you have testified under oath?**

**Objection:** The Court has already sustained multiple objections to this question

The Court has already ruled on more than one occasion that this question is inappropriate. Other proceedings are simply irrelevant to the allegations in Count I of Rogers' Amended Complaint. *See* Attachment A, Johnson-Norman Dep. Tr. 36:16-37:10.

**6. Describe all the parties to whom you have ever disclosed personal information about Virgil Rogers.**

**Objections:** Asked and Answered, Scope of Time

Karen Johnson-Norman has already answered this question, and her answer was clear and unambiguous.[7] Moreover, any further discussion of Ms. Johnson-Norman's disclosure of information to police necessarily drives the inquiry back to Rogers' prior conviction for stalking – a subject that is not relevant to the resolution of Count I of Rogers' Amended Complaint. Ms. Johnson-Norman further objects to the scope of the question. Rogers' questions should be equally limited to April 2004.

---

[7] **Q.** With respect to any personal information that you have ever known about me have you ever provided any personal information meaning social security number, address, date of birth or any other information to any person?
**A.** No.
**Q.** You have never given any information about me at any time, and I remind you you are under oath; you have never given any information about me to any other person other than using it for your own use?
**A.** Besides the police, yes.
**Q.** Specifically whom did you provide that information to specifically?
**A.** Any policeman who asked me during the time as these cases were going on.
**Q.** In what time frame did you provide my personal information and what information did you provide?
**A.** During the period of 2000 -- May or April 2000 to June, July 2004, to the best of my recollection.
**Q.** What information did you provide?
**A.** At least your name and whatever address I had at the time and telephone numbers.
Attachment A, Johnson-Norman Dep. Tr. 19:12-22; 20:1-4; 20:11-19 (objections ommited).

10

**7. Describe any photographs, writings, recordings, or other likeness of Virgil Rogers in your possession or under your control.**

**Objection:** Relevance - the question and answer are not reasonably calculated to lead to the discovery of admissible evidence, Scope of Time

Karen Johnson-Norman objects to this question because it is irrelevant to Count I of Rogers' Amended Complaint.  Even if Ms. Johnson-Norman had photographs of Rogers, it is unfathomable that they would have any rational relation to Rogers' FCRA claim.  This inquiry instead seeks to delve into the prior relationship between the parties, which has already been ruled as irrelevant by the Court.

Ms. Johnson-Norman also objects to Rogers' failure to limit the scope of this question to the time period alleged in Count I of his Amended Complaint.  The relevant time period for Rogers' claims is April 2004, and thus Rogers' questions should be equally limited to this period.

**8. Describe your net worth and all assets greater than $1000.**

**Objection:** Relevance - the question and answer are not reasonably calculated to lead to the discovery of admissible evidence

Johnson-Norman objects to this question for a number of reasons. First, Karen Johnson-Norman's assets have no bearing on whether or not she had any involvement in running Rogers' credit history.  Rogers has yet to show a prima facie case for liability under the statute.  Until Rogers does so, there is no need to discuss Ms. Johnson-Norman's assets or ability to pay damages.

Moreover, Rogers does not need this information because the damages for this claim are statutorily limited to $1000.  Ms. Johnson-Norman has not sought this information from Rogers.  Ms. Johnson-Norman agrees to abstain from asking any questions about Rogers' net worth and assets for the purposes of recovering attorney's fees until the Court grants them pursuant to 15 USC §1681.

11

Further, disclosure of this kind of private information is inappropriate in this case. Rogers has previously been convicted of stalking Johnson-Norman. Forcing Johnson-Norman to answer this question would give Rogers access to her most personal information. The Court has already ruled that Rogers could not ask Karen Johnson-Norman where she lives. Attachment C, Feb. 1, 2007 Scheduling Hr'g Tr. 8:9-12. Therefore, disclosure of any ownership interest in any real property would circumvent the Court's order. The same would result if Ms. Johnson-Norman were forced to disclose any vehicle titles or bank accounts.

Finally, Rogers refuses to provide an unredacted version of his credit report. He cannot in good faith ask for similarly confidential information from Ms. Johnson-Norman.

**9. Describe anyone that you have paid for information about Virgil Rogers.**

**Objections:** Asked and Answered, Scope of Time

Karen Johnson-Norman has already answered this question.[8] Ms. Johnson-Norman also objects that the scope of this question to the extent it seeks information for any time period other than April 2004.

**10. Describe any contacts you have had with any credit reporting agency since 2004.**

**Objection:** Breadth, Scope of Time

Ms. Johnson-Norman objects to breadth of the question. If allowed, the question should be limited to whether Ms. Johnson-Norman had any contacts with a credit reporting agency for the purpose of obtaining information about Rogers. Ms. Johnson-

---

[8]  Q. **Have you ever paid anyone to provide you any information about me?**
    A. No.
    Q. **Have you ever hired an investigator of any sort to learn information about me?**
    A. No.
    Attachment A, Johnson-Norman Dep. Tr. 22:11-16.

12

Norman's communications with any credit reporting agency for the purpose of obtaining her own credit history is certainly irrelevant. Ms. Johnson-Norman further objects to the scope of this question to the extent that it seeks information for any time period other than April 2004.

### III. IN THE ALTERNATIVE, IF THE COURT REOPENS THE DEPOSITION, IT SHOULD BE CONDUCTED UNDER THE SAME CONDITIONS AS THE INITIAL DEPOSITION

Should the Court decide to reopen the deposition, Karen Johnson-Norman respectfully requests that the deposition proceed under the same circumstances as the first portion. It is always difficult for a victim to have her assailant confront her face to face. However, Ms. Johnson-Norman felt slightly more comfortable within the protection of the Federal Courthouse. Moreover, given Rogers' flat-out refusal to abide by the Court's Orders limiting the scope of the discovery, it is critical that the deposition be presided over by the Court so that it may reign-in Rogers as he attempts to interrogate on issues that are outside the bounds of this case.

_____/s/_____
Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania
Washington, DC 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: March 14, 2007.