UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAREN JOHNSON-NORMAN, )<br>)<br>)<br>Defendant, )<br>) | Civil Action no.06-1186 (ESH)(DAR) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO ROGERS' SECOND MOTION FOR PROTECTIVE ORDER**

Plaintiff Rogers hereby submits his response to the defendant's opposition. In it, defendant once again misleads the Court on numerous issues which will be clarified herein and clearly disregards time honored obligations of attorneys to remain ethical in the performance of legal duties. In fact, defense counsel seems to assert, albeit in an obtuse manner, that neither he nor Karen Johnson Norman bear the duties inherent in the Rules of Professional Conduct and rule of the federal judiciary, which apply to all lawyers practicing in Washington, D.C. courts, which is just incorrect. (Opp 8)

- **INTRODUCTIONS**

Defendant decries Mr. Rogers' "wild accusations of ethical and legal violations" against her and defense counsel and claims that his motion is "seething with venom." (Opp 3). Interestingly, defendant doesn't deny most of the allegations, and either she or defense counsel would be hesitant to deny them under oath. Contrarily, defendant has repeatedly been untruthful under oath and defense counsel has misled this Court repeatedly in his filings, though the Rules of Professional Conduct prohibit such behavior. She seems to again try and imply that simply because Mr. Rogers is not a lawyer, that he somehow is totally unreliable and she urges the Court to disregard everything he files or alleges. Clearly, that is not a realistic position, nor is it credible under the Constitution or the Federal

1

Rules. Therefore, in attempting to discredit Mr. Rogers with veil or obvious invectives, defendant and her counsel ultimately discredit themselves with ridiculous arguments that are simply unprofessional and outrageous.

As a preliminary matter, Mr. Rogers strongly objects to the defendants request for legal fees or costs, either for time spent on this motion, or for any other reason related to this civil action. Defendant has not paid any money for the defense of this civil action because she is represented pro bono by a private law firm, though she is not indigent. Mr. Rogers asserts that defense counsel has repeatedly impliedly threatened him or attempted to coerce him to dismiss this suit under threat of over $150,000 in legal costs that have not been borne by the defendant. Moreover, defendant tries to mislead the Court by submitting case law from the Supreme Court and lower courts which she outrageously claims support her efforts to seek remuneration for Howrey, Simon, Arnold, & White. However, Mr. Rogers has read these cases thoroughly and urges this Court to meticulously read them as well to uncover the sophistry evident in defendant's opposition. These cases don't articulate what defendant claims they do. In fact, **none** of the inapposite cases held that a private law firm acting as pro bono defense counsel was entitled to recoup fees or costs from an opponent, particularly a pro se plaintiff. The attempted misuse of these cases evidences the bad faith and dishonesty of defendant to try and maneuver around the Court and urge a ruling against Mr. Rogers primarily because he is *pro se*.

- **SOCIAL SECURITY NUMBER (SSAN)**

Defendant conveniently asserts in her Opposition that she doesn't know Plaintiff's SSAN, but that defense counsel has it in his case files because of the "long history of litigation with Rogers" (Opp 1). However, defense counsel has never been an attorney of record in any litigation in any jurisdiction involving Mr. Rogers, so his musings about litigation that would have ostensibly granted him access to Mr. Rogers' SSAN are disingenuous. Proof of this fact is that he doesn't identify any

2

litigation where defense counsel purportedly represented Karen Johnson Norman in litigation against Mr. Rogers. In fact, Mr. Rogers has never disclosed his SSAN to defense counsel and never would.

Defendant's opposition goes on to cite alleged sources where defense counsel may have gleaned Mr. Rogers SSAN. She states that Mr. Rogers' SSAN is part of the public record in "felony case F-4208-03, in the D.C. Superior Court" (Opp1).  As a preliminary matter, the record in this case should be clear that Mr. Rogers has <u>never</u> been charged with any felony in any jurisdiction. Such is another derogatory invective by defense counsel submitted coyly to try and manipulate the Court's opinion against Mr. Rogers. Mr. Rogers successfully filed suit and was awarded a settlement against the District of Columbia for illegally seizing him in California in that case and unlawfully claiming there was a felony when in fact Mr. Rogers was soundly exonerated by a jury of a single alleged misdemeanor.  Defendant then cites a transcript from an identification hearing in U.S. District Court – Eastern California in 2003, involving the same unlawful seizure that was the subject of his civil action against the District of Columbia. Additionally, defense counsel propagates and abets in the violation of Eastern California local Rule 39-140 (a) which prohibits the publication of SSAN.  Even if this court were to presume that someone in California violated the local rule and published Mr. Rogers' SSAN, it seems improper for defense counsel to avail himself of the opportunity to exploit that mistake for improper purposes in this judicial district instead of adhering to his duty to remain ethical.

      A.    **Wells Fargo Subpoena**

Mr. Rogers objects to the subpoena inasmuch as defense counsel uses his SSAN without any authorization. Though defendant claims that the subpoena has not yet been served upon Wells Fargo, she readily admits that she has already disclosed the personal information to at least one person. It is of no moment that the person is purportedly an attorney in Los Angeles, since this person also has no authorization from Mr. Rogers to disclose his SSAN and is presumably under no ethical directions from this Court to limit his uses of Mr. Rogers' SSAN. Such a blatant and deliberate act by defendant and her counsel exemplifies why Mr. Rogers needs a Protective Order. Defense Counsel apparently

won't abide by any known boundaries of legal propriety without this Court's intervention and the issuance of a Protective Order (and presumably sanctions) for this conduct. Defendant argues that only "if circumstances require [defendant] to file a copy of her subpoena to Wells Fargo with the court" will she then redact it appropriately. (Opp 4). Such an argument belies the objective in the Court's Local Rules, which are in the spirit of protecting personal information from public disclosure and misuse.

**MEET AND CONFER**

Mr. Rogers was unable to contact defense counsel prior to filing the instant motion in accordance with Rule 7(m). However, the Court should not deny the motion for at least two reasons. First, defense counsel has been on notice through numerous conversations with Mr. Rogers throughout this civil action that Mr. Rogers strongly objected to any use, disclosure, or publication of his SSAN. Mr. Rogers has communicated this fact repeatedly to defense counsel and Mr. Rogers strenuously objected to the defendant's use of his personal information as an attachment to her Motion to Dismiss in November, which she admits was a blatant violation of the Local Rules (Opp 2). The use of his SSAN in a subpoena, though not yet published in a public forum is still being disclosed in a manner that is inconsistent with the spirit of the Local Rules and is highly probative of the misuse giving rise to this civil action. Moreover, Mr. Rogers even contacted the managing partner of Howrey, Simon, Arnold, and White on two different instances to notify him of the unethical behavior of defense counsel, including his misuse of Mr. Rogers' personal information and his blatantly false representations to this Court that Mr. Rogers was convicted of a crime which he was not. Defense counsel and defendant have been on notice for many months that Mr. Rogers did not authorize the use or disclosure of his SSAN. Mr. Rogers did not return or acknowledge a pre printed release that defendant sent to him, ostensibly to avoid the objections now being raised about the unauthorized use of personal information. Were Mr. Rogers to disclose the defendant's SSAN in this manner, it is highly likely that defense counsel would be lamenting how Mr. Rogers is exhibiting "stalking" like behavior

and he would be seeking even more stringent measures than a Protective Order. However, when defendant engages in such conduct, she claims its not stalking but out of necessity.

**ALTERNATIVE SUBPOENA**

Mr. Rogers doesn't object to defendant seeking the information from Wells Fargo which will only confirm that he did not authorize anyone at Wells Fargo to initiate a credit inquiry. What Mr. Rogers does object to is the defendant disclosing any personal information to Wells Fargo (i.e. SSAN) or in return Wells Fargo disclosing any personal information to the defendant. Defendant acknowledges that Wells Fargo can provide this information without being given Mr. Rogers' SSAN. In fact she states in her motion that she disclosed it solely because it was the most "expedient method" for them to return relevant data, but of course it's not the only method. In her quest for haste, defendant and defense counsel have acted improperly and the Court should issue a Protective Order to prevent them from doing so in the future and should sua sponte issue sanctions since this is an additional occurrence of behavior that has already been demonstrated within the last few months by defense counsel.  The Protective Order should prohibit the use or disclosure of any private information. Outrageously, defendant claims that she had to disclose Mr. Rogers' SSAN to Wells Fargo to differentiate him from the thousands of other "Rogers'" with credit histories.  However, this argument is outrageous, since the records can be searched by Mr. Rogers' entire name (i.e. Virgil Marcellus Rogers) and his state of residency to differentiate him from other Rogers'.  Defendant deliberately omits Mr. Rogers' full name when making this argument in order to spin it in the most ridiculous manner possible. If she were to seek information only on "Rogers" its correct that difficulties would arise.

- **VIOLATIONS OF THE RULES OF PROFFESSIONAL CONDUCT**

Defendant claims in her opposition that Mr. Rogers failed to identify any violations of the

5

Local Rules or the Rules of Professional Conduct in support of his motion to seek a protective order. Obviously, Mr. Rogers doesn't need to prove a violation of the rules in order to seek and be granted a Protective Order, and the argument by defense counsel is baseless. Mr. Rogers incorporates by reference each and every filing in this case as though included herein as his proof of numerous violations of the Rules of Professional Conduct.

Defendant committed deliberate perjury and wasted several hours of this Court's precious resources during her deposition. For the second time in a pleading, defendant admits that she provided testimony that was false in her deposition; however it was couched innocently as a bad recollection. (Opp 7). Defendant testified at the outset of her deposition that she had no problems with memory or recollection and that she understood her obligation as a deponent and lawyer to be truthful. However, upon being exposed for providing an entire deposition of false testimony, Karen Johnson –Norman uses the seemingly benign defense that she had memory failure. Presumably, when she testified that her memory was working properly on the date of the deposition, that too was either a lapse in memory or it was an attempt to deceive Mr. Rogers and the court and behave contemptuously before a federal Magistrate. Mr. Rogers believes it was clearly an instance of the latter that warrants sua sponte sanctions for all costs associated with the deposition.

Defense Counsel possibly suborned the false testimony of his client during the deposition and now fails in his duties to correct the numerous inconsistencies by opposing the reopening of the deposition to set in motion the correction of the record. Instead, defense counsel presents dilatory arguments and excuses feigned "memory loss" by his client, which was actually contempt and perjury. Moreover, defense counsel has repeatedly misled the Court such as the false defaming statement claiming that Mr. Rogers has been convicted of stalking. Knowing this statement to be false, defense counsel files it repeatedly in an effort to harangue Mr. Rogers and gain some kind of favor from the Court.

In any event, the Rules of Professional Conduct in pertinent part state:

**Rule 3.3 (a):**  A lawyer shall not

(1):     make a false statement of fact or law or fail to correct a material false statement of fact or law…

(2)     counsel or assist a client in conduct that the attorney knows is criminal or fraudulent

(4)     offer evidence that the lawyer knows to be false

**COMMENT**

[1]     This duty defines the duty of candor to the tribunal

[2]     An assertion purported to be made by the lawyer, as in an affidavit or statement in open court, may properly be made only when the lawyer knows the assertion is true….

[3]     Legal Argument based on a knowingly false representation of law constitutes dishonesty towards the tribunal…

 [5]     When false evidence is offered by the client….the lawyer should seek to persuade the client the evidence should not be offered, or if it has been offered, that the false character should immediately be disclosed

[8]     If a lawyer learns that a fraud has been perpetrated upon the tribunal, the lawyer must take reasonable remedial measures

**Rule 3.4:**  A lawyer shall not

[b]     falsify evidence or assist a witness to testify falsely

[c]     knowingly disobey an obligation under the rules of a tribunal

[d]     make a frivolous discovery request

**Rule 3.5:**  A lawyer shall not

[d] engage in conduct intended to disrupt any proceeding of a tribunal, including a deposition.

**Rule 4.1:**  In the course of representing a client, a lawyer shall not knowingly

[a]     make a false statement of material fact or law to a third person, or

[b]     fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client

**COMMENT**

[1]     A lawyer is required to be truthful when dealing with others on a client's behalf.

**Rule 4.4**:

[a] In representing a client, a lawyer may not use means that have no substantial purpose but to embarrass, delay, or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person

**ATTORNEY FEES**

Pro Bono defense counsel, Sean Beaty saves his most incredible fairy tales for his outrageous arguments seeking legal fees for this motion and to more largely explain away his misconduct in threatening and coercing Mr. Rogers with $150,000 in fees as of the date he filed his disclosures unless Mr. Rogers dismissed the suit outright. Such conduct should not be countenanced by honest and ethical lawyers and should rightly be sanctioned. In any event, the case law submitted is inapposite.

The Supreme Court has never held that pro bono **defense attorneys** are entitled to legal fees from a plaintiff. The cases offered by defendant are as follows along with the relevant holding of each:

- <u>Blum v. Stenson</u>, 465 U.S. 886, 894-895 (US 1984) :  a non profit law firm working on behalf of a class action law suit in a civil rights case.  Fees awarded pursuant to *Civil Rights Attorney's Fees Awards Act of 1976.* Court held plaintiff fees were proper, "because of the quality of representation, the complexity of the issues, the riskiness of success, and the "great benefit to the large class" that was achieved.

- <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 95, (1989):  After a jury awarded petitioner $10,000 in damages on his claim that respondent sheriff's deputy had beaten him and thereby deprived him of his civil rights under 42 U.S.C. 1983, the Federal District Court awarded him $7,500 in attorney's fees under 42 U.S.C. 1988, which provides that the court, "in its discretion, may allow . . . a reasonable attorney's fee" **to a prevailing party** in certain federal civil rights actions, including those under 1983.  "That a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party . .").

- <u>Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights,</u> 726 A.2d 194, 197 (D.C. 1999):   Under the Human Rights Act an award of attorney's fees is contingent on a Commission finding "unlawful discriminatory practice," <u>D.C. Code § 1-2553 (a)(1)</u>,

8

which the Commission clearly found in its December 29, 1994 Notice of Final Decision and Order, and this court subsequently affirmed. *See* Natural Motion (I), 687 A.2d at 218,

- Habib v. Thurston, 517 A2d 1, 8 (D.C. 1985) :   Quaker Chair Corp. v. Litton Bus. Sys. (1976) S.D.N.Y., 71 F.R.D. 527, 535 ("*Thus, the presence of a genuine dispute over a legal issue ordinarily indicates that the losing party on the motion is 'substantially justified' in his opposition, and an award of costs to the prevailing party is unwarranted.*"). In 1990, the Court of Appeals for the District of Columbia applied the definition from Smith, supra at 614, in reiterating its standard that, "a person is substantially justified in opposing the motion if issues are raised 'about which reasonable persons could genuinely differ on whether a party was bound to comply with a discovery rule.'" Spellman v. American Sec. Bank (1990) D.C. Cir., 579 A.2d 151, 155.

- Martin v. Tate, 492 A2d 270, 274 9d.C. 1985) :   Sellers v. Wollman, 510 F.2d 119, 123 (5thCir. 1975) (holding that it is proper to award attorney fees to **legal aid society** in Truth-in-Lending Act action); Folsom v. Butte County Ass'n of Governments, 652 P.2d 437, 447 n.26 (Cal. 1982) (concluding that an attorney fee award is proper to a **legal service organization** in a suit to enforce a public transportation law).

- Copeland v. Marshall, 205 U.S. App. D.C. 390, 410:   Title VII of the Civil Rights Act of 1964 allows the **prevailing party** to receive from the loser a reasonable attorney's fee in addition to other relief. The statute provides: In any action or proceeding under ... (Title VII) the court, in its discretion, may allow the prevailing party, other than the (Equal Employment Opportunity) Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. s 2000e-5(k) (1976).

As this Court can clearly ascertain, every single case law cited by the defendant is completely

9

irrelevant to this case and is inapposite to an extent bordering on incompetence. Mr. Rogers read every single case and urges the Court to do the same to gather the magnitude of the foundering arguments presented by defendant. No case law cited has ever expressly granted fees to a private law firm acting as pro bono defense. Moreover, each of these cases were for plaintiff legal fees in cases which were in support of public welfare issues, such as federal **civil rights or discrimination** statutes**.**

Mr. Rogers renews his request for sanctions on the part of defense counsel since he filed this opposition in bad faith and required Mr. Rogers to research these frivolous cases and defense counsel should also be required to pay Mr. Rogers reasonable cost and fees for his time associated with this effort. Such a sanction will deter defense counsel from submitting ridiculous and inapposite case law in the future to the Court and Mr. Rogers

**CONCLUSION**

Wherefore, Mr. Rogers urges this court to grant his request for a Protective order in this matter to prevent a manifest invasion of his privacy and use of his SSAN by defendant. Defendant is free to seek discovery in whatever means except by use or disclosure of Mr. Rogers' private information. This is an unethical invasion that violates the spirit of the local rules (and the entire federal judiciary). Moreover, Mr. Rogers urges the Court to sua sponte sanction defendant and/or defense counsel for submitting blatantly false statements, mishandling personal information in violation to obligations of lawyers, and for wasting judicial resources by seeking legal fees by using the most inapposite and irrelevant case law possible. Lastly, the perjured testimony by defendant at her deposition and the threats, coercion, and false claims (i.e. Mr. Rogers was convicted of stalking) simply cannot be countenanced by a lawyer. Mr. Rogers requires a Protective Order and sanctions against defendant to cease this misconduct immediately.

Filed April 10, 2007                                             Respectfully Submitted,


                                                         VIRGIL ROGERS

Case 1:06-cv-01186-ESH    Document 66    Filed 04/11/2007    Page 11 of 11