UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action 06-1186 (ESH)(DAR) |
| KAREN JOHNSON-NORMAN, | ) |
| Defendant, | ) |

**PLAINTIFF'S EMERGENCY REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF AND MOTION FOR A PERMANENT INUNCTION**

Plaintiff Virgil Rogers is compelled to move this honorable court to issue an emergency preliminary injunction against defendant and defense counsel in this case enjoining both from distributing personal documents about him obtained by subpoena from Wells Fargo or any other source to any individual. The Court should require defense counsel to immediately retrieve all originals and copies of any documents pertaining to Mr. Rogers that he has in his possession or which he has already distributed and surrender them forthright to Mr. Rogers and make a sworn accounting of all electronic copies to Mr. Rogers and the Court. Further, Mr. Rogers once again request that the Court admonish defense counsel Sean Beaty for contemptuous and improper conduct in this case and *sua sponte* sanction him with *at least* Mr. Rogers' costs. Lastly, the court should require Mr. Beaty to seek court approval before he issues any further subpoenas in this case. Mr. Rogers notified Mr. Beaty of his intent to seek an injunction if he didn't cease distributing and misusing Mr. Rogers' private information and Mr. Beaty refused to cease the conduct unconditionally and voluntarily.

Defense counsel, with full knowledge that the Court is currently considering Mr. Rogers' Motion for a Protective Order to protect private information and fully aware of the history

1

between these parties made what can only be described as a reckless blunder. He not only misused his subpoena power to seek additional private documents about Mr. Rogers from Wells Fargo <u>during the pendency</u> of the current Protective Order motion, but upon receiving these private documents (including a full credit report with all sorts of Privacy Act and other protected information), ***he immediately provided them to his client Karen Johnson Norman*** and other individuals. There is no legitimate legal reason for him to do this, and his intentions appear to have been malicious and incompetent. Mr. Beaty should not have issued further subpoenas to Wells Fargo while the court considered the motion. However, given the facts and arguments made in that Protective Order motion, he was ethically obliged to protect and secure any information he received via any subpoena *at least* until the Court ruled. But defense counsel did not do this. By surreptitiously obtaining personal information which he then provided to defendant, Mr. Beaty aided and abetted in potential harassment and privacy invasions by his client against Mr. Rogers. In the least, there were <u>no legitimate</u> and lawful reason other than for felonious intent that he distributed Mr. Rogers' private information.  Mr. Rogers requires an immediate temporary injunction and a permanent injunction to enjoin Sean Beaty and Howrey from doing whatever it pleases with these documents. Since defense counsel refused to await the Court's decision on Mr. Rogers' Protective Order motion, Plainitff was compelled to seek the extraordinary relief currently sought so that defense counsel will cease and desist with his misconduct and abuse of Mr. Rogers' personal information. Without an injunction, defense counsel will apparently not abide by any boundaries or respect the authority of this Court.

**BACKGROUND**

Defendant, by and through her attorney Sean Beaty sent to Mr. Rogers by email a letter and a proposed subpoena to Wells Fargo on March 26, 2007. The subpoena contained Mr. Rogers' social security number which he never disclosed to defense counsel and he never

authorized its use or disclosure. Defense counsel then filed with this Court a Notice of Service Pursuant to California Code of Civil Process §1985.3 on March 27, 2007 which put the Court on notice that he had provided a subpoena to be served upon Wells Fargo in San Francisco. To serve process, Mr. Beaty used a person which he claims is an attorney in Los Angeles. Mr. Rogers filed a Motion for a Protective Order on March 31, 2007 in which he informed the Court of his strong objections to the manner in which defense counsel had proceeded with the subpoena to Wells Fargo and the potential misuse or disclosure of his private information and his social security number once defense counsel obtained information from Wells Fargo.

On April 2, 2007, defendant opposed the motion for a protective order. In the opposition, defense counsel misled this Court when he stated that he had not served the subpoena upon Wells Fargo despite his confusing March 27, 2007 Notice of Service. (Def'n opposition to Protective Order). The main contention in the Opposition was that Mr. Rogers had failed to meet and confer prior to filing the motion. However, circumstances warranted the Motion and the subsequent conduct by defense counsel demonstrates why Mr. Rogers had to seek a court order promptly when he could not contact defense counsel. Defense Counsel was fully aware that Mr. Rogers objected and strongly opposed the use or disclosure of his personal information and particularly the disclosure to Karen Johnson Norman or to other individuals since Mr. Rogers made that point clear in his pleading and many prior conversations.

On April 10, 2007 Mr. Rogers replied to the defendant's opposition. Mr. Rogers again <u>strenuously</u> objected to any use or disclosure of his social security number and other personal information either by defendant, her counsel, or Wells Fargo. He pointed out several discrepancies in the defendant's opposition, such as his implied immunity from the obligations of the Rules of Professional Conduct (Def'n opposition to Protective order at 2). Defense Counsel implied that since Mr. Rogers is not his client, he may take liberties with Mr. Rogers' personal information and he has no duty to act in accordance with the Rules of Professional

3

Conduct. Defendant also submitted inapposite case law asking this Court to grant legal fees for pro bono defense but the holdings of those cases demonstrated a misuse of case law doctrine and an intent to mislead the Court. The Supreme Court and lower courts did not hold that private law firms can defend cases of this nature and expect to recoup legal fees from a plaintiff. However, as Mr. Rogers has disclosed to the Court, Mr. Beaty has <u>threatened</u> him with his alleged fees of about $150,000 unless plaintiff dismissed this case. Once Mr. Rogers' reply to defendant's opposition was received, the Court took the matter under consideration and its still pending.

**SUBSEQUENT SUBPOENA**

While the Motion for a Protective Order was pending defense counsel served a subsequent subpoena to Wells Fargo Financial Acceptance Corporation ("WFFAC") in Maryland on April 14, 2007. Mr. Beaty sent Mr. Rogers an email on April 16, 2007, informing him for the first time that he had served this subpoena on WFFAC. **However, in the notice of service, Mr. Beaty claims that he served Mr. Rogers by email on April 14, 2007 (a Saturday) even though his email was never sent until April 16, 2007 (A Monday) to Mr. Rogers (see April 16 email).** Even though Mr. Rogers' social security number was purportedly not disclosed to WFFAC in the April 14, 2007 subpoena, WFFAC responded on April 17, 2007. General Counsel for Wells Fargo in San Francisco provided highly personal documents to Mr. Beaty by Federal Express on April 17, 2007. These documents were sent from the California headquarters on Tuesday even though the subpoena was purportedly served in Maryland on Saturday. Though this was only the second business day, defense counsel extraordinarily claims that Wells Fargo had already ostensibly researched, prepared, vetted and produced personal documents to defense counsel in Washington, D.C upon the second subpoena and not the first that resulted in the Motion for a Protective Order. However, the subject matter of the Protective

4

Order was the same for either subpoena. In any event, the events as told by defense counsel are either false or incredibly extraordinary.

Mr. Rogers never had an opportunity to oppose or object to the April 14, 2007 subpoena. *Once defense counsel Sean Beaty received the private documents from Wells Fargo concerning Mr. Rogers on April 18, 2007* **he promptly provided those documents to defendant Karen Johnson Norman**. The outrageousness of this unethical conduct cannot be understated. Even though defense counsel is aware that the basis for Count I of the Amended Complaint is based upon alleged misuses of Mr. Rogers' personal information by defendant, he declined to secure the personal information and instead gave it to the person who has admitted in her deposition to disclosing Mr. Rogers' personal information in the past and is currently accused of misusing it in this case.

**ARGUMENT**

The Court is considering Mr. Rogers' Motion for a Protective Order and despite the personal and sensitive nature of Mr. Rogers' private information at issue, defense counsel Sean Beaty flagrantly, intentionally, repeatedly, and contumaciously sought and then disclosed an entire credit report and other personal and private information about Virgil Rogers to Karen Johnson Norman and other individuals. Mr. Beaty doesn't even deny that he disclosed this information. In a letter to Mr. Rogers on April 19, 2007 he admits that he gave the info to Karen Johnson Norman and other purported personnel at Howrey (see April 19 letter). Such conduct is disrespectful to this Court's authority and is contemptuous. A member of the Bar should not behave unethically in this manner and Mr. Rogers' urges this court to refer Mr. Beaty to the Bar Counsel for investigation.

Mr. Beaty _knew_ that Mr. Rogers didn't authorize any of the conduct that he undertook. He misled this Court and Mr. Rogers by serving a subpoena upon WFFAC while the Protective Order motion was pending. Defense counsel lied to the Court in his Notice of Service when he

5

stated that he served Mr. Rogers on April 14, 2007 even though he didn't send any email to Mr. Rogers until April 16, 2007. And then he actually distributed the private information to defendant as soon as he received it from Wells Fargo. And Sean Beaty wants this Court to believe that WFFAC in Maryland received the second subpoena with no social security number on it on a Saturday and had researched and provided documents to him 2 days later. He also wants this Court to believe despite his notice of service of the original subpoena upon Wells Fargo on March 26, 2007 that he was telling the truth in his April 2, 2007 Opposition when he claims that he never served the subpoena upon Wells Fargo.  The statements and fact that have been clearly determined in this matter show that defense counsel has misled this Court and abused his subpoena powers and illegally obtained and distributed Mr. Rogers personal information, including a complete credit report to Karen Johnson Norman.

**INJUNCTION**

"'The decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the trial court.'" *District of Columbia v. Group Ins. Admin.,* 633 A.2d 2, 21 (D.C. 1993) (quoting *Stamenich v. Markovic,* 462 A.2d 452, 456 (D.C. 1983)).

A preliminary injunction may be granted if the moving party has clearly demonstrated (1) that there is a substantial likelihood [it] will prevail on the merits; (2) that [it] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to [it] from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order. *Id.* at 21 (quoting *Wieck v. Sterenbuch,* 350 A.2d 384, 387 (D.C. 1976)) (footnote omitted). Furthermore,

> In determining whether to grant a motion for a preliminary injunction, "the most important inquiry is that concerning irreparable injury . . . because the primary justification for the issuance of a preliminary injunction 'is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'"

Id. at 22 (quoting *Wieck, supra,* 350 A.2d at 387-88) (quoting <u>Canal Auth. v. Callaway</u>, 489 F.2d 567, 576 (5th Cir. 1974)).

**IRREPERABLE HARM**

Defense Counsel in this case has admitted to disclosing Mr. Rogers' most personal and private information to several people, including Karen Johnson Norman. Among the individuals is a purported attorney in Los Angeles who is under no obligation to secure and protect the private information, several personnel at the Howrey office in Washington, D.C. (including Mr. Kellett who is not even a member of the D.C. Bar and is therefore under no obligations to this Court whatever) and possibly various other individuals who Mr. Beaty had a desire or whim to provide with Mr. Rogers' private information for any reason, including maliciousness or a grudge. Most egregiously, Mr. Beaty acknowledged that he provided a complete credit report and other personal information to defendant Karen Johnson Norman. Defendant undoubtedly has an irrational grudge against Virgil Rogers. She has filed numerous false criminal allegations against Mr. Rogers in Maryland, Washington, D.C. and with the U.S. Air Force. All but one of her efforts have failed miserably, and she obsessively cites the one misdemeanor adjudication 7

years ago to try and bolster the other 8 or 9 failed attempts to ruin Mr. Rogers' life. Karen Johnson Norman admitted in her deposition that she had provided personal information to some individuals and she acknowledged researching Mr. Rogers by electronic means to learn his addresses and other contact information. By all accounts, defendant is unstable and should never be allowed frivolous access to private information about Plaintiff and his family for safety reasons and to prevent harassment.

Now, Sean Beaty has provided a credit report which he obtained by means which undermined this Court's authority. Instead of awaiting the Court's ruling on the Plaintiff's Second Motion for protective Order, he moved ahead to get the information by unethical means and then disbursed it to several people.

The disclosure of personal information like Social Security numbers and financial accounts is highly likely to result in irreparable harm to Virgil Rogers, particularly when this information falls into the hands of Karen Johnson Norman, an unstable person who has a history of fabricating criminal allegations and using information in a way that is illegal or improper.

The Federal Trade Commission (FTC) on its website clearly identifies that the disclosure of such information is a matter to be taken very seriously in a page entitled "*What To Do If Your Personal Information Has Been Compromised*" March 2005. (http://www.ftc.gov).

- Companies or institutions that keep personal information about you have an obligation to safeguard it. Still, from time to time, the personal information they hold may be accidentally

disclosed or deliberately stolen. If your information falls into the wrong hands, it may be misused to commit fraud against you.

- If the stolen information includes your driver's license or other government-issued identification, contact the agencies that issued the documents and follow their procedures to cancel a document and get a replacement. Ask the agency to "flag" your file to keep anyone else from getting a license or another identification document in your name.

- The FTC works for the consumer to prevent fraudulent, deceptive and unfair business practices in the marketplace and to provide information to help consumers spot, stop, and avoid them. To file a complaint or to get free information on consumer issues, visit www.ftc.gov or call toll-free, 1-877-FTC-HELP

- Having your information lost or stolen can be a frightening experience, because you may worry about how the information may be misused if it falls into the wrong hands. You might be in this situation if, for example, your wallet was stolen; you responded to a phishing email; or you were notified that a company experienced a data breach and lost some of your data. Fortunately, if your data may have been accessed without authorization, there are steps you can take to detect misuse that has already occurred and to help prevent potential future misuse.

Obviously, the FTC -the executive agency charged with overseeing consumer complaints and enforcement of privacy laws - finds the disclosure of the information that Sean Beaty improperly obtained from Wells Fargo and then disclosed to the defendant a serious matter. Undoubtedly, the disclosure of Mr. Rogers' social security number to more and more people by Sean Beaty and his subsequent disclosure of financial accounts is an emergency that will lead to irreparable

harm if this Court doesn't issue an injunction. Not only had Mr. Beaty disavowed any obligation to abide by the Rules of Professional Conduct in this case (because Mr. Rogers is not a client) but his associated counsel like Mr. Kellett isn't even a member of the D.C. Bar, neither is the lawyer in Los Angeles or any of the support staff at Howrey. Most significantly, Sean Beaty provided the private information to defendant who has never taken any oath or obligation of any court or bar association seriously, and will not hesitate to misuse or further distribute Mr. Rogers' private information. Mr. Rogers needs an immediate injunction to prevent the irreparable harm from befalling him further in this case and beyond.

**Substantial Likelihood of Success on the Merits**

Mr. Rogers should prevail on the merits for many reasons. Most glaringly, defense counsel has misled this Court about his actions and cannot prevail by prevarication since his conduct makes a mockery of this Court's authority.

Foremost, Sean Beaty has already disclosed Mr. Rogers' personal information in a Motion to Dismiss in violation of this Court's Local Rules back in November 2006, and predictably claimed it was inadvertent. Secondly, he filed a Notice of Service for a subpoena to Wells Fargo on March 27, 2007. When Mr. Rogers objected to his subpoena via a Motion for Protective Order, defense counsel then claims that he never served the subpoena upon Wells Fargo.

Clearly, this was at least confusing since he entitled his March 27, 2007 pleading a Notice of Service. In any event he claims to this court that he never filed the subpoena to Wells Fargo in California. However, he provided the subpoena (and Mr. Rogers' private

10

information) to a person that is identified as a lawyer in Los Angeles. This court and Mr. Rogers have no means to know that this person didn't have contact with Wells Fargo concerning this subpoena or that he didn't provide the information to Wells Fargo. Once it was provided to a third party for service, Mr. Beaty had no control overt he subpoena. He did not provide a sworn statement from the lawyer in Los Angeles that the subpoena was never served and Mr. Beaty didn't provide a sworn statement to that effect. Nevertheless, he represented to this Court in an opposition that it was never served, albeit in an unsworn manner.

In Mr. Rogers' Motion for a Protective Order, he was crystal clear that he objected to the use or disclosure of his private information either from defendant or from Wells Fargo, or any other individuals. In his Reply to the defendant's opposition, Mr. Rogers only stipulated that he didn't object to Wells Fargo disclosing whether he applied for any credit with them during the operative periods. However, Wells Fargo provided a complete credit report that Sean Beaty then provided in full to Karen Johnson Norman.

Though the Court had taken Mr. Rogers' Motion for Protective Order under advisement , Sean Beaty served another subpoena upon Wells Fargo. In his Notice of Service of this subpoena he again misled the Court.  He allegedly served the subpoena upon WFFAC on *Saturday* April 14. He claimed in his Notice that he served Mr. Rogers on the same date, even though his email to Mr. Rogers was mot sent until *Monday* April 16th.  (See exhibit). Even though Mr. Beaty was aware of the Court's consideration of the Protective Order he still went forward to seek more information from Wells Fargo. There is no excuse for why Mr. Beaty would tell the court that he served Mr. Rogers on April 14th even though he never did until April 16th. And though he had lamented how difficult it would be for Wells Fargo to

11

provide documents about Mr. Rogers without providing his SSAN, he would like the Court to believe that they researched and provided an entire file in 2 business days based solely upon Mr. Rogers' name and state of residence. And the file that Wells Fargo provided has nothing whatsoever to do with a California residence as requested in the subpoena since their documents imply that Mr. Rogers resided in San Antonio. All that San Beaty would like for this Court to believe in order to find him truthful and credible is *extraordinary and incredible*.

Based on the foregoing, Mr. Rogers has a very good likelihood of prevailing on the merits since Mr. Beaty had absolutely no reason whatsoever to provide Mr. Rogers' credit report to Karen Johnson Norman other than illegitimate, felonious, and unethical misuse of Mr. Rogers' personal and private information.

**Balance of the Harm and the Public Interest Factors**

Mr. Beaty is a pro bono lawyer that is now behaving in a reckless and desperate manner in an effort to prevail in this case and inflict harm upon Mr. Rogers. He is no longer concerned about his obligations under the Rules of Professional Conduct or the stated goals of pro bono legal work to serve the community. He is only concerned at this point with winning and apparently inflicting some damage upon Mr. Rogers.

The public will clearly not be harmed by an injunction that prevents Sean Beaty and the defendant from disbursing and disclosing Mr. Rogers' personal information throughout

various locales in the United States and wherever else they deem proper. Contrarily, the public good is served when improper proliferation of personal information is stymied, and the stated goals of the FTC are realized. Also, the public good is realized when rogue lawyers are admonished for their misdeeds and prevented from inflicting harm upon other parties for no good cause and the Court's integrity and authority are upheld. If the Court were to fail to issue an injunction, Mr. Beaty will have usurped the integrity of the Court and been successful in behaving contemptuously. An injunction will ensure that the Court's integrity and authority is upheld and that Mr. Rogers' personal information is not further abused.

Based on the facts of this case, it is clear that more harm will befall upon Mr. Rogers if the court doesn't promptly issue an injunction than could possibly befall defendant if it does. The only inconvenience that will come upon defendant is a court mandated inability for her and her pro bono lawyer to further distribute Mr. Rogers' social security number and private information all around the United States and possibly elsewhere. Group Insurance Admin. 633 A2d at 23

**CONCLUSION**

Sean Beaty had absolutely no legitimate reason for providing the credit report and other highly sensitive and private information that he obtained from Wells Fargo on April

13

17th to Karen Johnson Norman. The only possible reason he disclosed it to defendant were improper and contemptuous since he knew for a fact that this court was considering a Protective Order and that Mr. Rogers objected strenuously to his actions. In so disseminating Mr. Rogers' private information to defendant and several other individuals Sean Beaty inflicted irreparable harm upon Mr. Rogers under any definition, and the FTC identifies the types of frivolous breaches that were facilitated by defense counsel in this case as very serious issues on their website. The Court would likely find this behavior a violation to the Rules of Professional Conduct and that it inflicted irreparable harm such that an injunction is warranted.  Sanctions are warranted in this instance as well.

"The decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the trial court." *Stamenich v. Markovic,* 462 A.2d 452, 456 (D.C. 1983) (citations omitted). The universally applied four-part test originated in Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S. App. D.C. 106, 110, 259 F.2d 921, 925 (1958).

In considering whether to issue a preliminary injunction, "the most important inquiry is that concerning irreparable injury." *Wieck,* 350 A.2d at 387. An injunction should be issued if the threat of injury is imminent and well-founded and the injury would be incapable of being redressed after a final hearing on the merits." *Id.* at 388 (citations omitted); *see also Sampson v. Murray,* 415 U.S. 61, 88 (1974) ("the basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies" (citations omitted)).  In this case, there is no question that the injury to Mr. Rogers is already irreparable since the credit report that is the very subject of this civil action has now been provided to Karen Johnson Norman and other possible perpetrators. This report contains information on Mr. Rogers' financial accounts, employment, residency, and his current contact information. It essentially makes him and his family

vulnerable to being harassed by Karen Johnson Norman or anyone at her direction. This harm cannot ever be redressed since Sean Beaty has already provided her the private information at question and has already placed Mr. Rogers' family at risk of these harms.  The harms that will befall Mr. Rogers are not merely economic, embarrassing, or inconvenientt. Given Karen Johnson Norman's history of wild accusations and the threats identified by the FTC, disclosing a full credit report on a person is a very real threat and could potentially be life threatening where the victim is Virgil Rogers and the recipient of the information is Karen Johnson Norman. San Beaty should be expelled from further participation in this civil action for such obstructive conduct.

The standard governing the issuance of an injunction was set forth by the Supreme Court in United States v. W.T. Grant Co., 345 U.S. 629 (1953):

*The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.*

*Id.* at 633 (citation omitted); *accord, e.g.,* Cruz-Foster v. Foster, 597 A.2d 927, 930 (D.C. 1991).

Mr. Beaty may try and argue against an injunction by defending his actions once again as harmless and unintended. However, the pattern established by this member of the D.C. Bar exemplifies his non- commitment to the ethical practice of law before this Court and demonstrates that he will likely reoffend and commit similar offenses before this court and place Mr. Rogers in even further harm. Because "[t]he defendant is free to return to his old ways," and because there is "a public interest in having the legality of the practices settled," it is well established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case . . . ." *W. T. Grant,* 345 U.S. at 632 (citations omitted). While it is true that an injunction must be focused on future conduct, it is equally true that "a defendant's past conduct is important evidence — perhaps the most important — in predicting his probable future conduct." *Cruz-Foster,* 597 A.2d at 930 (citation omitted). Thus, once the plaintiff makes out a *prima facie* case of "some cognizable danger of recurrent violation," a defendant arguing that an injunction should not be issued because of voluntary cessation of the challenged activity carries the heavy burden of "demonstrat[ing] that 'there is no reasonable expectation that the wrong will be repeated.' " *W.T. Grant,* 345 U.S. at 633 (footnote omitted).

**WHEREFORE**, Mr. Rogers has proven that he will suffer irreparable harm if the Court doesn't promptly issue a preliminary injunction which enjoins defense counsel from distributing any private information about Mr. Rogers to any party and to retrieve all original and copies from all individuals. Further, the Court should issue an order that no person or business may disclose or use in any way Mr. Rogers' personal information that has been obtained via subpoena by defense counsel without an express written authorization by Mr. Rogers. Mr. Rogers has demonstrated a likelihood of success on the merits since defense counsel has undermined this Court's authority in the prosecution of this civil action and misused Mr. Rogers' information.

Mr. Rogers once again requests this court admonish defense counsel, issue *sua sponte* sanctions that reimburse Mr. Rogers for all costs associated with submitting this motion and his motion for a protective order and to sufficiently deter defense counsel from similar conduct in the future. Finally, the public good will be served by admonishing defense counsel to behave in accordance with the Rules of Professional Conduct in the future and prohibiting him from representing any party in this matter going forward since he has repeatedly violated the Rules and undermined the Court's authority.

                                                        Respectfully Submitted,

Filed April 20, 2007                             //s//

                                                        VIRGIL ROGERS