## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, *pro se* | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 06-01186 (ESH)(DAR) |
| | ) |
| KAREN JOHNSON-NORMAN | ) |
| | ) |
| Defendant. | ) |
| | ) |

## KAREN JOHNSON-NORMAN'S OPPOSITION TO ROGERS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

Rogers' instant motion apparently seeks to enjoin Karen Johnson-Norman and her attorneys from distributing documents produced by Wells Fargo Financial Acceptance to any individual. *See* D.I. 67 at 1, 13. As such, Rogers' motion is better characterized as a motion for a protective order. However, the relief sought from this Court is wholly unnecessary because Karen Johnson-Norman has already agreed enter into a stipulated protective order governing the disclosure of private and confidential information. Thus, there is no need for an injunction, preliminary or permanent, to ensure that the parties will not improperly disclose the Wells Fargo Financial Acceptance documents.

To the extent Rogers seeks to enjoin Karen Johnson-Norman from using the Wells Fargo Financial Acceptance documents in defending this case, Ms. Johnson-Norman opposes Rogers' motion, as Federal Rule 45 allows defendants to seek relevant documents and information from third-parties and use that information in their defense. Rogers has failed to provide any reason for the Court to order the extraordinary remedy of an injunction, particularly if what Rogers seeks is to limit Karen Johnson-Norman's access to all the relevant facts germane to her defense.

**FACTS**

**There is No Standing Protective Order in This Case**

In January 2007, at the outset of discovery in this case, counsel for Karen Johnson-Norman suggested that the parties enter into a stipulated protective order to govern the disclosure and use of the materials produced in this case. *See, e.g.*, Attachment A (January 12, 2007 e-mail to Rogers regarding the parties' meet and confer, (4)). Rogers declined to enter into the proposed protective order at that time. *See* Attachment B (Rogers' January 19, 2007 e-mail to Beaty regarding the parties' meet and confer). Instead, during their telephonic meet and confer on January 22, 2007, the parties agreed that to seek protective orders as necessary.

**Third-Party Discovery**

Ms. Johnson-Norman has consistently stated that she believes that Rogers himself initiated the credit inquiry alleged in Count I of his Amended Complaint, and that Rogers knows or should have known that he initiated this credit inquiry himself. Thus, third-party discovery is, and has always been, critical to Ms. Johnson-Norman's defense. Rogers appears to agree with the importance of third-party discovery in this case. Indeed, with respect to discovery from third-party Wells Fargo, Rogers stated:

> "Mr. Rogers fully intends to discover the full scope and nature of defendant's intrusion into his private credit and header records and if necessary seek leave from the Court to subpoena records relevant to this illegal act. Surely, defendant Johnson [sic], and any abettors, acting as an unauthorized agent of Wells Fargo will be the subject of subpoenas and depositions…"

Rogers' Opposition to Motion to Dismiss, D.I. 18, p. 16.

Hence, as provided by Rule 45 of the Federal Rules of Civil Procedure, counsel for Karen Johnson-Norman issued a subpoena to Wells Fargo & Co. on March 26, 2007 ("the First Subpoena"). Attachment C (March 26, 2007 Letter to Rogers regarding issuance of a subpoena to Wells Fargo & Co.). California Code of Civil Procedure § 1985.3 required Ms. Johnson-Norman to serve Rogers with notice prior to serving the

subpoena on Wells Fargo. *Id.* at 5. California law also required counsel to mail a copy of the subpoena and other required forms from within Los Angeles County, California. *Id.* at 6. To serve Rogers with the requisite notice, Benjamin Deming, an associate in Howrey's Los Angeles office, mailed the subpoena and other forms to Rogers' last known address, which is a P.O. Box in Los Angeles. *Id.*

On March 27, 2007, Rogers filed a motion for a protective order objecting to counsel for Ms. Johnson-Norman using Rogers' social security number and date of birth in the issuance of the subpoena. However, plaintiff never objected to the production of the documents requested in the subpoena itself:

> "Mr. Rogers doesn't object to defendant seeking the information from Wells Fargo which will only confirm that he did not authorize anyone at Wells Fargo to initiate a credit inquiry."

Rogers' Reply to Opposition to Motion for Protective Order, D.I. 66, p. 5.

Thus, on April 9, 2007, ten business days after providing notice of the subpoena to Rogers, counsel for Karen Johnson-Norman served the subpoena on Wells Fargo & Co. Attachment D (April 9, 2007 Letter to Wells Fargo serving subpoena). Service was effected by regular U.S. mail, fax, and e-mail on April 9, 2007. The return date on the subpoena to Wells Fargo Company was April 30, 2007. Attachment C, p. 3.

### The Subpoena to Wells Fargo Financial Acceptance

Two days after Rogers indicated that he did not object to Karen Johnson-Norman seeking information from Wells Fargo, Wells Fargo contacted counsel for Ms. Johnson-Norman and explained that Wells Fargo & Co. did not have custody or control of the requested documents, and would not produce any documents pursuant to the subpoena. Counsel was directed to issue another subpoena to Wells Fargo Financial Acceptance, who was the appropriate custodian of the records sought.

Hence, on Friday, April 13, 2007, counsel for Ms. Johnson-Norman issued a new subpoena to Wells Fargo Financial Acceptance. D.I. 67-4. The new subpoena did not

contain Rogers' social security number or date of birth. *Id.*  Counsel sent the subpoena

and a notice of service to a process server on Friday evening for service on Saturday,

April 14, 2007.[1]  *Id.*; Attachment E (Affidavit of Service of Wells Fargo Financial

Acceptance subpoena and April 16, 2007 Revised Notice of Service to Rogers).

However, the Silver Spring branch of Wells Fargo Finance was closed on Saturday, and

thus the subpoena was served on Monday, April 16, 2007. *Id.*, p. 2.  Counsel prepared a

revised notice of service and forwarded it to Rogers. *Id.*, pp. 3-4.

### Counsel for Ms. Johnson-Norman Again Proposed that the Parties Enter into a Protective Order

On April 17, 2007, Wells Fargo produced the documents pursuant to the ***Wells***

***Fargo Financial Acceptance subpoena***, which did not bear Rogers' social security

number or date of birth. D.I. 67-4; 67-6.  Counsel for Ms. Johnson-Norman received

Wells Fargo Financial Acceptance's document production on April 18, 2007, and

produced it to Rogers less than twenty-four hours later. D.I. 67-5.  Wells Fargo Financial

Acceptance produced two documents relating to its internal process to qualify Rogers for

an auto loan.  The documents show that Rogers applied for auto financing at a San

Antonio, Texas CarMax dealership in April 2004.  The document production includes an

April 21, 2004 Equifax credit report, which Wells Fargo Financial Acceptance

Corporation used to determine whether it should extend credit to Rogers.  According to

the documents, Wells Fargo approved Rogers for the auto loan.

Upon receiving the document production, Rogers' immediately sent an e-mail

asking whether counsel had forwarded the entire production to Rogers.  Rogers also

asked counsel not to share the information contained in the Wells Fargo Financial

Acceptance production with Ms. Johnson-Norman. Attachment F (Rogers' April 19,

---

[1] Although the subpoena and notice of service were drafted on Friday, April 13, 2007, counsel for Ms. Johnson-Norman dated the subpoena and notice of service as Saturday, April 14, 2007 because he anticipated service on that date. *See* Attachment E, p. 2 and D.I. 67-4.

2007 E-mail to counsel for Karen Johnson-Norman). Counsel for Ms. Johnson-Norman sent Rogers' a letter in response. *See* D.I. 67-2.

In the letter, counsel for Ms. Johnson-Norman verified that he had sent Rogers every document produced by Wells Fargo Financial Acceptance. *Id.* Counsel also assured Rogers that the Wells Fargo documents were produced pursuant to the subpoena on Wells Fargo Financial Acceptance, and not Wells Fargo & Co. *Id.* Finally, counsel told Rogers that he had already forwarded the documents to Karen Johnson-Norman, and reminded Rogers that counsel has an obligation to keep his client apprised of new factual developments in her case. *Id.*

To assuage Rogers' concerns regarding further disclosure of his personal information, counsel for Ms. Johnson-Norman again offered to enter into a stipulated protective order to govern the disclosure of the parties' personal information and attached a proposed protective order to the letter. *Id.*; Attachment G (April 19, 2007 Proposed Protective Order). Indeed, counsel said he was willing to retrieve all copies of the Wells Fargo production in Ms. Johnson-Norman's possession and destroy them. D.I. 67-2. Rogers did not respond to either of counsel's offers, and instead filed the instant motion.

I.    **ARGUMENT**

A.    **Rogers' Motion Should be Denied Because Karen Johnson-Norman Offered Him Substantially Similar Protections**

Rogers has come to the Court for resolution of an issue that could have been addressed by the parties. Rogers' Fair Credit Reporting Act claim relates directly to his credit information, including his credit history, credit score, and loan application history. All of this information is inextricably intertwined with Rogers' social security number and other personal information. Recognizing this at the outset of the case, counsel for Ms. Johnson-Norman asked Rogers to enter into a protective order to govern the use of the parties' private information in January 2007:

"(4) Protective Order: I think a protective order is necessary to address the potentially large volume of private information that is going to be made public in this lawsuit. [...] If you don't like the one I've drafted, I encourage you to draft your own and send it to me."

Attachment A at (4).

Similarly, in response to Rogers' April 19, 2007 e-mail expressing concern with Ms. Johnson-Norman's access to the evidence in this case, counsel for Ms. Johnson-Norman *again* offered to enter into a protective order to govern the use of the parties' confidential information. D.I. 67-2. Rogers still refuses to enter into the stipulated protective order.

Rogers cannot, in good faith, seek redress from the Court when Ms. Johnson-Norman has already offered similar relief in the form of a stipulated protective order. Although the stipulated protective order would allow Ms. Johnson-Norman and her attorneys access to the evidence in the case, it would also prohibit them from disclosing that information to anyone else. Attachment G. In short, Rogers would be completely protected from unauthorized disclosure of his personal information if he signed the protective order. It is unclear why Rogers refuses to take such a simple step to secure his personal information.

Rogers' argument appears to be that Karen Johnson-Norman should not be allowed to see the evidence in this case or use it in her own defense because Ms. Johnson-Norman will do something improper with the information. Setting the rhetoric and maligned intentions aside, Rogers' argument fails. First, Rogers appears *pro se*, and therefore, as his own counsel, has access to every document produced in this case. It is disingenuous for Rogers to argue that, despite the parties' tortured history, he should be allowed access to Karen Johnson-Norman's personal information but Ms. Johnson-Norman should not have access to Rogers' personal information.

Moreover, although Karen Johnson-Norman is represented by counsel *pro bono*, if Rogers should prevail in this case, Ms. Johnson-Norman has to pay the damages herself. Karen Johnson-Norman needs full and unfettered access to the record to

determine the settlement value of this case, as well as to assist her counsel in properly

defending the action. It is unfair to limit Ms. Johnson-Norman's access to the evidence

when Rogers has accused Karen Johnson-Norman of personally violating the FCRA.

**B.    Rogers Has Not Satisfied the Test for a Preliminary Injunction**

Rogers' Amended Complaint does not ask for injunctive relief, only monetary

damages. Thus is it unclear whether Rogers has properly noticed an action for a

preliminary injunction, or whether he is again seeking a protective order pursuant to

Federal Rule 26. However, to the extent Rogers is seeking a preliminary injunction, he

cannot meet the extraordinarily high burden.

This Court has repeatedly held that a preliminary injunction is "an extraordinary

remedy and must be sparingly granted." *See e.g., Sandoz, Inc. v. F.D.A.*, 439 F. Supp. 2d

26, 30 (D.D.C. 2006) (quoting *Bristol Myers Squibb Co. v. Shalala*, 923 F. Supp. 212,

215 (D.D.C. 1996); *Adair v. England*, 417 F. Supp. 2d 1, 5 (D.D.C. 2006). To succeed,

Rogers must prove (1) a strong likelihood he can succeed on the merits of a permanent

injunction; (2) that without injunctive relief Rogers will be irreparably inured; (3) that the

injunction will not substantially harm Karen Johnson-Norman; and (4) that the public

interest favors the injunction." *Association of Flight Attendants-CWA v. Pension Benefit*

*Guar. Corp.*, 372 F. Supp. 2d 91, 97-98 (D.D.C. 2005); *Elec. Privacy Info. Ctr. v. DOJ*,

416 F. Supp. 2d 30, 35-36 (D.D.C. 2006). Rogers fails to meet this standard.

**1.    Rogers' Cannot Prevail on the Merits of a Permanent Injunction**

The sole remaining allegation in Rogers's Amended Complaint is a claim for

damages pursuant to the FCRA. Rogers does not have a claim for equitable relief, and

therefore Rogers has no claim for a permanent injunction to prevail upon. D.I. 16, p. 19.

Moreover, Rogers is not entitled to a preliminary or permanent injunction because he has

refused to sign the stipulated protective order offered by Karen Johnson-Norman.

Finally, as discussed below, Rogers cannot prevail on a motion for a preliminary or permanent injunction because he has not suffered and will not suffer any injury.

### 2. Rogers Has Not and Will Not Suffer Injury from Wells Fargo's Document Production

Rogers has not articulated any concrete injury that he has suffered or will suffer if Karen Johnson-Norman and her attorneys[2] continue to have access to the Wells Fargo documents. The only "injury" Rogers alleges is a heightened risk of identity theft. However, a general fear of identity theft does not satisfy Rogers' burden. Indeed, Rogers is at no greater risk of identity theft today than he was on April 17, 2007.

First, although the Wells Fargo documents disclose Rogers' social security number, this information is already publicly available. As explained in Karen Johnson-Norman's Opposition to Rogers' Second Motion for a Protective Order (D.I. 63.), Rogers' social security number is publicly available as part of the prior criminal proceedings. *See* D.I. 22-2, p. 4. Rogers' social security number was also publicly available from Rogers' bankruptcy records. *See* Attachment H (April 2004 Bankruptcy Filing Record for Virgil Rogers). Thus, the Wells Fargo documents do not provide Karen Johnson-Norman or her attorneys with any identifying information they did not already have.

Second, the financial information disclosed in the Wells Fargo documents is stale. The Wells Fargo documents relate to Rogers' application for an auto loan at a San Antonio CarMax dealership in April 2004. The Equifax credit report, not unlike the one referred to in Rogers' Amended Complaint, is dated April 21, 2004. Thus all of the information in the Wells Fargo documents is at least three years old. Neither the Wells Fargo loan approval nor the Equifax credit report contain Rogers's current address in

---

[2] Rogers' argument that no Howrey LLP attorneys other than undersigned counsel should have access to the evidence in this case is equally unavailing. Howrey LLP employees executed confidentiality agreements governing the use of information obtained in the course of litigation. Counsel has assured Rogers that all employees working on this case will treat Rogers' personal information with the appropriate level of confidentiality. D.I. 67-2.

California because Rogers listed a post office box in San Antonio, Texas as his address when he applied for the auto loan. Thus the information is utterly useless to anyone outside of this litigation.

Moreover, ***Karen Johnson-Norman and her attorneys have already agreed to enter into a stipulated protective order that would govern the disclosure of the parties' personal information.*** Neither Ms. Johnson-Norman nor her attorneys have disclosed the Wells Fargo documents or their contents to anyone outside of this litigation. Rogers would have no need for concern if he would simply execute the stipulated protective order.

In short, there is no information in the Wells Fargo documents that is not either publicly available or worthless to anyone not involved this litigation. Hence, Rogers cannot prove that he has suffered or will suffer any actual injury, particularly when he refuses to sign a protective order granting him the very protections he seeks from the Court.

### 3.    Karen Johnson-Norman Will Be Significantly Harmed if She Cannot Use the Wells Fargo Documents in Her Defense

The Wells Fargo documents prove Karen Johnson-Norman's theory that Rogers applied for an auto loan in April 2004, and thus initiated the alleged credit inquiry himself. Although counsel believes additional documents may confirm Ms. Johnson-Norman's theory of the case, the Wells Fargo documents are critical to both Karen Johnson-Norman's defense and her affirmative case proving Rogers' bad faith in bringing and maintaining this action. If counsel for Ms. Johnson-Norman is not allowed to use the Wells Fargo documents, it will unfairly frustrate Ms. Johnson-Norman's defense.

4.     **The Public Interest is Served by Adjudication on the Merits**

When the dust settles and the Court parses through all the rhetoric, Ms. Johnson-Norman simply asks for a decision based on the merits of this case. To that end, counsel for Ms. Johnson-Norman has conducted narrowly-focused discovery on Rogers' sole remaining claim. This has included third-party discovery permitted by Federal Rule 45.

The public interest is best served when cases are decided on the facts of the case duly discovered in the course of discovery. Thus the public interest is best served by denying Rogers' motion and deciding this case with all of the relevant facts before the Court.

## CONCLUSION

Therefore, Karen Johnson-Norman respectfully requests that the Court deny Rogers' Motion for Preliminary and Permanent Injunction. Counsel also respectfully requests the Court to adopt the stipulated protective order governing the disclosure of the parties' personal information (Attachment G) as the standing protective order in this case, and award Ms. Johnson-Norman costs for opposing Rogers' instant motion. Counsel for Karen Johnson-Norman remains available to be heard on Rogers' motion if the Court is inclined to hear argument on the issue.

_____/s/_____
Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania
Washington, DC 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: April 23, 2007.