**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
VIRGIL M. ROGERS, *pro se*                          )
                                                    )
            Rogers,                                 )
                                                    )
      v.                                            ) Civil Case No. 06-01186 (ESH)(DAR)
                                                    )
KAREN JOHNSON-NORMAN                                )
                                                    )
            Karen Johnson-Norman.                   )
_____)


**KAREN JOHNSON-NORMAN'S MOTION FOR SPOLIATION SANCTIONS**

Karen Johnson-Norman hereby moves for sanctions against Rogers for spoliation

of evidence.  Ms. Johnson-Norman moves for a dismissal of Rogers' remaining claim

based on Rogers' failure to preserve relevant, and potentially-exculpatory, evidence in

this case.  Rogers failed to keep a complete and unredacted version of the Experian credit

report referenced in Count I of Rogers' Amended Complaint.  Moreover, Rogers failed to

preserve potentially exculpatory correspondence with Wells Fargo regarding his Federal

Credit Reporting Act (FCRA) allegations.  Thus, Rogers' remaining claim should be

dismissed.

As an alternative to dismissal, Ms. Johnson-Norman moves the Court to preclude

Rogers from using the single redacted page of Rogers' supposed Experian credit report at

trial.  Ms. Johnson-Norman further requests an adverse inference instruction for the jury

regarding Rogers' failure to preserve evidence.

**I.      BACKGROUND**

Rogers has one remaining claim in his Amended Complaint, which alleges a

violation of the FCRA.  Rogers claims that the Karen Johnson-Norman improperly ran an

inquiry on Rogers' credit history or caused someone else to run an inquiry on his credit history.  Fact discovery in this case is scheduled to end on June 8, 2007.

### Rogers' Alleged Experian Credit Report

Document Request 2 of Karen Johnson-Norman's first request for the production of documents sought a complete and unredacted version[1] of the credit report referred to in Count I of Rogers' Amended Complaint:

> **Document Request 2.** A copy of the credit report referred to in your Amended Complaint that discloses that Wells Fargo initiated a credit inquiry in April 2004.

> **Rogers' Reply**: Produced: Page 16 of Experian Credit report number 2209620732 dated July 14, 2005…

Rogers produced a heavily-redacted copy of Page 16 of a supposed 22-page Experian credit report, dated July 14, 2005. *See* Attachment B.  This document forms the entire basis for Rogers' FCRA claim.  However, Rogers did not produce the full credit report, or even an unredacted version of Page 16 of that report.

### Rogers' Correspondence with Wells Fargo

Document Request 7 from Karen Johnson-Norman's first set of document requests asked for all correspondence between Rogers and Wells Fargo relating to Count I of Rogers' Amended Complaint:

> **Document Request 7**.  All written communications between you and Wells Fargo, regardless of who initiated the communication, including, but not limited to, any communications relating to authorized or unauthorized credit inquiries, loans, accounts, or offers of credit.

> **Rogers' Response:**  By information and belief the only correspondence pertaining to the issues in Plaintiff's custody is produced in #1 above.  He doesn't posses [sic] the original correspondence he sent to WFFAC or

---

[1] Instruction F of Karen Johnson-Norman's first request for the production of documents called for Rogers to produce all documents "*in their entirety, in unredacted form, including all attachments and enclosures*." *See* Attachment A (Defendant's First Request for Production of Documents from Plaintiff) (emphasis added).

there [sic] initial response.  The above is his follow up letter which was
never answered.

Rogers produced a copy of a January 26, 2006 letter that Rogers wrote to Wells Fargo

Financial Acceptance Corporation. *See* D.I. 70-5.  The January 26th letter refers to two

additional letters between Rogers and Wells Fargo relating to the allegations in Count I of

Rogers' Amended Complaint: (1) a January 9, 2006 letter from Rogers to Wells Fargo,

and (2) Wells Fargo's January 16, 2006 letter in response. *Id*. at 3.

The January 26th letter suggests that Rogers first reported the alleged credit

inquiry to Wells Fargo in his January 9th letter. *See generally, Id.*  In his January 26th

letter, Rogers complained that Wells Fargo's January 16th response to his January 9th

letter is unacceptable. *Id.*

Rogers stated in his January 26, 2006 letter that he had attached copies of Rogers'

January 9, 2006 letter to Wells Fargo and Wells Fargo's January 16, 2006 letter in

response to his January 26th letter. *Id.* at 3.  Rogers also listed his attorney's law firm as

his return address:

> Virgil M. Rogers
> c/o Law Office of Tsung, Megason & Pham
> 4 E. Holly Street #215
> Pasadena, CA 91103

*Id.* at 2.  These were the same attorneys that filed Rogers' original complaint against Ms.

Johnson-Norman in the United States District Court for the Eastern District of California.

*See Rogers v. Ferrari, et al*, No. 05-1177-LKK-PAN (E.D.Cal. filed on June 13, 2005)

(D.I. 1-1).  In the body of his January 26th letter, Rogers threatened to contact FBI's

Philadelphia field office if his demands were not immediately addressed. D.I. 70-5 at 2.

Finally, Rogers threatened to sue if Wells Fargo did not respond to his demands:

> I will contact a good plaintiff's attorney in both Pennsylvania and
> Minneapolis *in anticipation of further legal action* unless my complaint is
> taken seriously and investigated promptly.

*Id*. at 3 (emphasis added).

**The Parties' Meet and Confers**

Rogers completed his document production on March 7, 2007. Karen Johnson-Norman raised her concerns with the deficiencies in Rogers' document production by letter on March 8, 2007. D.I. 70-4. Ms. Johnson-Norman objected to Rogers' production of only a single redacted page of the alleged Experian credit Report. *Id.* at 6-7. Rogers responded to Ms. Johnson-Norman's concerns by letter on March 16, 2007. D.I. 70-6. In his response, Rogers explained that he did not keep a complete copy of the credit report or the complete set of his correspondence with Wells Fargo. *Id.* at 4.

Karen Johnson-Norman requested Rogers to confirm that he did not have a complete and unredacted copy the Experian credit report or Wells Fargo's January 16, 2006 response to his letter in Ms. Johnson-Norman's first set of request for admissions:[2]

> **Request for Admission 1**. Do you admit: You do not have a complete and unredacted copy of your July 2005 Experian credit report?

> **Request for Admission 4**. Do you admit: You do not have a complete and unredacted copy of the correspondence Wells Fargo sent to you on January 16, 2006?

D.I. 70-2 at 2.

Rogers has admitted that he does not have a complete and unredactd copy of either document. *Id.*

Karen Johnson-Norman also requested that Rogers detail the efforts he has made to locate a complete and unredacted copy his Experian credit report and Wells Fargo's January 16, 2006 response to his January 9, 2006 letter. Attachment C at 3-4 (March 19, 2007 letter to Rogers regarding Rogers' discovery responses). *See also,* D.I. 70-3 at 3. With respect to his correspondence with Wells Fargo, Rogers contacted his former

---

[2] Karen Johnson-Norman also requested Rogers to admit that he did not have a complete and unredacted copy of the correspondence he sent to Wells Fargo on January 9, 2006; however, Rogers denied this request for admission. D.I. 70-2 at 2. Thus, Ms. Johnson-Norman has moved to compel production of Rogers' January 9, 2006 letter to Wells Fargo, which is apparently in Rogers' possession. D.I. 70 at 6-7.

attorney, Bernadine Tsung-Megason, and asked her to locate the letters; however, Rogers' former attorney did not have a copy of the correspondence either. D.I. 70-6 at 7. Rogers has made no effort to obtain a complete and unredacted copy of the alleged Experian credit report. *Id*. at 4, 7.

## II.       ARGUMENT

The doctrine of spoliation required Rogers to preserve and protect relevant evidence from damage or loss.  Rogers failed to adequately preserve and protect the Experian credit report that serves as the basis for Rogers' allegations.  Rogers also failed to adequately preserve and protect Wells Fargo's January 16, 2006 response to his January 9th letter.  Due to Rogers' failures, Karen Johnson-Norman has not been afforded an opportunity to inspect or review these potentially-exculpatory documents.  Thus, Karen Johnson-Norman has been severely prejudiced in her ability to defend this case. Dismissal of this case is the appropriate sanction for Rogers' spoliation.

### A.       The Court Should Exercise its Inherent Power to Sanction Rogers

When spoliation has occurred, the Court can exercise its inherent power in a variety of ways. *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 155 (4th Cir. 1995).  As the Court explained in *Vodusek*, the "trial court has discretion to pursue a wide range of responses both for the purpose of leveling the playing field and for the purpose of sanctioning ... improper conduct." *Vodusek,* 71 F.3d at 156 (*citing Welsh v. United States,* 844 F.2d 1239, 1246 (6th Cir. 1988)); *Nationwide Check Corp. v. Forest Hills Dist., Inc.,* 692 F.2d 214, 218 (1st Cir. 1982).  This Court's inherent power to sanction Rogers for spoliation ensures the integrity of our civil justice system. *Silvestri,* 271 F.3d at 590.  In essence, the application of the spoliation doctrine is an equitable remedy to be fashioned by the Court in appropriate cases.

Application of the spoliation doctrine is appropriate in this case because Rogers failed to maintain potentially-exculpatory correspondence with Wells Fargo.   The documents may have proven that Rogers has always known that the alleged inquiry was initiated at his own request.  However, without the letter from Wells Fargo, Ms. Johnson-Norman's ability to advance her theory of the case is limited.

Moreover, the Court should apply the spoliation doctrine in this case because Rogers' FCRA claim is wholly dependent on Rogers first establishing that there was an unauthorized credit inquiry.  The alleged Experian credit report is the only piece of evidence that Rogers has that could establish that the alleged unauthorized credit inquiry actually took place.  However, Rogers failed to preserve the only piece of evidence he had.  Indeed, Rogers redacted page 16 of his Experian credit report himself, and only maintained a copy of the single, redacted page because he sent it to Wells Fargo to complain about the alleged inquiry. D.I. 70-6 at 4.  Thus, while Rogers relies on page 16 of the Experian credit report to establish a violation of the FCRA, Rogers avoids producing any other relevant information contained in the remainder of the report.

Indeed, data produced by CarMax Auto Superstores, Inc. pursuant to Ms. Johnson-Norman's subpoena shows that the remainder of Rogers' 2005 Experian credit report are not only relevant to Karen Johnson-Norman's defense, but exculpates her completely. Attachment D (CarMax data identifying Rogers' multiple applications for auto financing, KJN 0014).  The data from CarMax discloses that Rogers visited the San Antonio CarMax dealership at least three times in two days; Wednesday April 21, 2004 and Sunday, April 25, 2004. *Id.*  During his three visits to CarMax, Rogers never purchased a car, but he did apply for auto financing. *Id*.  In fact, Rogers applied for auto financing four times during his three visits to the San Antonio CarMax dealership:

Wednesday, April 21, 2004 at 20:11 hours (8:11 pm)
Sunday, April 25, 2004 at 13:21 hours (1:21 pm)
Sunday, April 25, 2004 at 19:48 hours (7:48 pm)
Sunday, April 25, 2004 at 20:02 hours (8:02 pm)

*Id*.  Each time Rogers submitted an application for financing, CarMax forwarded the

application to Wells Fargo Auto Finance, as well as four other companies for credit

approval.[3] *Id*. (entries with CarMax lender ID "FRK").  Ms. Johnson-Norman believes

that each of Rogers' twenty-one applications for auto financing disclosed by the CarMax

data would have been reflected on the ***complete and unredacted version*** of Rogers' July

2005 Experian credit report.

      However, Karen Johnson-Norman has no way to verify her theory because she

cannot obtain or recreate Rogers' July 2005 Experian credit report.  The alleged April

2004 inquiry by Wells Fargo only remained on Rogers' credit report for twenty-five

months. Attachment B.  Indeed, during discovery, Rogers' refused to produce copies of

his current credit reports, arguing that the alleged April 2004 credit inquiry by Wells

Fargo would not appear:

> Current credit reports and/or FICO scores will not be produced.  Inquiries
> drop off after two years and a current report will not provide any
> admissible evidence.

D.I. 70-6 at 7.  In short, spoliation sanctions are appropriate because Rogers' failure to

preserve relevant and potentially-exculpable evidence has severely and unfairly

prejudiced Karen Johnson-Norman's ability to defend this case.

### B.     Rogers Had a Duty to Preserve Relevant Evidence

      The doctrine of spoliation applies in this case because Rogers failed to preserve

evidence even though he knew, or reasonably should have known, that the documents

were relevant to future litigation. *Vodusek,* 71 F.3d at 155; *Tucker v. Ohtsu Tire &*

*Rubber Co., Ltd.,* 49 F. Supp. 2d 456 (D. Md. 1999).   "The duty to preserve material

evidence arises not only during litigation but also extends to that period before litigation

when a party reasonably should know that the evidence may be relevant to anticipated

---

[3] On Rogers' second application for auto financing (Sunday, April 25, 2004 at 13:21 hours), CarMax
forwarded Rogers' application to a total of six companies for approval, including Wells Fargo. *See*
Attachment D.

litigation." *Silvestri v. General Motors Corp.,* 271 F.3d 583, 591 (4th Cir. 2001) *citing*

*Kronisch v. United States,* 150 F.3d 112, 126 (2nd Cir. 1998).

In this case, Rogers knew (or certainly should have known) that both his July

2005 Experian credit report and his letters to Wells Fargo and Wells Fargo's responses

would be relevant to future litigation.  Indeed, when Rogers obtained his Experian credit

report in July 2005, ***he was already in litigation against Karen Johnson-Norman***.

*Rogers v. Ferrari, et al*, No. 05-1177-LKK-PAN (E.D.Cal. filed on June 13, 2005) (D.I.

1-1).  Moreover, Rogers' own letter evidences his anticipation of future litigation

regarding the Wells Fargo credit inquiry. D.I. 70-5.

First, although Rogers does not identify her by name, Rogers clearly references

Ms. Johnson-Norman in his letter:

> I strongly suspect that *a particular employee of Wells Fargo Real Estate*
> *Group, in an effort to stalk and harass me* either initiated this illegal
> inquiry using WFFAC resources or convinced a WFFAC employee to do
> so directly.

*Id*. at 2 (emphasis added).  This one sentence from Rogers' January 26, 2006 letter

summarizes Rogers' sole remaining claim against Ms. Johnson-Norman. *Cf.* D.I. 16, ¶

36.  Indeed, in correspondence with counsel for Ms. Johnson-Norman, Rogers admitted

that he suspected that Karen Johnson-Norman was responsible for the alleged credit

inquiry when he wrote the January 26, 2006 letter. D.I. 70-6 at 5.

Moreover, in his January 26th letter, Rogers threatens litigation against Wells

Fargo if they do not respond to his demands:

> I will contact a good plaintiff's attorney in both Pennsylvania and
> Minneapolis *in anticipation of further legal action* unless my complaint is
> taken seriously and investigated promptly.

D.I. 70-5 at 3 (emphasis added).[4]  Also, Rogers addresses his letter "care of" the office of

his attorney in the *Rogers v. Ferrari, et al* case. *Id*. at 2.  Finally, Rogers attached to his

---

[4] Indeed, Rogers threatens ***further*** legal action because he had already sued Karen Johnson-Norman and an
entire cast of alleged conspirators. *Rogers v. Ferrari, et al*, No. 05-1177-LKK-PAN (E.D.Cal.) (D.I. 1-1).

January 26th letter to Wells Fargo: (1) an excerpt of his July 2005 Experian credit report, (2) his January 9, 2006 letter to Wells Fargo, and (3) Wells Fargo's January 16th reply. Rogers would not have done so had he not thought that these documents were relevant.

Thus, the scant evidence in this case shows that Rogers was already in litigation against Ms. Johnson-Norman when he discovered the alleged Wells Fargo credit inquiry, and Rogers anticipated further litigation against either Karen Johnson-Norman or Wells Fargo relating to the alleged inquiry. Hence, Rogers had a duty to preserve all of the evidence relating to his current claims. Rogers' violation of this duty warrants spoliation sanctions.

### C.    Dismissal is the Appropriate Sanction for Rogers' Spoliation

There are many different sanctions or remedies available once spoliation has occurred, including dismissal of the action or judgment against the spoliator, exclusion of evidence, or allowing a spoliation instruction as to permissible inferences to be drawn against the spoliator. *See, e.g., Silvestri,* 271 F.3d 583 (affirming dismissal of action); *Klupt v. Krongard,* 126 Md. App. 179, 728 A.2d 727 (1999) (upholding dismissal of action where plaintiff destroyed relevant evidence during the course of litigation); *see also Vodusek,* 71 F.3d 148 (jury instructed to draw adverse inferences against the spoliator); *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.,* 982 F.2d 363, 370 (9th Cir. 1992) (upholding exclusion of expert testimony as sanction for spoliation of evidence); *Fire Ins. Exchange v. Zenith Radio Corp.,* 747 P.2d 911, 103 Nev. 648 (1987) (exclusion of witness and granting defendant's motion for summary judgment due to spoliation). Indeed, "the rule that a fact-finder may draw an inference adverse to a party who fails to preserve relevant evidence within his exclusive control is well established in this jurisdiction." *Rice v. United States*, 917 F. Supp. 17, 20 (D.D.C. 1996). In exercising its inherent power, the Court should choose an appropriate sanction that is "molded to

serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2nd Cir. 1999).

Regardless of the sanction the Court chooses to impose, the policy underlying the spoliation doctrine is the same: to prevent unfair prejudice to a party. *Id.* Courts have held that unfair prejudice results when a plaintiff such as Rogers places himself in the position of having the only first-hand knowledge of a particular piece of evidence, or where a plaintiff destroys evidence which would prove persuasive for the defendant's theory of the case. *See Id.; Vodusek,* 71 F.3d at 156. Therefore, if the Court finds that Rogers knew or should have known that evidence was relevant to current or future litigation, and that such evidence was altered, lost, or destroyed by Rogers, the Court has discretion to remedy the resulting prejudice to Karen Johnson-Norman. *See Id.* at 156.

In this case, Rogers failed to preserve crucial pieces of evidence that he knew would be relevant to anticipated litigation and would exculpate Ms. Johnson-Norman. Furthermore, Rogers' failure has severely prejudiced Karen Johnson-Norman's ability to defend this case. Rogers' alleged Experian credit report is twenty-two pages long. However, Rogers has only produced one page from that report, which he heavily redacted. This prevents Ms. Johnson-Norman from analyzing the rest of the alleged credit report, which may include exculpatory information.

Karen Johnson-Norman's theory from the beginning of this case was that Rogers applied for credit with a company that used Wells Fargo to check Rogers' credit history. However, without the complete and unredacted credit report, Ms. Johnson-Norman cannot evaluate whether Rogers' sole piece of evidence supports or undermines her theory of the case. It is wholly unfair to allow Rogers, the spoliator, to merely point to the Wells Fargo notation on his credit report, testify that he did not authorize it, and

prevent Karen Johnson-Norman from having access to the rest of the report.[5]  In essence, this allows Rogers to produce evidence that is favorable to him while withholding evidence that contradicts his claims.

This prejudice to Ms. Johnson-Norman is compounded by her inability to recreate this potentially-exculpatory evidence.  As discussed *supra*, the alleged April 2004 inquiry no longer appears on Rogers' credit report.  Thus, even if the Court ordered Rogers to produce a current version of his credit reports from each of the three major credit bureaus, it would not remedy the injustice that Rogers has created.  Indeed, Rogers himself admits that recreating the credit report may not be possible. D.I. 70-6 at 7.[6]

In addition, Rogers failed to preserve Wells Fargo's January 16th response to Rogers' January 9th letter.  Rogers' failure to preserve this correspondence is also highly prejudicial to Karen Johnson-Norman because Wells Fargo's letter in response may have been exculpatory.  The letter may have explained why an inquiry was run on Rogers' credit history.  Indeed, Ms. Johnson-Norman suspects that Wells Fargo told Rogers told Rogers that it ran an inquiry on his credit because Rogers applied for auto financing at a CarMax dealership in April 2004.  Such a response eviscerates Rogers' sole remaining claim, and highlights Rogers' bad faith in bringing and maintaining this action.

However, because Rogers failed to preserve his credit report or Wells Fargo's January 16th letter, Ms. Johnson-Norman may never know what Wells Fargo said.  Once again, Rogers produced evidence favorable to him, while withholding other critical documents and foreclosing Karen Johnson-Norman's discovery of evidence that contradicts Rogers' case.  The most appropriate relief for Rogers' failure to preserve this evidence is dismissal of Rogers' sole remaining claim.

---

[5] Rogers' failure to preserve and produce a complete and unredacted copy of the July 2005 credit report also raises authenticity issues, which Rogers will not be able to overcome if he attempts to admit the document at trial.

[6] "I do not believe Experian can reproduce a credit report from a past date but this can be looked at." D.I. 70-6 at 7.

**D.     Rogers Cannot Escape Spoliation Sanctions by
Claiming Rogers' Spoliation Was Inadvertent**

It is not relevant whether Rogers' failure to preserve these documents was intentional or merely negligent.  Courts have broad discretion when imposing sanctions for spoliation and may issue spoliation sanctions not only for information destroyed as a result of intentional, bad faith actions or through gross negligence, but also though ordinary inadvertent negligence. *In Residential Funding Corp. v. George Fin. Corp.* 2002 U.S. App. LEXIS 20422 (2d Cir., Sept. 26, 2002); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001*)*; *see also Rice*, 917 F. Supp. at 21 ("Even upon a finding of "failure to preserve" evidence, rather than "gross indifference or reckless disregard" for the relevance of the evidence, the adverse inference would be warranted in an exercise of the court's discretion, given (1) defendant's degree of, at a minimum, negligence; (2) the importance of the evidence; and (3) the absence of other evidence enabling plaintiff to make the same point.") (citations omitted).

In this case, Rogers' bad faith and gross negligence in failing to preserve relevant evidence is highlighted by his refusal to provide any explanation for how he lost the documents. D.I. 70-6 at 4-5, 7.  Rogers has only written that the documents are no longer in his possession, and has refused to detail the measures he has taken to find the documents, claiming "[t]o seek nonexistent documents is obviously burdensome." *Id.* at 4.  In short, Rogers did not want to expend any effort in finding the documents. However, without explaining his failure to preserve and produce relevant and potentially-exculpatory documents, Rogers offers the Court no reason that his remaining FCRA claim should survive dismissal.

**III.     CONCLUSION**

For the foregoing reasons, Karen Johnson-Norman requests that this Court sanction Rogers for spoliation of evidence by dismissing Rogers' remaining claim. Should the Court decline to dismiss Rogers' remaining claim, Karen Johnson-Norman

respectfully requests the Court to preclude Rogers from using the single redacted page of

Rogers' supposed Experian credit report at trial.  Ms. Johnson-Norman further requests

an adverse inference instruction for the jury regarding Rogers' failure to preserve

evidence.  Counsel for Karen Johnson-Norman remains available to be heard on the

instant motion if the Court is inclined to hear argument on the issue.


_____/s/_____

Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania
Washington, DC 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: April 30, 2007.