UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, *pro se*<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KAREN JOHNSON-NORMAN<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>) Case. No. 06-01186 (ESH)(DAR)<br>)<br>)<br>)<br>)<br>) |

**KAREN JOHNSON-NORMAN'S OPPOSITION TO ROGERS' MOTION TO COMPEL DISCOVERY**

Karen Johnson-Norman has made a reasonable and good faith effort to respond to Rogers' discovery requests to the extent they call for information within the scope of discovery. Ms. Johnson-Norman has offered to confer with Rogers regarding his requests; however, Rogers has refused Ms. Johnson-Norman's offers.

In short, Rogers' discovery requests are extremely broad, unduly burdensome, and most importantly, almost entirely irrelevant to his sole remaining FCRA claim. Indeed, Rogers seeks discovery that the Court has already determined he is not entitled to. Therefore, the Court should deny the instant motion.

**I.　ROGERS SEEKS IMPROPER DISCOVERY THAT IS IRRELEVANT TO HIS REMAINING FCRA CLAIM**

Rogers' discovery requests fall in three categories: (i) interrogatories regarding Ms. Johnson-Norman's coworkers, (ii) discovery requests regarding the parties' prior relationship, (iii) and discovery requests regarding Karen Johnson-Norman's taxes and finances. Each of these categories is outside the scope of discovery in this case.

### A. Rogers' Interrogatories Regarding Ms. Johnson-Norman's Co-Workers Are Overbroad, Burdensome, and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence

Rogers served two interrogatories regarding Karen Johnson-Norman's co-workers at Wells Fargo:[1]

> **Interrogatory 1.** Identify each person by name, professional title, complete physical address, and both business phone number and fax number that currently works in the defendant's chain of command at Wells Fargo Real Estate Group including all supervisors, managers, group leaders, and/or directors up through and including the President of Wells Fargo Real Estate Group and those that have held these positions with Wells Fargo since January 1, 2004.
>
> Objection: [***]
>
> **Interrogatory 4.** Identify all persons that are currently employed by Wells Fargo or have been employed by Wells Fargo since January 1, 2004 that are personally familiar, known, or are or have been encountered during Karen Johnson-Norman's employment with Wells Fargo since January 1, 2004 irrespective of whether the familiarity or relationship existed prior to 2004.
>
> Objection: [***]
>
> **Response:** Ms. Johnson-Norman does not know anyone who was employed by Wells Fargo Financial Acceptance Corporation between March 1, 2004 and May 31, 2004.

Karen Johnson-Norman objects to these interrogatories on the grounds that they are overbroad, oppressive, and unduly burdensome. These interrogatories literally call for the name of every current or former Wells Fargo employee that Ms. Johnson-Norman has come into contact with since January 2004, from the janitor to the CEO.

Ms. Johnson-Norman further objects to these interrogatories on the grounds that they seek information that is not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. The only issue remaining in this case is whether Karen Johnson-Norman obtained Rogers' credit report "under false pretenses or knowingly without a permissible purpose." Fair Credit Reporting Act, 15 U.S.C.

---

[1] A complete copy of Karen Johnson-Norman's objections and responses to Rogers' discovery requests has already been filed with the Court. *See* D.I. 69-2 and 69-3. For the sake of brevity, and to save space, Ms. Johnson-Norman has omitted her lengthy objections to each discovery request and incorporated those objections into her brief.

1681(n)(a)(1)(B).  The names of Ms. Johnson-Norman's "chain of command" and her co-workers bear no logical relationship to that issue.  Rogers' FCRA claim is not dependant on whether Karen Johnson-Norman was acting within or outside the scope of her duties at Wells Fargo.  Indeed, even if Wells Fargo approved of the alleged violation, it would not have any bearing on Ms. Johnson-Norman's liability for the alleged inquiry.  Thus, the names of Karen Johnson-Norman's supervisors are not reasonably calculated to lead to the discovery of admissible evidence, and therefore are not discoverable.

Moreover, Rogers' claim rests on an alleged credit inquiry performed by Wells Fargo Financial Acceptance Corporation, which processes, approves, and administers auto loans such as the one Rogers applied for in April 2004.  Ms. Johnson-Norman works in the Real Estate group for a separately incorporated company, Wells Fargo Bank, N.A.  Thus, the only discoverable issue with respect to Karen Johnson-Norman's co-workers is (1) whether she knew anyone employed by Wells Fargo Financial Acceptance Corporation during the relevant time period, and (2) whether Ms. Johnson-Norman discussed Rogers with anyone at Wells Fargo Financial Acceptance Corporation during the relevant time period.

Karen Johnson-Norman has answered both these questions in the negative. D.I. 69-2 at 4, 6.  Indeed, at her deposition, Ms. Johnson-Norman testified that she did not discuss Rogers with *anyone* at Wells Fargo during the relevant time period. D.I. 52-2 at 20-21.  Thus, Rogers has received full discovery on the only pertinent issue relating to Karen Johnson-Norman's co-workers.

Rogers previously asked the Court to allow this discovery in his motion to reopen Ms. Johnson-Norman's deposition. D.I. 49 at 2.  Specifically, Rogers listed the following as questions he intended to ask Karen Johnson-Norman:

> 1. Please describe all parties with whom you have discussed Mr. Rogers that are or were employed by Wells Fargo?
>
> 2. Describe by name, title, and address all of your superiors up to and including the President of Wells Fargo Real Estate Group?

\*\*\*

    4.  Name all parties known to you that work for Wells Fargo Financial Acceptance or any affiliated company.

D.I. 49.  The Court denied Rogers' motion "for the reasons set forth by defendant in her written opposition." Minute Order, Mar. 29, 2007.  Rogers' renewed request for discovery on these issues should be denied for the same reasons.

    Finally, granting this discovery would allow Rogers to continue to harass Ms. Johnson-Norman.  If Rogers is allowed access to the names, addresses, and telephone and fax numbers of all of Karen Johnson-Norman's supervisors and co-workers, Rogers could contact every one of them for nothing more than the purpose of destroying her reputation.  Even though seven of Rogers' eight claims have been thrown out, Rogers could still send Ms. Johnson-Norman's co-workers unredacted copies of his Amended Complaint, which contain salacious and unfounded accusations.

    Similarly, Rogers could surreptitiously contact Ms. Johnson-Norman's supervisors and claim that she has engaged in some impropriety.  Indeed, Rogers has done this before. *See* Attachment A to D.I. 32.  In short, granting Rogers this discovery opens the flood gates and gives Rogers an opportunity to continue to harass and embarrass Karen Johnson-Norman.

    **B.    Discovery Requests Regarding the Parties' Prior Relationship Are Outside the Scope of Discovery in this Case**

Rogers served two discovery requests relating to the parties' prior relationship:

**Interrogatory 2.**  Identify all persons with whom defendant has personally discussed or corresponded concerning Virgil Rogers, irrespective of the subject matter of the communication including all communications with any person employed or formerly employed by Wells Fargo and any person providing or seeking direct or indirect information about Virgil Rogers since January 1, 2004.

**Objection:** [\*\*\*]

**Response:** Ms. Johnson-Norman did not discuss you with anyone at Wells Fargo between March 1, 2004 and May 31, 2004.  Counsel for Ms. Johnson-Norman will provide a log of those communications over which Ms. Johnson-Norman is asserting privilege by April 13, 2007.

4

**Document Request 2.**  A copy of any facsimiles, electronic mail, handwritten correspondence, tapes, pictures, or any other written or electronic media or communications in any format that relates or mentions in any way directly or indirectly Virgil Rogers, any member of his family or any legal action involving Virgil Rogers including but not limited to any documents or emails related to any information gleaned about Virgil Rogers from any source, provider, or agency since January 1, 2003.

**Objection:**   [***]

**Response:**   Ms. Johnson-Norman will produce any non-privileged documents that she possesses that pertain to Virgil Rogers' credit history, any possible involvement in running a credit inquiry on Virgil Rogers personal information, or documents containing Virgil Rogers' Social Security number. In response to this request for production, please find the attached document bearing Bates number KJN 0001.

Karen Johnson-Norman has answered Rogers' interrogatories with respect to whether Ms. Johnson-Norman discussed Rogers with anyone at Wells Fargo. D.I. 69-2 at 4.  However, these discovery requests reach even farther, requesting Ms. Johnson-Norman to identify *everyone* she has spoken to about Rogers since January 2004, and to produce *every* document she has that relates to Rogers since January 2003.  Interrogatory 2 and Document Request 2 are extremely broad, and call for the production of documents and information that the Court has already ruled is beyond the scope of discovery in this case.

The Court has made it clear that the parties' prior relationship, the criminal proceedings, and the civil protection order proceedings are outside the scope of discovery in this case. D.I. 52-3 at 4.[2]  However, Rogers' discovery requests call for the production of *all* documents relating to Rogers and for Ms. Johnson-Norman to identify *all* the people she has spoken to about Rogers. Not only are these requests hopelessly broad, but they necessarily relate to matters outside the scope of discovery.

---

[2] The Court has repeatedly stated that discovery in this case is limited to Rogers' sole remaining count. Feb 2, 2007 Hr'g Tr. 10:9-12 ("THE COURT: Well, I don't know what other clarity I can give. There is one count in the complaint which remains, so discovery is limited to that single count.") and *Id*. 10:20-23 ("THE COURT: Discovery is limited to Count 1, the only count which remains.").

For instance, as drafted, Document Request 2 calls for the production of all of Ms. Johnson-Norman's records relating to Rogers' 2003 criminal trial for stalking, the civil protection order entered against Rogers, and Rogers' appeal of that civil protection order. Interrogatory 2 would require Karen Johnson-Norman to identify every police officer that she spoke to about Rogers' stalking, as well as every conversation with Ms. Johnson-Norman's attorneys regarding Rogers' appeal of the civil protection order. It would be extremely burdensome to require Ms. Johnson-Norman to create a privilege log of every conversation she had with her attorneys, particularly when those conversations have no relationship to Rogers' FCRA claim.

Again, Karen Johnson-Norman has made a reasonable and good faith effort to answer these discovery requests. Focusing on Rogers' sole remaining claim, Karen Johnson-Norman answered Interrogatory 2 by reaffirming that she did not discuss Rogers with anyone at Wells Fargo during the relevant time period. D.I. 69-2 at 4. Any conversation Karen Johnson-Norman had during the relevant time period regarding Rogers with anyone *outside* of Wells Fargo, including police officers, Ms. Johnson-Norman's attorneys, and her family members, is wholly irrelevant to Rogers' FCRA claim.

Similarly, in response to Document Request 2, Karen Johnson-Norman agreed to produce:

> "[A]ny non-privileged documents that she possesses that pertain to Virgil Rogers' credit history, any possible involvement in running a credit inquiry on Virgil Rogers personal information, or documents containing Virgil Rogers' Social Security number."

D.I. 69-3 at 4. Ms. Johnson-Norman produced the only document in her possession that fit into this category, marking it with Bates No. KJN 0001. *See* D.I. 68-9. Every other document from the relevant time period in Ms. Johnson-Norman's possession relates to the prior proceedings against Rogers, and thus is not discoverable. Karen Johnson-Norman has answered these

6

discovery requests to the extent they logically relate to Rogers' remaining allegations, and therefore there is no additional discovery to be had.

        **C.**        **Karen Johnson-Norman's Tax and Other Financial Records Bear No Logical Relation to this Case**

Finally, three of Rogers' discovery requests call for the production of Karen Johnson-Norman's tax records and other financial information:

> **Interrogatory 3.** Identify the defendant's current net worth, describe all assets whether individually owned or shared with a value of at least $1000, and list all bank and brokerage accounts on which defendant is a signatory including the balance as of the date served with the instant discovery. This includes al assets owned as of or acquired since January 1, 2004.
>
> **Objection:**   [***]
>
> **Document Request 1.** A copy of all tax returns, tax transcripts, and any associated schedules, addendums, and attachments from the Internal Revenue Service and any other government for the tax years 2004 to 2007.
>
> **Objection:**   [***]
>
> **Document Request 3.** Documents which describe and assess value to any and all assets believed to be greater than $1000 in value belonging in whole or in part to Karen Johnson-Norman including their location. This includes but is not limited to all real property, bank accounts, and brokerage accounts and their location and ownership whether owned prior to January 1, 2004 or acquired thereafter if such assets are still owned in whole or in part by Karen Johnson-Norman.
>
> **Objection:**   [***]

The information sought in these requests is wholly irrelevant to Rogers' sole remaining claim and is therefore not discoverable. Karen Johnson-Norman's assets are in no way related to whether or not she initiated the alleged credit inquiry. Nor is there any indication in the record that Ms. Johnson-Norman would be unable to pay the $1000 statutory maximum fine if Rogers prevailed. Indeed, Karen Johnson-Norman offered to stipulate that she can pay the $1000 should she be found liable. *See* Attachment A at 10 (Ms. Johnson-Norman's April 18, 2007 letter to Rogers regarding discovery). Rogers, however, rejected Ms. Johnson-Norman's offer.

Now Rogers argues that these discovery requests are proper, stating:

7

> "[Q]uestions pertaining to defendant's finances are proper since several federal courts have held that in Fair Credit Reporting Act cases where actual damages cannot be proven, punitive damages may be awarded."

D.I. 69 at 1. Even if this unsupported statement were true, which it is not, this Court has already held that a "plaintiff's attempt to discover the defendant's personal information by arguing its relevance to punitive damages is unavailing." *Peskoff v. Faber*, 230 F.R.D. 25, 30 (D.D.C. 2005). Similarly, in *John Does I-VI v. Yogi*, this Court ruled that although the defendant's personal financial information was relevant to a punitive damages inquiry, the Court that the information "should not be revealed until necessary." *John Does I-VI v. Yogi*, 110 F.R.D. 629 (D.D.C. 1986).

At this point in the case, production of Karen Johnson-Norman's financial information for its relevance to Rogers' punitive damages claim is wholly unnecessary. Thus far, Rogers has not only failed to prove a *prima facie* case for liability under the FCRA, but he has failed to provide *any* evidence that Karen Johnson-Norman is responsible for this alleged inquiry. Thus, withholding Karen Johnson-Norman's private financial information is appropriate in this case. *Peskoff*, 230 F.R.D. at 30 (withholding personal financial information is "particularly appropriate…where there is no other basis for the release of the information and its absence does not prevent the plaintiff from making otherwise relevant discovery").

Furthermore, disclosing Karen Johnson-Norman's private financial information is particularly inappropriate in this case because Rogers has previously been charged and convicted on allegations relating to his stalking of Karen Johnson-Norman. Indeed, the Court ruled that Rogers could not ask Ms. Johnson-Norman for information such as where she lives. D.I. 52-4 at 3. Rogers represented to the Court that he was not interested in asking Ms. Johnson-Norman "anything like that." *Id*. However, disclosing vehicle titles, bank accounts, tax filings, or other financial information would plainly circumvent the Court's order.

Finally, Rogers asked the Court to also allow this discovery in his Motion to Reopen Karen Johnson-Norman's deposition. D.I. 49 at 3. Rogers sought permission to ask Ms. Johnson-Norman to describe her "net worth and all assets greater than $1000." *Id.* However, the

8

Court properly denied Rogers discovery on this topic. Minute Order, Mar. 29, 2007. Rogers' renewed request for discovery on Karen Johnson-Norman's finances and taxes should be similarly denied.

### D. None of Rogers' Discovery Requests Are Appropriately Limited to the Relevant Time Period Identified by the Court

In its April 4, 2007 Order granting Karen Johnson-Norman's First Motion to Compel, the Court ordered Rogers to supplement his interrogatory for the period of March 1, 2004 to May 31, 2004. D.I. 64. The Court fashioned this time period from Rogers' Amended Complaint:

> "Plaintiff, in his Amended Complaint, alleges that '[o]n or about April 2004 Defendant … obtained or caused to be obtained a consumer report...from or through a credit reporting agency.'" D.I. 64 at Fn (quoting D.I. 16, ¶ 46).

Indeed, in his opposition, Rogers argued that the discovery sought should be limited to the time of the alleged credit inquiry. D.I. 60 at 1, 3.

Rogers claims that the alleged credit inquiry took place in April 2004. Therefore, as the Court has already ordered, the relevant period for discovery in this case is March 1, 2004 to May 31, 2004. Thus, in her effort to answer Rogers' discovery requests, Karen Johnson-Norman limited her responses to the relevant time period set by the Court.

However, Rogers has taken great exception to Ms. Johnson-Norman's application of the Court's Order to his discovery requests. *See* Attachment A at 2, 7 (Rogers' First April 17, 2007 e-mail regarding Karen Johnson-Norman's Discovery Responses (00:10 hours); Rogers' Second April 17, 2007 e-mail regarding Karen Johnson-Norman's Discovery Responses (20:01 hours)). Rogers argues that even though the Court has explicitly defined the temporal scope of discovery in this case, that limitation was only applicable to Karen Johnson-Norman's discovery requests.

This argument is unavailing. The scope of discovery set by the Court should be equally applicable to both parties' discovery requests. Rogers should not be allowed to limit his responses to this time period, while forcing Karen Johnson-Norman to respond over a larger time period.

### E. For a Fifth Time, Rogers Asks the Court for Discovery that the Court Has Already Ruled as Outside the Scope of this Case

Doing his best to beat a dead horse, Rogers once again asks the Court to allow him to "require Karen Johnson-Norman to provide information under oath about her truthfulness before courts of law and her motivations in those cases." D.I. 69 at 2. Rogers seemingly has overlooked (1) the Court's December 20, 2006 Order dismissing all of Rogers' claims relating to prior proceedings (D.I. 27), (2) the Court's statements at the February 2, 2007 status conference (D.I. 52-3 at 4), (3) the Court's repeated directions to Rogers during Karen Johnson-Norman's deposition that he could not ask Karen Johnson-Norman about her truthfulness in prior cases (D.I. 52-2 at 18-19),[3] and (4) the Court's March 29, 2007 Order denying Rogers' Motion to

---

[3] *See also*, Attachment B (Johnson-Norman Dep. 33:8-35:19, Feb. 2, 2007).

    Q. Ma'am, before -- I'm going to go back to the prior question. In any judicial proceeding at any time before any judicial officer have you always testified truthfully, completely and sincerely?

    MR. BEATY: Objection, Your Honor.

    THE COURT: The Court has already sustained the objection to that question.

    MR. ROGERS: Your Honor, I understood yesterday that if the witness answered no to the question about the credit inquiry that the Court would allow inquiry into her credibility.

    THE COURT: The Court did so rule and the Court does intend to allow you to inquire regarding the credibility. However, the Court does not intend to allow you to revisit prior judicial proceedings largely on account of the district court's ruling -- the district judge's ruling with respect to those matters.

You are free to impeach the defendant with prior inconsistent statements concerning this matter, for example, or by other questions which would constitute proper efforts within the confines of the current case to impeach the credibility of the answer.

You may not inquire about the history of other proceedings because those matters are simply not before you and for the reasons already discussed by Judge Huvelle they may not be taken into account in connection with this matter.

    MR. ROGERS: There may be other judicial proceedings that were not covered under Judge Huvelle's order, Your Honor, with respect to –

    THE COURT: The Court does not intend to allow you to ask whether in prior judicial proceedings Ms. Johnson-Norman testified truthfully.

If you have other questions going to the witness' credibility more specifically do you have impeachment of material that would constitute impeachment of the answers that she gave during this deposition?

    MR. ROGERS: With respect to her answers specifically about the credit inquiry we didn't know what her answer was going to be today.

Reopen Karen Johnson-Norman's Deposition "for the reasons set forth by Karen Johnson-Norman in her written opposition" (Minute Order, Mar. 29, 2007). Despite the complete lack of relevance, and without having any evidence whatsoever that Ms. Johnson-Norman has been anything but truthful, Rogers asks this Court for a fifth time for this improper discovery. D.I. 69 at 2-3. This request should be denied.

## II.   KAREN JOHNSON-NORMAN HAS NOT WITHHELD ANY DOCUMENTS ON THE BASIS OF PRIVILEGE OR CONFIDENTIALITY

Although Rogers raises concerns about Karen Johnson-Norman's general objections, Ms. Johnson-Norman did not withhold discovery on the basis of privilege or confidentiality.

### A.   No Documents Were Withheld on the Basis of Privilege

In her responses to Rogers' discovery requests, Karen Johnson-Norman included a standard, general objection to the production of any privileged documents or information:

> **General Objection 2.** Karen Johnson-Norman objects to Rogers' requests to the extent they call for documents or other materials covered by the attorney-client privilege, the work product doctrine or any other applicable privilege. Pursuant to Fed. R. Civ. P. 26, Karen Johnson-Norman will produce a privilege log of those documents and other information *withheld on the ground of privilege*.

D.I. 69-3 at 1 (emphasis added).[4] Rogers' motion claims that Karen Johnson-Norman withheld discovery based on a claim of privilege and then withdrew the objection when Rogers asked to view a privilege log. Such is not the case.

---

So if Your Honor's asking me do I have information to impeach her on that I do not. On a general note the witness had just stated that she –

   THE COURT: Well, let me ask you to ask her questions and if there are objections I can rule on them. As I said, I do not intend to allow you to ask whether Ms. Johnson-Norman was truthful in testimony given in other proceedings spanning a period of eight or so years. That is not before me. The assigned district judge has already said that she does not intend to consider them.

[4] *See also* D.I. 69-2 at 1 ("Karen Johnson-Norman objects to Rogers' interrogatories to the extent they call for information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege.").

11

Ms. Johnson-Norman did not withhold any relevant documents or information on the basis of privilege. Thus, Karen Johnson-Norman did not produce a privilege log. To alleviate Rogers' concerns, Ms. Johnson-Norman sent Rogers two letters explaining that she had not withheld any discovery on the basis of privilege:

> We are not withholding any communications on the basis of privilege, and therefore have not prepared a log of any communications over which we are asserting the attorney-client communication privilege. We believe that any of Ms. Johnson-Norman's communications with her attorneys during the relevant time period are irrelevant because they relate solely to the Civil Protection Order case against you. The Court has already ruled that this topic is not relevant and thus these communications are not discoverable. Should the Court order Ms. Johnson-Norman to supplement her document production or interrogatory answers to include communications with her counsel relating to you during the relevant time period, Ms. Johnson-Norman will produce a privilege log at that time.

Attachment A at 5 (April 17, 2007 letter to Rogers regarding discovery).

Far from "wavering," Karen Johnson-Norman has consistently asserted that if she possessed any *relevant* documents or information that were privileged, she would produce a privilege log. However, because she is not in possession or control of any relevant discovery that is privileged, she has not produced a privilege log.

### B. Ms. Johnson-Norman Is Not Aware of Any Applicable Confidentiality Agreements

Karen Johnson-Norman also included a standard, general objection to the production of any documents or information covered by an existing confidentiality agreement:

> **General Objection 3.** Karen Johnson-Norman objects to Rogers' requests to the extent they call for the production of documents or information that are the subject of confidentiality obligations to third parties that prohibit or restrict the disclosure of such documents by Karen Johnson-Norman. Such documents will not be produced absent proper notice and/or where appropriate, upon consent of the third parties.

D.I. 69-3 at 1-2. Rogers demanded that Ms. Johnson-Norman immediately produce any applicable confidentiality agreement that precluded production of relevant discovery. To address Rogers' concerns, Karen Johnson-Norman twice clarified that she was not aware of any

applicable agreements and was not withholding any discovery based on existing confidentiality agreements:

> We are not aware of any confidentiality agreements that would restrict our production of any documents or answers to interrogatories. We are not withholding any documents or interrogatory answers on the grounds that they are covered by confidentiality agreements. However, your document requests and interrogatories are extremely broad. If the Court orders Ms. Johnson-Norman to supplement her document production or interrogatory answers, we will have to (1) find out if any confidentiality agreements apply to the supplemental production, and (2) follow the procedure outlined in those confidentiality agreements with respect to the production of any confidential information.

Attachment A at 9 (April 18, 2007 letter to Rogers regarding discovery). Ms. Johnson-Norman made this general objection because Rogers' discovery requests were so broad that they could be read to seek potentially confidential information. For instance, although such discovery sought would be wholly irrelevant to this case, one could read Rogers' discovery requests to call for the production of materials covered by a confidentiality agreement with Wells Fargo or some other third-party. Nonetheless, Rogers' argument is moot because Karen Johnson-Norman has not withheld any documents due to confidentiality concerns.

### III.     ROGERS FAILED TO MEET AND CONFER IN GOOD FAITH REGARDING HIS DISCOVERY

Karen Johnson-Norman has tried in good faith to resolve this discovery dispute with Rogers; however, Rogers has made no effort to negotiate or narrow the scope of his requests. Ms. Johnson-Norman has repeatedly offered to confer with Rogers about his requests. Attachment A at 4, 11; *see also* D.I. 67-2 at 2. It is true that Ms. Johnson-Norman has consistently maintained her position regarding the scope of discovery in this case:

> The Court has already ruled that discovery in this case is limited to Count I of your Amended Complaint. Feb 2, 2007 Hr'g Tr. 10:9-12, 10:22-23.[1] Our view is that your discovery requests encompass a wide swath of topics almost entirely outside this permissible scope of discovery. Nonetheless, we have made a good faith effort to respond to your discovery requests to the extent they relate to Count I of your Amended Complaint.

13

> We understand that you believe the parties have reached an impasse regarding your discovery requests; however, we do not agree. We do not believe there has been any meaningful meet and confer process, and therefore your motion to compel is premature. We remain available to discuss your discovery requests with you and urge you to reconsider moving to compel discovery at this time.
>
> We look forward to your written response.

Attachment A at 11 (footnote omitted). However, Karen Johnson-Norman's position on the scope of discovery did not preclude Rogers from conferring with counsel regarding his requests. Indeed, Karen Johnson-Norman again invited Rogers to confer regarding his discovery requests in her April 19, 2007 letter:

> As for your discovery requests, we propose negotiations via correspondence. Please provide us with specific categories of documents or information related to Count I of your Amended Complaint that you believe we have not produced. Please specify the date range for each category of documents or information you are requesting.

D.I. 67-2. Rogers never responded to the letter. Instead, he filed his motion to compel.

Although Rogers argues that Karen Johnson-Norman "doesn't want to cooperate" and "dares Mr. Rogers to notify the Court," the reality is that Rogers has made no meaningful effort to confer with Ms. Johnson-Norman regarding his requests. Counsel for Karen Johnson-Norman does not have a direct contact phone number for Rogers,[5] but Rogers has the phone numbers of Ms. Johnson-Norman's attorneys. However, Rogers has never called counsel to discuss his discovery requests.

## IV. CONCLUSION

Rogers' repeated efforts to obtain discovery outside the scope of this case are made in bad faith. The Court could not have been clearer with respect to the scope of discovery in this case, and Ms. Johnson-Norman has repeatedly reminded Rogers of the Court's rulings. Nonetheless, Rogers persists.

---

[5] Rogers has consistently refused to provide counsel for Ms. Johnson-Norman or the Court with a direct contact phone number or a physical address, either in the United States or abroad. Instead, Karen Johnson-Norman is forced to call a voice messaging service, which then forwards the message to Rogers. All correspondence is sent via e-mail.

14

Karen Johnson-Norman respectfully requests that the Court deny Rogers' motion and grant Ms. Johnson-Norman reasonable attorney's fees and costs incurred in opposing his motion. To the extent the Court grants any or all of the relief sought by Rogers, Karen Johnson-Norman respectfully requests that the discovery be limited to the relevant time period already set by the Court (March 1, 2004 to May 31, 2004) and that Ms. Johnson-Norman be allowed to redact all personal information from the documents that she produces to Rogers.

Respectfully submitted,

_____/s/_____
Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania
Washington, DC 20004
(202) 783-0800
Attorney for Karen Johnson-Norman

Dated: May 9, 2007.