UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
VIRGIL M. ROGERS, *pro se*          )
                                    )
            Plaintiff,              )
                                    )
       v.                           ) Civil Case No. 06-01186 (ESH)(DAR)
                                    )
KAREN JOHNSON-NORMAN                )
                                    )
            Defendant.              )
_____)

**KAREN JOHNSON-NORMAN'S REPLY TO ROGERS' OPPOSITION TO
SECOND MOTION TO COMPEL DISCOVERY**

     In his opposition, Rogers apparently excuses his failure to produce relevant discovery with the justification that Karen Johnson-Norman has not responded to Rogers' discovery requests to his satisfaction. However, Rogers' argument fails because there is absolutely no rule of law allowing Rogers to withhold discovery based on Karen Johnson-Norman's objections to Rogers' discovery requests, much less allowing Rogers to ransom his discovery for responses to his discovery requests. *See CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) ("If one party is withholding discovery to which another is entitled, the appropriate remedy is by discovery motion, not by a suspension of discovery.").

     Ms. Johnson-Norman's motion to compel is rooted in a legitimate need to ably defend against Rogers' accusations at trial. The "primary purpose" of discovery is the "prevention of surprise at trial." *See District of Columbia v. Sterling*, 578 A.2d 1163, 1167 (D.C. 1990) (*quoting Corley v. BP Oil Corp.*, 402 A.2d 1258, 1261-62 (D.C. 1979); *Redding v. Capitol Cab Co., 284 A.2d 54* (D.C. 1971) (pretrial procedure contemplates that fair disclosure be made in pretrial statements in order to avoid surprise). Ms. Johnson-Norman's discovery requests, like her third-party subpoenas, relate to her

1

defense against Rogers' FCRA claim. From the beginning, Karen Johnson-Norman's theory of the case has been that Rogers' himself initiated the April 2004 credit inquiry, and therefore not only is Ms. Johnson-Norman innocent of the allegations, but Rogers has brought this case in bad faith. D.I. 34-1. Thus, all of the "intelligence gathering" complained of by Rogers is simply a function of Ms. Johnson-Norman preparing her defense and establishing Rogers' bad faith. Indeed, Rogers does not object to the relevancy of the discovery sought, but rather that he simply should not have to produce it because of privacy interests.[1]

### I. ROGERS HAS ADMITTED THAT HE HAS NOT PRODUCED ALL OF THE RELEVANT DOCUMENTS IN HIS POSSESSION

Rogers claims that he has "disclosed all of he information he has in his possession." D.I. 76 at 2. However, this claim is inconsistent with Rogers' responses to Karen Johnson-Norman's requests for admissions, in which he *denied* that he has produced all documents in his possession. D.I. 70-2 at 2. Indeed, according to his responses to Ms. Johnson-Norman's requests for admissions, Rogers possesses at least two categories of documents that have yet to be produced.

#### A. Rogers Has Failed to Produce Relevant Correspondence with Wells Fargo

Karen Johnson-Norman sought all of the correspondence Rogers had with Wells Fargo regarding his allegations. Rogers stated there were three letters between Wells Fargo and he, but that Rogers only had the last letter in his possession. In preparation for her Motion for Spoliation Sanctions, Karen Johnson-Norman asked Rogers to admit that he did not have the other two letters:

---

[1] Rogers accuses counsel of alleged "improper defense trickery" for allegedly sharing Rogers' discovery to Ms. Johnson-Norman whilst a "protective order motion" was pending. D.I. 76 at 2. However, Rogers has steadfastly refused to sign the proposed protective order. D.I. 68-8. Rogers cannot forestall discovery because of his self-caused impasse.

2

> **Request for Admission 3**. Do you admit: You do not have a complete and unredacted copy of the correspondence you sent to Wells Fargo on January 9, 2006?
>
> **Request for Admission 4**. Do you admit: You do not have a complete and unredacted copy of the correspondence Wells Fargo sent to you on January 16, 2006?

D.I. 70-2 at 2.

Rogers admitted that he does not have Wells Fargo's January 16, 2006 letter, but *denied* that he *does not* have his initial letter to Wells Fargo dated January 9, 2006. *Id.* Thus, Rogers' denial means that he *does* have a copy of his January 9, 2006 letter to Wells Fargo, but he simply failed to produce it.

Rogers argues that any "confusion" regarding his inconsistent discovery responses is "likely due to improperly framed questions or questions which are compound and confusing." D.I. 76 at 2. However, the Requests for Admissions Nos. 3 and 4 could not have been clearer. Moreover, Rogers never contacted counsel to clarify Ms. Johnson-Norman's discovery requests and did not object to those requests. Indeed, Rogers' statement that he does have the January 9, 2006 letter expressly contradicts his earlier statement:

> There was an initial correspondence that I sent to WFFAC informing them of my concerns on this unauthorized inquiry and to the best of my recollection that was sent about October 2005 and a brief form letter I received back from WFFAC notifying me that they had no record of me having an account with WFFAC that was faxed to me about January 2006. ***Regrettably, those correspondences are not in my possession and it appears that they have been misplaced.***

D.I. 70-6 at 2 (emphasis added). Karen Johnson-Norman has no way to know which of Rogers' statements was truthful. However, if Rogers has the correspondence, the Court should compel its production.

Rogers also argues that Ms. Johnson-Norman sought this correspondence from Wells Fargo; however, this is completely false. Rogers, of all people, is well aware that Ms. Johnson-Norman's subpoena to Wells Fargo sought only documents relating to

3

Rogers' *applications for credit*. D.I. 67-4 at 1.  Nor was Ms. Johnson-Norman required to seek the correspondence from Wells Fargo.  Indeed, despite Rogers' contention, the burden is not on Ms. Johnson-Norman to seek documents from third parties that Rogers himself had a duty to keep and maintain.

### B. Rogers Apparently Has Other Documents Relating to His Claims That He Has Failed to Produce

Similarly, Rogers has denied that the two documents he has produced in discovery are the only two documents in Rogers' possession relating to his claim:

> **Request for Admission 7**. Do you admit: The only two documents in your possession related to the allegations in Count I of your Amended Complaint are (i) a redacted copy of Page 16 of your 22-page Experian Credit Report, dated July 14, 2005, and (ii) a copy of your January 26, 2006 letter to Wells Fargo Acceptance Corporation?
>
> **Rogers' Answer:** Deny

D.I. 70-2 at 2.  The only reasonable reading of Rogers' denial is that he *does* possess additional documents relating to Count I of his Amended Complaint, but has not produced them to Ms. Johnson-Norman.

Karen Johnson-Norman has no idea what additional documents Rogers has in his possession relating to Count I of his Amended Complaint.  However, to the extent Rogers has additional documents, their production was called for in Document Request 1, and their identification was called for in Interrogatory 3.  Rogers should be compelled to produce any additional documents he has in his possession that relate to Count I of his Amended Complaint.

Rogers cannot rely on artifice to escape the implications of his inconsistent discovery responses.  Either he has additional documents, or he does not.  Either answer leads to the same conclusion: Rogers has not been truthful or forthcoming in his discovery responses.  Thus, to the extent Rogers has additional documents, they should be produced or Rogers should be precluded from using them at trial.

##   II.    ROGERS CANNOT AMBUSH KAREN JOHNSON-NORMAN AT TRIAL WITH EVIDENCE OF HIS ALLEGED DAMAGES

In his opposition, Rogers avers, for the first time, that because he is unable to quantify his damages, he "seeks damages in accord with the statute as well as punitive damages." D.I. 76 at 3.  If the Court is amenable, Ms. Johnson-Norman is willing to accept this representation as Rogers' stipulation that he is seeking statutory damages under the FCRA rather than actual damages.  Thus, if Rogers will not present evidence of any actual damages at trial, Karen Johnson-Norman will not need discovery on that issue.

However, to the extent Rogers expects to present evidence at trial regarding his actual damages, Karen Johnson-Norman should be allowed discovery of that evidence. Rogers is not entitled to ambush Ms. Johnson-Norman with such evidence at trial. *Sowell v. Walker*, 755 A.2d 438, 445 (D.C. Cir. 2000) (stating that the "system that has long ago abandoned trial by ambush"); *see also Dorocon, Inc. v. Burke*, 2005 U.S. Dist. LEXIS 38839, *41 (D.D.C. 2005) (holding that defendants "precluded from holding a trial by ambush" and were not allowed to submit "'evidence' relating to an issue outside the scope of discovery").

Furthermore, this stipulation does not excuse Rogers from producing evidence regarding why punitive damages are justified in this case.  "Punitive damages may be awarded for conduct that is 'willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression.'" *Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 97 (D.D.C. 2004) (*citing Harris v. Howard University*, 28 F. Supp. 2d 1, 25 (D.D.C. 1998) (internal citations omitted)).  Ms. Johnson-Norman needs to have all of the evidence Rogers intends to use against her to prepare for trial.  Thus, Ms. Johnson-Norman

respectfully requests that the Court compel Rogers to produce or identify his basis for seeking punitive damages in this case, or in the alternative, preclude Rogers from presenting such evidence at trial.

### III.     CONCLUSION

For the foregoing reasons Karen Johnson-Norman respectfully requests this Court to compel Rogers to supplement his document production in response to Document Requests 1, 6, and 7, and to either supplement or amend Rogers' answers to Interrogatories 3, 4, and 7. In the alternative, Ms. Johnson-Norman requests an order precluding Rogers from using any facts or documents at trial that he has not disclosed in discovery.

_____/s/_____
Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania
Washington, DC 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: May 29, 2007.