**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIRGIL M. ROGERS, *pro se* )<br><br>Plaintiff, )<br><br>v. )<br><br>KAREN JOHNSON-NORMAN )<br><br>Defendant. ) | <br><br><br><br><br><br><br><br>Civil Case. No. **06-01186 (ESH)** |

**KAREN JOHNSON-NORMAN'S OPPOSITION TO ROGERS' OBJECTIONS TO THE
COURT'S REPORT AND RECOMMENDATION FOR DISMISSAL**

To Virgil Rogers, this lawsuit is simply a game. Previously convicted of stalking behavior, Rogers has abused the legal system to continue his harassment of Karen Johnson-Norman. To that end, Rogers filed a baseless suit against Ms. Johnson-Norman alleging a violation of the Fair Credit Reporting Act (FCRA). Moreover, Rogers has maintained this action long after discovery in the case has exculpated Karen Johnson-Norman and proven that Rogers himself is responsible for the alleged credit inquiry giving rise to this suit.

Nonetheless, Rogers refuses to play by the rules. Rogers refused to appear at his deposition, but repeatedly demanded the he be allowed to reexamine Karen Johnson-Norman. Rogers refused to appear at the Court-ordered status conference, but filed three separate discovery motions for the Court's determination. Rogers refused to preserve and produce relevant evidence, but objected when Karen Johnson-Norman sought evidence from third-parties.

Any five year-old will tell you that everyone has to play by the rules. Rogers is no exception. Rogers has repeatedly failed to comply with the Federal Rules and the orders of this Court, and has been serially irresponsible in prosecuting his case. Thus, dismissal of Rogers' sole remaining claim is appropriate.

# I.    BACKGROUND

At the June 7, 2007 status conference Karen Johnson-Norman explained the basis for her motion for Rule 41(b) dismissal. June 7, 2007 Hrg. Tr. 3:21-10:16.  After receiving Ms. Johnson-Norman's motion and proffer, Magistrate Judge Robinson found that Rogers' conduct warranted dismissal pursuant to Rule 41(b).  *Id*. at 11:13-12:1.  Referring the case back to the Court for its ruling, Magistrate Judge Robinson's Report and Recommendation for dismissal lists five grounds for dismissal. D.I. 84 at 1-2.

## A.    Rogers' Failure to Appear for the Status Hearing

On May 17, 2007, Karen Johnson-Norman moved for a status conference to resolve open discovery issues or discuss the need to extend the discovery period. D.I. 74.  Rogers was scheduled to appear for his deposition in Washington, D.C. on June 6, 2007, and therefore the Court presumably saw no prejudice to Rogers in setting an in-person status conference on Thursday, June 7, 2007. Minute Order, May 18, 2007.

Rogers asked the Court to cancel the status conference, and instead reschedule it as a telephonic hearing. D.I. 79.  Rogers argued that the hearing "may pose some financial difficulties" for him because he does not live on the East Coast. *Id.* at 2-3.  However, the Court rejected Rogers' argument, citing the reasons set forth in Karen Johnson-Norman's Opposition. Minute Order, June 4, 2007.[1]  Thus, Rogers was expected to appear before Magistrate Judge Robinson, in person, on Thursday, June 7th.

However, on the day of the status conference, Rogers directly disobeyed the Court's order and failed to appear.  Noting Rogers' absence for the record, the Court found that Rogers had not filed any additional papers with the Court regarding his appearance, and that Rogers had

---

[1] In her opposition, Karen Johnson Norman argued that Rogers could not possibly suffer any financial harm because Rogers was scheduled to appear for his deposition in the District of Columbia on the day before the hearing. D.I. 80.

not attempted to contact the Court to explain his absence. June 7, 2007 Hrg. Tr. 2:10-3:2.  Karen

Johnson-Norman then moved for dismissal pursuant to Rule 41(b), and the Court allowed

counsel for Ms. Johnson-Norman to establish the record supporting involuntary dismissal. *Id*. at

3:18-10:6.

### B.    Rogers' Failure to Appear for His Deposition

On April 19, 2007, Karen Johnson-Norman noticed Rogers' deposition for Wednesday,

June 6, 2007 in Washington, D.C. Attachment A (Notice of Deposition).  This gave Rogers over

six weeks to make travel arrangements from wherever he currently resides to the East Coast.  On

May 17 and May 21, 2007, Karen Johnson-Norman reminded Rogers of his upcoming deposition

and offered to adjust the start time to accommodate Rogers' travel plans. Attachment B

(Correspondence regarding Rogers' deposition).  Rogers never moved the Court for protection

regarding his deposition, and never indicated to Karen Johnson-Norman that Rogers had no

intention of showing up.  Planning to proceed with Rogers' depositions as scheduled, Karen

Johnson-Norman retained a court reporter and videographer for the deposition.  However,

Rogers failed to appear as noticed.

Rogers' failure to appear for his deposition prejudices Karen Johnson-Norman in two

ways.  First, Karen Johnson-Norman was unable to obtain important discovery regarding her

defense.  Karen Johnson-Norman's defense theory is that Rogers himself initiated the April 2004

credit inquiry alleged of in his Amended Complaint.  Through third-party discovery, Karen

Johnson-Norman has obtained evidence that Rogers indeed initiated the April 2004 credit report

by applying for several auto loans at a CarMax Auto Superstore in San Antonio, Texas.

Attachment C (Rogers' application for auto financing with Wells Fargo).  *See also* D.I. 75-1 at 2.

Naturally, in preparation for trial, Karen Johnson-Norman must be afforded the opportunity to discover Rogers' explanation for the apparent inconsistency between his pleadings and the evidence in the case. Perhaps he can explain how anyone other than Rogers himself could have used Rogers' name, address, social security number, date of birth, employment history, phone number, and family information to apply for the April 2004 auto loans. Attachment C. However, because Rogers' refused to appear at his deposition, Karen Johnson-Norman has been precluded from discovering this explanation.

Second, counsel for Karen Johnson-Norman expended a significant amount of time and energy preparing for Rogers' deposition, including paying for a court reporter and videographer. Counsel for Karen Johnson-Norman spent over 10 hours preparing for Rogers' deposition, at a cost of over $2845.00. Additionally, hiring a court reporter and videographer has cost counsel for Karen Johnson-Norman over $600. Rogers' refusal to appear at his deposition has deprived Karen Johnson-Norman of the ability to capture any value from these expenditures.

### C.    Rogers' Failure to Produce Relevant Discovery

Karen Johnson-Norman has fully briefed Rogers' failures to maintain and produce relevant discovery in her Second Motion to Compel and Motion for Spoliation Sanctions, and Ms. Johnson-Norman incorporates those motions by reference. D.I. 70, 71. However, Rogers' failure to produce relevant discovery has severely prejudiced Karen Johnson-Norman. Rogers has failed to answer interrogatories relating to his claim for punitive damages. D.I. 70 at 2-5. Rogers also failed to maintain a complete and unredacted copy of the only piece of evidence he has – a July 2005 Experian credit report. D.I. 70-2 at 2. Rogers has also provided inconsistent discovery responses relating to relevant documents in his possession. Cf. D.I. 70-2 at 2 (No. 7) and Attachment D at 3 (Rogers' response to Document Request No. 1). In short, Rogers has

done little more than assert bald allegations of wrongdoing and stonewall production of documents and information relating to his sole remaining claim.

### D.    Rogers' Refusal to Cooperate with Third Party Discovery

From the beginning, Karen Johnson-Norman believed that third-party discovery would bear critical evidence in this case. D.I. 34-1 at 2.  However, Rogers repeatedly refused to cooperate with third-party discovery in this case.  Rogers complained to the Court every time Karen Johnson-Norman served a subpoena to a third-party. D.I. 61, 67, 75 at 7, 76 at 2, 79, and 83 at 2.  Rogers continually sought to block Ms. Johnson-Norman's third-party discovery despite his representation to counsel for Ms. Johnson-Norman that he himself "intend[ed] to serve subpoenas on Wells Fargo and other entities, which if opposed may lead to countless hearings and motions." Attachment E (Rogers e-mail to Beaty regarding third party discovery). Furthermore, instead of agreeing to a protective order, Rogers filed motion after motion to foreclose Karen Johnson-Norman from seeking relevant discovery from third parties. D.I. 61, 67. Rogers contacted third-parties and threatened them with litigation for complying with Karen Johnson-Norman's validly issued subpoenas. Attachment F (Rogers' e-mail to Wells Fargo regarding its compliance with Ms. Johnson-Norman's subpoena).  In sum, not only did Rogers refuse to produce relevant documents and data, but he actively tried to prevent Karen Johnson-Norman from discovering the truth through third-parties.

### E.    Rogers' Bad Faith in Filing, Maintaining, and Prosecuting His Claims

Finally, Rogers has filed, maintained, and prosecuted his FCRA claim in bad faith.  The evidence developed during discovery shows that Rogers himself initiated the April 2004 credit inquiry complained of in his Amended Complaint. Attachment C; D.I. 75-1 at 2.  The evidence

shows someone using Rogers' name, address, social security number, date of birth, employment history, phone number, and family information applied for no less than four auto loans over the course of two days. Id.   CarMax forwarded these loan applications to several companies, including Wells Fargo, for financing decisions.

Ms. Johnson-Norman believes it is incredible that Rogers conducted a reasonable inquiry prior to filing his lawsuit, as required by Rule 11(b), and simply forgot about the four applications for auto loans with CarMax that he submitted in April 2004.  However, even if we accept that Rogers simply forgot about the credit applications, Rogers has maintained this action long after discovery has exculpated Karen Johnson-Norman.[2] Attachment C; D.I. 75-1 at 2. Indeed, far from Rogers' wanting to figure out "how this could have happened," Rogers has pursued his case for several months after discovering that he himself initiated the alleged inquiry. Feb. 1, 2007 Hrg. Tr. 18:8.

Worse yet, Rogers' behavior in prosecuting his claims has been deplorable.  Rogers has repeatedly threatened counsel for Ms. Johnson-Norman with ethics complaints to the D.C. Bar. Attachment G (Rogers' correspondence to counsel for Ms. Johnson-Norman threatening bar complaints); *see also* D.I. 67-5.  Rogers also sent two e-mails to counsel for Karen Johnson-Norman's supervisors to complain about counsel's *pro bono* defense of Ms. Johnson-Norman and questioning counsel's dedication to ethical conduct. D.I. 66 at 4.  Rogers' allegations against counsel for Ms. Johnson-Norman have been investigated by counsel's law firm, Howrey LLP, and have been summarily dismissed.  Nonetheless, it is clear that Rogers will stop at nothing to

---

[2] Karen Johnson-Norman received documents from Wells Fargo on April 18, 2007, which show that it processed an auto loan for Virgil Marcellus Rogers on April 21, 2004.  These documents were produced to Rogers on April 19, 2007.

derail Ms. Johnson-Norman's defense in this case, even if it includes *ad hominem* attacks on

Karen Johnson-Norman's counsel.

## II.      ALL ROADS LEAD TO DISMISSAL

The Court has authority to dismiss Rogers' sole remaining claim on multiple grounds.

First, the Court can dismiss Rogers' FCRA claim pursuant to Federal Rule 41(b) based on his

failure to prosecute his case, evidenced by his refusal to attend the status conference and his

deposition, as well as his refusal to cooperate in discovery.  Similarly, the Court could dismiss

Rogers' sole remaining claim under Federal Rule 37 for his repeated discovery violations.  In

either case, dismissal is the *least* drastic sanction for the Court to impose.

### A.      This Case Meets the Standard for Dismissal Under Federal Rule 41(b)

Not withstanding Rogers' analysis of Rule 41(b) dismissal under Third Circuit

precedent,[3] this case is deserving of dismissal for Rogers' failure to prosecute.  The Supreme

Court has long held that district courts have the power to dismiss a case when a party "fails to

comply with a court order designed to advance the orderly prosecution of the case." *Link v.*

*Wabash R.*, 370 U.S. 626, 630 (1962).  Indeed, in 2000 the D.C. Circuit upheld a dismissal in a

factually similar case where a plaintiff failed to attend a status hearing, did not provide an excuse

for her absence, blocked discovery, and filed baseless motions with the Court. *See Wooten v.*

*Premier Yachts, Inc*., 2000 U.S. App. LEXIS 29204, *2 (D.C. Cir. 2000) ("On review of the

record, we conclude that the district court did not abuse its discretion in dismissing this action

based on appellant's failure to appear at the status conference, the inadequacy of her excuse, her

refusal to participate in discovery, and the filing of baseless motions even after the district court

warned of the consequences").

---

[3] The Court should note that Rogers' Brief plagiarizes the Third Circuit's Opinion in *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863 (3d Cir. 1994), as well as other Supreme Court opinions. See Attachment H (Declaration of Sean Beaty).  Indeed, of the 26 paragraphs in Rogers' Objections to the Report and Recommendation, only seven are Rogers' own. *Id*. at 2.

When deciding a Rule 41(b) motion, the Court must consider whether there are lesser sanctions that would better serve the interests of judgment. *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C. Cir. 1987). Rogers correctly points out that district courts generally should not dismiss a case for a ***single*** violation of the court's orders. See, e.g., *Gardner v. United States*, 211 F.3d 1305, 1308-1309 (D.C. Cir. 2000) (reversing district court's dismissal for a party's one-time refusal to attend pretrial conference). However, dismissal is warranted in this case because of Rogers' multiple discovery violations, serially-baseless motions, and his failure to appear before the Court as ordered. Indeed, were the Court to sanction Rogers for each individual transgression, the combined punishment would be far more draconian than the Rule 41(b) dismissal with prejudice.

**B.      Outright Dismissal Is in the Interests of Justice and Efficiency, and Is the Lesser Sanction in this Case**

If the Court chooses not to dismiss Rogers' case, a long series of delays and additional litigation will unfold. First, the Court would have to reopen discovery so that Karen Johnson-Norman could have the opportunity to depose Rogers. This will likely lead to a battle over where Rogers' deposition should take place, and whether the Court should supervise the deposition as it did for Ms. Johnson-Norman. Similarly, the Court would have to afford Ms. Johnson-Norman an opportunity to move for sanctions against Rogers to recover the costs incurred by his failure to attend his first deposition.

Second, the Court would have to reinstate, or the parties would have to refile, the five motions which were pending at the time of the June 7, 2007 status conference. D.I. 61, 67, 69, 70, 71. These five motions include Rogers' Motion for Protective Order, Rogers' Motion for a Preliminary Injunction, Rogers' Motion to Compel, and Ms. Johnson-Norman's Second Motion to Compel and Motion for Spoliation Sanctions. *Id.* These motions will likely require oral argument, which will result in further delay in order to accommodate Rogers' schedule. Ironically, if the Court reinstates Karen Johnson-Norman's discovery motions, Rogers' sole remaining claim could be dismissed pursuant to Federal Rule 37. Johnson-Norman Dep. Tr.

12:1-2 ("THE COURT: It may be the case that pursuant to Rule 37 this Court could dismiss the action for largely the same reasons.").[4]

Rather than outright dismissal for Rogers' repeated discovery violations, the Court could also grant Karen Johnson-Norman's motion to preclude Rogers from presenting evidence at trial of anything that he did not produce in discovery. Either way, the Court would have to reset the summary judgment briefing schedule, and force Karen Johnson-Norman to replead what is already evident – that Rogers knowingly filed his action in bad faith and in contravention to the truth.

Finally, apart from a determination that Rogers filed his action in bad faith, the Court could determine that Rogers should bear Ms. Johnson-Norman's fees and costs for responding to his baseless discovery motions and for refusing to cooperate in discovery. Indeed, this award for fees and costs could be for several thousand dollars – many times more than the $1000 statutory limit on recovery in FCRA claims. 15 U.S.C. 1681(n). Thus, Rogers may be in a *worse* position if the Court were to allow his claims to stand rather than dismiss them.

Again, the question is not what is easiest for the Court to do, but whether dismissal is the appropriate sanction for Rogers' conduct. In this case, not only does Rogers' conduct warrant dismissal, but 41(b) dismissal is the *least* severe sanction the Court could impose for Rogers' repeated violations. If Rogers' claims survive, the case will still likely be dismissed on either Karen Johnson-Norman's discovery motions or on summary judgment. Moreover, Rogers' may be liable for paying thousands of dollars in fees and costs if Karen Johnson-Norman prevails on any of the reinstated discovery motions.

---

[4] The standard for dismissal under Federal Rule 37 is substantially similar to the standard for Federal Rule 41(b). *Bonds v. District of Columbia*, 93 F.3d 801, 807-808 (D.C. Cir. 1996). Therefore the Court's analysis under either rule would likely yield the same result.

**C.**    **Rogers Should Not Be Allowed to Slink Away with a Dismissal Without Prejudice to Refile**

Finally, the Court should not accept Rogers' fall-back position that this case should be dismissed without prejudice. Rogers' strategy is clear – Rogers would simply refile this case in another jurisdiction alleging the same conduct in his campaign to further harass Karen Johnson-Norman. Such forum shopping should not be encouraged.

## III.    CONCLUSION

Karen Johnson-Norman respectfully requests that this Court dismiss Rogers' sole remaining claim. Using this litigation as a vehicle to continue his harassment of Karen Johnson-Norman, Rogers has consistently treated this suit as a game. Even worse, Rogers refuses to play by the rules. Given Rogers' repeated failure to obey the Court's orders and cooperate in discovery, dismissal is the appropriate sanction for his conduct.

Respectfully submitted,

_____/s/_____

Of Counsel:

Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: July 2, 2007