**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
VIRGIL M. ROGERS,                    )
                                     )
                Plaintiff,   )
  v.                                 )
                                     )   Civil Action no.06-1186 (ESH)
KAREN JOHNSON-NORMAN,                )
                                     )
                                     )
                Defendants,  )
_____)

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO ROGERS'**
**OBJECTIONS TO THE REPORT AND RECOMMENDATIONS**

    COMES NOW, Plaintiff Rogers in response to the defendant's opposition to his objection to Magistrate Judge Robinson's Report and Recommendation. In the least, defendant's opposition is very emotionally charged and belligerent towards both Mr. Rogers and the Court. It begins with some baseless wordplay accusing Mr. Rogers of playing games and then it proceeds straight into misleading and deceiving the Court about the facts surrounding the Magistrate Judge's Report. Defendant's pleading hardly seems to be the work product of an attorney, much less one trying to maintain the decorum of this civil action professionally and ethically.

    The defendant's pleading is replete with disinformation. Mr. Rogers will attempt to address the more glaring misstatements averred by the defendant. Regrettably, the tone of this case has descended to an astoundingly dreadful level.  As shameful as the language and allegations that have arisen during this case, Mr. Rogers stands fully behind his assertions concerning the behavior of defendant and her counsel.

    Despite the negative view she paints of Mr. Rogers in her pleading, the defendant is not a credible litigant. By way of the public records in the long history of these parties Mr. Rogers reminds the Court of a few factors weighing against the credibility of the defendant. Despite her ethical shortcomings, she is purportedly a member of the D.C.

Bar. After engaging in a two year extra-marital affair with Mr. Rogers (6 years her junior), *defendant solicited Mr. Rogers to cooperate with her in a scheme to murder her husband[1]*. At the time, Mr. Rogers was a decorated officer in the U.S. Air Force and soundly rebuffed the defendant's solicitations. Defendant then threatened Mr. Rogers that she would "ruin" his life. She then proceeded to file nearly 10 false criminal charges and numerous civil contempt motions against Mr. Rogers in an effort to discredit his character and ruin his life as she had threatened. Overall, her efforts to have Mr. Rogers convicted of serious felony charges failed miserably, though she ably perjured herself into one petty misdemeanor conviction out of the bunch 7 years ago for "attempted stalking".[2] She continued to make allegations against Mr. Rogers after he left the Air Force and moved far away from her. She falsely accused Mr. Rogers of committing some illegal act against her in 2002 while he was actually in Georgia. She lied to District Judge Gerald Bruce Lee of Eastern Virginia about this allegation until she was impeached soundly and shown to be untruthful and possibly delusional.

In 2003 Karen Johnson Norman made more false allegations against Mr. Rogers while he was present in Sacramento, California living with a decorated Sacramento Police Officer. Defendant claimed Mr. Rogers was in Washington, DC committing some unnamed crime against her but during one of the periods she mentioned Mr. Rogers was actually in the presence of an FBI Special Agent on a social outing and that agent knew irrefutably of his whereabouts. Despite this fact, defendant enlisted the aid of rogue MPD detective Ralph Durant who lied to a judge and falsified an arrest warrant in order to illegally seize Mr. Rogers in Sacramento. After a traumatic 6 months of incarceration for a fictional crime, Mr. Rogers was acquitted by a D.C. jury, Karen Johnson Norman was humiliated and discredited and her allegations were proven once again to be fictional objects of her imagination.

---

[1] Sworn testimony of this fact can be obtained at F4208-03 in D.C. Superior Court and there is polygraph evidence to support it as well.

After the latest bout of fighting false criminal charges by defendant, Mr. Rogers filed a civil suit against her and the District of Columbia. Mr. Rogers prevailed against the District of Columbia and it acknowledged wrongdoing in settling his suit for a myriad of charges including false arrest and constitutional deprivations. Even while the original suit was pending in District Court in Eastern California, Karen Johnson Norman continued to make false allegations against Mr. Rogers in pursuit of an unwarranted Civil Protection Order that was baseless. She even led a Superior Court judge to falsely believe she had been harassed by Mr. Rogers when he wasn't even on the east coast and sometimes not even in the continental United States.

***Karen Johnson Norman has <u>never</u> denied soliciting Mr. Rogers to assist her in murdering her spouse***. If she were to do so, she would be soundly impeached and discredited with irrefutable evidence and she is aware of this fact. The instant civil action is a progeny of the same suit that Mr. Rogers prevailed against the District of Columbia and the rogue factions of the Metropolitan Police Department. Defendant cites repeatedly the unjust misdemeanor conviction to this day to try and bolster her arguments but the weight of the facts are against her. She cannot be trusted in or out of any court of law since adherence to oaths and promises are optional.

Defense Counsel, Sean Beatty has threatened Mr. Rogers throughout this litigation. Beatty cries about the fact that Rogers contacted the managing partner of Howrey but this was <u>wholly warranted after Beatty threatened Mr. Rogers to either dismiss this case or he would be forced to pay $200,000 in legal fees</u>. Clearly, this is unethical for a member of the D.C. Bar to extort a pro se litigant in such a way. In fact, Mr. Rogers contacted defense counsel and offered to move the court for a mutual dismissal once again (as he has offered numerous times throughout the litigation) on July 6, 2007 under Rule 41 (a) but defense counsel refused to consent to such a dismissal unless Mr. Rogers agreed to pay him legal fees (though he has been a pro bono defense counsel throughout this case). In fact as the Court may recall, Mr. Rogers agreed to dismiss the case <u>before</u> discovery

---

[2] It appears that Mr. Rogers is the first person to be convicted of attempted stalking in Superior Court following a bench trial. Defendant committed blatant perjury to support this conviction.

began (he did so at the initial scheduling conference in open court) asking only for an apology of some sort from the defendant. Defense counsel rejected this offer several times and now moans about the cost and time he has expended litigating this case, knowing that he has made no effort whatsoever to resolve it promptly on terms fair to both parties.

- **Argument**

The discovery in this case has not exculpated defendant as she falsely claims in her motion (pg 1). She has certainly misused the discovery process to garner improper private information about Mr. Rogers for her own personal use (such as obtaining a copy of his social security card and an old driver license). These items don't have any relevant use to any issue in this case, but defendant refused to cease her coercive and improper discovery methods, even using them as a tool of her threats against Mr. Rogers to dismiss the case. Nevertheless. Despite claiming that she has been exculpated, none of her discovery produced any documentation showing that Mr. Rogers authorized the credit inquiry. Defendant cannot produce any document with Mr. Rogers' signature authorizing this inquiry, she cannot produce the name of one person who Mr. Rogers allegedly spoke to in pursuit of this inquiry and she wildly claims that Mr. Rogers made 21 credit inquiries at the exact same time, which is ludicrous and belies any kind of logic. None of these inquiries are supported by a signed application. In fact, Mr. Rogers did not authorize this inquiry and he was not at Carmax when defendant claims that he was.

- **Status Conference**

Mr. Rogers did call the Court numerous times after it denied his request for a telephone hearing but before the hearing itself to notify the Court that he could not attend. In fact, Mr. Rogers left numerous messages on Magistrate Judge Robinson's clerk (Chauncey Malone) and her courtroom clerk (Lorita Miller) voice mail system. In each message Mr. Rogers notified the clerk that he would be unable to attend the hearing as scheduled and asking for direction. Neither Mr. Malone nor Ms. Miller acknowledged the messages or called Mr. Rogers back though he left a number with them when he called. Apparently, Magistrate Judge Robinson was not given the messages concerning Mr. Rogers' calls. Unfortunate as this fact is, Mr. Rogers made every possible effort to

contact the clerk and the court beforehand so that defendant could not now mislead this Court by claiming he just ignored it. Unfortunate as it was, Mr. Rogers did not just ignore the Court's order and made every possible effort to make alternate arrangements. Given the fact of his serious efforts to make alternate arrangements with the Court, involuntary dismissal is not warranted under Rule 41 (b).

Defendant apparently discounts the case law which doesn't hold pro se litigants to the same lofty standards as Sean Beatty, who himself has not met the expected standards of attorney ethics or performance. In any event, the Court generally affords pro se litigants a more lenient standard. <u>Haines v. Kerner</u> 404 U.S. 519, 520 (1972); <u>Moore V. Agency for Int'l Dev</u>. 994 F.2d 874, 8789 (D.C. Cir).

- **Deposition**

Defendant was notified well in advance that Mr. Rogers would not attend the deposition as scheduled by defendant. The reasoning was grounded in the fact that the Court had not acted on his motion for a protective order. Mr. Rogers notified defense counsel via phone and through a pleading filed before the Court that he would not attend the deposition until a protective order was either ordered by the Court or denied. Because of the blatantly abusive and unprofessional tactics to which defense counsel had resorted in this case, Mr. Rogers had a well founded fear that the tactics used at the deposition would potentially be even more abusive than they had been on paper. For this reason primarily, Mr. Rogers determined to await the court's decision on the pending protective orders. Costs that the defendant bore as a result of ignoring Mr. Rogers' advanced notification should rightfully be the responsibility of defendant. She claims she expended over $2845.00 for the deposition but she fails to mention in her motion whatsoever that she had notice at least a week beforehand that there would be no deposition occurring on that date. This case seems to have become an opportunity for the defendant to threaten, coerce, or manipulate money from Mr. Rogers by any means necessary at every opportunity. The Court should ignore these statements because they don't' fully explain the defendant's responsibility in allegedly incurring these costs, and therefore she is not entitled to them whatsoever.

- **Thirds Party Discovery**

Defendant never cooperated with any of Mr. Rogers' discovery requests in this matter but claims Plaintiff stonewalled the discovery process.  In fact, defendant committed perjury at her deposition on numerous occasions and has admitted to doing so in various pleadings (though she claims to have had memory loss).  In fact, she refused to answer questions about her veracity under oath or before judicial officers in the past. In fact, even though the deposition was presided over by Judge Robinson, Karen Johnson Norman blatantly obstructed the deposition in any event by lying under oath. Now, she claims discovery was hindered because Rogers notified Wells Fargo that the subpoena which was served by defendant was the subject of a request for a protective order (which was entirely true). Mr. Rogers never failed to produce any discovery that was in his possession. This claim by defendant is more false aggression.

- **FCRA CLAIM WAS NOT FILED IN BAD FAITH**

Defendant repeatedly claims that Mr. Rogers knowingly filed this civil action in bad faith because she claims he initiated the credit inquiry at issue. As mentioned, her alleged proof of this is not supported by a signed authorization by Mr. Rogers initiating the inquiry. In fact, such an authorization has never existed. Mr. Rogers has never authorized this inquiry. Defendant cannot provide even an unsworn statement of anyone that Mr. Rogers allegedly spoke to at Carmax where he allegedly authorized the inquiry.  No matter how long discovery would have continued it would have been impossible for defendant to prove bad faith in the way she claims because Mr. Rogers was not at Carmax when she claims he was there and he never spoke to anyone to authorize this inquiry. Even on the documents she has claiming that Mr. Rogers applied for credit, there is no persons name and there is no authentication or sworn evidence that defendant's evidence is factual. In fact its illogical because she claims Mr. Rogers applied for credit 21 times on the same day even thought she claims he was approved the first time. Clearly, whatever evidence the defendant obtained is paltry and unreliable. She cannot prove that it's

authentic or that Mr. Rogers is the party responsible for it. In fact, the evidence is wholly consistent with Mr. Rogers' theory that defendant had a party initiate a credit inquiry about Mr. Rogers which would explain the conspicuous absence of a signed application though she claims he applied 21 separate times on the same date. Her efforts to spin her guilt sound absurd and point back to her as being guilty as alleged in the Amended Complaint.

- **Dismissal**

Ultimately, Mr. Rogers merely failed to attend the status conference. The remainder of defendant's allegations are spun to make her case for dismissal. She even accuses Mr. Rogers of "plagiarizing" a 3rd Circuit opinion. Of course, she carefully doesn't attack the holding of the opinion of which she refers, since its strong and irrefutable case law from the 3rd Circuit. Mr. Rogers mistakenly submitted a draft version of his pleading which didn't contain the citations, and he did not realize this fact until pointed out by defendant. In any event, it's doubtful that plagiarism is an accurate accusation for a public legal opinion which is not copyrighted or protected in any way. This was a ridiculous spin by defendant and her counsel once again to portray Mr. Rogers as an unsavory character. By doing so, these members of the D.C. Bar prove themselves to be fairly unlimited in their ethical violations.

The alleged violations do not meet the overall standard for a rule 41(b) dismissal. Understandably, Magistrate Robinson was disturbed at Mr. Rogers' absence from the status conference. This is even more understandable if she was not given messages informing her that he had called repeatedly to make alternate arrangements. Defendant outrageously claims that dismissal is the "lesser sanction" in this case, which insults the Court and Mr. Rogers. Dismissal on the merits under Rule 41 (b) is a very serious sanction and in this case there has not previously been instances of missing hearings or deadlines on the part of Mr. Rogers. Defendant would have the Court skip any remedial cures and go straight to the most fatal sanction. This is inappropriate under any standard based upon the Plaintiff missing the status conference, particularly given his pro se status.

- **ALTERNATE RESOLUTION**

Defendant is quite arrogant and presumptuous when her counsel claims that she is certain she would prevail if she presented a summary judgment pleading. However, this wild hunch she includes in her pleading is not evidence weighing in favor of a Rule 41(B) dismissal. Mr. Rogers is willing to move the Court for a dismissal under Rule 41 (a) under the fair and reasonable grounds that defense counsel retrieve all physical and electronic items obtained or exposed during discovery and that he return them to Mr. Rogers. Defense Counsel should be required to file a notarized affidavit that he has retrieved all copies of discovery and that neither he, defendant, nor any other entity has maintained any private information concerning Mr. Rogers which could be used to harm Mr. Rogers henceforth. In the alternative, the Court should order the parties to engage in Alternative Dispute Resolution.

- **CONCLUSION**

Mr. Rogers **did not** authorize the credit inquiry and despite defendant's rhetoric, she can never prove otherwise. Mr. Rogers was not contemptuous when he missed the status conference. He attempted to contact the clerk, but apparently these messages were not passed along. Rule 41(b) is meant to address serious violations and of a repeated nature. It is not appropriate for this case. Therefore, Mr. Rogers respectfully request the Court not adopt the Report and Recommendation of Magistrate Robinson and instead grant him leave of 30days to file a Rule 41 (a) motion to dismiss. In the alternative, he request the Court issue an order requiring the parties to attend Alternative Dispute Resolution.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Filed July 13, 2007 | //s// |
|  | VIRGIL ROGERS |