**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VIRGIL M. ROGERS, *pro se* ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KAREN JOHNSON-NORMAN ) <br> ) Civil Case. No. **06-01186 (ESH)** <br> Defendant. ) | |

**KAREN JOHNSON-NORMAN'S MOTION FOR ATTORNEY'S FEES AND ADDITIONAL RELIEF**

Counsel for Karen Johnson-Norman seeks an adequate remedy to deter Virgil Rogers from filing additional frivolous lawsuits against Ms. Johnson-Norman. In the Court's Memorandum Opinion dismissing Rogers' Fair Credit Reporting Act (FCRA) claim, the Court held:

> "If there is ever a case in which deterrence is necessary to preserve the integrity of the judicial system, this is it, since there is every reason to believe that plaintiff is abusing the legal process because of his animosity toward defendant."

D.I. 91 at 1. Karen Johnson-Norman hereby moves the Court for two deterrents.

First, Ms. Johnson-Norman seeks attorney's fees and costs incurred in defending this action. Section 1681(n) of the FCRA provides that attorney's fees can be awarded where the Court has found that an unsuccessful claim was "filed in bad faith or for the purposes of harassment." 15 U.S.C. §1681(n)(c). The Court has already found that Rogers' suit was part of his "endless efforts to extract retribution." D.I. 91 at 7. Counsel for Karen Johnson-Norman respectfully requests that the Court order Rogers to pay attorney's fees so that, in the future, Rogers will seriously consider the consequences of filing baseless lawsuits.

Second, Ms. Johnson-Norman respectfully requests an order declaring Rogers a vexatious litigant and requiring Rogers to obtain the Court's permission before he files any additional lawsuits against Karen Johnson-Norman.   This will protect Karen Johnson-Norman from meritless suits, and spare the Court's precious time and resources in managing baseless litigation. In the alternative, Karen Johnson-Norman requests that the Court order Rogers to post a bond before filing any additional actions against Ms. Johnson-Norman.  As the Court noted, even with the dismissal of the instant action, Rogers would not hesitate to file another case against Karen Johnson-Norman based upon the same (or at least very similar) operative facts. D.I. 91 at 9.

## I.   THE COURT SHOULD GRANT COUNSEL FOR KAREN JOHNSON-NORMAN ATTORNEY'S FEES

Having already found bad faith, the Court should grant counsel for Karen Johnson-Norman's motion for attorney's fees to deter Rogers from filing baseless actions in the future. The evidence produced in discovery shows that Rogers himself is responsible for the very conduct that he accused Ms. Johnson-Norman of doing.  With such contumacious conduct, counsel for Ms. Johnson-Norman, even though appearing *pro bono*, should be awarded reasonable attorney's fees.

### A.   The Court Has Already Found that Rogers Filed and Maintained His Suit in Bad Faith

The Court is well-versed in the parties' tortured relationship, and thus Ms. Johnson-Norman will not rehash it here.[1]  However, discovery in this matter has shown that Rogers' FCRA claim against Karen Johnson-Norman was not only baseless, but demonstrably false. Rogers claimed that that Ms. Johnson-Norman initiated or caused to be initiated an inquiry in to Rogers' credit history:

---

[1] As such, counsel for Karen Johnson-Norman incorporates by reference the entire record of pleadings and orders issued in this case.

> 36. On or about April 2004, Johnson used her position at Wells Fargo Real Estate Group to either initiate or caused to be initiated a credit inquiry about Rogers' personal information.
>
> 46. On or about April Johnson, under false pretenses, knowingly, and without a permissible purpose obtained or caused to be obtained a consumer report containing private information about Rogers from or through a credit reporting agency.

D.I. 16.

In reality, Rogers initiated that credit inquiry. Rogers produced in discovery a heavily redacted credit report that discloses that in April 2004, Wells Fargo Financial Acceptance Corp. (also known as Wells Fargo Auto Finance) ran an inquiry on Rogers' credit history. D.I. 71-3 at 2. Ms. Johnson-Norman's subpoena to Wells Fargo Financial Acceptance Corporation revealed that Rogers initiated the credit inquiry when he applied for an auto loan at a CarMax Auto Superstore in San Antonio Texas. D.I. 87-4 at 2. Wells Fargo produced a credit application by a person identifying himself as Virgil M. Rogers used Rogers' date of birth, address, home telephone number, place of employment, former employer, and social security number to apply for an auto loan. *Id.* Further discovery confirmed that Rogers was living in the San Antonio, Texas area at the time of the credit inquiry, and that the employment section of the loan application matched Rogers' actual employment at the time. Beaty Decl. ¶ 10.

Rogers is the one person who could have initiated the credit inquiry. Only Rogers knew all of the personal information contained in the loan application. Indeed, the evidence showed that within a twenty-four hour period, Rogers applied for twenty-one auto loans for four different vehicles. D.I. 71-5 at 2. Frankly, it is impossible to believe that Rogers applied for twenty-one auto loans for four different cars and simply forgot about it.

Thus, if Rogers knew that he had initiated the credit inquiry himself, then his allegations against Karen Johnson-Norman were, by definition, made in bad faith. Indeed, as the Court noted in its Memorandum Opinion, the evidence in this case strongly supports a finding that Rogers filed his FCRA claim in bad faith and for the purpose of harassing Karen Johnson-Norman. See D.I. 91 at 7-9.

B.    **The FCRA Empowers the Court to Award Attorney's Fees for Rogers' Bad Faith and Harassment**

Section 1681(n)(c) of the FCRA, entitled "Attorney's fees," states:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. §1681(n)(c). This statute gives the Court has the power to award attorney's fees against Rogers if the Court finds that Rogers' claims were filed in bad faith *or* for the purposes of harassment. In this case, the Court has found both. Thus, the question before the Court is whether or not it should use its power to award attorney's fees in this case.

Other courts have not hesitated to award attorney's fees when a *pro se* plaintiff brought bad faith claims under the FCRA. *See DeBusk v. Wachovia Bank*, No. CV06-0324, 2006 WL 3735963, at *1 (D. Ariz. November 17, 2006); *Shipley v. Trans Union Corp.*, C04-256OP, 2006 WL 1515594, at *1 (W. D. Wa. May 25, 2006). In *DeBusk*, the *pro se* plaintiff claimed that the Capitol One had run his credit without permission. Capitol One then showed Debusk evidence that he himself had initiated the credit inquiry when DeBusk applied for a car loan. Nevertheless, Debusk continued to prosecute the case. The court awarded Capitol One attorney's fees because, among other reasons, "[n]otwithstanding clear documentation to the contrary, plaintiff simply asserted that he had not submitted a loan application." *DeBusk*, 2006 WL 3735963, at *4.

Like *DeBusk*, Rogers claims that his credit was run without permission. Like *DeBusk*, Rogers was shown evidence that he himself had initiated the credit inquiry when he applied for an auto loan. Like *DeBusk*, Rogers continued to prosecute the case, despite the exculpatory evidence. Therefore, as in *DeBusk*, counsel for Ms. Johnson-Norman should be awarded attorney's fees.

4

### C. Ordering Rogers to Pay Attorney's Fees Will Deter Him from Filing Frivolous Suits in the Future

Putting aside the fact that the language appears to mandate such an award,[2] counsel for Ms. Johnson-Norman urges the Court to order Rogers to pay some amount of attorney's fees in order to deter him from filing baseless actions in the future. Rogers is a habitual *pro se* litigant, having represented himself in at least five different cases in both federal and state courts.[3] Indeed, the Court noted in its Memorandum Opinion that Rogers' *modus operandi* is to draw out litigation as long as possible. D.I. 91 at 9. When Rogers receives an adverse resolution on the merits of his claims, he simply repackages his claims against Ms. Johnson-Norman and refiles in another jurisdiction.

Without the burden of paying an attorney (and without the benefit of a neutral analysis of the viability of his claims), Rogers only pays the court costs for filing his lawsuits. Thus, Rogers runs amok in the legal system, filing meritless claims and baseless motions until parties settle with him for nuisance value or until his claims are thrown out. Ordering Rogers to pay at least some attorney's fees in this case will remind him that litigation is not a game, and that there are consequences to filing bad faith lawsuits for the purposes of harassment.

### D. The Attorney's Fees Sought Are Reasonable

Counsel for Karen Johnson-Norman is not seeking to recover every penny spent in defending this case. However, counsel for Ms. Johnson-Norman requests that the Court order Rogers to pay $25,000.00 in attorney's fees and costs. Rogers is gainfully employed and, having received a settlement from the District of Columbia, Rogers should be more than able to pay this small token of the fees accumulated by defense counsel.

---

[2] Although the statute reads, "the court *shall* award to the prevailing party attorney's fees…," counsel for Ms. Johnson-Norman seeks these fees for their value as a deterrent against Rogers' future harassment.

[3] Rogers has appeared *pro se* in at least five cases: *Rogers v. Johnson-Norman*, No. 01-cv-01924 (E.D. Va.), *Johnson-Norman v. Rogers*, No. IF-2497-03 (D.C. Superior Ct.), *Rogers v. Johnson-Norman*, No. 03-FM-1255 and 04-FM-196 (D.C.), *Rogers v. Commissioner of Internal Service*, No. 4781-04 (U.S. Tax Ct.), and the instant case.

### 1.     Rogers' contumacious conduct required a significant commitment of counsel's time and resources

Beyond the emotional toll that this litigation has taken on Karen Johnson-Norman, Rogers' baseless suit has consumed defense counsel's time and money. Counsel for Karen Johnson-Norman has spent over 684 hours and over $244,000 defending this action.[4] *See* Declaration of Sean Beaty in Support of Motion for Attorney's Fees, ¶ 5 (hereinafter, "Beaty Decl."). However, counsel for Ms. Johnson-Norman seeks only $25,000, just over 10% of the total cost that counsel has spent on this case. Counsel for Ms. Johnson-Norman is not seeking to profit from Rogers; counsel only seeks to deter this type of behavior by Rogers in the future. Rogers will likely object to the amount of the fees; however, he only has himself to blame.

First, it was Rogers, not Ms. Johnson-Norman, who initiated this suit. Furthermore, counsel for Ms. Johnson-Norman explained to Rogers very early in the case that Ms. Johnson-Norman was not involved in the credit inquiry.[5] Rogers was also aware from very early on in this case that counsel for Ms. Johnson-Norman believed that Rogers' case was filed in bad faith and that counsel would seek attorney's fees under the FCRA.[6]

Even when presented with evidence that the credit inquiry at issue was caused by *his own* application for a car loan, Rogers continued to pursue and drive up the cost of this litigation by filing frivolous motions and refusing to cooperate in discovery. D.I. 91 at 4-5. Rogers, for example, refused to enter into a protective order and then filed a frivolous Motion for Protective Order and Emergency Motion for an Injunction when counsel pursued legitimate third-party

---

[4] Counsel for Ms. Johnson-Norman has calculated his fees and costs based from September 21, 2006 (the date Rogers filed his FCRA claim) until June 7, 2008 (the date Magistrate Judge Robinson issues her Report and Recommendation for dismissal).

[5]   "During our meet and confer, I represented to you that Karen Johnson-Norman had nothing to do with anyone accessing your credit report; a representation which you seemed to accept. On February 2, 2007 you will take Ms. Johnson-Norman's sworn statement, and she will tell you the same thing. I urge you to rely on my representation and our Answer to the Amended Complaint and dismiss these claims before either side expends additional resources litigating this matter." D.I. 68-2.

[6]   "If and when the remaining FCRA Count is dismissed against Ms. Johnson-Norman, we will seek attorney's fees and costs associated with defending this claim, as allowed by statute." D.I. 68-2.

discovery. D.I. 61, 67, 84 at 2. Rogers' refused to cooperate in discovery also forced counsel to file two motions to compel discovery. D.I. 55, 70.

### 2. Counsel for Karen Johnson-Norman has significantly reduced the amount of attorney's fees sought

The amount of fees is also reasonable because it has been reduced by such a large percentage. In the past, this Court has reduced awards of attorney's fees from the amount requested in order to address concerns about the "reasonableness" of the requested amount. *See David v. District of Columbia*, No. 02-1145, 2007 WL 1515165, at *4 (D.D.C. May 24, 2007); *Heard v. District of Columbia*, No. 02-296, 2006 WL 2568013, at *21 (D.D.C. Sept. 5, 2006). In these cases, the amount of the award requested was reduced by a small amount to make it "reasonable." *See David,* 2007 WL 1515165, at *4 (reducing the amount of attorney's fees plaintiff was entitled to by 10%); *Heard,* 2006 WL 2568013, at *21 (reducing the amount of the award requested by approximately 7.5%). However, in this case, counsel for Ms. Johnson-Norman has already reduced the amount she seeks by almost 90%. Such a large reduction should more than adequately address any concerns about the "reasonableness" of the fees.

### 3. Rogers is capable of paying

Although Rogers appears *pro se*, he does not appear *in forma pauperis*. Indeed, according to publicly available sources, Rogers is employed as a subcontract administrator with KBR, a private military contractor, which until very recently was a subsidiary of Halliburton. Beaty Decl., ¶ 11. As a gainfully employed citizen with a steady source of income, Rogers is capable of paying this token amount of attorney's fees. Moreover, Rogers recently received a nuisance value settlement from the District of Columbia. Beaty Decl., ¶ 12. Certainly Rogers' recovery in that case could be used to offset counsel for Karen Johnson-Norman's award of attorney's fees in this case.

### E. Rogers' Status as a *Pro Se* Litigant Is Irrelevant.

Rogers' constant reminders to the Court that he appears *pro se* does not save him paying attorney's fees. While courts usually give *pro se* parties more leeway than members of the bar, "[Rogers] has not committed the type of minor errors that might be expected from a layperson unschooled in the law. Rather, [his] conduct amounts to bad faith, and such conduct will not be condoned no matter who the litigant is." D.I. 91 at 9. As the Court correctly points out, "[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Id*. (*quoting Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).

Furthermore, defendants can pursue attorney's fees even when a *pro se* plaintiff brings an FCRA claim in bad faith. *See Debusk v. Wachovia Bank*, No. CV06-0324, 2006 WL 3735963, at *1 (D. Ariz. November 17, 2006); *Shipley v. Trans Union Corp.*, C04-256OP, 2006 WL 1515594, at *1 (W. D. Wa. May 25, 2006). In *DeBusk¸* the court awarded Capitol One attorney's fees under §1681n(c), even though DeBusk was *pro se*, because DeBusk brought unsupported claims against the defendants, continued to prosecute the case in the face of exculpatory evidence, and intentionally mislead the court. The court awarded fees because the *pro se* plaintiff "was unable to articulate any colorable basis for his claims" before or after he filed it and "had absolutely no basis for presuming that [the defendant] accessed his credit report for an impermissible purpose." *Id.* at 11-12. Attorney's fees were appropriate under 15 U.S.C. §1681n(c) because DeBusk "repeatedly forced Defendant to respond to baseless allegations abundantly contradicted by the only credible evidence." *Id.*

Like *DeBusk*, Rogers brought unsupported claims against Ms. Johnson-Norman. Before he brought his claim, Rogers had no colorable basis for his claim. After discovery closed, Rogers had absolutely no basis for presuming that Ms. Johnson-Norman accessed his credit

8

report for an impermissible purpose. Like *DeBusk*, after being shown credible evidence that Rogers himself had initiated the credit inquiry when he applied for a car loan, Rogers refused to drop the case and forced Ms. Johnson-Norman to respond to baseless allegations that were blatantly contradicted by the evidence.

### F. Howrey's Status as Pro Bono Counsel is Irrelevant.

Rogers' numerous attempts to use Howrey's *pro bono* status to shield himself are also inapposite. The law is clear that parties can recover attorney's fees when they are represented *pro bono*. The Supreme Court has long held that *pro bono* counsel is not prohibited from recovering attorney's fees simply because counsel performs a public service. *Blum v. Stenson*, 465 U.S. 886, 894-895 (1984); *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). District of Columbia law has evolved similarly, consistently holding that *pro bono* counsel can recover attorney's fees. *See Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights*, 726 A.2d 194, 197 n.6 (D.C. 1999) (holding that attorney's fees are eligible for pro bono counsel).

The U.S. Court of Appeals for the District of Columbia has also held that there is "nothing inconsistent in prosecuting a case in the public interest, agreeing not to charge one's own client a fee and thereafter seeking fees from the losing [party]." *Copeland v. Marshall*, 205 U.S. App. D.C. 390, 410, *en banc* (D.C. Cir. 1980) (internal quotations and citations omitted). This Court has also awarded attorney's fees to pro bono counsel on many occasions. *See e.g.*, *David v. District of Columbia*, No. 02-1145, 2007 WL 1515165, at *1 (D.D.C. May 24, 2007); *Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006). D.C. courts have also upheld awards of attorney's fees to *pro bono* counsel in cases where similar statutes were at issue. *See e.g., Frazier v. Franklin Inv. Co.,* 468 A.2d 1338, 1339 n.1 (D.C. 1983) (granting *pro bono*

9

attorney's fees in an action brought under the Truth in Lending Act). Furthermore, Ms. Johnson-Norman's ability to pay counsel is also irrelevant to the award of attorney's fees. *Mitten v. Muscogee County School District*, 877 F.2d 932, 937 (11th Cir. 1989). Thus, it is appropriate for the Court to award attorney's fees incurred in opposing Rogers' claim, which was brought in bad faith.

## II. THE COURT SHOULD DECLARE ROGERS A VEXATIOUS LITIGANT

The Court also has inherent power to sanction Rogers for his bad faith. The Court's inherent power to sanction a party is "as old as the judiciary itself" and "enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorney's fees, and *other such orders and sanctions* as they find necessary." *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) (emphasis added). Furthermore, the Court has the inherent authority to regulate the activities of abusive litigants, such as Rogers, by restricting their access to the courts. *See DeLong v. Hennessey*, 912 F.2d 1144 (9th Cir. 1990). The Court also has the authority to require Rogers to post a bond in the amount of fees and costs that Ms. Johnson-Norman will most likely incur in defending any future actions Rogers brings against her. *See Shafler v. HSBC Bank USA*, No. 06-5908, 2007 WL 578993, at *7 (N.D. Ca. Feb. 21, 2007).

Counsel for Ms. Johnson-Norman is not asking to completely block Rogers' access to the Court. However, Rogers should not be allowed to "abuse the legal process because of his animosity towards [Ms. Johnson-Norman]." D.I. 91 at 8-9. As the Court has observed, this is precisely Rogers's goal:

> The Court is confident that plaintiff -- who has now pursued litigation for six years against defendant in Virginia, California, and the District of Columbia -- would not hesitate to file suit in another jurisdiction if this case were dismissed without prejudice.

D.I. 91 at 9.

Therefore, counsel for Ms. Johnson-Norman seeks an order requiring Rogers to obtain leave of the Court before he is allowed to file any further civil actions against Karen Johnson-Norman. This type of order would not unduly block Rogers' access to the Court because it would allow him to bring any claim against Ms. Johnson-Norman in the future as long as he can show that it is legitimate. *See In re Green*, 669 F.2d 779, 787-88 (D.C. Cir. 1981) (barring vexatious litigant from bringing further claims without first obtaining leave of the court). In the alternative, Ms. Johnson-Norman requests an order requiring Rogers to post a bond in the amount of attorney's fees and costs that counsel for Karen Johnson-Norman would likely incur before being allowed to file further civil cases against her.

Rogers' status as a *pro se* litigant is of no importance; this Circuit has restricted *pro se* plaintiffs such as Rogers from access to the courts on the grounds that they were vexatious litigants. *See e.g., In re Powell*, 851 F.2d 427 (D.C. Cir. 1988); *Martin-Trigona v. U.S.*, 779 F.2d 72 (D.C. Cir. 1985); *Urban v. U.N.*, 768 F.2d 1497 (D.C. Cir. 1985). Moreover, such an order would not unduly burden Rogers. Rogers would be free to bring suit against anyone other than Ms. Johnson-Norman. If he decided to bring suit against Karen Johnson-Norman, he merely would have to show that he has a legitimate claim, rather than simply another suit designed to harass Ms. Johnson-Norman. If Rogers can satisfy that extremely low burden, he would be free to bring suit against Ms. Johnson-Norman.

### III.     CONCLUSION

For the foregoing reasons, Ms. Johnson-Norman respectfully requests that the Court order Rogers to pay counsel for Ms. Johnson-Norman $25,000.00 for attorney's fees and costs incurred in preparing and defending this case. Finally, Ms. Johnson-Norman asks the Court to declare Rogers a vexatious litigant and prohibit him from filing further civil actions against Ms. Johnson-Norman without leave of the Court. In the alternative, Ms. Johnson-Norman asks that Rogers be required to post a bond before filing any future civil actions against Ms. Johnson-

Norman in the amount counsel for Ms. Johnson-Norman is likely to incur in attorney's fees and costs in defending the case.

Respectfully submitted,

|  |  |
|---|---|
| Of Counsel: | _____/s/_____<br>Sean P. Beaty, *pro bono*<br>(Bar No. 493597)<br>Christopher Kellett[*]<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>(202) 783-0800<br><br>Attorney for<br>Karen Johnson-Norman |
| Dated: August 1, 2007 |  |

---

[*] Admitted in Maryland only, not admitted in the District of Columbia. Working under the supervision of firm principals.