## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

VIRGIL M. ROGERS,          )
          )
       Plaintiff,    )
   v.        )
          )   Civil Action 06-1186 (ESH)
KAREN JOHNSON-NORMAN,    )
          )
          )
       Defendants,    )
_____)

### VIRGIL ROGERS' OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND ADDITIONAL RELIEF

Plaintiff Virgil Rogers opposes defense counsel's *Motion for Attorney's Fees and Additional Relief* for the following reasons.

## I.    ISSUES

In Mr. Rogers' opinion, there are a few basic issues underlying the Motion for Attorney's Fees and Additional Relief which may be useful and instructive in the Court's analysis and ultimate resolution of the matter. Currently pending before the Court is a motion filed by defense counsel Sean Beaty *for and on behalf* of his employer Howrey, as opposed to its client, seeking a significant award of attorney's fees for legal work undertaken *pro bono*. If this request were to succeed, it would apparently be a matter of first impression throughout the federal judiciary since none of the case law cited by defense counsel represents an award of attorney's fees for *pro bono* counsel acting in defense of a civil action.

In addition to seeking money, defense counsel proposes extraordinary measures to be taken against Mr. Rogers as preemptive prior restraints on his access to this Court in any legal proceedings that could possibly be initiated involving this defendant at anytime in the future. He even makes the disingenuous argument that Mr. Rogers may try and file the same case again. Unlikely as that prospect may be, *res judicata* would prevent that from occurring, as defense counsel is likely aware, despite the red herring argument. Though defense counsel purports to seek fairness and justice, his actual motives can be strongly inferred since he proposes only unilateral restraints upon Mr. Rogers, implicitly urging that defendant should not be similarly restrained.[1]

Mr. Rogers recognizes the inherent authority and discretion granted a district court to resolve such matters properly before it as it deems appropriate. Given the unique circumstances and facts of this case, he presents the following issues which he respectfully believes should be considered and which support summarily denying the requested relief:

A.) Has any federal court held that a profit-driven law firm acting as *pro bono* defense in a civil action is entitled to and should expect attorney's fees and costs?

B.) Did the Court intend for its comments in its Memorandum Opinion to be construed as a legal finding of bad faith?

---

[1] During the "tortured" history of these parties, defendant has initiated significantly greater numbers of legal proceedings than has Mr. Rogers. Defendant filed about 10 unsuccessful criminal and civil actions in Maryland courts, unsuccessfully attempted to file charges in an Air Force court martial action under the UCMJ for adultery, sued Mr. Rogers for 10 Million dollars in U.S. District Court Eastern Virginia, and filed unsuccessful charges in the District of Columbia in 2002 and 2003. Mr. Rogers has initiated litigation twice in response to unsuccessful legal actions filed by defendant. She has also attempted to have the FBI and California authorities arrest Mr. Rogers on fabricated charges, but was only successful in having the MPD do so, leading to the current litigation.

C.) Does defense counsel's case law support his argument or request for fees whatsoever?

D.) Is there clear and convincing probative evidence that Mr. Rogers has actually acted in bad faith, as a matter of law or that he is a habitual vexatious litigant?

E.) Does fairness and justice permit this Court to award Howrey any attorney's fees or adopt the additional extraordinary measures it has requested against Mr. Rogers? Are the claimed fees reasonable as identified on defense counsel's charge log?

## II.    HOWREY'S REQUEST FOR ATTORNEY'S FEES IS NOT APPROPRIATE OR ETHICAL SINCE IT VOLUNTARILY APPEARED AS *PRO BONO* DEFENSE COUNSEL

In essence, the <u>Motion for Attorney's Fees and Additional Relief</u> filed in this case is a request by *pro bono* defense counsel Sean Beaty and Howrey[2] for fees and costs on behalf of themselves, as opposed to its client Karen Johnson, whom Howrey voluntarily represented absolutely free. It appears that most attorneys undertake *pro bono* defense in *civil* cases far less frequently than other types of cases, and Howrey is no exception. A recent search of all similar civil cases pending before this Court did not produce a single match to any attorney employed by Howrey acting as defense counsel.

Howrey was well aware that Karen Johnson had the financial ability to retain paid counsel, but now wants to be paid by Mr. Rogers for its volunteer work. It could have moved the Court at anytime to withdraw if it felt this was in the best interest of the firm. However, without countervailing evidence, Mr. Rogers and the Court can only presume

that Howrey appeared *pro bono* on behalf of the defendant for altruistic reasons without any expectation of recouping fees. *Perhaps this isn't the case, considering its motion.*

If Mr. Beaty set out in his *pro bono* defense with the intent of ultimately moving the Court for fees, he would possibly have violated the spirit of the D.C. Bar Rules of Professional Conduct.  As the Court is undoubtedly aware, p*ro bono* undertakings are expected for bar members, without ulterior motives or mental reservations. Unlike this case however, pro bono attorneys commonly represent mainly <u>indigent</u> litigants.

For reasons unknown to Mr. Rogers or this Court, Howrey was motivated to represent Karen Johnson in this case even though she is not indigent. In making such a claim for fees, Howrey should rightfully be required to disclose its motives and whether there is any underlying agreement for a *quid pro quo* with respect to its representation in this case. An example of such an agreement would be if Howrey represents Wells Fargo (defendant's employer) in any business dealing or has been pledged such representation in the future, which if related in any way to its standing as *pro bono* counsel in this case, could be construed as *quid pro quo* and would also violate the spirit of the Rules of Professional Conduct, which bind both defendant and Sean Beaty.  If Howrey's representation was strictly for benevolent reasons, it must live with its decision and is not entitled to fees or costs. Likewise, any *quid pro quo* would tend to negate its claims for fees and subject it to some ethical inquiry.

---

[2] Howrey is an international multi-million dollar law firm based in Washington, D.C

Sean Beaty is apparently motivated to extract attorney's fees from Mr. Rogers to punish him for pursuing legal action against defendant, to follow through on explicit threats that he communicated to Mr. Rogers[3] and possibly to rehabilitate his own professional reputation at Howrey after purportedly expending a large number of hours on a *pro bono* case[4] against a *pro se* litigant.[5]  The latter facts may have resulted in some amount of professional embarrassment for Sean Beaty and may have lowered his esteem before his peers and superiors. All of these are improper grounds to seek attorney's fees.

In any event, it's nearly incomprehensible that Howrey expended nearly a *quarter of a million dollars* in defense of a reasonably simple civil case against a *pro se* litigant in one years time. The instant motion is the second occasion that defense counsel has relied on essentially the same inapposite case law to seek a monetary reward for his *pro bono* efforts; (*Plaintiff's Reply to Defendant's Opposition to Rogers' Second Motion for Protective Order* ). Aside from the fact that there is no case law or statutory support for such a request, it's illogical. Beaty's claim that the statute automatically entitles Howrey to fees is outrageous since the statute refers only to a "party" to the suit, presuming that it has paid its counsel, the Court <u>may</u> consider some fees. The statute never mentions anywhere that a party's pro bono *counsel* can seek money on its own behalf and Congress

---

[3] Defense Counsel has been overtly threatening Mr. Rogers to extract these costs for several months now, as Mr. Rogers has averred in several pleadings before the Court. (e.g. <u>*Rogers Opposition to Karen Johnson's Motion for Spoilation Sanctions*</u>;  <u>*Plaintiff's Reply to Defendant's Opposition to Rogers' Second Motion for Protective Order*</u>*.* The aim of defense counsel's threats were to force Mr. Rogers to dismiss the case and the nature of the threats bordered on extortion.

[4] According to page 6 of defendant's <u>Motion for Attorney's Fees</u>, *pro bono* defense counsel spent "over 684 hours and over $244,000.00 defending this action"

[5] Defense counsel's motion also appears motivated at least in part by malice because he has moved the Court to use its discretionary authority to inflict what amounts to punitive sanctions against Mr. Rogers.

apparently never contemplated that someone like Sean Beaty would come along to be the first to make such an outrageous argument before a district court.


### III.    THE COURT DID NOT INTEND FOR ITS MEMORANDUM OPINION TO BE CONSTRUED  AS A LEGAL FINDING OF BAD FAITH


The Court issued a thorough and well thought out Memorandum Opinion when it dismissed Mr. Rogers' civil action against the defendant.  Regrettably, the litigation had become unnecessarily contentious between the Plaintiff and defense counsel, and the Court understandably made clear in its Opinion that it had enough of the matter.

Mr. Rogers fully respects the Court's decision to dismiss his case and he humbly apologizes to the Court for any disrespect it may have perceived from his behavior. He earnestly regrets any unnecessary utilization of Court resources, since he was ultimately unable to prove the facts alleged. *However, his case was not filed or litigated in bad faith* and Mr. Rogers does not believe the Court intended for defense counsel to misuse and misconstrue its Memorandum Opinion as a legal finding otherwise.

 The Court clearly expressed its frustrations with the failings and the sometimes ignoble nature of litigation by both parties, particularly the plaintiff. Mr. Rogers has taken note of the Court's strong message, and has apologized for those factors of which he was responsible. However, it appears that the Court stopped short of a direct conclusion that Mr. Rogers acted with legal bad faith, contrary to defense counsel's motion which extrapolates and exaggerates the Court's comments as negatively as possible.

A more innocuous explanation exists for the plaintiff's issues that arose in this case. Mr. Rogers recognizes that without local counsel, he was unable to properly prosecute the case or prove its merits particularly while he was residing outside of the local jurisdiction. This explanation certainly doesn't amount to bad faith. Moreover, defense counsel shares the blame for the contentious nature of this litigation. He repeatedly disrespected Mr. Rogers due to his *pro se* status, and often failed to maintain civility and professionalism as well.[6]

"A finding of bad faith is "stringent" and attorney's fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand" Nepera Chem., Inc v. Sea-Land Serv.., Inc., 794 F.2d 688, 702 (D.C. Cir. 1995).  Further, a finding of bad faith must be supported by "clear and convincing evidence."  See Shepherd v. American Broadcasting Cos., Inc., 62 F.32 1469, 1476-78 (D.C. Cir. 1995), which "generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain" United States v. Montague, 40 F.3d 1251, 1255 9D.C. Cir. 1994).

**IV.         DEFENSE COUNSEL'S CASE LAW IS INAPPOSITE TO HIS ARGUMENTS.**

---

[6] Defense Counsel repeatedly called Mr. Rogers a "stalker" in filings even though Mr. Rogers has never been convicted of stalking and the "attempt" conviction was 7 years ago.

*No case law has been presented in defense counsel's motion in which any federal court has awarded attorney's fees in a case with identical or even similar circumstances to this case.* Defense counsel's request for legal fees cites numerous cases allegedly supportive of his position in this matter. In fact, none of these cases supports his position. In most instances, counsel's case law relied on obscure or unrelated holdings in these cases. Moreover, Mr. Rogers urges the Court to circumspectly consider the unique factors that distinguish this case from most of the cases cited by defense counsel and to disregard his serial misuse of case law.

Those factors include a 1) for-profit law firm; 2) voluntarily acting pro bono; 3) in a civil case; 4) as <u>defense</u> counsel; 5) against a pro se litigant; 6) on behalf of a defendant that was not indigent.

On numerous instances in his motion, defense counsel cites <u>*Debusk v Wachovia Bank, No.* CV06-0324, 2006 WL 3735963, at \*1 (D. Ariz. November 17, 2006)</u>, in which plaintiff, Richard W. Debusk (originally filed as pro se, the plaintiff ultimately retained an attorney) filed suit on behalf of his sole proprietorship ("Pollution Solution") against numerous defendant's, including federal financial institutions for alleged violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Act ("FDCA").

In that opinion, the district court awarded $10,000 fees to Capital One Bank because the plaintiff perpetrated fraud and deception upon the Court in obtaining a default judgment against Capital One. Debusk had sued defendant Capital One alleging an impermissible credit inquiry. Prior to filing suit, Debusk had inquired of Capital One about the inquiry and Capital One had provided the <u>signed</u> credit application, which

Debusk never disputed as unauthentic. Despite these facts, Debusk sued Capital One and served it in such a way as to improperly induce a significant delay in responding. He then filed a deceptive and false affidavit with the Court seeking a default judgment alleging that Capital One had failed to respond to his complaint. Once the facts had been developed further, the district court set aside the default judgment finding that Debusk had engaged in "fraud" and awarded the $10,000 for this fraud and for the deception associated with filing a false affidavit for the express purpose of securing a default judgment.

The *Debusk* case could not be much more different than the instant civil action filed by Mr. Rogers and defense counsel's staunch reliance on this case is symbolic of the malicious and vindictive motives behind his motion[7].

Defense counsel's motion demonstrated extremely faulty deductive reasoning such that it literally claimed that since the DeBusk court had awarded Capital One some fees to pay its **retained** lawyers as a result of the undisputed fraud perpetrated upon the court by DeBusk, that the Court in this case must follow suit and that *pro bono* counsel in this case has demonstrated an entitlement to fees despite the absence of any fraud or manipulation by Mr. Rogers.

---

[7] Defense Counsel avers that " Like Debusk, Rogers claims that his credit was run without permission. Like Debusk, Rogers was shown evidence that he himself had initiated the credit inquiry when he applied for an auto loan. Like DeBusk, Rogers continued to prosecute the case, despite exculpatory evidence. Therefore, as in DeBusk, counsel for Ms. Johnson-Norman should be awarded attorney's fees" (defn Motn at 4)

Richard Debusk filed suit on behalf of his business against a plethora of corporate defendants. Contrarily, Mr. Rogers filed suit as a private citizen against a private citizen. Debusk had engaged in fraud from the outset in his suit against Capital One because he proceeded after Capital One had sent him copies of his loan documents prior to his suit. Contrarily, Mr. Rogers did not authorize the credit inquiry at issue in this case and there aren't any documents proving that he applied for or authorized the credit inquiry. Mr. Rogers requested the documents from Wells Fargo (as did defense counsel) and on both instances the result was a failure to produce anything proving that Mr. Rogers had authorized an inquiry into his credit in March 2004. Lastly, Debusk lied to the district court and committed fraud by seeking a default judgment despite his knowledge that the delayed response had been induced.

The DeBusk court obviously took great exception to this deception and granted fees on that basis. Contrarily, Mr. Rogers has not engaged in any deception before this Court. Capital One was actually paying its lawyers to defend against the fraud perpetrated by DeBusk, unlike Karen Johnson who hasn't expended any money in defense of the instant civil action.

The *Debusk* case is not relevant case law to the facts of this case and doesn't support or guide a determination that attorney's fees should be assessed against Mr. Rogers. Likewise, in sum, the remainder of the case law submitted by the defendant is not illustrative of any significant holdings from any federal court that supports defense counsel's position in this matter.

In *Blanchard v. Bergeron, 489 U.S. 87, 95 (1989)* a jury trial resulted in a $10,000 judgment for a federal **civil rights** action, and the district court awarded the plaintiff's attorney $7500 pursuant to 42 U.S.C. 1983. The plaintiff attorney was not *pro bono* and the issues in the appeal related to the 40% contingency fee agreement he had with his client. There is no relevance to the facts of the instant case.

In *Blum v. Stenson*, *465 U.S. 886, 894-895 (1984)* a class action **civil rights** suit resulted in the award of $79,312 in attorney's fees to the Legal Aid Society of New York for 809 hours[8] of work that resulted in a "*great benefit to the large class*" on complex issues. The Supreme Court had struck down an additional $39,656 in fees holding that they were not "reasonable" and that the district court had abused its discretion in awarding it.

*Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights, 726 A.2d 194, 197 (D.C. 1999)* was a state case filed in D.C. Superior Court under the District of Columbia **Human Rights** Act. In that appeal, the D.C. Court of Appeals held that an award of attorney's fees was contingent on a finding of "unlawful discriminatory practices," D.C. Code § 1-2553 (a)(1). That case wasn't federal and was narrowly tailored for a D.C. human rights statute.

*Copeland v. Marshall, 205 U.S. App. D.C. 390, 410* dealt with Title VII of the Civil Rights Act of 1964 and held that prevailing parties to **civil rights** cases may be awarded reasonable attorney's fee so that attorney's may be encouraged to represent indigent

plaintiff's in certain civil rights cases where they might otherwise experience difficulty retaining counsel.

_David v. District of Columbia,_ No. 02-1145, 2007 WL 1515165, at *1 9D.D.C. May 24, 2007) was a **civil rights** case filed against the District of Columbia for violating the plaintiff's liberties. Though defense counsel in the instant case cited the _David_ case as an alleged example of _pro bono_ counsel being awarded fees, there is no mention in the Court's Memorandum Opinion in the _David_ case that plaintiff attorney Gregory Lattimer was _pro bono_ or that he had voluntarily performed legal services in that case without expectation of payment.

Finally, the defendant cited _Shipley v. Trans Union Corp.,_ CO4-256OP, 2006 WL 1515594, at *1 (W.D. Wa. May 25, 2006).  As a preliminary matter, it should again be noted that the defendant in that case, Trans Union had retained counsel and there is no indication that any of its legal work was performed on a _pro bono_ basis. This fact differentiates the _Shipley_ case from the instant case.

Plaintiff Shipley had filed a false police report in Washington claiming that he had been the victim of identity theft.  Thereafter, he improperly altered the police reports concerning his identity theft allegations and provided them to defendant Trans Union for the explicit purpose of misleading Trans Union so that defendant would remove derogatory information from his credit report. Trans Union subsequently discovered that Shipley was known to utilize at least 2 different social security numbers and that he had

---

[8] In _Blum_, Legal Aid expended 809 hours on a complex class action civil rights suit and was awarded $79,312 in fees, and in this more simple FCRA case involving one plaintiff and one defendant, Sean Beaty allegedly expended

also lied about that fact. Trans Union then reinserted the derogatory information onto Shipley's credit report which led to Shipley filing suit against Trans Union. Once the facts about the falsified police report and the duplicitous social security numbers were disclosed to the court, the case was dismissed and Trans Union moved for attorney's fees due to the fraud that had been perpetrated by Shipley from the outset.

In that case, the district court awarded $17,975 in attorney's fees to paid counsel for Trans Union because of the plaintiff's dishonesty inherent in altering police reports and then providing them for some deceptive purpose.[9] The district court in Shipley had overwhelming evidence of fraud as in the DeBusk case. Thus, it was not surprising that the Shipley court found that the Plaintiff had acted in bad faith. Again, there is no relevance to any actions taken by Mr. Rogers in this case since it concerns a fraud perpetrated by the plaintiff in that case upon the court.

## V.        MR. ROGERS DID NOT ACT IN BAD FAITH AND IS NOT A VEXATIOUS LITIGANT

Mr. Rogers strenuously denies the persistent accusations by defense counsel that he himself originated the alleged credit inquiry for the purpose of suing the defendant. Defense counsel's accusations form the crux of his bad faith argument and the

---

684 hours and is claiming over $244,000 in legal fees against a pro se litigant who Beaty claims is a "stalker".

[9] In Shipley, the district court stated : "The term 'bad faith' is not defined in the statute. In general, bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ··· it contemplates a state of mind affirmatively operating with furtive design or ill will.' Black's Law Dictionary 139 (6th ed.1990); accord United States v. Manchester Farming P'ship, 315 F.3d 1176, 1183 (9th Cir.2003) (applying Black's definition of bad faith).

cornerstone of his request to seek a portion of Howrey's purported $244,000 in attorney's fees.

Though Mr. Rogers still believes defendant played a role in the credit intrusion alleged in his Amended Complaint, he was unable to establish the facts supporting this claim without counsel. Such an inability should not form the basis to award the unusual attorney's fees sought by Howrey.

Defense Counsel relies heavily upon portions of the Court's Memorandum which mention bad faith. Defense counsel expressly accuses Mr. Rogers of initiating the credit inquiry in this case himself and then blaming it on the defendant (Defn Motion at 4). This is a falsity. Mr. Rogers did not initiate the credit inquiry whatsoever and he submits sworn documents in support of this statement. (See Rogers Declaration).  Mr. Rogers challenges defense counsel or any entity to provide signed documents evidencing his complicity in applying for the credit at the center of this case. In fact, during discovery Mr. Rogers even asked defense counsel to provide the name and contact details for the person or persons at Car Max whom allegedly serviced Mr. Rogers during the transaction, and Sean Beaty or anyone else was predictably unable to produce that information as well.

The allegations by defense counsel are illogical and implausible, and are categorically false. Since neither Car Max, Wells Fargo, or any other entity cannot provide any written documentation signed by Mr. Rogers personally authorizing or initiating the credit inquiry, defense counsel alternately alleges that Mr. Rogers applied for approximately 20 separate car loans at Car Max *by telephone*. This is also

outrageously implausible and false. In pursuit of money, Sean Beaty has resorted fabricating allegations which are outrageously implausible.

Further, defense counsel claims that each loan was <u>approved</u> but yet Mr. Rogers continued to apply for incrementally greater amounts of credit over a narrow period of time for some unknown reason. Finally, despite the illogical allegation that Mr. Rogers had applied for an absurd number of car loans from Car Max on the same date and was approved each time, defense counsel claims that Mr. Rogers did not buy a car.

Defense Counsel claims in its motion that Mr. Rogers was living in San Antonio in April 2004 (Defn Motion at 3).  It's unclear where defense counsel came by this information, but it's inaccurate. Undoubtedly, this erroneous information was uncovered as part of defense counsel's intelligence gathering into Mr. Rogers' private life during discovery.[10]

However, though Mr. Rogers briefly lived in Central Texas in 2004, this was over two and a half hours away from San Antonio and there are at least two Car Max dealerships that were located closer to Mr. Rogers than the Car Max that defense counsel claims was the object of the alleged self-initiated credit inquiries.[11] In other words, defense counsel claims that Mr. Rogers bypassed the 2 closer Car Max dealerships to drive further to San Antonio only to apply for 21 car loans that he never used, despite

---

[10] Defense counsel submits to the court a copy of a social security card, a drivers license, pay statements, and alleged information about Mr. Rogers employer. None of this was relevant to the Amended Complaint and was a part of defense counsels espionage on Mr. Rogers through discovery. This info was not obtained from Wells Fargo or Car Max San Antonio.
[11] **Car Max Austin North** (13300 North I-35 Service Road Southbound, Austin, TX 78753)  **Car Max Austin South** 400 S. IH 35, Austin, TX 78745

being approved. This odd fact adds another aspect of implausibility to counsel's allegations. Aside from the already implausible aspects of defense counsel's claims, it seems only an insane person would apply for 21 incrementally greater car loans simultaneously. Mr. Rogers was an Air Force officer and has held a Top Secret government clearance for most of his adult life, and there has been no plausible evidence that he is so afflicted with mental illness to engage in such nonsensical behavior.

The allegations by defense counsel in support of his claims of bad faith are so outrageously illogical that they are incredulous. Mr. Rogers has never purchased any car from any Car Max and he did not apply for credit for a car at San Antonio Car Max. (See Rogers Declaration). The information which defense counsel provides in support of his motion are not accompanied by any sworn material from any person employed by Car Max or Wells Fargo that allegedly spoke with Mr. Rogers during these alleged transactions. Defense counsel cannot corroborate his allegations with anything other than the credit inquiries themselves, which already formed the basis for Mr. Rogers' well-founded civil action. To the extent that Sean Beaty attempts to discredit Mr. Rogers' sworn statements, he cannot assail them with anything probative or under oath. He may only try and attack sworn statements with his unsworn and fallacious allegations from alleged second hand sources, whom also cannot provide sworn evidence to corroborate Beaty's claims. *These inquiries were not initiated by Mr. Rogers and he did not shop at Car Max in San Antonio, Texas in April 2004 nor did he even visit it.*

During the pendency of this case, Mr. Rogers has never contacted Wells Fargo in an effort to degrade or harass defendant. Prior to filing suit when he contacted Wells Fargo, he never disclosed defendant's name. Were he acting in bad faith for the purpose of harassment, he certainly would have used this avenue to defame Karen Johnson before her employer, clients, and colleagues. The fact that this did not occur tends to prove Mr. Rogers held no malice towards defendant and did not act in bad faith.

Defense counsel further alleges that Mr. Rogers is a habitual pro se litigant. This is inaccurate since Mr. Rogers has only filed 2 suits against Karen Johnson, only one of which was before this Court, and during each suit he had counsel at some point. In the first of these cases in Eastern Virginia district court, Mr. Rogers retrained John Partridge. However, such an undertaking proved unwise for Mr. Rogers when John Partridge sabotaged his case against Karen Johnson for filing false criminal claims in Maryland because Partridge was investigated and ultimately disbarred in Virginia and D.C. for patterns of dishonesty, fraud, and malpractice during the pendency of Mr. Rogers' suit. (See MOJ from D.C. Court of Appeals).  Partridge was ultimately charged with a crime.

The genesis of the instant case was filed on behalf of Mr. Rogers by an attorney in California, who could not represent Mr. Rogers before this court because she is not admitted to the D.C. Bar, which led to Mr. Rogers acting pro se. Mr. Rogers has defended or opposed the endless criminal or civil proceedings which defendant has initiated, and when necessary he acted as his own counsel.  More often than not, Mr. Rogers has successfully defended the allegations by defendant. He was acquitted in Maryland in at least 3 criminal cases and repelled numerous civil efforts filed by defendant.  At times, he

represented himself but he was not the inititator of these actions, so to characterize him as habitually pro se for exercising his rights to defend himself is disingenuous.

After his success rate in Maryland defending himself (largely because of credibility problems stemming from allegations and testimony offered by defendant) and his negative experience with John Partridge, Mr. Rogers made a hasty decision to proceed in this case without a lawyer. Perhaps he should have given this decision more thought, but it doesn't warrant the extraordinary relief being sought by Sean Beaty. Defense counsel did not cooperate in Mr. Rogers' discovery whatsoever, and did not produce any of the requested material. The defendant, a member of the D.C. Bar, refused to answer questions about whether she has ever committed perjury or lied to a judicial officer. Had her credibility been allowed as an issue, the case may have taken a different turn.  Defendant's words are often at odds with the truth and this tends to support Mr. Rogers' claims on many different fronts.

Irrespective of this history, it's not relevant to this case or this Court if Mr. Rogers was compelled to defend himself pro se a few times. Defense counsel's request is extraordinary relief because it's essentially a prior restraint.

Lastly, Mr. Rogers reminds the Court that he offered to settle this civil action in open court prior to the beginning of discovery in the case in exchange for an apology from defendant for her harm upon him. Defense counsel could have avoided the alleged $244,000 in legal fees claimed by Howrey simply by urging his client to settle without cost.

This is strong evidence that Mr. Rogers wanted to avoid a protracted litigation and was not acting in bad faith. In fact, he attempted to settle several times with defense counsel on terms unrelated to financial gain, but on each instance defense counsel demanded Mr. Rogers pay Howrey's fees in exchange for a settlement. Such behavior indicates that defense counsel may have been acting in bad faith and protracting the case to waste judicial resources unnecessarily, which is also a violation of the Rules of Professional Conduct.

Defense Counsel's request to have Mr. Rogers labeled a vexatious litigant and seeking an order requiring him to post a bond before filing any future suit is improper. Foremost, Mr. Rogers is barred from filing the same suit again based on res judicata. Secondly, he should not be labeled a vexatious litigant because he has only come before this court once in a civil action. Thirdly, designating a private citizen as a vexatious litigant and infringing upon his right to seek redress from the judiciary is an extraordinary remedy which is not warranted based upon the facts of this case.

Karen Johnson has filed over 10 criminal and civil actions against Mr. Rogers and she has not been designated as a vexatious litigant even though she has been unsuccessful far more often than she has succeeded. Declaring Mr. Rogers as a vexatious litigant would be prejudicial and would provide an opening for Karen Johnson to violate bounds of decency with respect to judicial filings without providing Mr. Rogers with an adequate remedy. The cases presented by defense counsel on this issue are all inapposite with far more extreme circumstances, such as prisoners that abuse the court's with baseless Eighth Amendment filings without exhausting administrative remedies. As the Court will

note, these cases are dissimilar in every way to the instant case and cannot be relied upon to grant Sean Beaty's motion for a prior restraint on judicial access.

Defense counsel further bases his request on the pretext that it will deter Mr. Rogers from filing baseless actions in the future. (Defn Mot at pg 5). By making such a request of the Court, defense counsel appeals to the Court's emotions and frustrations with this particular case, even though this request is improper and baseless. Proximate to that improperly based request, defense counsel makes derisive and inflammatory argument about Mr. Rogers to arouse frustration and contempt within the Court.

## VI.           THE REQUESTED FEES ARE NOT REASONABLE AND AWARDING FEES WOULD BE UNJUST

Most attorney fee case law concerns retained plaintiff attorney's seeking fees on behalf of the client which actually paid the fees. Therefore, in every way, the request in this case is highly unusual. In addition to the inapposite case law and questionable motives demonstrated by Sean Beaty, the fee request is not reasonable to the type of work performed, despite its purported reduction from $244,000 to $25,000. The log submitted by Sean Beaty should be subjected to great scrutiny in an evidentiary hearing, and Mr. Rogers objects to its use as evidence since its appears inflated and contrived. Howrey appeared as defense counsel when the original claims were filed against their client (e.g. malicious prosecution) which offered an even less likelihood of recouping fees, which marks their request now as even more bizarre.

"A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in

court is neither fair nor reasonable" Loughner v. University of Pittsburgh, 260 F3d 173,

180 (3rd Cir. 2001). "Many of these tasks are effectively performed by administrative

assistants, paralegals, or secretaries. As such, to claim the same high reimbursement rate

for the wide range of tasks performed is unreasonable." Id.

Court's have found it appropriate to distinguish between legal work and clerical

work, investigation, and compilation of facts and statistics. Such non-legal work may

command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

Johnson v. Georgia Hwy Express, Inc., 488 F2d 714, 717 (5th Cir. 1974).

Howrey bears the burden of establishing all elements of its requested fee award,

including entitlement to an award, the documentation of appropriate hours, and justifying

the reasonableness of its rates. Hensley v. Eckerhart, 461 U.S. 424 (1983). The burden of

production as well as the burden of persuasion, related to the unreasonableness of the

amount of hours billed, always rests upon the claimant. See American Petroleum Institute

v. EPA, 72 F.3d 907, 915 (D.C. Cir. 1996).

In certain civil rights cases (which include some cases cited by defense counsel in

his motion), there are 12 factors used to aid a court in determining a reasonable fee, if it

determines that fees are appropriate at all.[12] These factors derive from the American Bar

Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980)

_____

[12] The 12 factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill

requisite to perform the legal service properly; (4) the preclusion if employment by the attorney due to acceptance of

the case; (5) the customary fee; (6) whether the fee is fixed or contingent ; (7) the time limitations imposed by the

In this case, any award of attorney's fees to Howrey would amount to a windfall to counsel, since it undertook the case *pro bono*.  See generally Davis v. EPA, 169 F.3d 761 (D.C. Cir 1999) (hours claimed as attorney's fee "seems unreasonably high" given nature of case"); Lenard v. Argento, 808 F.2d 1242 (7th Cir. 1987)  (holding fee award "clearly too high").

In the instant case, considering the 12 factors, the experience level of Sean Beaty must be considered when evaluating the extremely high hourly rate that he is claiming on the supporting documentation. Mr. Beaty is a relatively inexperienced attorney and his list of professional accomplishments on the Howrey website significantly evidences his lack of experience. It doesn't contain any data about any civil or criminal trials in which Mr. Beaty has acted as lead counsel. However, it lists two minor civil protection order cases involving Mr. Rogers in which Mr. Beaty documents his involvement in discovery.

 This website details the entire professional experience of Sean Beaty to the internal staff and clients of Howrey and in it, his most significant documented accomplishments apparently amount to support work in a CPO case in D.C. Superior Court in which little actual litigation occurred against Mr. Rogers acting pro se from California (these case were decided only on the filings).  If the information on Howrey's website contain the entire sum of Sean Beaty's legal experience, and he gleefully advertises himself to clients based largely upon support work against a pro se litigant in

---

client; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney;
(10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12)

CPO cases, how is his outrageous fee even remotely justified?  Based on the website,

Beaty appears to possess less trial experience than Mr. Rogers. Such experience level and

credentials doesn't seem to justify the over $300 per hour that Mr. Beaty is now claiming

as legitimate costs in his claim for attorney's fees. Howrey provided an inexperienced

lawyer to litigate this case, and it's unlikely that he would have earned the billable hours

in other cases that he now seeks in this pro bono case.

## CONCLUSION

   The District Court for the District of Columbia occupies a prestigious position in the

federal judiciary as arguably the most influential trial court in the nation.  As such, an

order to award Howrey attorney's fees in this case could potentially provide case law that

negatively influences the motivations of attorneys nationwide who now perform *pro bono*

legal work for poor citizens as a means to meet professional obligations and demonstrate

compassion. Along with Howrey, other firms may adopt motives that are based upon the

same profit potential as fee-for-service arrangements, and alter the threshold large firms

use when considering pro bono clients. Howrey chose to represent a financially capable

lawyer pro bono in this case, and it should not be allowed to transfer its decision to Mr.

Rogers under the circumstances of this case. Moreover, such an award would be unjust

and prejudicial to Mr. Rogers.

   Respectfully, a legal finding of bad faith doesn't appear to have been the intent of the

Court's references in its Memorandum Opinion and is unwarranted. The Court has

awards in similar cases. <u>Johnson v. Georgia Highway Express, Inc</u> 488 F.2d 714 at 717-719 (CA5 1974)

apparently already considered the matter of fees in its Memorandum Opinion and determined that it was not appropriate in this matter.

No case law cited has ever expressly granted fees to a private law firm acting as *pro bono* defense in a similar civil action. Moreover, each of the cited cases dealt with plaintiff's receiving legal fees in cases which were related to the support of public welfare issues, such as federal civil rights or discrimination statutes, and oftentimes class action suits**.** Those cases are inapposite to this case.

WHEREFORE, Mr. Rogers respectfully request the Court deny the defendant's request for attorney's fees and other relief.

Respectfully Submitted,

Filed August 27, 2007                                     //s//

VIRGIL ROGERS