UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGIL M. ROGERS, *pro se*<br><br>    Plaintiff,<br><br>v.<br><br>KAREN JOHNSON-NORMAN<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Case. No. **06-01186 (ESH)**<br>) |

**KAREN JOHNSON-NORMAN'S REPLY TO ROGERS' OPPOSITION TO MS. JOHNSON-NORMAN'S MOTION FOR ATTORNEY'S FEES AND ADDITIONAL RELIEF**

Karen Johnson-Norman wants Virgil Rogers to go away. The only way to insure that this will happen is for Virgil Rogers to understand the gravity of his abuses of the legal system. An award of attorney's fees, mandated under the Fair Credit Reporting Act, will deliver a stinging blow to Rogers that will remind him that the judicial system does not tolerate plaintiffs who file cases in bad faith for the purpose of harassment. Similarly, declaring Rogers a vexatious litigant will prevent him from filing baseless suits against Ms. Johnson-Norman in the future.

**I.   THE COURT SHOULD GRANT COUNSEL FOR KAREN JOHNSON-NORMAN ATTORNEY'S FEES**

   **A.   The Court Has Already Found that Rogers Filed and Maintained His Suit in Bad Faith**

Contrary to Rogers' assertions, the Court has already stated that Rogers filed this case in bad faith:

- Plaintiff has not committed the type of minor errors that might be expected from a layperson unschooled in the law. Rather, plaintiff's conduct amounts to bad faith, and such conduct will not be condoned no matter who the litigant is.

- First, plaintiff's discovery responses reflect his obstinance and raise a serious question as to his motivations for prosecuting this claim.

- The limited discovery obtained to date raises a serious issue as to whether plaintiff himself initiated the April 2004 credit inquiry complained of in Count I, since it appears that plaintiff applied for several auto loans over the course of two days, and that these loan applications were forwarded to several companies, including Wells Fargo, for financing decisions.

- If there is ever a case in which deterrence is necessary to preserve the integrity of the judicial system, this is it, since there is every reason to believe that plaintiff is abusing the legal process because of his animosity toward defendant.

D.I. 91 at 9, 4, 5 n.2, and 8-9. Indeed, Rogers' averment that he did not file this case in bad faith is belied by the evidence in this case. As outlined in Ms. Johnson-Norman's Motion for Attorney's Fees, the evidence shows that Rogers himself initiated the credit inquiry alleged in Rogers' Amended Complaint. Nor does Rogers' self-serving affidavit claiming innocence carry any weight.[1] Rogers' self-serving statement pales in comparison to the evidence obtained by unbiased third parties who, unlike Rogers, had no incentive to distort the facts.

### B. The FCRA Empowers the Court to Award Attorney's Fees for Rogers' Bad Faith and Harassment

Rogers completely misreads Section 1681(n)(c)(1) of the Fair Credit Reporting Act.[2] Rogers' reliance on the statute's language that only a "party" is entitled to attorney's fees upon a finding of bad faith is misplaced. Although the statute uses the term "party," it clearly intends for attorney's fees to be paid to the attorney, because "attorney's fees" are awarded to the attorney, not the plaintiff or defendant.

---

[1] Rogers argues that the fact that he did not identify Ms. Johnson-Norman by name to her employers in his letters proves that he holds no malice toward Karen Johnson-Norman and did not act in bad faith. D.I. 96 at 17. However, Rogers' uncharacteristic restraint in this one instance does not negate the years of harassment Karen Johnson-Norman suffered at the hands of Virgil Rogers. Indeed, in prior instances Rogers has contacted Ms. Johnson-Norman's employer for the express purpose of humiliating her in front of her peers. See D.I. 32-1.

[2] Rogers claims that "defense counsel's motion appears motivated at least in part by malice" because the motion asks the Court to "inflict what amounts to punitive sanctions against Rogers." D.I. 96 at 5 n. 5. However, counsel's request for attorney's fees is not motivated by malice, but a sincere belief that Rogers will not understand the seriousness of filing baseless suits until he is made to pay at least some token amount of opposing counsel's attorney's fees. Until Rogers learns that litigation is not a game, counsel believes he will repeat the type of behavior that he has displayed in this case.

Rogers also seriously misconstrues the statute. It does not say, as Rogers claims, that the court "may consider" some fees in these types of cases. Instead, the statute states that, where the Court has found that an unsuccessful pleading or motion was filed in bad faith or for the purposes of harassment, the Court *shall* award attorney's fees to the prevailing party. 15 U.S.C. 1681(n)(c)(1).

Similarly, Rogers completely misapplies *DeBusk*. The key issue in *DeBusk* is not any fraud or manipulation on the part of the plaintiff; the issue is that the plaintiff brought the FCRA claim **in bad faith**. *DeBusk v. Wachovia Bank*, No. CV06-0324, 2006 WL 3735963, at *1 (D. Ariz. Nov. 17, 2006). In the DeBusk case, the plaintiff apparently brought the case in bad faith for financial gain. *Id.* Here, Rogers brought his case in bad faith in order to harass Ms. Johnson-Norman. Rogers attempts to differentiate *DeBusk* by arguing that in *DeBusk*, Capital One had proved that DeBusk had signed a credit inquiry authorization. This, however, is irrelevant. It is not now, nor has it ever been Ms. Johnson-Norman's burden to prove that Rogers authorized the credit inquiry alleged in his Amended Complaint. Ms. Johnson-Norman's burden was only to prove that Rogers brought this case in bad faith. Given the overwhelming evidence that Rogers himself initiated the Wells Fargo credit inquiry, Ms. Johnson-Norman has satisfied that burden. Indeed, the Court has already intimated as much in its memorandum opinion. *See* D.I. 91.

Rogers' dismissal of *DeBusk* is similarly unpersuasive. Rogers argues that because the facts of *DeBusk* do not line up exactly with the facts of this case, *DeBusk* is inapplicable. This, however, is not how jurisprudence works. Indeed, there are rarely, if ever, two cases with identical fact patterns. According to Rogers' logic, the law from one case could not be applied to another case because of minor differentiation in the fact patterns. *DeBusk* is important because applies Section 1681(n) under substantially similar facts. Thus, counsel for Ms. Johnson-Norman respectfully requests that the Court follow *DeBusk* and award Karen Johnson-Norman attorney's fees.

     **C.**    **Ordering Rogers to Pay Attorney's Fees Will Deter Him from Filing Frivolous Suits in the Future**

Contrary to Rogers' argument, counsel is not seeking attorney's fees to somehow rehabilitate his professional reputation.[3]  Instead, counsel for Ms. Johnson-Norman seeks attorney's fees for their deterrent value.  It is Karen Johnson-Norman's sincere hope that awarding attorney's fees against Rogers will put an end to Rogers' campaign of harassment and impress upon Rogers that filing and maintaining cases in bad faith is not without consequence.

     **D.**    **Howrey Attorneys and Staff Assistants were Billed at Market Rates**

Despite Rogers' protestations, all attorneys and support staff who worked on this case were billed at market rate for the Baltimore-Washington area.  This Court uses the Laffey Matrix to assess legal fees in the Baltimore-Washington area. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983).  All attorneys and support staff were billed at rates that are in line with this matrix.  Although Rogers may think these rates are high, they are reasonable in relation to the local market.

Moreover, the amount of attorney's fees sought is only approximately one-tenth of the actual amount of attorney's fees and costs that were incurred in defending this case.  Thus, Rogers has no basis to claim that the amount of attorney's fees sought in this case is unreasonable.  Finally, though Rogers gripes about the inexperience of the attorneys handling this case, the only reason that the attorney's fees were so *low* was because relatively junior attorneys were assigned to the case.  Had more senior lawyers been working on the case, the fee would likely have been significantly higher.

---

[3]    Rogers makes the unfounded argument that counsel for Ms. Johnson-Norman is moving for fees because his dedication to *pro bono* service in this case has somehow injured his standing at Howrey LLP. D.I. 96 at 5.  Although Rogers cited a number of pages from Howrey's website in his Opposition, he apparently missed one.  On Howrey LLP's website's "pro bono" page the firm states: "We feel it is important to treat *Pro Bono* cases the same as billable cases for all purposes.  Thus, our associates earn full billable credit for hours spent on firm-approved *Pro Bono* cases."

4

### E.  The Amount of Fees Incurred Resulted from Rogers' Own Conduct

If Rogers believes that the amount of attorney's fees requested is high, he only has himself to blame. Rogers filed two motions for protective orders, a motion to compel, and a motion for a preliminary injunction; indeed, Rogers is the reason Howrey incurred over $244,000 in legal fees. It was Rogers, not Ms. Johnson-Norman, who brought this case in the first place.

Rogers excuses his conduct in this action, claiming that he made a "hasty decision" to represent himself. However, while Rogers' initial decision to represent himself may have been "hasty," Rogers was urged by counsel for Ms. Johnson-Norman on numerous occasions to retain his own counsel. Thus, Rogers' decision to continue to proceed *pro se* cannot be characterized as "hasty."

Rogers' claim that attorney's fees should not be awarded because he offered to settle the case is similarly unpersuasive. As a defendant to an action, Ms. Johnson-Norman is under no obligation to settle, particularly where she did nothing wrong. Indeed, Rogers' settlement offers further evidence his bad faith in bringing this claim.[4]

### F.  **Rogers Was Not Threatened with Fees**

Counsel has never threatened Rogers with attorney's fees. True to form, Rogers has not provided the Court with any evidence that he was "threatened." Counsel for Ms. Johnson-Norman did advise Rogers that counsel would seek attorney's fees if the Court found Rogers' claim was filed in bad faith; however, counsel's advisements to Rogers can hardly be characterized as "threats." Nor were counsel's settlement offers "threats" in any way. Rogers was free to accept or reject, which he did, any offer of settlement that counsel made. Moreover,

---

[4] Rogers offered to dismiss the case in exchange for an apology and a sworn statement that Ms. Johnson-Norman had no knowledge about the credit inquiry. It is clear that this apology does not concern the alleged credit inquiry because Rogers obviously would not ask Ms. Johnson-Norman to apologize for something about which she had no knowledge. Thus, Rogers seeks an apology for perceived wrongs in the past, not the credit inquiry at issue in this case. Indeed, Ms. Johnson-Norman swore under oath at her deposition that she had no knowledge of the credit inquiry. Therefore, what Rogers really wanted was an apology for events wholly unrelated to his FCRA claim.

Rogers was free, as the plaintiff in the case, to drop the case at any time; a luxury that Ms. Johnson-Norman did not enjoy.

### G. Howrey LLP's Status as Pro Bono Counsel is Irrelevant.

Counsel's agreement to represent Ms. Johnson-Norman *pro bono* does not preclude counsel from collecting attorney's fees from Rogers, particularly where, as here, a statute expressly provides for them. Although Rogers makes a great effort to distinguish the facts of the cases cited by Ms. Johnson-Norman in her Motion for Attorney's Fees, he ignores the language of the cases themselves.[5] For example, in *Copeland v. Marshall*, the court states that when considering whether to grant attorney's fees it is not relevant "that a law firm, as in this case, originally undertook representation pro bono publico." *Copeland v. Marshall*, 641 F.2d 880, 900 (D.C. Cir. 1980). While the case involved an award of attorney's fees to the plaintiff's attorney, the court in that case did not limit its holding in any way to particular types of cases, whether the attorneys seeking fees were from a firm or not, or whether they represented the plaintiff or the defendant in the case. *See Id.*

Without citing any particular rule, Rogers claims that Howrey took the case with the intent of getting paid, which "violate[s] the spirit" of the D.C. Bar Rules of Professional Conduct. However, Rogers does not cite which Rule this would violate. Even if it were true that Howrey took on this case for financial gain (and it is not - Howrey has much more efficient ways of obtaining fees), it would not violate any rules of professional conduct. In fact, the entire reason that many statutes include a provision to award attorney's fees to the prevailing party is to encourage lawyers to take on cases that they normally would not, because the potential plaintiffs cannot afford their representation. *See e.g.,* Civil Rights Act of 1964, Title VII. By passing these statutes, Congress is *counting on* attorneys taking on cases pro bono and recovering attorney's fees.

---

[5] It is also not surprising that these cases generally deal with attorney's fees being granted to the plaintiff's attorney as the facts of this case are unique to say the least.

### H.     Ms. Johnson-Norman's Ability to Pay Is Irrelevant

Howrey LLP was introduced to Ms. Johnson-Norman's plight through the George Washington University Law School Domestic Violence Legal Empowerment and Appeals Project ("DV LEAP") program.  At the time, Ms Johnson-Norman was representing herself *pro se* in Rogers' appeal of a Civil Protection Order entered by the D.C. Superior Court.  Counsel continued his representation of Ms. Johnson-Norman in this case because he viewed this case as simply another chapter in Rogers' campaign to harass Ms. Johnson-Norman.  Regardless of Ms. Johnson-Norman's current financial situation, or her financial situation at the time counsel first agreed to represent her, Karen Johnson-Norman's ability to pay is not a relevant subject for the Court's consideration when awarding fees. *Mitten v. Muscogee County School District*, 877 F.2d 932, 937 (11th Cir. 1989).

### I.     Rogers Distorts the Evidence in the Case

Rogers distorts the evidence discovered in this case to make it seem absurd.  As counsel has explained before, when applying for a car loan at a CarMax, the credit application is forwarded to a number of different lenders at the same time for a credit decision. D.I. 71 at 6-7; *See also* Affidavit of Jeff Griffith, Attachment A hereto.   The documents obtained during discovery support the conclusion that Rogers applied for four auto loans over a two day period. D.I. 71 at 6-7; *see also* D.I. 71-4.  Those four applications were for three different vehicles: a 1997 Toyota Avalon, a 1998 Toyota Avalon, and a 1999 Saturn SL2. Attachment B.  Each of Rogers' four loan applications was forwarded to multiple lenders for a credit decision. D.I. 71 at 6-7.  Thus, Rogers' initiated no fewer than 21 credit inquiries by submitting his auto loan application at the CarMax Auto Superstore in San Antonio, Texas. D.I. 71-4.

7

## II. THE COURT SHOULD DECLARE ROGERS A VEXATIOUS LITIGANT

Ms. Johnson-Norman agrees that *res judicata* bars Rogers from *proceeding* with another case against Ms. Johnson-Norman; however, it does not bar Rogers from *re-filing* a case. Indeed, seven of Rogers' eight claims in this case were thrown out on collateral estoppel grounds, but counsel for Ms. Johnson-Norman still incurred the expense of having those claims dismissed.[6] Therefore, it is clear that a mere legal concept such as *res judicata* has not stopped Rogers in the past and will not likely stop him in the future.

The threat of Rogers refiling a case against Ms. Johnson-Norman is so real that even the Court noted it in its opinion:

> The Court is confident that plaintiff--who has now pursued litigation for six years against defendant in Virginia, California, and the District of Columbia--would not hesitate to file suit in another jurisdiction if this case were dismissed without prejudice.

D.I. 91 at 9.  Such a significant threat of further baseless claims against Ms. Johnson-Norman should counsel in favor of limiting, in some very narrow way, Rogers ability to use the courts as a vehicle to harass Ms. Johnson-Norman.

## III. CONCLUSION

Ms. Johnson-Norman is not seeking to profit from this action.  She merely hopes that having to pay at least a token amount of attorney's fees will impress upon Rogers that litigation

---

[6] There is no reason to screen future civil suits filed by Ms. Johnson-Norman. There is no evidence of her abuse of the judicial system. Even if the Court accepts Rogers' assertion that Ms. Johnson-Norman has "initiated significantly greater numbers of legal proceedings than has Mr. Rogers," no court has ever stated in a written opinion that Ms. Johnson-Norman brought a case "in bad faith." See D.I. 91 at 7-9.  Furthermore, any criminal proceedings against Rogers were brought by the prosecutor's office, not Ms. Johnson-Norman.  The Court cannot limit a person's right to seek assistance from the police - Karen Johnson-Norman must remain free to report any future harassment by Rogers to the authorities.  Indeed, even if the Court declares Rogers a vexatious litigant, it would not preclude him from reporting crimes (presuming they actually happened) to the police.

is not a game or a vehicle for harassment. To ensure that she does not have to suffer through this type of harassment by litigation at the hands of Rogers again, Ms. Johnson-Norman asks the Court to declare Rogers a vexatious litigant and prohibit him from filing future frivolous lawsuits against Ms. Johnson-Norman or, in the alternative, to place reasonable restrictions upon any of his future claims against Ms. Johnson-Norman.

Respectfully submitted,

_____/s/_____

Of Counsel:

Sean P. Beaty, *pro bono*
(Bar No. 493597)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Attorney for
Karen Johnson-Norman

Dated: September 7, 2007