**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIRGIL M. ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action 06-1186 (ESH) |
| KAREN JOHNSON-NORMAN, | ) |
| | ) |
| | ) |
| Defendants, | ) |
| | ) |

**VIRGIL ROGERS' MOTION FOR A POST-JUDGMENT PROTECTIVE ORDER**

Plaintiff Rogers respectfully moves the court for a post-judgment protective order enjoining the defendant and her pro bono counsel, or any agent working on behalf of either from retaining, disseminating, or utilizing any of Rogers' personal information that was obtained by subpoena during the discovery process in this case. Notably, upon the issuance of a post judgment protective order, the defendant will not suffer any legally recognized prejudice. Any potential claims of prejudice on her behalf would be a red herring meant to elicit sympathy.

**I.   INTRODUCTION**

The defendant, by and through her *pro bono* counsel, Sean Beaty of Howrey, L.L.C. deliberately issued numerous broad subpoenas on behalf of this Court during discovery in this case seeking (and receiving) a myriad of extremely personal and private information about Mr. Rogers, his family, and his finances. Among them, defendant obtained a (1) a full set of Mr. Rogers' fingerprints; (2) a copy of his social security card; (3) a copy of Rogers' drivers license; (4) a full and unredacted copy of a consumer report; (5) a full unredacted copy of an employment application; (6) documents potentially exposing the names of Mr. Rogers' minor

children; and (7) other various private documents all of which may have <u>not</u> been disclosed to Mr. Rogers during litigation. Both individually and collectively, the defendant's (and her counsel's) continued possession of these private materials poses an immediate and palpable threat to Mr. Rogers and his family that they will fall victim to annoyance, embarrassment, oppression, or undue burden or expense. *<u>In sum their safety and well being is jeopardized!</u>*

The Court dismissed the remaining count of Mr. Rogers complaint on July 21, 2007 with prejudice, and Mr. Rogers has neither sought reconsideration nor appealed to the D.C. Circuit. Shortly afterwards, Sean Beaty (on behalf of himself and Howrey since defendant had no standing to recoup unpaid attorney's fees) moved this Court to award him attorney's fees for his pro bono efforts, claiming that he had performed over 800 hours of legal work against Mr. Rogers (who was *pro se*) and that he accumulated nearly $250,000 in fees and costs. These absurd claims by Beaty were of course highly suspicious considering the nature of the case and the opposing party, a *pro se* litigant. Beaty wrongly averred in his filing that the court had made a legal determination that Mr. Rogers had acted in bad faith by filing and continuing this civil action (see Defn Motion for Attorney Fees). On September 27, 2007, the court denied Sean Beaty's request for attorney's fees and clarified that Mr. Beaty incorrectly interpreted the Court's opinion when he claimed that it found Mr. Rogers had legally acted in bad faith.

The Court did specifically note the negative history between these parties in its dismissal Opinion and on numerous other instances (see generally the entire case file). What started out as a casual sexual relationship between these parties has devolved into a history of unsuccessful criminal allegations made by defendant against Mr. Rogers in numerous jurisdictions. This culminated in the District of Columbia illegally abducting Mr. Rogers in California in 2003 upon one fabricated misdemeanor allegation advanced by the defendant (for

which Mr. Rogers was acquitted by a Superior Court jury in F420803). Mr. Rogers ultimately filed the precursor to this civil action in Eastern California District Court where he ultimately obtained a settlement by the District of Columbia for its unlawful activities, which were implicitly admitted since the D.C. Code prohibits the D.C. government from settling civil actions without culpability. The result of this litigation history was a claim against defendant alleging she illegally obtained a credit report on behalf of Wells Fargo and thus violated the law for the purposes of garnering private information about Mr. Rogers, *the same outcome the instant motion attempts to prevent from reoccurring henceforth.* The allegations of the civil action are instructive as to the necessity for a protective order to prevent the misuse or proliferation of Rogers' private information.

Acting *pro se*, Mr. Rogers was unable to prove the alleged conduct against defendant and the Court ultimately dismissed the case without making any factual findings as to the defendant's culpability for the alleged conduct. Once the case had been dismissed, Mr. Rogers requested that defense counsel return the subpoenaed material to him in order to protect his privacy and the safety of his minor children. Repeatedly, Mr. Beaty refused to return the items to Mr. Rogers. Primarily, Beaty has cited an irrational desire to maintain as much personal information about Mr. Rogers to use "should this case arise again or in any other case."

Defense counsel has never cited any legitimate grounds for wanting to maintain such private information about Mr. Rogers instead implicitly continuing the intimidation and threats which he routinely used against Mr. Rogers throughout this litigation, in violation to his obligations under the Rules of Professional Conduct. Mr. Rogers has attempted to confer on this matter several times but defense counsel refused to act in good faith on the private

materials that neither he nor defendant are entitled by law to keep, since they were obtained on behalf of this Court for purposes of resolving this closed litigation.

Mr. Rogers was constrained to seek relief from the Court in the form of a Rule 26 (c) protective order to protect his personal information that was obtained by defendant during discovery from various forms of misuse, exploitation, or distribution. The other likely excuse defense counsel may advance in his opposition hereto is his disingenuous request that Mr. Rogers sign a protective order which Beaty produced.  Since Mr. Rogers did not obtain any subpoenas in this case, the private information only flowed in one direction, which negated the necessity for the absurd protective order that defense counsel offered to Mr. Rogers. In any event, Beaty's offer to sign a protective order still evidenced his unexplainable obsession to retain as much private information  about Mr. Rogers as possible, even though Beaty is presumably a disinterested advocate of a party formerly involved in a dismissed case and the defendant is allegedly content to leave this chapter behind her. *Logically, there should be no problem in agreeing to retrieve and return all subpoenaed information to Mr. Rogers*.

Of note to the court, Mr. Beaty's apparent interest in Mr. Rogers' private information (particularly his SSAN and his fingerprints) may b explained by his prior career as a police officer with the Metropolitan Police Department (the same department which ordered Mr. Rogers' illegal abduction in California and later paid a settlement). Beaty's obsession may further be explained by his limited legal experience evidenced by his online Howrey biography which is replete with boastful claims of how he garnered "discovery" about Mr. Rogers (acting pro se). Beaty's biography  conspicuously doesn't offer much in the way of legitimate legal experience beyond tracking Mr. Rogers all over the world by obtaining "discovery" about him. (see Beaty bio Exhibit D). It suggests Beaty is obsessed with obtaining intelligence on Rogers.

Due to inter alia (1) the history of these parties; (2) the nature of the allegations at issue in this civil action, and (3) the hostile nature of these proceedings, the Court should enter a protective order to protect Mr. Rogers and his family (including minor children) from any form of annoyance, embarrassment, oppression, or undue burden or expense, or any encroachment on their privacy due to defendant's (and her counsel's) misuse of information obtained during discovery, on behalf of the Court.

## II.     RULE 26 (C) GRANTS THIS COURT DISCRETION TO ISSUE A POST JUDGMENT PROTECTIVE ORDER

Rule 26(c) of the Federal Rules of Civil Procedure provides that "for good cause shown," including "annoyance, embarrassment, oppression, or undue burden or expense," a district court may issue a protective order as to discovery material.

As stated by Judge Friendly in International Products Corp. v. Koons, 325 F.2d 403, 407-408 (CA2 1963), "[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent `equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices'"

A litigant has no [right] of access to information made available only for purposes of trying his suit. Zemel v. Rusk, 381 U.S. 1, 16 -17 (1965) (no unrestrained right to gather information). Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations. See In re Halkin, 194 U.S. App. D.C., at 287, 598 F.2d, at 206-207 (Wilkey, J., dissenting)

"As a whole Rule 26 (c) vests the trial judge with broad discretion to tailor discovery narrowly" Crawford-El v. Britton 523 U.S 574 598 (1998). And it is appropriate for the court in exercising its discretion to undertake some substantive balancing of interests…" Laxalt v. Mclatchy 809 F2d 885, 890 (D.C. 1987). See United States v. Microsoft Corp., 165 F3d 952, 960 (D.C. 1999) (holding that rule 26 (C)'s good cause standard…is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case). In particular, [although Rule 26 (c) contains no specific reference to privacy or to other rights or interest that may be implicated, such matters are implicit in the broad purpose and language of the Rule. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 (1984).

Hence, in exercising their discretion under the Rule, court's have "long recognized that interests in privacy may call for a measure of *extra protection*", even where the information sought is not privileged. Fed.R.Civ.P 26 (b) advisory committee note (1970) (referring to income tax returns which are "generally not held privileged"); see Pearson v. Miller 211 F3d 57, 64 (3d Cir 2000) (holding that "[l]egitimate interests in privacy are among the proper subjects of" Rule 26(c)'s protection). *Pearson* further held that a district court in its discretion may prevent intrusions into the legitimate interests –including privacy and other confidentiality interests- that might be harmed by the release of the material sought *Id* at 61.

The D.C. Circuit has considered instances of protective orders being sought to protect privacy act information. "We have previously held that the meaning of "good cause" in Rule 26(c) is properly informed by the interests underlying the Privacy Act. *See* Laxalt v. McClatchy , 809 F.2d 885, 889 (D.C. Cir. 1987).

Similarly, as the Supreme Court explained in upholding the good cause standard against a challenge to its constitutionality as a prior restraint where a trial court entered a protective

order prohibiting dissemination of information received in discovery, although "the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times* , 467 U.S. at 35 n.21 (holding Rule 26(c) furthers a substantial government interest unrelated to suppression of expression)

### III.   GOOD CAUSE EXISTS FOR THE COURT TO EXERCISE ITS DISCRETION IN  FAVOR OF GRANTING MR. ROGERS A POST-JUDGMENT PROTECIVE ORDER

Ideally, many of the broad and improper subpoenas that defendant issued in this case would have been quashed in the District Court having jurisdiction over the location of service, had Mr. Rogers had the ability to properly challenge each in the various locations.  He did not and so he was unable to challenge them. This was but one of many tactical advantages a multi million  dollar law firm (Howrey) had over a pro se litigant in this case. This obvious disparity in legal acumen and resources doesn't vest the subpoenas with merit simply because they were unchallenged and were issued without this Court's oversight. Many of these subpoenas sought information that was not reasonably calculated to discover admissible evidence, but rather to gather intelligence on Mr. Rogers. In any event, even if some admissible evidence was elicited, this fact would not entitle the defendant and her counsel to retain the private information about Mr. Rogers forever simply because it was obtained during discovery in this case.

Neither the defendant nor her counsel have an independent entitlement to maintain private information about Mr. Rogers that was obtained on behalf of this Court. The rule clearly

indicates that upon a showing of good cause, this court may issue a protective order to protect Mr. Rogers from any of the enumerated harms which may befall him in the absence of such an order.

The discovery obtained by defendant in this case is of the type that this court and other federal courts have held is private and worthy of <u>extra protection</u> through the use of Rule 26 (c) protective orders (emphasis added). Defendant vigorously obtained discovery materials which are at the core of Mr. Rogers' and his family's privacy in response to a civil action alleging that the defendant had already invaded Mr. Rogers' privacy by illegally obtaining a credit report. The type of information that has been obtained by defendant via her subpoenas is clearly intrusive to Mr. Rogers and provides defendant the means to further harm him and his family in ways that are meant to be protected by Rule 26 (c). The full extent of the discovery material that was obtained by defense counsel is actually unknown since the Court had no oversight over defendant's issuance of the subpoenas under the Court's authority.

A. **MR. ROGERS' NUMEROUS EFFORTS TO CONFER WITH DEFENSE**

Since the dismissal in this case Mr. Rogers has repeatedly pleaded with defense counsel to agree to retrieve all traces of private information that defendant obtained via discovery and return it Mr. Rogers along with certifying to the Court in a sworn statement that he has done so. Defense counsel has refused to voluntarily act in favor of returning Mr. Rogers' private information instead insisting in various forms that he has a need to retain such information in the event that this case is revived. As a lawyer, defense counsel is surely aware that res judicata prohibits such an outcome and Mr. Rogers has made no effort to do so. Its highly

unlikely that the Court would entertain such a request in any event so defense counsel's argument is a red herring.

Instead, defense counsel has acknowledged that he intends to retain Mr. Rogers' private information for purposes which are unrelated to this civil action. Indeed, Sean Beaty has indicated that he wants to retain as much information about Mr. Rogers "just in case."

Having had this pretext for retaining the private information debunked by Mr. Rogers during discussions and in writing, Beaty next claimed he would use them to protect his client from stalking, proving that he conceals ulterior motives beyond this case. Foremost, Beaty no longer represents Karen Johnson –Norman in this case since its closed and he has never explained how the information that he seeks to retain permanently would benefit either him or his <u>former</u> client in a case that is irrevocably terminated by this court's order.  His statements prove that defendant and her counsel seek to retain private information about Mr. Rogers for impermissible purposes. Coupled with defense counsel's overt threats against Mr. Rogers during the course of this case (which are well averred by Mr. Rogers) the possible motives of defendant and her counsel seem more insidious.

### 1. Telephone calls

Mr. Rogers called defense counsel repeatedly and essentially <u>pleaded</u> with defense counsel to voluntarily cooperate with his request to safeguard all of Mr. Rogers' private information as outlined in the instant motion.  Mr. Rogers called defense counsel inter alia on (1) August 7, 2007 at 3:05 P.M. EDT and spoke to Sean Beaty for 26 minutes, primarily about this issue; (2) August 27, 2007 at 4:45 EDT and did not reach Beaty; and (3) September 11, 2007 at 9:55 AM EDT and did not reach Beaty.

During the August 7, 2007 telephone call, Sean Beaty indignantly refused Mr. Rogers' request that he retrieve all private information and return it to Mr. Rogers promptly. Beaty's stated reason was because he (Beaty) potentially needed the private information that he had obtained via discovery in support of his request for this court to award him attorney's fees. Mr. Rogers pointed out the inherent impropriety in Sean Beaty's explanation since the attorney fee motion was wholly distinguishable from the litigation and there was no legitimate purpose for Beaty to retain the items for that purpose.

While Mr. Rogers never acquiesced in his repeated requests to Mr. Beaty, plaintiff informed Beaty that he would expect that defense counsel would cooperate with the request once the court had ruled on the attorney fee request since the purported basis for Beaty's request had lapsed and was no longer valid (though its validity was always dubious).

### 2.     Mr. Rogers' email requests to Sean Beaty

On September 27, 2007 the Court denied defense counsel's request for an award of attorney's fees in a thorough Memorandum Opinion. Accordingly, on September 28, 2007 Mr. Rogers followed up his prior telephone requests with the first of several email requests for Sean Beaty to voluntarily relinquish the private material (Exhibit A). Beaty responded the same day with a missive about how Mr. Rogers refused to sign a proposed protective order prior to fact discovery in this case and Beaty refused to cooperate with the request Mr. Rogers had respectfully posed to him several weeks prior by phone and email. (Exhibit B). In fact, defense counsel sent the same protective order to Mr. Rogers along with

his response that was a serious point of contention months prior before fact discovery had commenced.[1]

Upon receiving Mr. Beaty's 9/28/07 correspondence, Mr. Rogers responded by objecting for at least the second time that the proposed protective order was absurdly one sided because it ceded all of the benefit to defendant and her counsel and prohibited Mr. Rogers from retaining any discovery (which was irrelevant since defendant refused to produce discovery) and denied Mr. Rogers the protection to which he originally sought. (See Rogers 9/29/07 response at Exhibit C).

Beaty will surely rest his entire opposition to this motion upon the proposed protective order that he sent to Rogers. This Order was never provided in good faith since it allowed only members of the D.C. Bar (defendant, her counsel, and their colleagues) the right to retain in perpetuity his private information and denied the same right to Mr. Rogers since he is not now a member of the D.C. Bar.

### B. GOOD CAUSE EXIST DUE TO DEFENDANT'S REPEATED PAST VIOLATIONS OF THE LOCAL RULES IN PUBLISHING MR. ROGERS' PRIVATE INFORMATION

---

[1] The proposed protective order that was provided by Sean Beaty contained several unfair provisions which demonstrated the bad faith of defense counsel's message. Both versions contained restrictions on Mr. Rogers retaining any information while permitting attorneys to maintain the information. Since the defendant is an attorney, the intended one-sided result of Beaty's proposed Order would be to exclude Mr. Rogers from any benefit this order may have offered. **Ostensibly, there was no benefit possible for Mr. Rogers since defendant never produced any discovery in this case and thus the order would result in defendant and/or her counsel being allowed to retain private information about Mr. Rogers and Mr. Rogers retaining nothing since defendant produced nothing.**

11

During defendant's deposition on February 2, 2007 she testified falsely that she first learned of Virgil Rogers' social security account number (SSAN) as a result of some pleading in this case filed by Mr. Rogers. (defn deposition transcript).  Not only was this testimony wholly false, but demonstrably so since she has provided Mr. Rogers' SSAN to numerous individuals over the past several years and testified to this fact previously. Her prevarication about her prior knowledge of Mr. Rogers' SSAN is good cause in itself to restrain her access to his private information since she is a member of the D.C. Bar and has been untruthful under oath on numerous occasions and has given false statements to law enforcement. This testimony formed the basis for an earlier protective order motion filed by Mr., Rogers in this case (see generally "Second Motion for Protective Order" filed March 31, 2007). Defendant even testified at her deposition that she was unaware where Wells Fargo is headquartered even though she is a vice president of this company, has been employed by Wells Fargo since 1999, and has been to the corporate offices in California numerous times. Such false testimony should give this court some idea about the defendant's credibility. (see Defn' deposition transcript)

On/about November 3, 2006 Mr. Rogers filed a pleading in this Court pointing out that defendant improperly filed a document including Mr. Rogers' SSAN in violation to LCvR 5.4 (f).  Defendant did not deny this improper behavior and acknowledged the impropriety by seeking to file a redacted version of her pleading the following day.

On September 10, 2007 Mr. Rogers had to seek court intervention for at least the third time because defendant again published his private information in violation to the Local Rules (see Plaintiff's Motion to Strike).  In that motion Mr. Rogers averred that

> For a *least* the third separate time defense counsel has blatantly violated Local Rule of Civil Procedure 5.4 (f) by electronically publishing Mr. Rogers' private information in a public filing or attachment.
>
> The latest rule infraction occurred on September 8, 2007 when Sean Beaty filed <u>Karen Johnson-Norman's Reply To Rogers' Opposition To Ms. Johnson-Norman's Motion For Attorney's Fees And Additional Relief</u> . On this instance, on page 5 of Attachment B defense counsel violated LCvR 5.4(f) (1) ***and*** LCvR 5.4 (f) (3) by publishing an exhibit which contains both Mr. Rogers' social security number and his date of birth, each of which separately violated the local rules of this court.

One each instance of the blatant violation of the local rules, defense counsel predictably claimed inadvertency. On the contrary, repeated and deliberate violations of the rules by a member of the D.C. Bar cannot be excused as inadvertency, particularly in a case with such negative emotions between the parties, which the court has noted numerous times. These actions by defense counsel were deliberate or evidenced extreme incompetence and indifference for Mr. Rogers and this Court. In either case, the resulting message evidenced in this repeated violation is that Mr. Rogers' private information is not safe in the custody of defendant or her counsel and it must be safeguarded by the Court using its inherent equitable authority to issue a post judgment protective order.

### C. GOOD CAUSE EXIST BECAUSE DEFENDANT HAS FABRICATED UNSAVORY ALLEGATIONS AGAINST MR. ROGERS FOR SEVERAL YEARS USING PRIVATE INFORMATION GLEANED ABOUT HIM

The defendant in this case has a long history of fabricating stalking allegations against Mr. Rogers, which is one of the pretexts offered by defense counsel as grounds for wanting to retain Mr. Rogers' private information.

For example in D.C. Superior Court Case M-09-07-00, defendant's spouse at the time Percy Norman testified as follows in pertinent part on January 17, 2001 about his wife's prevarication in describing Mr. Rogers as stalking her even though she was actually having a casual sexual relationship with Rogers while she was allegedly being stalked: (see generally M-970900 transcript)

> Q: …WHAT IS YOUR UNDERSTANDING OF THE NATURE OF YOUR WIFE'S RELATIONSHIP WITH MR. ROGERS?
> A: …DIDN'T HAVE A CLEAR UNDERSTANDING
>
> Q: CONCERNING THE NOVEMBER 1999 INCIDENT DID YOUR WIFE AT ANY POINT IN TIME EXPLAIN TO YOU THAT MR ROGERS WAS STALKING HER AFTER THAT?
> A: …**HONESTLY, I DON'T KNOW, IT COULD BE OVER A HUNDRED TIMES**.
>
> Q: SO YOU WOULD SAY SHE DESCRIBED THE MAN AS STALKING HER SOME CLOSE TO AT LEAST 20 TIMES?
> A: MORE THAN THAT.
>
> Q: DID YOU KNOW YOUR WIFE HAD GONE TO MR. ROGERS' HOME ON JUNE, 25 2000?
> A: …I DON'T THINK SO, I DON'T RECALL, NO.

In Case F420803, where Mr. Rogers was acquitted of misdemeanor stalking, Metropolitan Police Detective Ralph Durant testified in pertinent part as follows about false allegations provided to him by defendant claiming Mr. Rogers was stalking her even though he was physically located in California at the time alleged. (see F420803 transcripts)

> Q: NOW IN JANUARY THERE WAS AN ISSUE OF MR ROGERS' WHEREABOUTS, ISN'T THAT RIGHT, JANUARY OF 2003,
> A: YES
>
> Q: AT SOME POINT IN JANUARY OF 2003 YOU RECEIVED INFROMATION FROM MS. JOHNSON THAT MR ROGERS WAS GOING TO BE IN WASHINGTON, DC?

A:     THAT'S CORRECT, YES

Q:     SHE ALSO GAVE YOU A LICENSE TAG NUMBER?

A:     SHE MAY HAVE. AND THAT MAY HAVE BEEN IN REFERNECE TO A CAR SHE SAW IN FRONT OF HER HOUSE

Q:     SHE TOLD YOU THAT SHE SAW HIM IN CHURCH ON SUNDAY, THE PREVIOUS SUNDAY?

A:     YES. SHE SAID SHE THOUGHT SHE SAW HIM BY HER CHURCH ON SUNDAY.

Q:     AND SHE GAVE YOU A PIECE OF PAPER WITH A TAG NUMBER ON IT, ISN'T THAT RIGHT?

A:     I BELIEVE SHE DID.

Q:     DID YOU RUN THAT TAG NUMBER?

A:     YES I DID

Q:     WAS IT A CAR FOR VIRGIL ROGERS

A:     NO IT WAS NOT

Q:     WAS IT A TAG NUMBER FOR ANYONE ASSOCIATED WITH VIRGIL ROGERS THAT YOU KNOW OF?

A:     NO, NOT THAT I KNOW OF.

Q:     AND LATER IN JANUARY RIGHT AFTER SHE GAVE YOU THIS INFOrMATION, DID YOU LATER LEARN THAT MR. ROGERS WAS IN CALIFORNIA?

A:     SOMETIME IN JANUARY OR FEBRUARY, YES

    Defendant, Karen Johnson Norman also provided some of her own false testimony aside from the falsities that others have testified about. For example, in October 2004, while trying

to obtain an extension on a civil protection order against Mr. Rogers (which ultimately served as the basis for this Court's decision to dismiss most of plaintiff's case), Karen Johnson Norman testified in Superior Court case IF 2497-03 that she had received contact and implied strongly that she had seen Mr. Rogers at or near or house and therefore needed a civil protection order. Mr. Rogers was not present at the hearing and could not have possibly been at or near defendant's home in Maryland because he was traveling in Asia at the time and was likely in or near **Tajikistan**.  Superior Court accepted the false testimony and extended the CPO for an additional year and punished Mr. Rogers with a bench warrant for not showing up at the hearing for which he could not have possibly received notice. (see transcript of October 2004 CPO hearing IF 2497-03)

     Karen Johnson Norman filed a false police report against Mr. Rogers in February 2002 claiming  that he was at the Washington Hospital Center (WHC) in Washington D.C. She even produced unnamed witnesses willing to support this claim even though Mr. Rogers was actually in Macon, Georgia on the date in question at a church retreat with hundreds of other worshippers. Defendant later committed perjury by advancing this claim during Mr. Rogers' prior civil action against her when she told District Judge Gerald Bruce Lee during a hearing that Mr. Rogers was at WHC on the date alleged. Mr. Rogers testified under oath before the federal judge and produced witness affidavits of his whereabouts. *He's never been to WHC.*

     Time and again, the defendant has used any bit of information she may have about Mr. Rogers to advance false allegations against him in an attempt to bring harm upon Mr. Rogers and his family. The sworn testimony of Percy Norman and Ralph Durant evidence that she was not beyond lying to police officers and family members in her claims that Mr. Rogers was stalking her while she was actually having a casual sexual relationship with him, and once this

ended she repeatedly lied about him being places he could not possibly have been and doing things he didn't do. This is a sign of desperation and supports Mr. Rogers efforts to obtain a protective order. Defendant's false reports to police and her perjury before judicial officers has continued in defendant's filings in this case. Its all part of the same quest for sympathy and masks an effort to seek vengeance against Mr. Rogers. It demonstrates why Mr. Rogers needs a protective order to protect his private information from misuse by defendant so that the information is not used to harm Mr. Rogers further with falsities.

The Supreme Court held that "[t]he facts in this case illustrate the concerns that justifiably may prompt a court to issue a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (holding that "restraints placed on discovered, *but not yet admitted,* information are not a restriction on a traditionally public source of information" (emphasis added)).

**CONCLUSION**

WHEREFORE, Virgil Rogers moves this court for a post judgment protective order which requires the defendant and her counsel to retrieve all electronic and physical copies of discovery obtained via subpoenas in this case and to return it to Rogers within 30 days and then to certify under oath to this court that they have not maintained or proliferated any of the private information. Mr. Rogers requests costs associated with the filing of this motion. Defendant and her counsel cannot demonstrate even the slightest modicum of prejudice they would suffer if this Court were to issue a protective order requiring them to retrieve all electronic and physical copies of subpoenaed material in this case and return it to Mr. Rogers. Moreover, if they have not proliferated these already, the retrieval process will be rather

simplistic and non intrusive. In any event, the greater good is served by the issuance of such an order and there is no harm done to defendant whatsoever.

                                        Respectfully Submitted,

Filed December 14, 2007                                //s//

                                        VIRGIL ROGERS