**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VIRGIN M. ROGERS, *pro se* ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KAREN JOHNSON-NORMAN ) | |
| ) | Civil Case. No. **06-01186 (ESH)** |
| Defendant. ) | |

**KAREN JOHNSON-NORMAN'S OPPOSITION TO ROGERS' POST-JUDGMENT
MOTION FOR A PROTECTIVE ORDER**

Karen Johnson-Norman found it hard to believe that her nightmare was finally over. Now, nearly three months after the Court's final judgment, it is clear that Rogers will never leave her alone. Ms. Johnson-Norman will not dignify the revisionist history contained in Rogers' motion, other than to clearly and unequivocally state that Karen Johnson-Norman disagrees with Rogers' characterization of the facts. If the Court has any question regarding the parties' long and tortured history, the Court need look no farther than the motions and exhibits filed in this case.

Despite the Court's September 27, 2007 Order, Rogers labors under the assumption that this case, like all of the criminal prosecutions against him, grants him eternal access to the courts to file untimely, unsupported, and unnecessary motions. Rogers is wrong. Nearly three-months after the Court's final judgment, this case is now closed. Thus, Rogers's motion is untimely.

Moreover, Rogers lacks standing to demand the return of third parties' documents. Rogers is not requesting the return of materials that *he* produced in litigation; he seeks the return of documents produced *by third parties*. Rogers has no ownership interest in these materials, and therefore has no right to demand their return.

Finally, Rogers' motion is entirely unnecessary. Karen Johnson-Norman is willing to follow the procedures of the proposed Protective Order, appended hereto as Attachment A,[1] for the destruction of confidential materials produced in discovery. All of Rogers' concerns regarding the security of his personal information are addressed by the Protective Order. Thus, Rogers' motion is moot.

Therefore, Karen Johnson-Norman respectfully requests that the Court deny Rogers' untimely motion as he lacks standing to bring it. In the alternative, Ms. Johnson-Norman respectfully asks the Court to enter the proposed Protective Order attached hereto.

## FACTS

When Virgil Rogers filed this case, counsel for Karen Johnson-Rogers proposed that the parties enter into a protective order that would govern the use and disposition of confidential material produced in the course of discovery. Rogers refused. Counsel implored Rogers to sign the proposed protective order, or draft his own version. D.I. 68-2 at 2. Rogers refused to do either. D.I. 68-3 at 2.

In the course of discovery, Karen Johnson-Norman subpoenaed documents from third parties that supported Ms. Johnson-Norman's defenses and evidenced Rogers' bad faith in bring his claim. These documents included auto loan applications that Rogers submitted in April 2004, employment records that verified his employment in the region, and loan decisions for Rogers' applications. Although Rogers complained about these subpoenas (D.I. 67, 87-3), he never moved to quash any of them.

To the extent they had them, the third parties produced relevant documents. See, e.g., D.I. 87-4, 93-4, 97-2, 99-2. These documents were not produced by Rogers. Karen Johnson-Norman agreed to treat these third-party productions as confidential under the proposed Protective Order.

---

[1] The Protective Order that Rogers attached to his motion (D.I. 105-4) is not the most recent version proposed by Ms. Johnson-Norman. Therefore, Karen Johnson-Norman has appended the *current* proposed Protective Order as Attachment A hereto.

After the Court denied Ms. Johnson-Norman's request for attorney's fees, Rogers demanded the return of all materials produced during discovery. Attachment B at 2.[2] Ms. Johnson-Norman informed Rogers that she was willing to follow the procedures set forth in Paragraph 14 of the proposed Protective Order, and asked Rogers to execute the Protective Order. D.I. 105-2. Rogers complained that the Protective Order prohibited him from keeping a copy of materials confidential materials.[3] Attachment B at 5. Counsel for Ms. Johnson-Norman revised the Protective Order so that Rogers also has the right to maintain a file copy of the materials enumerated in Paragraph 14(b) of the proposed Protective Order. D.I. 105-2. This revision put the parties on equal footing. Rogers refused to sign the amended Protective Order. D.I. 105-6.

Now Rogers complains that the proposed Protective Order allows counsel for Karen Johnson-Norman to *any* copies of materials produced in this case. Id. Counsel for Ms. Johnson-Norman noted his duty to protect his client's interests, including Karen Johnson-Norman's future interests. D.I. 105-7. Ms. Johnson-Norman also explained that, given Rogers' history of baseless litigation, her counsel needed to keep one copy of materials from this case in the event that Rogers files another suit based upon facts from this case.[4] *Id*. Ms. Johnson-Norman again offered to follow the procedures set forth in the proposed Protective Order. *Id*. Rogers again refused. Attachment B at 11.

---

[2] Rogers has selectively omitted much of his own correspondence regarding this matter. Attachment B reflects the entire chain of correspondence between the parties.

[3] Originally, Rogers' only complaint was that the protective order was one sided: "I will not agree to any protective order which permits Howrey to retain documents while prohibiting me, the pro se party at issue from doing the same. This is totally one sided. […] Perhaps you may want to revise the one sided terms of this proposed protective order or it will likely need to be brought before the court which will waste more of both of our time and the court's time on this nonsense." Karen Johnson-Norman immediately amended the protective order to appease Rogers. Still unsatisfied, Rogers now brings the instant motion.

[4] The fact the Rogers now concedes that any such lawsuit would be barred by the doctrine of collateral estoppel is of little consolation. Seven of Rogers' eight claims in this case were barred by collateral estoppel; that did not stop him from asserting them.

The last communication between the parties regarding this matter was Rogers' October 1, 2007 e-mail. The entire chain of correspondence regarding this issue spans only four days. Filing his motion at 11:56 p.m. on Friday, December 14, 2007, Rogers has delayed resolution of this issue for over two and a half months.

## ARGUMENT

### A. Rogers' motion is untimely and therefore should not be considered

Discovery in this case closed on June 8, 2007. D.I . 39. All of Rogers' claims have been thrown out. D.I. 28, 91. The Court entered its final judgment on September 27, 2007 when it denied Karen Johnson-Norman's motion for attorney's fees.[5] D.I. 104. Nearly three months later, Rogers' instant motion is untimely.

Motions for protection under Rule 26(c) "must be made before the discovery sought is scheduled or at least during the discovery." *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 549 (D. Tex. 1984). "The rule does not allow post-discovery motions for protection if there was an opportunity to move for a protective order before the discovery took place." *Id*. *See also King v. Fidelity National Bank*, 712 F.2d 188, 191 (5th Cir. 1983); 8 C. Wright & A. Miller, Federal Practice & Procedure § 2035 at 262-63 (1970). In this case, Rogers never moved to quash a single subpoena served in this case.[6] Thus, Rogers cannot now seek protection when he failed to take the appropriate action during discovery.

Moreover, Rogers should not be allowed seek protection *after* the close of discovery when he refused to enter into the proposed Protective Order *during* discovery. Rogers' refusal to enter into the proposed Protective Order during discovery not only evidences his contumacious and obstreperous behavior, but underscores his desire to needlessly drag-out this litigation. If

---

[5] Indeed, as this case is now closed, it is unclear whether the Court even retains jurisdiction over this matter.

[6] Rogers' assertion that he was unable to challenge these subpoenas is without merit. Representing himself, Rogers managed to file 16 affirmative motions and fully opposed all of Ms. Johnson-Norman's briefs. Rogers certainly was capable of properly opposing the subpoenas if he had chosen to do so.

Rogers had been truly interested in protecting his personal information, he would have either signed the proposed Protective Order or, at the very least, raised the issue with the Court during discovery. In short, the timing of Rogers' motion belies its urgency.

### B. Rogers has no ownership interest in the third party productions

Karen Johnson-Norman does not object to returning documents that Rogers himself produced in this litigation. However, Rogers has no right to demand the return of documents that are not his. Although the documents do contain Rogers' personal information, that does not magically transform those documents into Rogers' property. To hold otherwise would allow Rogers to march into MPD headquarters and demand the return of the records of Rogers' arrests and conviction for stalking conduct simply because the records contain his personal information.

Only the true parties at interest, the third parties who produced the documents, have the right to demand the return of their productions. It is axiomatic that Rogers cannot demand the return of something that is not his. Thus, without ownership interest, Rogers' motion should be denied for lack of standing.

### C. Rogers' motion is unnecessary because Karen Johnson-Norman is willing to abide by the proposed Protective Order

The proposed Protective Order addresses all of Rogers' concerns regarding the disposition of confidential information produced in this case. Paragraph 14(a) of the proposed Protective Order identifies the procedure to dispose of confidential information:

> a. Within 30 days of the final disposition of this case, whether by judgment and exhaustion of all appeals, or by settlement, or within 30 days of the execution of this protective order, whichever occurs last, the parties and their attorneys of record:
>
> (1) Shall destroy or return to the producing party, or its attorney of record, materials produced or designated as Confidential Information in their possession, custody or control or in the possession, custody or control of their staff,

> (2) Shall insure that all the materials produced or designated as Confidential Information in the possession, custody or control of their experts and consultants is destroyed, or returned to the producing party or its attorney of record;
>
> (3) Shall deliver to the producing party, or its attorney of record, written confirmation that there has been compliance with the terms of this paragraph or that there has not been compliance and the reason for such noncompliance, upon receipt of which the producing party may make application to the Court for such further order as may be appropriate.

Attachment A at 13. Karen Johnson-Norman has already told Rogers that she is willing to abide by the procedure contained in Paragraph 14. *See* Attachment B at 3, 6, 9. To take advantage of Ms. Johnson-Norman's offer, all Rogers had to do is execute and return the proposed Protective Order. Thus, the parties already had a sufficient mechanism to address the disposition of confidential information produced during discovery. Rogers' motion was entirely unnecessary.

The gravamen of Rogers' motion, then, is his objection to Paragraph 14(b) of the Protective Order. Paragraph 14(b) enumerates categories of documents of which both counsel for Ms. Johnson-Norman and Rogers may keep one file copy:

> b. Notwithstanding the foregoing, counsel of record for Karen Johnson-Norman and *pro se* plaintiff Virgil Rogers may maintain in their files one copy of each affidavit, affirmation, certification, declaration, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties to this action, written response to a discovery request, document filed with the Court, and court transcript in this action, consisting of or containing Confidential Information.

Attachment A at 13.

Counsel for Ms. Johnson-Norman has an ethical duty to protect his client's interests. *See* D.C. Rule of Professional Conduct 1.3. This includes a duty to protect Ms. Johnson-Norman's future interests. Unfortunately, Rogers has a record of filing baseless claims against Ms. Johnson-Norman.[7] Indeed, the instant motion evidences Rogers' refusal to simply go away.[8]

---

[7] Even the Court recognized Rogers' history of litigation against Ms. Johnson-Norman in its decision dismissing Rogers' case. D.I. 91 at 9.

[8] Rogers' portrayal of Karen Johnson-Norman as the pursuer and Rogers as the victim is absurd and contrary to the evidence. Rogers, not Ms. Johnson-Norman, was convicted for his stalking conduct. Rogers' constant rejection of reality only makes his obsession with Ms. Johnson-Norman more frightening.

6

Thus, given the substantial likelihood that Rogers will continue his harassment of Karen Johnson-Norman through additional lawsuits,[9] Paragraph 14(b) protects Ms. Johnson-Norman's interests in future suits brought by Rogers.  It is in Ms. Johnson-Norman's interest for her counsel to maintain a copy of the materials enumerated in Paragraph 14(b) to defend those future actions.

Finally, the proposed Protective Order governs what the parties can do with confidential material produced in discovery.  *See* Attachment A at 9.  Rogers' argument that Ms. Johnson-Norman or her counsel will inappropriately disclose or use Rogers' private information is not only offensive, but expressly barred by the Protective Order.  Were Ms. Johnson-Norman or her attorney to disclose or use Rogers' confidential information in any manner inconsistent with the Protective Order, Rogers could ask the Court to enforce the Protective Order.

## CONCLUSION

Karen Johnson-Norman respectfully requests that the Court deny Rogers' untimely motion as he lacks standing to bring it.  In the alternative, Ms. Johnson-Norman respectfully asks the Court to enter the proposed Protective Order attached hereto.  If the Court enters the proposed Protective Order, Ms. Johnson-Norman respectfully requests a thirty-day period for the parties to comply.

---

[9] Interestingly, Rogers does not deny that he will file another case.  Attachment B at 3.  Instead, Rogers objects to Howrey continuing to represent Ms. Johnson-Norman in his future suits against her: "[U]nless you have an open ended retainer agreement which guarantees that Howrey will represent her pro bono in perpetuity, you may not maintain improperly obtained items about me to use in litigation in some possible court action in the future. […] If there were a future case, it will have its own discovery and its own facts." *Id.*

                                        Respectfully submitted,

                                                /s/
Of Counsel:                          Sean P. Beaty, *pro bono*
                                        (Bar No. 493597)
                                        HOWREY LLP
                                        1299 Pennsylvania Ave., N.W.
                                        Washington, D.C.  20004
                                        (202) 783-0800

                                        Attorney for
                                        Karen Johnson-Norman
Dated:  December 17, 2007